# Exhibit 1

**Findings of Fact**

The Agency finds that, in light of Registrant's default, the factual allegations in the OSC are deemed admitted. According to the OSC, Registrant's Colorado registered nursing license, advanced practice nurse license, and nurse practitioner prescriptive authority license were suspended by the Colorado State Board of Nursing on October 21, 2024. RFAAX 1, at 1–2; *see also* RFAAX 4. According to Colorado online records, of which the Agency takes official notice,[2] Registrant's Colorado licenses have a status of ''Suspended.'' Colorado DORA License Search, *https://apps2.colorado.gov/dora/licensing/lookup/licenselookup.aspx* (last visited date of signature of this Order). Accordingly, the Agency finds that Registrant is not licensed as a practitioner in Colorado, the state in which she is registered with DEA.[3]

**Discussion**

Pursuant to 21 U.S.C. 824(a)(3), the Attorney General may suspend or revoke a registration issued under 21 U.S.C. 823 ''upon a finding that the registrant . . . has had his State license or registration suspended . . . [or] revoked . . . by competent State authority and is no longer authorized by State law to engage in the . . . dispensing of controlled substances.'' With respect to a practitioner, DEA has also long held that the possession of authority to dispense controlled substances under the laws of the state in which a practitioner engages in professional practice is a fundamental condition for obtaining and maintaining a practitioner's registration. *Gonzales* v. *Oregon,* 546 U.S. 243, 270 (2006) (''The Attorney General can register a physician to dispense controlled substances 'if the applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices.' . . . The very definition of a 'practitioner' eligible to prescribe includes physicians 'licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices' to dispense controlled substances. § 802(21).''). The Agency has applied these principles consistently. *See, e.g., James L. Hooper, M.D.,* 76 FR 71,371, 71,372 (2011), *pet. for rev. denied,* 481 F. App'x 826 (4th Cir. 2012); *Frederick Marsh Blanton, M.D.,* 43 FR 27,616, 27,617 (1978).[4]

According to Colorado statute, ''dispense'' means ''to deliver a controlled substance to an ultimate user, patient, or research subject by or pursuant to the lawful order of a practitioner, including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for that delivery.'' Colo. Rev. Stat. § 18–18–102(9) (West 2025). Further, a ''practitioner'' means a ''physician . . . or other person licensed, registered, or otherwise permitted, by this state, to distribute, dispense, conduct research with respect to, administer, or to use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.'' *Id.* § 18–18–102(29).

Here, the undisputed evidence in the record is that Registrant is not a currently licensed practitioner in Colorado. As discussed above, a nurse must be a licensed practitioner to dispense a controlled substance in Colorado. Thus, because Registrant's nursing licenses are suspended in Colorado and, therefore, she is not currently authorized to handle controlled substances in Colorado, Registrant is not eligible to maintain a DEA registration in Colorado. Accordingly, the Agency will order that Registrant's DEA registration be revoked.

**Order**

Pursuant to 28 CFR 0.100(b) and the authority vested in me by 21 U.S.C. 824(a), I hereby revoke DEA Certificate of Registration No. MC5780639 issued to Diana Clouthier, N.P. Further, pursuant to 28 CFR 0.100(b) and the authority vested in me by 21 U.S.C. 823(g)(1), I hereby deny any pending applications of Diana Clouthier, N.P., to renew or modify this registration, as well as any other pending application of Diana Clouthier, N.P., for additional registration in Colorado. This Order is effective August 15, 2025.

**Signing Authority**

This document of the Drug Enforcement Administration was signed on July 10, 2025, by Acting Administrator Robert J. Murphy. That document with the original signature and date is maintained by DEA. For administrative purposes only, and in compliance with requirements of the Office of the Federal Register, the undersigned DEA Federal Register Liaison Officer has been authorized to sign and submit the document in electronic format for publication, as an official document of DEA. This administrative process in no way alters the legal effect of this document upon publication in the **Federal Register**.

**Heather Achbach,**
*Federal Register Liaison Officer, Drug Enforcement Administration.*
[FR Doc. 2025–13354 Filed 7–15–25; 8:45 am]
**BILLING CODE 4410–09–P**

---

**DEPARTMENT OF JUSTICE**

**[A.G. Order No. 6335–2025]**

**Revised Specification Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996**

**AGENCY:** Department of Justice.

**ACTION:** Order.

**SUMMARY:** This document contains an Order of the Attorney General issued pursuant to sections 401 and 411 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (''PRWORA'' or the ''Act''). This Order withdraws the Attorney General's January 5, 2001, order issued pursuant to PRWORA.

**DATES:** The effective date of this Order is August 15, 2025.

---

[2] Under the Administrative Procedure Act, an agency ''may take official notice of facts at any stage in a proceeding—even in the final decision.'' United States Department of Justice, Attorney General's Manual on the Administrative Procedure Act 80 (1947) (Wm. W. Gaunt & Sons, Inc., Reprint 1979).

[3] Pursuant to 5 U.S.C. 556(e), ''[w]hen an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.'' The material fact here is that Registrant, as of the date of this Order, is not licensed as a nurse in Colorado. Accordingly, Registrant may dispute the Agency's finding by filing a properly supported motion for reconsideration of findings of fact within fifteen calendar days of the date of this Order. Any such motion and response shall be filed and served by email to the other party and to the DEA Office of the Administrator, Drug Enforcement Administration, at *dea.addo.attorneys@dea.gov.*

[4] This rule derives from the text of two provisions of the Controlled Substances Act (CSA). First, Congress defined the term ''practitioner'' to mean ''a physician . . . or other person licensed, registered, or otherwise permitted, by . . . the jurisdiction in which he practices . . . , to distribute, dispense, . . . [or] administer . . . a controlled substance in the course of professional practice.'' 21 U.S.C. 802(21). Second, in setting the requirements for obtaining a practitioner's registration, Congress directed that ''[t]he Attorney General shall register practitioners . . . if the applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices.'' 21 U.S.C. 823(g)(1). Because Congress has clearly mandated that a practitioner possess state authority in order to be deemed a practitioner under the CSA, DEA has held repeatedly that revocation of a practitioner's registration is the appropriate sanction whenever he or she is no longer authorized to dispense controlled substances under the laws of the state in which he or she practices. *See, e.g., James L. Hooper, M.D.,* 76 FR at 71,371–72; *Sheran Arden Yeates, M.D.,* 71 FR 39,130, 39,131 (2006); *Dominick A. Ricci, M.D.,* 58 FR 51,104, 51,105 (1993); *Bobby Watts, M.D.,* 53 FR 11,919, 11,920 (1988); *Frederick Marsh Blanton, M.D.,* 43 FR at 27,617.

**FOR FURTHER INFORMATION CONTACT:**
Christina Greer, Office of Legal Policy, Department of Justice, Room 4254, 950 Pennsylvania Avenue NW, Washington, DC 20530, telephone 202–514–5739, for general information. For information regarding particular programs, contact the Federal agency that administers the program.

**SUPPLEMENTARY INFORMATION**

### I. Background on PRWORA

On August 22, 1996, President Clinton signed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law 104–193, currently codified in relevant part at 8 U.S.C. 1611 *et seq.,* as amended. With certain exceptions, PRWORA makes aliens who are not ''qualified alien[s]'' ineligible for any ''Federal public benefit,'' as those terms are defined by PRWORA. 8 U.S.C. 1611(a); *see also id.* 1611(c) (defining ''Federal public benefit''), 1641 (defining ''qualified alien''). PRWORA also restricts, with certain exceptions, all aliens from receiving ''Federal means-tested public benefit[s]'' for a five-year period from their entry into the United States with a status within the meaning of the term ''qualified alien.'' 8 U.S.C. 1613(a). Additionally, PRWORA imposes limits on the receipt of State and local benefits by aliens but permits States to authorize the receipt of State and local benefits by otherwise ineligible aliens through the enactment of a State law postdating PRWORA. *See* 8 U.S.C. 1621(a), (d); *see also id.* 1621(c) (defining ''State or local public benefit''). Finally, PRWORA added section 213A to the Immigration and Nationality Act, which excepts from reimbursement certain benefits provided to a sponsored alien pursuant to an affidavit of support. *Id.* 1183a note.

PRWORA requires the creation of uniform verification requirements to ensure that only ''qualified aliens'' eligible for benefits under PRWORA receive them. 8 U.S.C. 1642. Section 1642(a) requires the Attorney General, who at the time of PRWORA's enactment oversaw the Immigration and Naturalization Service within the Department of Justice (''DOJ''), to promulgate regulations requiring verification that a person applying for a Federal public benefit is a qualified alien and is eligible to receive the benefit. Section 1642(a)(2) requires establishment of fair and nondiscriminatory procedures for a person to provide proof of citizenship. Section 1642(b) requires States to have in effect a verification system that complies with the regulations promulgated under section 1642(a). The Attorney General issued interim guidance about the implementation of these verification requirements in 1997. Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 FR 61344 (Nov. 17, 1997).

### II. Authority To Specify Exceptions to PRWORA's Verification Requirements

Sections 401(b)(1)(D) and 411(b)(4) of PRWORA (codified at 8 U.S.C. 1611(b)(1)(D) and 1621(b)(4)), provide that the Attorney General may, in her ''sole and unreviewable discretion after consultation with appropriate Federal agencies and departments,'' specify as excepted from PRWORA's prohibition on receipt of public benefits by unqualified aliens certain types of programs, services, and assistance that meet all of the following criteria: (1) deliver in-kind services at the community level, including through public or private non-profit agencies; (2) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (3) are necessary for the protection of life or safety.

Shortly after PRWORA was signed into law, the Attorney General issued an order implementing this authority by making a ''provisional specification'' of benefits excepted from PRWORA. Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 61 FR 45985 (Aug. 30, 1996) (''Provisional Order''). Approximately one year later, the Attorney General issued a notice to solicit input from ''federal, state, and local agencies operating programs or providing services or assistance that may be covered by the final Order.'' Request for Comments on the Attorney General's Specification of Community Programs Necessary for the Protection of Life or Safety Under the Welfare Reform Act, 62 FR 48308, 48308 (Sept. 15, 1997). The Attorney General subsequently issued a final order specifying these programs in 2001. Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 66 FR 3613 (Jan. 16, 2001) (''Final Order''). In both the Provisional Order and the Final Order—the latter of which was, in substance, unchanged in response to the comments received by DOJ—the Attorney General exercised her authority to except programs, services, or assistance to the fullest extent permitted by law by excepting from PRWORA ''any . . . programs, services, or assistance'' that satisfied all three statutory criteria. 61 FR at 45985 (Provisional Order); 66 FR at 3616 (Final Order); *see also id.* at 3615 (''[the] Attorney General has fully exercised the power delegated to her under §§ 401(b)(1)(D) and 411(b)(4) of [PRWORA]'').

The Attorney General's exercise of discretion to determine whether to except benefits from PRWORA does not require notice-and-comment rulemaking. Because PRWORA commits a decision about exceptions to the Attorney General's ''sole and unreviewable discretion'' after consultation with Federal officials, PRWORA ''renders the formal notice-and-comment rulemaking regime inapplicable'' to this action. *See Make The Rd. New York* v. *Wolf,* 962 F.3d 612, 634 (D.C. Cir. 2020). Moreover, the action is exempt from notice-and-comment procedures because the designation of certain benefits as excepted is a ''matter relating to . . . public property, loans, grants, benefits, or contracts.'' 5 U.S.C. 553(a)(2).

### III. Executive Order 14218

On February 19, 2025, the President signed Executive Order 14218, ''Ending Taxpayer Subsidization of Open Borders,'' 90 FR 10581. One purpose of the Executive Order is to confirm agencies are complying with PRWORA in administering Federal programs by ensuring, ''to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens.'' *Id.* sec. 2(a). The Executive Order directs agencies to identify ''all federally funded programs administered by the agency that currently permit illegal aliens to obtain any cash or non-cash public benefit, and, consistent with applicable law, take all appropriate actions to align such programs with the purpose of the Executive Order and applicable law, including . . . PRWORA.'' *Id.* sec. 2(a)(i).

### IV. Re-Evaluation of the 2001 Specification

*A. Review of Reliance on the Final Order*

In the discharge of her responsibilities under Executive Order 14218 and PRWORA, the Attorney General has reviewed the Final Order issued in 2001. As required by PRWORA, she has engaged in consultation with appropriate Federal agencies and departments about the propriety of

specifying exceptions to PRWORA, including the extent to which agencies rely on the Final Order to except programs, services, or assistance from PRWORA, in order to determine whether the Final Order should be withdrawn or modified.

Multiple agencies responded that they do not rely on the Final Order at all because they do not confer benefits subject to PRWORA; because they rely only on PRWORA's statutory exceptions; or because they do not except the benefits they provide from PRWORA's eligibility requirements. The fact that a particular program does not fall within the scope of PRWORA does not mean that eligibility requirements imposed by other Federal statutes do not apply to the benefit. Some Federal programs, such as Medicaid, unemployment compensation, educational assistance under Title IV of the Higher Education Act of 1965, and assisted housing programs administered by the Department of Housing and Urban Development (''HUD'') already require, absent a waiver, verification of the immigration status of an alien to ensure the alien meets the eligibility requirements for the program. 62 FR at 61345. To verify recipient status and eligibility, agencies use the Systematic Alien Verification for Entitlements (''SAVE'') system, operated by U.S. Citizenship and Immigration Services. *See id.* Except where specified in the statute, PRWORA does not alter preexisting legal requirements regarding the use of the SAVE system or relieve the administrators of statutorily mandated programs of their obligations to comply with the SAVE program. *Id.* The Attorney General defers to agencies as to the extent to which PRWORA applies to the programs they administer and as to whether authorities other than PRWORA require them to ascertain the immigration status of benefit recipients.

Some agencies purported to rely upon the Final Order to except from PRWORA programs that are likely subject to one of PRWORA's statutory exceptions. For example, the Federal Emergency Management Administration purported to rely on the Final Order as to certain emergency or disaster relief programs. But PRWORA already excepts short-term, in-kind, emergency disaster relief from its eligibility requirements, so the Attorney General's exception authority under PRWORA is not legally necessary to except such programs. *See* 8 U.S.C. 1611(b)(1)(B).

Agencies also purported to rely upon the Final Order to except programs that may fail to meet the requirements of PRWORA because eligibility is conditioned on the income or resources of the recipients. For instance, many of the benefits provided through the Community Development Block Grant (''CDBG'') program, managed by HUD, must be conferred to low- or moderate-income persons by statute. *See* 42 U.S.C. 5301 *et seq.* PRWORA, however, grants the Attorney General authority to except only programs for which eligibility is not conditioned on the resources or income of the recipients. *See, e.g.,* 8 U.S.C. 1611(b)(1)(D)(ii).

Agencies also purported to rely upon the Final Order for programs that may go beyond PRWORA's limitation of benefits to programs that are ''necessary for the protection of life or safety.'' 8 U.S.C. 1611(b)(1)(D)(iii). Neither PRWORA nor the Final Order attempts to define this phrase more precisely. This lack of guidance has led to the exception being used more broadly than Congress intended. PRWORA provides examples of the kinds of assistance that the Attorney General has authority to except from the statute's limitation on eligibility—*i.e.,* ''soup kitchens, crisis counseling and intervention, and short-term shelter.'' But agencies have excepted from PRWORA forms of assistance that are quite unlike these examples. For instance, the Department of Homeland Security (''DHS'') funds ''scientific leadership,'' ''citizenship education and training,'' and law enforcement officer training. Such programs—focused more on career building or personal development than human necessities—are not ''necessary for the protection life or safety'' in the sense the drafters of PRWORA used that phrase. Nor is it clear why unqualified aliens would need to receive benefits from such programs. Similarly, while grants, contracts, and loans are a public benefit under PRWORA, many projects funded by HUD through CDBG to address infrastructure improvements or combat urban blight are too far removed from the circumstances that would make them ''necessary for the protection of life or safety'' in the sense that Congress directed when it enacted PRWORA.

*B. Revision of the Final Order*

Based on her consultations with the appropriate Federal agencies and departments, the Attorney General has determined that the Final Order has created confusion about what sorts of programs are subject to PRWORA's requirements and is being applied more broadly than the statute permits. As a result, unqualified aliens have been able to receive public benefits for which they are not lawfully eligible. To correct this, the Attorney General, in the exercise of her discretion, has chosen not to except any benefits from PRWORA beyond those excepted by the statute itself.

In making this change, the Attorney General is aware that some aliens may have been able to receive certain types of in-kind public benefits that would otherwise be subject to PRWORA's requirements because of the exceptions detailed in the Final Order. Such aliens will not be eligible for those benefits in the future due to this revised specification. To the extent that aliens may have relied on such benefits, the Attorney General concludes, based on her consultation with Federal agencies and departments and other considerations, that the changes described in this specification are nonetheless warranted. This is so for several reasons. First, as noted earlier, some agencies have been excepting from PRWORA certain benefits based on a misunderstanding of the Attorney General's exception authority and hence have been providing benefits to aliens who were not lawfully eligible to receive them. ''No amount of reliance could ever justify continuing a program'' that an ''agency lacked statutory authority to'' implement in the first place, *see Dep't of Homeland Sec.* v. *Regents of the Univ. of California,* 140 S. Ct. 1891, 1930 (2020) (''*Regents*'') (Thomas, J., concurring in part and dissenting in part), so bringing the Federal Government into compliance with the law is a powerful reason to withdraw the Final Order regardless of any reliance interests. Second, as also noted above, some of the benefits previously provided under the Final Order were not, in fact, necessary for life or safety. The lack of any connection to aliens' immediate welfare necessarily reduces the extent of any reliance interests in these benefits. Third, even as to benefits that the Attorney General has the legal authority (but not the duty) to except from PRWORA, any reliance interests are significantly outweighed by the need to reduce the incentive for aliens to illegally migrate to the United States. *See* 8 U.S.C. 1601(2) (''It continues to be the immigration policy of the United States that . . . the availability of public benefits not constitute an incentive for immigration to the United States.''). Finally, Congress has delegated to the Attorney General the authority to determine the appropriate scope of this specification in her ''sole and unreviewable discretion.'' *E.g.,* 8 U.S.C. 1611(b)(1)(D). This delegation indicates Congress's intent that the scope of this specification not be subject to the sort of arbitrary-and-capricious review that would typically require consideration of

reliance interests. *See Regents,* 140 S. Ct. at 1907, 1913 (assessing an agency's consideration of reliance interests only after concluding that the agency's action was subject to judicial review).

Although the Attorney General has the authority to except certain benefits from PRWORA, the decision to do so is expressly committed to her sole and unreviewable discretion. *See, e.g.,* 8 U.S.C. 1611(b)(1)(D). The Attorney General has concluded, in the exercise of that discretion, that the benefits of creating additional exceptions to PRWORA, beyond those set forth in the statute itself, are outweighed by the risks of creating incentives for unlawful migration by allowing access to such programs to individuals who are not ''qualified aliens'' as defined by PRWORA.

This Order does not purport to define what benefit programs are, and are not, ''public benefits'' subject to PRWORA. This Order also has no effect on other statutory eligibility requirements, including those found in PRWORA itself. *See, e.g.,* 8 U.S.C. 1611(b), 1615, 1621(b)(4). The Attorney General has the right, in her sole and unreviewable discretion, to revisit and amend the specification in the future.

Order Specifying Community Programs Necessary for the Protection of Life or Safety Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996

By virtue of the authority vested in me as Attorney General by law, including Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the ''Act''), I hereby specify that:

1. Effective August 15, 2025, the Final Order of the Attorney General dated January 16, 2001, and published at 66 FR 6313, is withdrawn and no longer in force.

2. After undertaking the necessary consultations with appropriate Federal agencies and departments, the Attorney General has concluded, in her sole and unreviewable discretion, not to except any benefits from PRWORA pursuant to her authority to make such exceptions under section 401 and section 411 of PRWORA.

3. I do not construe the Act to preclude aliens from receiving police, fire, ambulance, transportation (including paratransit), sanitation, and other similar services. *See* 8 U.S.C. 1611(c), 1621(c). As a result, I need not specify and am not specifying any such services as being excepted from the Act.

4. It is not the purpose of this Order to define more specifically the scope of the public benefits that Congress intended to include within the scope of the Act, and nothing herein should be construed to do so.

Date: July 11, 2025.

**Pamela Bondi,**
*Attorney General.*
[FR Doc. 2025–13318 Filed 7–15–25; 8:45 am]
**BILLING CODE 4410–BB–P**

---

## DEPARTMENT OF LABOR

**Employment and Training Administration**

**Native American Employment and Training Council**

**AGENCY:** Employment and Training Administration, Labor.
**ACTION:** Notice of Renewal of the Native American Employment and Training Council charter.

---

**SUMMARY:** The Secretary of Labor (Department) announces the renewal of the Native American Employment and Training Council (NAETC) charter.

**SUPPLEMENTARY INFORMATION:**

### I. Background and Authority

Section 166(i)(4) of the Workforce Innovation and Opportunity Act (WIOA), 29 U.S.C. 3221(i)(4) requires the Secretary of Labor (Secretary) to establish and maintain the NAETC. The statute, as amended, requires the Secretary, to formally consult at least twice annually with the NAETC on the operation and administration of the WIOA Section 166 Indian and Native American Employment and Training programs. In addition, the NAETC advises the Secretary on matters that promote the employment and training needs of Indians and Native Americans, as well as to enhance the quality of life in accordance with the Indian Self-Determination and Education Assistance Act. The NAETC also provides guidance to the Secretary on how to make Department of Labor discretionary funding and other special initiatives more accessible to federally recognized tribes, Alaska Native entities, and Native Hawaiian organizations.

### II. Structure

The Council will be composed of no less than 15 members, but no more than 20, appointed by the Secretary, who are representatives of Indian tribes, tribal organizations, Alaska Native entities, Indian-controlled organizations serving Indians, or Native Hawaiian organizations pursuant to WIOA Section 166(i)(4)(B). The membership of the Council will, to the extent practicable, represent all geographic areas of the United States with a substantial Indian, Alaska Native, or Native Hawaiian population, and will include representatives of tribal governments and of non-reservation Native American organizations that have expertise in the areas of workforce development, secondary and post-secondary education, health care, business and economic development, and other sectors with job growth.

Each NAETC member will be appointed for a two-year term. A vacancy occurring in the Council membership will be filled in the same manner as the original appointment. A member appointed to a vacancy on the Council will serve for the remainder of the term for which the predecessor of that member was appointed. Members of NAETC will serve on a voluntary and generally uncompensated basis, but will be reimbursed for travel expenses to attend NAETC meetings, including per diem in lieu of subsistence, as authorized by the Federal travel regulations. All NAETC members will serve at the pleasure of the Secretary. Members may be appointed, reappointed, or replaced, and their terms may be extended, changed, or terminated at the Secretary's discretion.

**FOR FURTHER INFORMATION CONTACT:** Kimberly Vitelli, Office of Workforce Investment; (202) 693–3980; *vitelli.kimberly@dol.gov*.

*Authority:* Pursuant to the Workforce Innovation and Opportunity Act, 29 U.S.C. 3221(i)(4); Federal Advisory Committee Act, as amended, 5 U.S.C. App.

**Susan Frazier,**
*Acting Assistant Secretary for Employment and Training Administration.*
[FR Doc. 2025–13305 Filed 7–15–25; 8:45 am]
**BILLING CODE 4510–FN–P**

---

## DEPARTMENT OF LABOR

**Agency Information Collection Activities; Submission for OMB Review; Comment Request; Unemployment Compensation for Ex-Servicemembers Handbook**

**ACTION:** Notice of availability; request for comments.

---

**SUMMARY:** The Department of Labor (DOL) is submitting this Employment and Training Administration (ETA)-sponsored information collection request (ICR) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995