# Exhibit 4

| | CLASSIFICATION |
|---|---|
| **EMPLOYMENT AND TRAINING ADMINISTRATION ADVISORY SYSTEM** **U.S. DEPARTMENT OF LABOR** Washington, D.C. 20210 | WIOA |
| | **CORRESPONDENCE SYMBOL** OWI |
| | **DATE** July 10, 2025 |

**ADVISORY:**    **TRAINING AND EMPLOYMENT GUIDANCE LETTER NO. 10-23, Change 2**

**TO:**    STATE WORKFORCE AGENCIES
STATE WORKFORCE ADMINISTRATORS
STATE WORKFORCE LIAISONS
STATE AND LOCAL WORKFORCE BOARD CHAIRS AND DIRECTORS
AMERICAN JOB CENTER DIRECTOR
STATE LABOR COMMISSIONERS
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 167
MIGRANT AND SEASONAL FARMWORKER PROGRAM GRANTEES
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 169
REENTRY EMPLOYMENT OPPORTUNITIES GRANTEES AND OTHER
DEMONSTRATION PROGRAMS
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 171
YOUTHBUILD GRANTEES
WORKFORCE INNOVATION AND OPPORTUNITY ACT NATIONAL
DISLOCATED WORKER GRANT PROGRAM GRANTEES
SENIOR COMMUNITY SERVICE EMPLOYMENT PROGRAM
GRANTEES

**FROM:**    LORI FRAZIER BEARDEN
Acting Assistant Secretary

**SUBJECT:**    Work Authorization Verification in Grant Programs Administered by the
Employment and Training Administration

1. **Purpose.**  This guidance provides direction regarding work authorization verification for grant programs administered by the Employment and Training Administration (ETA).

2. **Action Requested.**  Entities receiving grants under the following programs must review and revise policies, documentation requirements, and procedures to align with this guidance: Workforce Innovation and Opportunity Act (WIOA) Title I Adult, Dislocated Worker, Youth programs (including statewide employment and training services funded by the Governor reserve); WIOA National Dislocated Worker Grants (DWGs); Wagner-Peyser Act (W-P) Employment Service; Reentry Employment Opportunities (REO) and other programs authorized under Section 169 of WIOA; YouthBuild; Section 167 Migrant and Seasonal Farmworker Program, also commonly referred to as the National Farmworker Jobs Program (NFJP); and the Senior Community Service Employment Program (SCSEP).

| RESCISSIONS | EXPIRATION DATE |
|---|---|
| None | Continuing |

3. **Summary and Background.**

    a.  Summary – This Training and Employment Guidance Letter (TEGL) directs the public workforce development system to update all policies and procedures to ensure that all participants served by the programs identified in the guidance are legally authorized to work in the United States. The overall goal of WIOA is to prepare job seekers and workers to succeed in the labor market while helping employers hire the skilled workers they need to compete in the global economy. Accordingly, participants served through WIOA and the related programs above must have valid work authorization. This will focus ETA-administered federal resources on the workers who can ultimately accomplish the congressionally directed goal of employment. Additionally, it will ensure employers have confidence that partnering with the workforce system will help them identify and hire workers who are both equipped with the skills to succeed on the job and legally authorized to work in the United States.

    b.  Background – In February 2024, ETA issued TEGL 10-23, which explained that some ETA-administered program services did not constitute "federal public benefits" under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) and therefore could be provided to job seekers and workers without verifying work authorization. This guidance attempted to differentiate among services that all help participants attain employment, which created confusion among grantees about which services were and were not allowable before verifying work authorization. Additionally, the guidance had acknowledged that individuals' work authorization could change, but made no provisions for continued validation of work authorization. The guidance also did not require maintaining the kind of documentation that is routinely required for other participant characteristics. That TEGL was rescinded on March 27, 2025.

    With this new TEGL, ETA is changing its prior guidance to clarify and establish that all participant-level services are considered "federal public benefits" under PRWORA. Therefore, grantees must verify work authorization for all participants served by WIOA and related programs named above prior to delivering participant-level services.[1]

    This change aligns with PRWORA and WIOA. This guidance uses the more commonly understood and better-defined category of participant-level services[2], and clearly states that all participant-level services are "federal public benefits" under PRWORA, because

---

[1] Programs such as YouthBuild, REO Youth, and NFJP youth services generally include assisting young people in obtaining their high school equivalency or other secondary-level education services. These youth programs provide these secondary-level education services along with other participant-level services that constitute federal public benefits. Because at least some services provided to youth participants are federal public benefits, recipients must verify participants' work authorization. This policy is consistent with the overall goal of these youth programs to prepare participants for employment, as discussed in this guidance.

[2] Participant level services are defined in Attachment II in TEGL 19-16, *Guidance on Services through the Adult and Dislocated Worker Programs under the Workforce Innovation and Opportunity Act (WIOA) and the Wagner-Peyser Employment Service (ES), as amended by title III of WIOA, and for Implementation of the WIOA Final Rules*.

they are the same or similar as benefits listed in PRWORA at 8 USC 1611(c).[3] While WIOA programs provide a range of services to jobseekers, the overall goal is to move participants into gainful employment. The same is true for programs under the Wagner-Peyser Act and title V of the Older Americans Act. Therefore, grantees are directed to provide participant-level services only to individuals with work authorization. This will focus ETA-administered federal resources on the main purpose of these programs.

4. **Verification of Work Authorization Status.**  For the grant programs covered by this guidance, grantees may only deliver participant-level services to individuals authorized to work in the United States. The legal considerations for limiting services to these individuals include the following:

- **WIOA -** Section 188(a)(5) of WIOA states, "Participation in programs and activities or receiving funds under [Title I of WIOA] shall be available to citizens and nationals[4] of the United States, lawfully admitted permanent resident aliens, refugees, asylees, and parolees, and other immigrants authorized by the Attorney General[5] to work in the United States."

- **PRWORA** - Title IV of the PRWORA restricts the eligibility of aliens (non-U.S. citizens and non-U.S. nationals) to receive what the law defines as "federal public benefits," 8 U.S.C. § 1611, limiting eligibility for such benefits to certain "qualified aliens," defined at 8 U.S.C. § 1641.
   - **Qualified Alien** - At 8 U.S.C. 1611(a), PRWORA states, "an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit." The law then defines "qualified aliens" to include, among others, lawful permanent residents and individuals who have been granted asylum or refugee status.[6]
   - **Federal Public Benefit** - PRWORA defines "federal public benefit" to include "any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual,

---

[3] The term "federal public benefit" includes "any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States."

[4] A U.S. national is defined as a citizen of the United States or a person who, though not a citizen of the United States, owes permanent allegiance to the United States. 8 U.S.C. 1101(a)(22). For more information on non-citizen nationals, see https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/us-citizenship/Certificates-Non-Citizen-Nationality.html.

[5] As explained in the preamble to the WIOA Final Rule, after the Homeland Security Act of 2002, Pub. L. 107–296, transferred this work authorization authority to the Department of Homeland Security, reference in Federal law to any transferred function shall refer to the official to whom that function is transferred. Therefore, instead of the Attorney General, 20 CFR 683.285(a)(5) clarifies that this provision is referring to the Secretary of Homeland Security or their designee.

[6] Note that the list above includes those "qualified aliens" that are most likely to interact with ETA grant programs. For the complete list of "qualified aliens" under PRWORA, see 8 U.S.C. 1641. For questions regarding whether an individual is a "qualified alien" under 8 U.S.C. 1641, contact ETA as noted in the Inquiries section.

household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States."

- *Note on Certain Nonimmigrants* - Aliens in certain employment-based nonimmigrant categories, such as H-2A, H-2B, and CW-1 workers, are ineligible to receive participant-level services in WIOA and related programs as they are not included in WIOA Section 188's category of "other immigrants authorized to work in the United States" or in PRWORA's definition of "qualified alien." *See* 29 U.S.C. § 3248; 8 U.S.C. § 1641.

All grantees must verify work authorization for individuals who otherwise meet participant eligibility requirements prior to delivering participant-level services.[7] (If an individual does not meet participant eligibility requirements, the grantee will not deliver services and does not need to verify work authorization for that individual.) Work authorization must be verified by submission of documentation with a unique identifier (also called a "verifiable enumerator"). Some examples of acceptable documents for Form I-9, Employment Eligibility Verification, purposes include an unrestricted Social Security card; a Form I-551, Permanent Resident Card, (informally called green card); Form I-765, Employment Authorization Document (EAD); a U.S. birth certificate; and a U.S. passport. Several other documents might be specifically held by refugees, asylees, parolees, and other immigrants with work authorization.[8] Grantees should give individuals the Lists of Acceptable Documents included on the Form I-9, so that individuals know which documents they can use to establish their work authorization.[9] Individuals can choose from the acceptable types of documents which documentation they will show to establish their work authorization. This does not require individuals or grantees to complete an I-9 form; these requirements refer to the documents described in the I-9 that can demonstrate work authorization.

If an individual certifies that they are a non-citizen or if an individual's documentation indicates they are a non-citizen, valid work authorization and immigration status can be verified through the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE). SAVE is an online service for registered federal, state, territorial, tribal, and local government agencies to verify U.S. citizenship and immigration status of applicants seeking benefits. In most instances, SAVE can also verify work authorization.[10]  ETA strongly recommends that grantees who are registered for SAVE (state, territorial, tribal, and local government agencies) use SAVE to verify immigration status in

---

[7] In the rare instance that an individual does not have work authorization but is in one of the categories of "qualified alien" in PRWORA, 8 U.S.C. § 1641, contact ETA for further guidance.

[8] For guidelines on which documents on Form I-9 are issued to which categories of individuals, see USCIS I-9 Central at https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents/who-is-issued-this-document. For specific guidance on evidence of employment authorization for refugees and asylees, see the USCIS Handbook for Employers at https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/70-evidence-of-employment-authorization-for-certain-categories/73-refugees-and-asylees.

[9] Page 2 of the Form I-9 includes the Lists of Acceptable Documents. The Form I-9 is available at: https://www.uscis.gov/sites/default/files/document/forms/i-9.pdf.

[10] In some situations, the initial automated SAVE response may not reflect an individual's employment authorization incident to status or may otherwise provide an unexpected response. In these situations, or when the benefit applicant requests it, the agency that initiated the automated request to SAVE may need to request manual SAVE verification and provide an electronic copy of the individual's immigration document.

relation to work authorization. State workforce agencies that are not registered for SAVE can apply with USCIS for SAVE access in order to use SAVE. As announced in April 2025, SAVE is now free to use for state, local, tribal, and territorial government agencies.[11]

As grantees conduct verification of work authorization, they must ensure they comply with the nondiscrimination provisions at Section 188 of WIOA and its implementing regulations at 29 C.F.R. part 38. To ensure equal treatment, <u>all participants</u> must provide, and grantees must keep copies in case files, proof of authorization to work in the United States. Grantees must update all policies and procedures to conform to these requirements. For individuals whose work authorization is temporary, grantees must verify their continued work authorization at a reasonable interval determined by when their temporary authorization is expected to expire, but no less than once every three months. If, at any time, a grantee becomes aware that a participant's employment authorization has expired or been revoked outside that 3-month check, then the grantee should exit the participant. Grantees who are registered to use SAVE can use the SAVE system for this continuous verification procedure. Grantees that cannot access SAVE should review documents listed as acceptable on the I-9 as described above.

The above requirements reference verifying work authorization prior to delivering participant-level services. In the WIOA title I Adult and Dislocated Worker programs, to become a participant, an individual must meet all applicable program requirements to receive services aside from self-service or information-only services or activities. A chart that details which services go beyond self-service or information-only service and therefore trigger participation is included as Attachment II in TEGL 19-16. For other WIOA programs, refer to program-specific guidance regarding what services trigger determination of "participant" status. For the W-P Employment Service program, which provides access to all job seekers, an individual must receive a service other than self-service and information-only services or activities to be considered a participant. Additionally, filing complaints via the W-P Employment Service and Employment-Related Law Complaint System is not a participant-level service, see 20 C.F.R. part 658, subpart E. For SCSEP, a participant is defined as an individual who is determined to be eligible, is given a community service assignment, and is receiving any service funded by the program as described in 20 C.F.R. part 641, subpart E.

WIOA Section 166 Indian and Native American Program (INAP) grantees are not subject to the requirements of this TEGL.

5. **Inquiries.**  Please direct inquiries to the appropriate Regional Office or your ETA Federal Project Officer.

6. **References.**
   - Workforce Innovation and Opportunity Act (WIOA), Pub. L. 113-128, 29 U.S.C. 3101 et seq.;
   - Wagner-Peyser Act (W-P Act), 29 U.S.C. 49 et seq.;
   - Older Americans Act, Title V, 42 U.S.C. 3056 et seq.;

---

[11] See USCIS, About SAVE, Transaction Charges, https://www.uscis.gov/save/about-save/transaction-charges

- Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), Title IV, Pub. L. 104-193, 8 U.S.C. 1601 et seq.;
- The Nondiscrimination and Equal Opportunity Provisions (Section 188) of WIOA available at: https://www.ecfr.gov/current/title-29/subtitle-A/part-38;
- Training and Employment Guidance Letter (TEGL) No. 02-14, *Eligibility of Deferred Action for Childhood Arrivals Participants for Workforce Investment Act and Wagner-Peyser Act Programs* available at: https://www.dol.gov/agencies/eta/advisories/training-and-employment-guidance-letter-no-02-14;
- TEGL No. 19-16, *Guidance on Services through the Adult and Dislocated Worker Programs under the Workforce Innovation and Opportunity Act (WIOA) and the Wagner-Peyser Employment Service (ES), as amended by title III of WIOA, and for Implementation of the WIOA Final* Rules available at: https://www.dol.gov/agencies/eta/advisories/training-and-employment-guidance-letter-no-19-16;
- TEGL 10-23 change 1, *Rescission of TEGL No. 10-23: Reducing Admin Barriers to Improve Customer Experience in Grant Programs Administered by ETA*; and
- Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*.

7. **Attachment.** Not Applicable.