# Exhibit 7

| EMPLOYMENT AND TRAINING ADMINISTRATION ADVISORY SYSTEM U.S. DEPARTMENT OF LABOR Washington, D.C. 20210 | **CLASSIFICATION** WIOA |
|---|---|
| | **CORRESPONDENCE SYMBOL** OWI |
| | **DATE** February 21, 2024 |

**ADVISORY:** TRAINING AND EMPLOYMENT GUIDANCE LETTER NO. 10-23

**TO:** STATE WORKFORCE AGENCIES
STATE WORKFORCE ADMINISTRATORS
STATE WORKFORCE LIAISONS
STATE AND LOCAL WORKFORCE BOARD CHAIRS AND DIRECTORS
AMERICAN JOB CENTER DIRECTORS
STATE LABOR COMMISSIONERS
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 166 INDIAN AND NATIVE AMERICAN GRANTEES
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 167 MIGRANT AND SEASONAL FARMWORKER JOBS PROGRAM GRANTEES
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 169 REENTRY EMPLOYMENT OPPORTUNITIES GRANTEES AND OTHER DEMONSTRATION PROGRAMS
WORKFORCE INNOVATION AND OPPORTUNITY ACT SECTION 171 YOUTHBUILD GRANTEES
SENIOR COMMUNITY SERVICE EMPLOYMENT PROGRAM GRANTEES

**FROM:** BRENT PARTON
Principal Deputy Assistant Secretary

**SUBJECT:** Reducing Administrative Barriers to Improve Customer Experience in Grant Programs Administered by the Employment and Training Administration

1. **Purpose.** The purpose of this guidance is to provide grant recipients direction in developing policies, procedures, and practices that reduce unnecessary administrative barriers to serving customers seeking employment and training services.

2. **Action Requested.** Entities receiving grants under the following programs must review eligibility policies, documentation requirements, data validation procedures, and other customer-facing processes to reduce administrative barriers and improve timely access to service delivery under the following programs: Workforce Innovation and Opportunity Act (WIOA) Title I Adult, Dislocated Worker, Youth, National Dislocated Worker Grants (DWG), Wagner-Peyser Act (W-P) Employment Service, Section 166 Indian and Native American Program (INAP), Reentry Employment Opportunities (REO) and other programs authorized under Section 169 of WIOA, YouthBuild, Section 167 National Farmworker Jobs Program (NFJP), and the Senior Community Service Employment Program (SCSEP).

| **RESCISSIONS** None | **EXPIRATION DATE** Continuing |
|---|---|

3. **Summary and Background.**

   a. Summary – This Training and Employment Guidance Letter (TEGL) directs the public workforce development system to streamline intake and eligibility processes to ensure individuals have full and equitable access to career services and training. The TEGL provides methods to consider when developing these policies, procedures, and practices to ensure career services and training are widely available to those meeting program eligibility requirements.

   b. Background – As stated in WIOA, a primary purpose of public workforce programs is "to increase, for individuals in the United States, particularly those individuals with barriers to employment, access to and opportunities for the employment, education, training, and support services they need to succeed in the labor market." The grants that the Employment and Training Administration (ETA) administers serve a wide range of job seekers with various needs, some with intersecting barriers that complicate eligibility determination and timely service delivery. When viewed from a customer experience perspective, navigating and accessing these services comes with varying requirements that can result in significant wait times before participants can enroll or begin services. Such delays may cause individuals in need to miss out on getting critical supports that can help to secure employment and establish or re-establish accompanying financial stability. Whether individuals are engaged in finding a first or new job, transitioning to a better job, recovering from job loss, or dealing with a natural disaster, these life adjustments often require time, supports, and training or education to gain new skills. Such life transitions can be difficult for people to manage along with additional challenges such as childcare, unreliable transportation, unstable housing, and language or cultural barriers, among others.

   In line with the December 2021 *Executive Order on Transforming Federal Customer Experience and Service Delivery to Rebuild Trust in Government,* federally funded human service programs, including workforce development programs, should design intake and eligibility processes to meet urgent participant needs as quickly and seamlessly as possible, emphasizing a customer experience that gets people what they need for relief rather than focusing on what may be a time-consuming process of securing documentation as a prerequisite for obtaining any program services. With customer experience in mind, government-wide efforts are underway to establish a model of the federal delivery system working together—within programs, across programs, across levels of government — that creates solutions based on listening to people's needs and is driven by "human-centered design" research.[1] To further that work, this guidance identifies several opportunities to improve customer experiences by clarifying administrative and documentation requirements for ETA administered grants.

4. **Mechanisms to Reduce Administrative Burden .** Each of the grant programs identified above (WIOA Title I Adult, Dislocated Worker, Youth, DWGs, W-P Employment Service, INAP, REO and other WIOA Section 169 programs, YouthBuild, NFJP, and SCSEP) have their own unique eligibility, documentation, and reporting requirements. It is both useful and

---

[1] Building trust through improved service delivery and experience | Performance.gov.

necessary to properly establish eligibility and capture key information and characteristics of individuals to understand their needs and the potential programs or benefits for which they may be eligible, as well as for program and performance management purposes. However, processes for gathering such information must be done as efficiently as possible to administer important services timely. In many instances, the documentation may be gathered at later dates or be substituted with equivalently acceptable documentation. At times, grantees can presume eligibility for a participant based on a single, known characteristic like homeless status in the WIOA Youth program. There also may be times when certain documentation is not necessary or the grantees can play a crucial role in helping people obtain the required documents. Grantees should distinguish in policies and procedures what information is needed initially for establishing eligibility and initiating service delivery and the information needed for future service delivery and grant administration. The information shared below clarifies administrative requirements to assist grantees in refining their intake and service delivery processes.

a. **Social Security Numbers**. For the programs covered by this guidance, none require individuals or their family members to disclose their Social Security Number (SSN) for eligibility determination. While grantees must request an individual's SSN for performance reporting purposes, grantees cannot deny services if an individual chooses not to share it. Furthermore, state and local policies cannot require individuals to disclose their SSN to receive services. While SSNs are needed for purposes of wage record matching to support performance accountability data collection efforts, eligibility and service provision do not and should not be conditioned upon an individual providing their SSN or their SSN card. As discussed in more detail in TEGL 14-18, *Aligning Performance Accountability Reporting, Definitions, and Policies Across Workforce Employment and Training Programs Administered by the U.S. Department of Labor (DOL)*, when requesting an SSN, grantees must explain, in writing, the authority to request it, the purpose, how the information will be used for understanding outcomes, and the right to decline disclosure. Grantees should also discuss privacy measures they use to protect personally identifiable information. Note that grantees may request a participant's SSN *during* their period of service, once an individual may feel a greater level of trust. Grantees may also explain to participants that employers will require disclosure of SSNs for tax purposes, so they can be prepared for that eventuality. However, it remains the participants' choice whether to share their SSN with the grantee. Grantees must always identify participants by an alternate unique identifier.

   Regardless of the availability of a participant's SSN, grantees must count those individuals served by workforce programs in performance metrics, unless explicitly and specifically exempted. Grantees should use supplemental data to collect outcome data wherever possible in cases where they lack an SSN for a participant and using an Unemployment Insurance wage match is not possible. More information on supplemental data for performance can be found in TEGL 26-16, *Guidance on the use of Supplemental Wage Information to implement the Performance Accountability Requirements under the Workforce Innovation and Opportunity Act.*

b. **Data Validation and Performance Reporting**. Documentation and data validation are important for promoting accountability of federally funded workforce development

3

programs. Several programs require grantees to prioritize services to certain individuals (such as veterans for all DOL-funded workforce programs and adults considered basic-skills deficient and/or low-income for the WIOA Adult Program), and grantees must strike a reasonable balance between collecting documentation and providing much-needed, timely services. During intake, grant recipients should limit collection of documentation only to those items required for eligibility rather than trying to collect all the documentation necessary for data validation purposes. Procedures should include opportunities to request documentation after intake and initial service provision. In many situations, self-attestation is sufficient for both eligibility determination and data validation purposes. While ETA does not promote overuse or exclusive use of self-attestation, it does encourage grantees to consider it as a viable alternative, particularly among certain populations whose life circumstances may preclude immediate access to certain documents (such as youth experiencing homelessness or adults experiencing homelessness, people who have moved for a new job, recently incarcerated individuals, youth leaving foster care, survivors of natural disasters, refugees, and others). Grantees should review TEGL 23-19, Change 2, *Guidance for Validating Required Performance Data Submitted by Grant Recipients of U.S. Department of Labor (DOL) Workforce Programs,* for details on data validation and documentation requirements, including where self-attestation may be used.

Nearly all grantees covered by this guidance are required partners in the American Job Center (AJC) network and should leverage such partnerships to reduce the quantity and duplicative collection of information from customers. For example, in the context of income eligibility, if individuals seeking services indicate that they receive benefits from Temporary Assistance for Needy Families (TANF), but they cannot quickly or easily provide documentation, grantee procedures should identify how the grantee can obtain necessary information for both eligibility and data validation from the TANF partner. Aligned case management systems are ideal to streamline collection of administrative data across programs. AJC partners can also establish data sharing agreements and other procedures to ease the customer burden. In this specific example, self-attestation suffices for establishment of income status for purposes of eligibility, and grantees can work with partners outside of the eligibility determination process to validate that status.

Negotiated performance accountability targets for the WIOA title I programs may sometimes influence the choices grantees make when enrolling participants. ETA urges grantees to keep the customer and their needs as the primary focus of activities. Understanding that labor markets change, ETA uses a statistical adjustment model (SAM) to adjust state performance targets for WIOA core programs each year to account for the characteristics of participants served (which include but are not limited to poor work history, lack of work experience, educational or occupational skills, dislocation from high-wage and high-benefit employment, low levels of literacy or English proficiency, disability, homelessness, welfare dependency, etc.), economic conditions (such as unemployment rates and job losses or gains in particular industries) and other factors in the state during the corresponding period (see TEGL 11-19, Change 1, *Negotiations and Sanctions Guidance for Workforce Innovation and Opportunity Act (WIOA) Core Programs*). Adjusting performance targets based on the characteristics of

4

the actual participants served is a primary requirement of the WIOA SAM (WIOA Section 116 (b)(3)(v)(II)(bb)). The WIOA SAM is an objective regression model, developed pursuant to Section 116(b)(3)(A)(3)(viii) of WIOA, used to estimate levels of performance and derive the adjusted levels of performance based on participant characteristics and economic conditions. The SAM also considers other factors that, through empirical support, are determined to affect state outcomes. An individual's work authorization can be fluid and is not explicitly collected and accounted for in the SAM, and individuals with and awaiting work authorization all have varying skills that prepare them for a range of work and earnings. Once eligibility is established, as grantees provide services to customers, they are encouraged to thoroughly collect and report all barriers to employment a participant may face so levels of performance can be adjusted using the SAM.

c. **Work Authorization**. For the grant programs covered by this guidance, grantees may deliver many services without proof of the participant's work authorization. This can be helpful in many situations, including where workers are awaiting work authorization, already have work authorization but do not have the documents to demonstrate it due to surviving a disaster, recently returning from incarceration, experiencing homelessness, leaving foster care, moving to a new location, or otherwise lack full access to many of their vital documents, or any number of circumstances. Grantees do not need to verify that one of these scenarios occurred; grantees can deliver certain services (described below) without checking work authorization to ensure the efficient delivery of services to workers in need.

Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) restricts the eligibility of non-U.S. citizens and non-U.S. nationals to receive what the law defines as "federal public benefits," 8 U.S.C. § 1611, limiting eligibility for such benefits to certain "qualified" individuals, 8 U.S.C. § 1641. Many, but not all, services authorized by the programs covered by this guidance can be provided to program-eligible individuals with or without work authorization verification because the services are not included in the definition of "federal public benefits," as explained further in the next paragraph.[2]

The services limited to qualified individuals include certain supportive services that represent a direct financial benefit (such as a voucher or reimbursement for transportation and childcare, relocation expenses, or needs-related payments), post-secondary education and training, and work-based learning such as on-the-job training and incumbent worker training. Therefore, WIOA and W-P funds may *not* be used to provide these services until a participant can show that they have been granted asylum, been granted refugee status, or are otherwise included in the PRWORA definition of "qualified" individual described above. Also, in addition to all "qualified" non-U.S. citizens and non-U.S. nationals being broadly eligible for WIOA and W-P services, WIOA Section 188 makes all WIOA and

---

[2] At 8 U.S.C. 1611(a), PRWORA states, "an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit." The law then defines "qualified aliens" to include, among others, lawful permanent residents and individuals who have been granted asylum or refugee status. This TEGL refers to "qualified aliens" as "qualified" individuals or "qualified" non-U.S. citizens or non-U.S. nationals.

5

W-P services available to all parolees and other immigrants authorized to work in the U.S., which includes individuals such as those who hold both Temporary Protected Status (TPS) and work authorization, and those who have received employment authorization while their application for asylee, parolee, or other status (such as TPS) are pending.[3]

Note that programs such as YouthBuild, REO Youth, and NFJP youth services generally assist young people in obtaining their high school equivalency while gaining career exposure through occupational skills-building, and thus those program services can be provided to individuals with or without verification of work authorization. As part of program eligibility determinations, INAP grantees validate whether a participant is Native American, Alaska Native, or Native Hawaiian, and Tribes determine tribal membership. Therefore, INAP grantees do not need to incorporate work authorization into their eligibility determinations or check for work authorization before any service at any time.

The guidance below identifies which services grantees may provide to eligible individuals with and without verifying work authorization. WIOA Title I Adult, Dislocated Worker, Youth, DWGs, W-P Employment Service, REO and other WIOA Section 169 programs that serve adults, NFJP programs that serve adults, and SCSEP can deliver some basic, individualized, and follow-up services without verifying work authorization, including:

- Labor exchange services such as labor market information, career exploration, career guidance, resume writing assistance, and job search assistance.
- Information on worker rights and where to find legal assistance.
- Referrals to community resources such as transportation, childcare support, food assistance, housing assistance, medical assistance, and other similar resources.
- Individualized services such as career assessments, development of an individual employment plan, group counseling, one-on-one case management, career planning, information on foreign credential evaluation services and on obtaining credit for prior learning.
- Basic skills education, including English language instruction, and high school equivalency.
- Assistance in completing paperwork to finalize work authorization.
- Assistance in applying for an occupational license including the cost of such applications.

---

[3] Section 188(a)(5) of WIOA states, "Participation in programs and activities or receiving funds under [Title I of WIOA] shall be available to citizens and nationals of the United States, lawfully admitted permanent resident aliens, refugees, asylees, and parolees, and other immigrants authorized by the Attorney General to work in the United States." This means that if individuals can show they are legal permanent residents, refugees, asylees, or parolees, all WIOA services shall be available to them without needing to separately check their work authorization documentation. Other immigrants outside of those categories must be able to show they have work authorization in order to receive WIOA services limited to "qualified" individuals. Please note that non-immigrant visa holders, such as H-2A agricultural workers or CNMI-only Transitional Worker visa holders in the Commonwealth of Northern Mariana Islands, are not included in Section 188's category of "other immigrants authorized to work in the United States." For questions on non-immigrant visas and which services can be provided to individuals who have them, grantees should contact their Federal Project Officers for additional guidance.

- Outreach to workers regarding the Employment-Related Law Complaint System and processing of such complaints.

For WIOA Title I Adult, Dislocated Worker, Youth, DWGs, W-P Employment Service, REO and other WIOA Section 169 programs the serve adults, NFJP programs that serve adults, and SCSEP, services such as those listed below require verification of work authorization documentation:[4]

- Job placement.
- Occupational post-secondary training.
- Work experience, including community service employment assignments in SCSEP.
- Supportive services that represent a direct financial benefit such as a voucher or reimbursement, relocation expenses, or needs-related payments.

Grantees can postpone verifying work authorization documentation until the participant is moving into services that require such authorization. Reviewing documentation at the time it is needed instead of extensive, time-consuming document reviews when a customer first seeks services can benefit many jobseekers who do not have easy access to documents, such as youth in foster care, homeless youth or adults, individuals returning to the community from incarceration, and those recovering from a disaster.

When serving participants whose work authorization has not been verified, ETA encourages grantees to develop service plans that consider the menu and order of services that best prepare the individual to successfully reside in the community and to eventually secure employment with a livable wage. For example, programs funded through the Adult Education and Family Literacy Act (AEFLA), authorized by WIOA title II, provide basic skills instruction below the high school level; high school level instruction; integrated English literacy and civics education; and English language acquisition instruction. Additionally, some programs serving youth may deliver workforce services alongside education services, many of which have different eligibility requirements. Partnerships with community-based organizations, particularly those focused on assisting immigrants and non-native English speakers, can enable public workforce system grantees to better understand the cultural background and immediate service needs of immigrants, refugees, asylees, parolees, and other non-citizens and help identify how the public workforce development system can best serve individuals who do not yet have

---

[4] ETA does not expect staff in AJCs to have extensive expertise in validating immigration status or work authorization. Work authorization can be evidenced by several types of documents. These include: Form I-9 acceptable documents, including documents presented by green card holders; and Employment Authorization Documents (EADs) held by individuals including refugees, asylees, parolees, and other immigrants with work authorization, including individuals with deferred action, Deferred Action for Childhood Arrivals (DACA) protection, and individuals who have work authorization while their applications for asylee, parolee, or other status (such as TPS or other) are pending. Some grantees use the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify individuals' work authorization; however grantees are not required to do so. Grantees can consider an individual's verification in the SAVE system or presentation any of the documents described above as documentation of work authorization for the purpose of enrolling someone in an ETA-funded program.

work authorization. For instance, employment norms and employer-worker expectations in the U.S. compared to the norms in other countries can differ. Regardless of work authorization, grantees can help any participant understand common workplace expectations as well as worker rights and protections. Another useful service includes financial literacy education which assists new entrants in the U.S. workforce in managing their income, understanding taxes and deductions, banking and savings, as well as including cautions about predatory lending and credit cards.

Some individuals may not wish to disclose whether or not they are authorized to work. Others may have a changing or under review status or may not know what their status is. In such situations, grantees should clearly explain what services they can and cannot provide to individuals who may not yet have work authorization documentation, as well as clearly explain that employers will need work authorization documentation.

Grantees must verify that an individual has been granted work authorization prior to delivering those services identified above as requiring verification of work authorization documentation. While a copy of such documentation is not required for a participant file, we encourage grantee case managers working with participants to see the participant's documents and note in the case file that the participant has an employment authorization document. Confirmation of work authorization documentation, for the services described above that require it, is necessary to ensure that services provided do not violate PRWORA as well as to better serve employer customers who will need to verify authorization to work.

As grantees conduct verification of work authorization, they must ensure they comply with the requirements of the non-discrimination regulations implementing Section 188 of WIOA at 29 C.F.R. part 38. Specifically, a grantee "must not directly or through contractual, licensing, or other arrangements, discriminate on the basis of citizenship status." 29 C.F.R. 38.11. Among other prohibited actions, discrimination includes "[treating] an individual differently from others in determining whether the individual satisfies any admission, enrollment, eligibility, membership, or other requirement or condition for any aid, benefit, service, or training provided under a WIOA Title I-financially assisted program or activity." 29 C.F.R. 38.6(b)(5).

d. **Selective Service Registration**. Grantees must continue to follow requirements related to Selective Service registration and documentation of such as a prerequisite for eligibility for all programs covered by this guidance. For details on these requirements, see TEGL 11-11, Change 2, *Selective Service Registration Requirements for Employment and Training Administration Funded Programs*.

e. **Role of Public Workforce Development System in Helping Customers Obtain Documents**. While certain documents, such as a driver's license or a social security card, may not be necessary for individuals to begin receiving services, these documents or other forms of identification are often necessary for individuals who intend to work. AJC network staff can improve the customer experience by reducing administrative burden for individuals, particularly those who have historically been underserved, by helping them

     obtain necessary documents for employment, such as a driver's license or identification card, a social security card, and/or a birth certificate. AJC network staff are encouraged to refer individuals to partner organizations for legal assistance, as well as to partner organizations that provide support to populations with barriers to employment such as immigrants and refugees, homeless individuals, youth, and justice-involved individuals. In addition, many of the grant programs discussed in this guidance permit paying of fees to obtain such documents as an allowable supportive service, except for individuals not yet authorized to work.

    f. **Human-Centered Design Approach to Enhance Customer Experience.** In addition to the above methods and mechanisms, ETA encourages grantees to use human-centered design methods to conduct customer research that can strengthen their understanding of the customer experience and journey. When implementing new or updated intake and service procedures, conduct user testing of the changed approach to assess its effectiveness. Grantees should collect feedback from customers to inform what is working well and potential areas of improvement. The "Human Centered Design Discovery Field Guide V.1" provides step-by-step guidance on how to conduct customer research using the human-centered design framework and then synthesize the research findings, towards the goal of helping organizations identify opportunities to improve service.

5. **Inquiries.** Please direct inquiries to the appropriate Regional Office or your ETA Federal Project Officer.

6. **References.**
   - Workforce Innovation and Opportunity Act (WIOA), Pub. L. 113-128, 29 U.S.C. 3101 et seq
   - Wagner-Peyser Act (W-P Act), 29 U.S.C. 49 et seq.
   - Older Americans Act, Title V, 42 U.S.C. 3056 et seq.
   - Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), Title IV, Pub. L. 104-193, 8 U.S.C. 1601 et seq.
   - The Nondiscrimination and Equal Opportunity Provisions (Section 188) of WIOA available at: https://www.ecfr.gov/current/title-29/subtitle-A/part-38
   - Training and Employment Guidance Letter 14-18, *Aligning Performance Accountability Reporting, Definitions, and Policies Across Workforce Employment and Training Programs Administered by the U.S. Department of Labor (DOL)* available at: https://www.dol.gov/agencies/eta/advisories/training-and-employment-guidance-letter-no-14-18
   - Training and Employment Guidance Letter No. 23-19, Change 2, *Revisions to Training and Employment Guidance Letter (TEGL) 23-19, Change 1, Guidance for Validating Required Performance Data Submitted by Grant Recipients of U.S. Department of Labor (DOL) Workforce Programs* available at: https://www.dol.gov/agencies/eta/advisories/tegl-23-19-change-2
   - Training and Employment Guidance Letter 11-19, Change 1, *Negotiations and Sanctions Guidance for Workforce Innovation and Opportunity Act (WIOA) Core*

9

- *Programs* available at: https://www.dol.gov/agencies/eta/advisories/tegl-11-19-change-1
- Training and Employment Guidance Letter No. 11-11, Change 2, *Selective Service Registration Requirements for Employment and Training Administration Funded Programs* available at: https://www.dol.gov/agencies/eta/advisories/training-and-employment-guidance-letter-no-11-11-change-2
- Training and Employment Guidance Letter No. 26-16, *Guidance on the Use of Supplemental Wage information to implement the Performance Accountability Requirements under the Workforce Innovation and Opportunity Act* available at: https://www.dol.gov/agencies/eta/advisories/training-and-employment-guidance-letter-no-26-16
- Training and Employment Guidance Letter No. 02-14, *Eligibility of Deferred Action for Childhood Arrivals Participants for Workforce Investment Act and Wagner-Peyser Act Programs* available at: https://www.dol.gov/agencies/eta/advisories/training-and-employment-guidance-letter-no-02-14
- Customer Experience references:
  - Executive Order on Transforming Federal Customer Experience and Service Delivery to Rebuild Trust in Government
  - GSA's Human Centered Design Discovery Field Guide V.1
  - WorkforceGPS resource on Customer Centered Design https://ccd.workforcegps.org/home

7. **Attachment.** Not Applicable.

10