# Exhibit 14

I, Joan Miller, declare as follows:

1. I am a resident of the State of California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to the matters set forth below.

2. I am the Deputy Director of the City and County of San Francisco ("City") Human Services Agency (HSA) Family and Children's Services Department.  Before joining HSA, I was Director of Family and Children's Services for the County of Santa Cruz.  Prior to that, I worked for Contra Costa County for 17 years as a protective service worker, a unit supervisor, a program manager, and the Child and Family Services Director.

3. I understand that the Department of Health and Human Services' new interpretation of "federal public benefit" within the meaning of the Personal Responsibility and Work Opportunity Reconcilliation Act of 1996 (PRWORA) inclues Title IV-E Prevention Services Funds.

4. HSA receives these funds from HHS (via the California Department of Social Services) and uses them to plan for prevention services and in the future intend to use the funds to provide referrals and services to children and families that are candidates for foster care, but whereout of home placement can potentially be avoided with appropriate preventive services.  Among the evidence-based services that will likely be supported with these funds are parent training programs and counseling.

5. We do not ask service recipients about their immigration status before offering these services.  If we were required to do so, I believe that people would be reluctant to reach out to access needed services or to report others who might benefit from such services.  In some of these families who never come to our attention—and in some families that would be ineligible for services due to their immigration status—the situation will escalate to the point where children could be subjected to abuse or neglect and require intervention by the child welfare agency.  In addition to the obvious and impact this will have on children, it will also put an additional burden on the City and on HSA if we are required to involve law enforcement, remove the child from the parents care, and take on legal and financial responsibility for the child.

6. To the extent that the new order issued by the Department of Justice withdrawing the Attorney General's January 5, 2001 order issued pursuant to PRWORA also prohibits us from providing additional "services and assistance relating to child protection . . . [and] violence and abuse protection" without first verifying a child or parent's immigration status, these negative consequences—including harm to children and increased burden on the City—will be significantly intensified.

7. I understand that the Department of Health and Human Services' new interpretation of "federal public benefit" also includes Title IV-E Kinship Guardianship Assistance Program funds.

8. HSA receives these funds from HHS (via the California Department of Social Services) and uses them to provide support to the relative guardians of children in long-term placement with relatives. This program is intended to enhance family preservation and stability by providing relatives with an alternative route to permanency when reunification and adoption are not appropriate permanency options. If these benefits become subject to immigration verifications, more children will enter into, and languish, in foster care. This will be bad for children and bad for SF, which will have responsibility to care for the child.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 18, 2025 at San Francisco, California.

_____
Joan Miller