# Exhibit 17

## <u>DECLARATION OF WILMER BROWN. JR.</u>

I, Wilmer Brown, Jr. declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.  I am the Chief of the Community Services Branch at the California Department of Community Services and Development (CSD). I have personal knowledge of the facts set forth in this declaration, and if required to testify, would and could competently do so.

2.  I submit this Declaration in support of the States' Motion for a Preliminary Injunction.

### Professional Background

3.  As Branch Chief, I oversee the administration of the Community Services Block Grant (CSBG) for California.

4.  I have worked for CSD since 2014. Prior to working for CSD, I was the Agency Deputy Director for the Mutual Assistance Network, a community economic corporation. I have a Bachelor's Degree in Business Administration from the University of San Diego and a Masters of Divinity Degree from Bethel Theological Seminary.

5.  I am familiar with the information in the statements set forth below either through personal knowledge, consultation with CSD staff, or from my review of relevant documents and information.

### CSD Administers California's CSBG Block Grant

6.  The mission of the Department of Community Services and Development is to improve the economic security of vulnerable Californians through programs and partnerships that support the state's diverse communities. As a department under the umbrella of the California Health and Human Services Agency, CSD works with community-based partners dedicated to

1

helping vulnerable Californians achieve and maintain economic security, pay their energy bills, and meet their home energy needs through energy efficient weatherization and renewable energy.

7.    Since 1981, CSD has administered California's Community Services Block Grant (CSBG). The CSBG is a "federally funded block grant in the Office of Community Services, Administration for Children and Families, United States Department of Health and Human Services (HHS) that provides funds to states, territories, and tribes to administer to support services that alleviate the causes and conditions of poverty in under resourced communities." U.S. Office of Community Services, *Community Services Block Grant: About CSBG,* https://acf.gov/ocs/programs/csbg (last visited July 18, 2025).

8.    The CSBG funding California receives is formula funding. HHS is required by statute to "allot to each State [. . .] an amount that bears the same ratio to such remaining amount as the amount received by the State for fiscal year 1981 under section 2808 of this title bore to the total amount received by all States for fiscal year 1981 under such section, except—'(1) that no State shall receive less than 1/4 of 1 percent of the amount appropriated under section 9903(a) of this title for such fiscal year.'" 42 U.S.C. §§ 9906(a)-(b).

9.    For fiscal year 2025, California's CSBG allocation was approximately $68 million.

10.    CSD currently subgrants to 60 "Eligible Entities," which are nonprofit organizations (Community Action Agencies, Limited Purpose Agencies, Migrant and Seasonal Farmworker Agencies, and Native American Indian Tribal Agencies) or local governments that provide direct services to individuals and communities.

11.    CSBG subgrantees often leverage small CSBG awards to secure a wide array of other public and private resources for their communities.  Because the causes and conditions of poverty within the community often cannot be addressed by a single program or funding resource

2

alone, the flexibility of CSBG permits funds to be used to support gap-filling activities that address unmet needs, innovative initiatives to combat poverty and promote self-sufficiency, and rapid responses to local emergencies and urgent needs. Often, CSBG funding is used to support access to assistance resources (food, utility payments, rental assistance, etc.) funded by other public and private sources or to cover indirect and administrative costs for an organization.

12.     In addition to covering administrative costs, CSBG subgrantees use CSBG dollars in a wide variety of ways. Many subgrantees will use a combination of CSBG and non-CSBG funds to cover the salaries of staff at day care facilities, community centers, youth centers, domestic violence shelters, day centers for adults with memory loss, and other community spaces. CSBG dollars are also used to fund case workers and outreach efforts, both of which work to direct individuals to other benefits and services that they may be eligible for. CSBG dollars are often used to purchase equipment, such as mobile showers used by unhoused individuals, or backpacks filled with school supplies and non-perishable snacks for low-income school children. In many cases, CSBG funds used by subgrantees cannot be tied to a particular benefit provided to individual community members.

13.     While individual community members may receive benefits or services funded in-part, in-whole, or indirectly using CSBG funding, there is no specific "CSBG" benefit or service. Unlike public benefits such as Supplemental Security Income or CalFresh (California's Supplemental Nutrition Assistance Program), CSBG is not something that an individual can apply for. In my experience, the public is not typically familiar with CSBG or aware of how these funds are used by the subgrantees that the public interacts with.

/ / /

/ / /

3

**Application of PRWORA and the HHS PRWORA Notice to CSBG**

14.    On September 30, 1998, HHS issued Information Memorandum (IM) Transmittal No. 30, *Guidance on the Interpretation of "Federal Public Benefit" Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), P.L. 104-193*. This IM stated that block grants to states or localities do not provide federal public benefits, as defined under PRWORA. Thus, states agencies and subgrantees are not required to apply PRWORA eligibility or verification requirements for CSBG. The IM also states that individuals should not be banned from block grant funded programs based solely on their immigration status. As a result, state agencies and subgrantees have not applied PRWORA eligibility and verification requirements to CSBG-funded benefits or services in the last twenty-seven years.

15.    I understand that the HHS PRWORA Notice, "Personal Responsibility and Work Opportunity Reconciliation Act pf 1996 (PRWORA); Interpretation of 'Federal Public Benefit'" 90 Fed. Reg. 31,232, took effect on Monday, July 14, 2025, and changes this longstanding interpretation of the PRWORA. HHS is now requiring that CSD and its subgrantees identify and exclude undocumented people from CSBG.

16.    As of my signing of this declaration, CSD has not received any specific information or guidance from HHS on how to apply the interpretation in this notice to CSBG. Without additional guidance from HHS, CSD has insufficient information to implement any related changes, nor is CSD aware of what changes will be required. Given the discretionary nature of CSBG funding, it is unclear how, if at all, PRWORA could apply to individuals served by subgrantees that receive CSBG funding, especially in cases where the subgrantees use the funding for administrative or ancillary costs and not direct benefits.

17.     CSBG funding may be used for benefits that would be exempt from PRWORA under the requirements of Title 8 of the U.S. Code §1611(b)(1)(b), which exempts "[s]hort-term, non-cash, in-kind emergency disaster relief" or (b)(1)(c), which exempts public health assistance related to immunizations and diagnosis and treatment of communicable illnesses. In the past, CSBG funds have been used to address the impacts of wildfires and other disasters in California. CSBG funds are also used by several subgrantees to provide medical screenings and immunizations. Practically speaking, CSD is limited in its ability to implement the PRWORA policy without proper guidance. And even if CSD receives this proper guidance it cannot realistically implement this policy instantaneously.

18.     When I previously witnessed significant policy changes from HHS, such as the Information Memorandum (IM) Transmittal No. 138, *State Establishment of Organizational Standards for CSBG Eligible Entities under 678B of the CSBG Act, 42 U.S.C. § 9914*, or the Information Memorandum (IM) Transmittal No. 144, *State and Federal Accountability Measures and Data Collection Modernization*, they were accompanied by detailed implementation guidelines that was specific to CSBG. Said guidance would outline any requirements regarding record maintenance and retention, reporting, informing practices, and monitoring requirements. Webinar trainings or similar resources are also often provided by HHS staff to ensure CSBG grantees and subgrantees fully understand new policies and requirements.

**Predicted Harms to CSBG**

19.     The requested immediate implementation of PRWORA requirements is not only a colossal administrative burden on CSD, it will also have a massive chilling effect on intended beneficiaries of the CSBG funds.

/ / /

5

<u>Administrative Burdens and Time Needed for Implementation of PRWORA Requirements</u>

20.     To implement a substantive policy change of this nature, CSD must develop detailed internal and external policies, draft and submit state regulations for comment, update monitoring requirements, and amend existing contracts with CSBG subgrantees. Dependent on future guidance from HHS, CSD may also be required to amend California's CSBG Annual State Plan. CSBG State Plan amendments are exceptionally rare, none have occurred during my time at CSD. CSBG State Plan amendments are time consuming and statutorily require an opportunity for public inspection and comment. These tasks may take up to two years or more to complete.

21.     Once CSD has completed the necessary state-level implementation actions listed above, subgrantees will need to amend their current internal policies, potentially amend intake forms, change processes around record and case file management, and amend any impacted subcontractor agreements. The subgrantees may also need to update outreach materials that specify current eligibility requirements for existing benefits and services. This subgrantee level implementation typically takes months if not an additional year to fully complete to ensure statewide consistency and compliance.

22.     To effectively and accurately implement a policy of this nature, CSD staff will require training on the new policy and its impacts for the State. Additionally, CSD staff will need to develop and provide training opportunities for subgrantee staff. These trainings require significant staff time to develop and schedule, often taking months of preparation.

23.     The focus of CSD staff and subgrantee staff on the initial implementation and continued compliance with PRWORA will distract from the existing CSBG-funded efforts to alleviate the causes and conditions of poverty. Similarly, the limited administrative funds available to the State to administer CSBG will need to be focused on this implementation instead of other

program requirements, improvements, and efficiencies. The implementation of the new PRWORA policy will create concerns that CSD will be able to use its limited administrative funds to timely meet CSD's deadlines. The flexibility of CSBG funding allows subgrantees to use their awards differently year-to-year or even repurpose funds during an award term. This means that a privately or locally funded benefit that would otherwise be exempt from PRWORA may be subject to it one year and not the next, or even have eligibility change month-to-month, depending on the need to supplement any services or staff salaries with CSBG funds.

24.     CSBG funds are often utilized to address emergent needs, including disaster relief. Due to the significant flexibility and limited requirements, subgrantees are often the first responders during a crisis as they are almost immediately able to redirect their funding to meet the current need. However, if subgrantees are required to apply strict immigration eligibility requirements to any benefit or service supported by CSBG funding, that will greatly inhibit the subgrantees' ability to quickly address emergent needs, including wildfire response.

<u>Chilling Effect and Human Impacts</u>

25.     Many of the community members served by CSBG subgrantees are children, seniors, individuals with disabilities, families escaping domestic violence, and/or unhoused persons. These individuals often do not have the documentation available or have a limited ability to explain or verify their immigration status. The application of PRWORA to CSBG may mean that unhoused individuals wishing to shower in a mobile shower, purchased in-part with CSBG dollars, will first have to attest to and potentially verify their citizenship or immigration status first. Teenagers who wish to spend time after school at a youth center where staff members' salaries are partially funded with CSBG dollars will have to provide a copy of their passport, birth certificate, or immigration documentation.  Women and children seeking shelter in one of the many domestic

violence shelters that receive supplemental CSBG funding may not be permitted to stay if their abuser kept possession of their citizenship or immigration documents.

26.     Several federally recognized tribes in California receive CSBG funding, which they use to support benefits and services for members experiencing poverty. It is unclear what impacts PRWORA's application would have on these tribes, nor is it clear what PRWORA would require tribal members to demonstrate to receive services.

27.     Many CSBG subgrantees provide key interventions and supports to children and young adults. These services are particularly effective at alleviating the causes of poverty as they help to provide a stronger start in life. Many children in California are U.S. citizens by birth, but have parents, older siblings, or other household members who are not yet citizens. Given current concerns over enforcement of immigration policies by the Department of Homeland Security, U.S. Citizen children from mixed-status households may try to avoid engaging with CSBG subgrantees if questions are asked about citizenship or immigration status, despite the children's eligibility for services. Not only will this harm children in the immediate, but it may have long-term impacts on their ability to be healthy and self-sufficient later in life.

28.     CSBG is meant to address community needs, not just individual needs, and to remove barriers to key services. California's communities include immigrants. By requiring community members to provide attestations and documentation of their status prior to accessing CSBG-funded spaces and services, this policy will undercut the very purpose of CSBG and create additional barriers for immigrants and non-immigrants alike. It will deter participation and engagement from immigrants, including lawfully present and qualified immigrants, and the family members of immigrants.

/ / /

8

## Conclusion

29.    The HHS PRWORA Notice fails to fully assess the impacts and harms of this change to a nearly thirty-year policy. It does not consider CSBG's design, purpose, or current uses. It does not consider the significant work or provide the guidance it will take to implement the change at the state and subgrantee level, creating an impossible situation for CSBG grantees and community subgrantees where no steps can reasonably be taken to avoid claims of non-compliance. And finally, it does not consider the harm it will cause to local communities that rely on the spaces, services, and benefits provided by CSBG subgrantees and diminishes the very core purpose and promise of community action expressed through CSBG:

30.    Local service providers that receive CSBG change people's lives, embody the spirit of hope, improve communities, and make America a better place to live. CSD and local CSBG providers care about the entire community and are dedicated to helping people help themselves and each other.

Executed on July 18, 2025, at Sacramento, California

_____
Wilmer Brown, Jr.

9