# Exhibit 43

## DECLARATION OF JANEL WINTER

I, Janel Winter, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an Assistant Commissioner and the Director of the Division of Housing & Community Resources at the New Jersey Department of Community Affairs ("NJDCA"). In those capacities, I have oversight of NJDCA's implementation of the Community Services Block Grant ("CSBG").

2. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with NJDCA staff, or from my review of relevant documents and information.

3. NJDCA is a state agency created to provide administrative guidance, financial support, and technical assistance to local governments and community organizations and businesses to improve the quality of life in New Jersey, including affordable housing production, fire safety, building safety, community planning and development, disaster recovery and mitigation and information privacy. Under NJDCA's Division of Housing & Community Resources, NJDCA distributes federal funds to community agencies that help income-eligible households with health, education, employment and housing needs.

4. I submit this Declaration in support of the States' Motion for a Preliminary Injunction to block a Notice issued by the United States Department of Health and Human Services ("HHS") on July 10, 2025, entitled "Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of 'Federal Public Benefit'" (the "Notice").

5. The Notice purported to revise the long-standing interpretation of the term "Federal Public Benefit" in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996

1

("PRWORA"). Since 1998, HHS permitted States to offer certain federally funded social safety net services regardless of immigration status.

6. Through the Notice, which identified a non-exhaustive list of 13 additional HHS programs that were deemed to provide "Federal public benefit[s]" for purposes of PRWORA and states that it "is effective immediately," HHS is now purportedly prohibiting PRWORA non-qualified individuals from participating in or receiving benefits from the 13 HHS programs listed in the Notice, which would require NJDCA, and providers of those programs, to verify the immigration status of any person applying for the program or benefit and to exclude those who are unable to provide documentation confirming their immigration status as a citizen or qualified alien.

7. NJDCA administers the CSBG listed in the Notice in New Jersey. CSBG is a federal grant program administered by the Office of Community Services, Administration of Children & Families in HHS, which provides federal funds to states, territories and tribes "to support services and activities for individuals and families with low incomes that alleviate the causes and conditions of poverty in communities."[1] Congressional funding is in the form of block grants to states using a statutory formula, who in turn: (1) must award 90% of their CSBG grant award to various local eligible entities; and (2) may award 5% of their CSBG grant award in the form of discretionary grants. In the past three years, Congress has appropriated more than $750 million annually to the CSBG program.[2]

8. NJDCA was awarded $21 million in CSBG funding for the fiscal years 2023, 2024, and 2025. The NJ State Plan (application) for fiscal years 2025 and 2026 has been submitted and approved by HHS.

---

[1] US Office of Community Services, Office of the Administration for Children & Families, *CSBG Fact Sheet*, https://acf.gov/ocs/fact-sheet/csbg-fact-sheet.
[2] US Office of Community Services, Office of the Administration for Children & Families, *CSBG Fact Sheet*, https://acf.gov/ocs/fact-sheet/csbg-fact-sheet.

2

9. As the grantee of CSBG funding from HHS, NJDCA administers the CSBG program, including the award of non-discretionary subgrants to 25 eligible entities throughout New Jersey, 23 of which are designated as Community Action Agencies ("CAAs"), and the award of discretionary subgrants. These eligible entities include local and county governments and non-profit organizations that serve low-income individuals and families, which receive funding and provide services based on an annual community assessment and plan submitted to NJDCA that details the services each will provide. The critical services provided by these eligible entities include, among other things, shelter, food, clothing, medical assistance, homelessness intervention, and domestic violence crisis intervention.

10. I understand that on July 10, 2025, HHS issued a regulatory notice ("Notice") purporting to revise the long-standing interpretation of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"). Since 1998, HHS permitted States to offer certain federally funded social safety net services, regardless of immigration status. As a result of the Notice, HHS is now requiring that NJDCA identify and exclude PRWORA non-qualified individuals from all services under the CSBG program.

11. None of the CAAs in New Jersey verify immigration status as a condition of providing services under the CSBG program. They solely provide services based on income and regardless of immigration status. NJDCA and the CAAs have relied on the longstanding HHS position that States can provide CSBG funds regardless of immigration status.

12. Therefore, while some of those who receive services under New Jersey's CSBG program may be PRWORA non-qualified individuals, many also simply lack documentation or access to documentation. Unhoused people can lack any government identification at all. In short,

while this action may be targeting PRWORA non-qualified individuals, a far broader array of vulnerable New Jerseyans are likely to suffer as a result.

13. I understand that the Notice took effect on Monday, July 14, 2025. NJDCA is unaware of any way in which it could implement the verification required by the Notice without requiring the CAAs to ask for, verify and record immigration documentation. As a practical matter, any individual seeking access to necessary services, such as access to a soup kitchen or food bank, would purportedly have to produce proper identification. In emergency situations, such as in the case of domestic violence intervention or homelessness, it would likely be difficult, if not impossible, to administer such verification requirements. The result is that fewer people will get critical anti-poverty resources, either due to immigrant communities avoiding such services out of fear even if they are qualified, but also because people living in poverty or experiencing emergency situations such as domestic violence generally lack government identification or access to such documentation at the time services are provided.

14. Moreover, NJDCA is also currently unaware of any way to immediately implement and record immigration status verification as required by the Notice, particularly absent any guidance from HHS as to the specific requirements for the CSBG program. Immigration status is often complex and nuanced, and NJDCA must assess what individuals may receive services under CSBG and PRWORA under the new interpretation, determine the feasibility of and plan for verification processes, develop systems, processes and infrastructure for assessing and verifying relevant immigration statuses, determine costs for such verification process and find funding for those costs, develop training and guidance in multiple languages for NJDCA and CAA staff and the New Jersey residents that access CSBG programs and services, and then roll out these processes, training and guidance.

15.   If NJDCA does not implement some kind of verification requirement, or does not receive some judicial relief, NJDCA and its subgrantees face the impossible decision of discontinuing services or facing loss of federal funds due to potential noncompliance, not to mention any other enforcement the agency wishes to impose on NJDCA. The Notice is also not clear as to whether grantees could face clawbacks for funding utilized since July 14.

16.   In addition to all issues described above, NJDCA is concerned about the impact on U.S. citizens and qualified aliens who are unable to produce documentation of their status, especially for citizens requesting services at a time of emergent need. For instance, a homeless citizen who visits a food bank may not have documentation verifying their citizen status in their possession, and no immediate way to obtain such documentation. The notice provided by HHS does not include information as to whether, or in what circumstances, self-attestation would be considered sufficient evidence of citizen status. Without such information, NJDCA is in the position of deciding whether to deny service to a hungry person who is eligible for this service but does not have the needed documentation in their possession, or providing services and risking being found in non-compliance and losing access to funding for these services. Imposition of this requirement without guidance creates a strong likelihood that, rather than the stated purpose of increasing the number of citizens and qualified aliens who may access these services, the requirement will deny eligible persons who are in emergent situations such as homelessness access to needed services.

Executed this 18th day of July, 2025, in Trenton, New Jersey.

_____
Janel Winter

5

Assistant Commissioner
Director, Division of Housing and Community Resources
New Jersey Department of Community Affairs