# Exhibit 52

## DECLARATION OF CEYLANE MEYERS-RUFF

I, Ceylane Meyers-Ruff declare I am Deputy Commissioner for Special Education and ACCES-VR at the New York State Education Department (NYSED). I have knowledge of the information in the statements set forth below through personal knowledge or from documents provided and reviewed by me.

1. I began my employment with the Department in 2017 and have served in my current position for over four years. Prior to that time, I served as the Assistant Commissioner of ACCES-VR and its Director of Central Office Administration. Before my service with NYSED, I served as Director of Employment, for the Office for People with Developmental Disabilities and as a Senior Legislative Budget Analyst for the New York State Assembly Ways and Means Committee.

2. NYSED's mission is to raise the knowledge, skill, and opportunity of all the people in New York. Our vision is to provide leadership for a system that yields the best educated people in the world.

3. I submit this Declaration in support of the States' Motion for a Preliminary Injunction.

4. On July 11, 2025, Defendant U.S. Department of Education (USED) issued a Notice entitled "Clarification of Federal Public Benefits under the Personal Responsibility and Work Opportunity Reconciliation Act" (the "USED PRWORA Notice"). 90 Fed. Reg. 30,896 (July 11, 2025). The USED PRWORA Notice revised without warning a longstanding interpretation of PRWORA that allowed NYSED to open certain programs to all regardless of immigration status. The prior interpretation had been in place since 1997.

5.  The USED PRWORA Notice newly interprets PRWORA to apply to benefits provided to individuals under programs authorized under Title II of the Workforce Innovation and Opportunity Act of 2014 (WIOA Title II) and Perkins V. 90 Fed. Reg. at 30,899.

6.  I understand the USED PRWORA Notice to have become immediately effective on July 11, 2025.

7.  NYSED administers New York's WIOA Title II funds.

8.  NYSED has several main branches, including an Office of P-12 Education, an Office of Higher Education, and an Office of Adult Career and Continuing Education Services (ACCES).

9.  ACCES operates New York's Adult Education Program and Policy (AEPP), which subgrants WIOA Title II funding to over 200 adult education services providers in New York State.

10. WIOA Title II funding is provided to states through annual formula grants based on the allotment described in section 211(c) of WIOA. For the program year 2024-25, New York State received $52,353,796 to carry out adult education and literacy activities.

11. AEPP delivers quality, research-based professional development and training, and effective communication links to state and federally funded agencies providing adult literacy services below the post-secondary level. AEPP along with its vendors, provides staff development resources to improve the skills of adult education practitioners and the quality of the adult education and family literacy programs funded by AEPP. Additional support includes technical assistance in coordination with vendors and supervision by the Office of Accountability to assist adult education programs in meeting statewide benchmarks on the National Reporting System's (NRS) core indicators and any other monitoring tools developed by AEPP.

12. WIOA Title II provides funds for four programs areas: 1) Adult Basic Education and Literacy Services (ABE) entailing instruction in basic reading and math skills in the pursuit of higher academic achievement or a High School Equivalent diploma; 2) Integrated English Literacy and Civics Education (IELCE) consisting of improving the English skills of individuals professionally skilled in their country of origin who have migrated to New York and lack English; 3) Corrections Education providing individuals involved in the criminal justice system with academic opportunities that are aimed at reducing recidivism and transition to the workforce; and 4) Literacy Zones, also known as Family Welcome Centers, offering a systemic approach to meeting the literacy needs of communities from birth through adulthood. The Family Welcome Centers provide services which connect adult participants and their families to pathways out of poverty. The purpose of Literacy Zones is to close the achievement gap in urban and rural communities of concentrated poverty and high concentrations of families and individuals with limited literacy or English language proficiency.

13. NYSED provides subawards to local educational agencies and other organizations through a competitive Request for Proposal (RFP), resulting in five-year contracts to provide adult education and literacy services. Eligible applicants include community-based organizations, faith-based organizations, volunteer literacy organizations, higher education institutions, public or private nonprofit agencies, libraries, and public housing authorities.

14. In 2024, AEPP's WIOA Title II programs served 80,000 participants and thereby over 30,000 children whose parents rely on adult education services to support their children's academic programs and their health and wellbeing through basic needs such as shelter and food. In 2024, these programs also funded 3,000 adult education teachers, 6,000 adult education staff,

and 763 volunteers. In the same year, New York adult education students obtained 1,549 professional credentials as a cohort.

15. As described above, in addition to supporting adult education students achieve literacy and basic skills attainment, a portion of AEPP's adult education services focuses on English acquisition for immigrants. Data demonstrates that 74% of our students are English language learners. AEPP has supported individuals of various professional backgrounds, including doctors, nurses, contractors, teachers, education administrators, and other professionals licensed in their country of origin but lacking the English skills necessary to transition to the workforce. These students have contributed a great deal not only to their families but also to the financial sustainability of their communities by becoming active members of the workforce. This cohort of students has significantly impacted the adult education system, which continuously evolves in response to the needs of employers and the skills needed to fill employment vacancies.

16. We also work with asylum seekers who have not yet obtained work authorization.

17. AEPP's Literacy Zones and Family Welcome Centers, funded through WIOA Title II, do not verify immigration status. These Centers are very accessible, which is a key to their success. New York has 67 Literacy Zones that provide a variety of services to community residents including: case management for out-of-school youth and adults to pursue a high school equivalent diploma or postsecondary education, training and employment; internet connected computer access; referrals to community providers of educational and disability services; referrals to Career Centers; career fairs and welcome centers that provide additional resources to low-income families.

18. Requiring immigration status verification will discourage people from using the services, including asylum seekers who need access to resources to successfully complete their lawful immigration process, and low-income people who often lack identification.

19. Requiring immigration status verification will also create a resource burden for adult education programs that do not have enough staff or training to engage in these activities.

20. As the USED PRWORA Notice took immediate effect. The Notice states that "[t]he Department may, but *is not required to*, exercise its enforcement discretion to refrain from taking actions against grantees in certain circumstances, such as for programs not mentioned in this interpretive rule." 90 Fed. Reg. at 30,900 n.3. (emphasis added).

21. The draw down of WIOA Title II funds occurs as expenditures are made for staffing, operations, and contract payments. Once contracts are finalized, funding for WIOA adult education programs is front loaded. An initial payment is made at the start of the year and then programs draw down funds as needed over a 12-month period. Thus, there is a risk that we will not be able to access WIOA Title II funds unless we identify and exclude people who lack sufficient identification. We are also worried that USED could attempt to claw back funds we have used since July 11.

22. It would be extremely challenging for adult education programs to implement immigration status verification. An attempt to impose this requirement would compromise the program. We would lose as many as 4,000 asylum seekers and many other participants who are simply unable to provide ID. Without additional resources to train adult education programs and provide funding for more staff it could take at least a year to implement immigration verification. And the effects would be felt by immigrant communities and others who lack access to ID along with their communities.

23. One thing our Literacy Zone and Family Welcome Centers do is help people obtain the necessary information and documents they need to work. This policy would stop all potential participants at the door.

24. Discontinuing funds for non-citizens in New York would drastically affect the skilled labor shortages New York and the nation face due to an aging workforce and declining interest in manual labor. The existing labor shortage would be exacerbated by excluding non-citizens from adult education training programs, and as the pool of skilled workers dwindles, businesses are impacted. Consequently, the inability to service non-citizens would reduce adult education services already successfully provided and reduce the enrollment numbers of these services. Thousands of people would lose access, many in the process of job seeking. The results would be disastrous for those who lose access to services and their families, not to mention the business who would have hired these individuals.

25. NYSED also administers New York's Perkin V award. Perkins V funding is provided to states through annual formula grants. This funding is provided to subrecipients (secondary and postsecondary institutions, juvenile justice facilities, and correctional institutions) through the secondary Office of Career and Technical Education (CTE) and the postsecondary Office of Postsecondary Access, Support, and Success (OPASS). New York State's total program year 2024-2025 allocation was $64,862,646. New York State's total program year 2024-2025 allocation was $64,862,646.

26. Per the Perkins V legislation, eligible NYSED-approved Perkins V programs, which include secondary CTE programs and adult CTE programs, provide career exploration and career development activities through an organized, systematic framework designed to aid students (before enrolling and while participating in a CTE program) in making informed plans and

decisions about future education and career opportunities and programs of study; provide professional development for teachers, faculty, school leaders, administrators, specialized instructional support personnel, career guidance and academic counselors, or paraprofessionals; provide within CTE the skills necessary to pursue careers in high-skill, high-wage, or in-demand industry sectors or occupations; support integration of academic skills into CTE programs and programs of study; and plan and carry out elements that support the implementation of CTE programs and programs of study that result in increasing student achievement on Perkins performance indicators.

27. Funds are not provided directly to individuals. Individual status is not a data point collected through the Office of CTE or OPASS as this data is not required for federal reporting.

28. As with New York's WIOA Title II funds, discontinuing funds for non-citizens would impose significant harms on learners in many settings who would no longer benefit from important CTE programs. The impacts would radiate out from participants to their families and communities. And, given that New York's Perkins V programs do not currently verify immigration status for the purpose of determining eligibility for participation, the State would have to develop regulatory infrastructure to impose such a requirement across the board. As with the WIOA Title II programs, this could take a year or more.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __21__ day of July, 2025, in Albany, New York.

*Ceylane Meyers-Ruff*
_____
Ceylane Meyers-Ruff
Deputy Commissioner
New York State Education Department