# Exhibit 63

## DECLARATION OF ANA GIRON

I, Ana Giron, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am currently the Director of Victim Services at the Rhode Island Office of the Attorney General (OAG).

2.     I am familiar with the information in the statements set forth below either through personal knowledge, consultation with OAG staff, or from my review of relevant documents and information.

3.     The OAG's Criminal Division is responsible for, among other things, prosecuting all felony charges in the state.  The Victim Services Unit, which consists of nine Victim Services Advocates, is embedded within the Criminal Division and provides support to both prosecutors and victims of crimes being prosecuted by the OAG.

4.     One of the most critical functions of Victim Services Advocates is to provide support for victims navigating and participating in the felony process.  For example, Advocates will keep victims informed about the status of their case, help them understand the language and process of the criminal justice system, support them with safety planning, and share information with them about their rights under the law.  Additionally, Advocates will help with crime-related problems with their employer, assist with property return, refer them to the state's Witness Protection program, and help connect them with service providers and community organizations.

5.     The OAG is also required to provide certain services under the Rhode Island Victims Bill of Rights, R.I. Gen. Laws § 12-28-1 *et. seq.*, and Sexual Assault Victims Bill of Rights, R.I. Gen. Laws § 23-98-5.  For example, the OAG is required to provide access to Victim Services Advocates for any survivor of sexual assault who requests one at any time during the prosecution of the underlying crime.  Similarly, the OAG is required to provide "appropriate employer intercession

1

services to ensure that the employer of the victim will cooperate with the criminal justice process in order to minimize the employee's loss of pay and other benefits resulting from court appearances." R.I. Gen. Laws § 12-28-3(a)(7). And the Victim Services Unit must provide notice of, among other things, "financial assistance and other social services available to crime victims and the manner of applying for them." R.I. Gen. Laws § 12-28-3(a)(9)

6.     The Victim Services Unit's mission is to provide support for all victims of crime who need it regardless of their personal circumstances. There is no application or screening process for victims before we provide services. Victim Service Advocates will provide these services to any individual who is referred to us by a prosecutor.

7.     The OAG currently utilizes funds from the federal Victims of Crime Act ("VOCA") and Violence Against Women Act ("VAWA") programs to provide services to victims involved in felonies prosecuted by the Special Victims Unit and for capital crimes in the early stages of the prosecution process. For example, these services would be provided to victims of sexual assault, child sex crimes, child molestation, kidnapping, and attempted murder.

8.     On July 11, 2025, the United States Department of Justice issued an Order titled "Revised Specification Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996" (the "Notice"), which notified grant recipients like the OAG that the Department was revoking "Life/Safety Exemptions" to certain funding that had been in place. It is my understanding that, starting on August 15th, this may require the OAG to verify the immigration status of victims receiving support services that are funded (even in part) by the VOCA grant.

9.     Requiring victims, and particularly victims of the crimes at issue here, to provide paperwork to prove their immigration status would have a substantial detrimental impact on our ability to effectively provide services. Any delay in our provision of services can put victims at risk or prevent them from receiving the vital services we provide.

2

10.  It is also important for Advocates to build a relationship of trust and confidence with the victims they are working with to ensure their rights are protect and also to ensure that they cooperate with the prosecution, such as appearing for hearings and providing testimony.  Requiring victims to provide paperwork proving their immigration status at the start of this process could significantly undermine that relationship and inhibit the OAG's ability to successfully prosecute.

11.  Additionally, if victims that are undocumented learn that their immigration status will be checked if they report a crime, they are likely to be deterred from reporting incidents to the police in the first place.  This could have a major impact on public safety in Rhode Island.


Executed this 18th Day of July 2025 in Cranston, Rhode Island:

Ana Giron
Director, Victim Services
Office of the Attorney General

3