UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Civil Action No.: 1:25-cv-00345 <br><br> **DECLARATION OF KIMBERLY VITELLI** |

I, Kimberly Vitelli, make the following declaration in lieu of an affidavit, as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed with the United States District Court for the District of Rhode Island, and that it is the legal equivalent of a statement under oath.

1. I am the Administrator of the Office of Workforce Investment ("OWI"), Employment and Training Administration ("ETA"), United States Department of Labor ("DOL" or "Department"). I have served in this position since June 2020, and before then, as Deputy Administrator starting in October 2015. In my capacity as Administrator, I am responsible for providing executive management and oversight of ETA grant programs authorized by the Workforce Innovation and Opportunity Act ("WIOA") (Title I formula and discretionary programs), the Wagner-Peyser Act (Employment Service Program); and Title V of the Older Americans Act (Senior Community Service Employment Program (SCSEP)).

2. I have personal knowledge of the facts contained in this Declaration and if called to testify as a witness, I can and will competently testify to the facts stated herein.

   On February 21, 2024, ETA issued Training and Employment Guidance Letter ("TEGL") 10-23, *Reducing Administrative Barriers to Improve Customer Experience in Grant Programs Administered by the Employment and Training Administration.* That TEGL was addressed to the grantees that administer the WIOA Title I formula and discretionary programs, the Wagner-Peyser Act Employment Service formula grant program, and SCSEP. These grantees include states and non-profit organizations. The 2024 TEGL explained that some ETA-administered programs and services did not constitute "federal public benefits" under the Personal Responsibility and Work Opportunity Reconciliation

1

        Act of 1996 ("PRWORA") and, therefore, could be provided to job seekers and workers without verifying work authorization.

3. On March 27, 2025, ETA rescinded the 2024 TEGL. *See* TEGL 10-23, Change 1, *Rescission of Training and Employment Guidance Letter (TEGL) No. 10-23: Reducing Administrative Barriers to Improve Customer Experience in Grant Programs Administered by the Employment and Training Administration (ETA)*.

4. On July 10, 2025, ETA issued TEGL 10-23, Change 2, *Work Authorization Verification in Grant Program Administered by the Employment and Training Administration*. The purpose of TEGL 10-23, Change 2 is to provide direction regarding work authorization verification for grant programs administered by ETA. The TEGL also provides notice and clarity regarding ETA's interpretation and application of PRWORA and the nondiscrimination provisions of WIOA at section 188(a)(5) (29 U.S.C. 3248) to ETA programs. The TEGL clarifies and establishes that all participant-level services in the below-named programs are considered "federal public benefits" under PRWORA and, therefore, grantees must verify work authorization for all participants served by ETA's WIOA, Wagner-Peyser, and SCSEP programs prior to delivering participant-level services.

5. TEGL 10-23, Change 2 applies to the following ETA grant programs:

        WIOA Title I Adult, Dislocated Worker, Youth programs;
        WIOA National Dislocated Worker Grants ("DWGs");
        WIOA Reentry Employment Opportunities ("REO");
        WIOA YouthBuild;
        WIOA National Farmworker Jobs Program ("NFJP");
        Other programs authorized under Section 169 of WIOA;
        Wagner-Peyser Act Employment Service; and
        SCSEP.

6. The TEGL defines "participant-level services" as those included in TEGL 19-16, Attachment II, *Participant Level Services Chart WIOA Title I Adult, Title I Dislocated Worker, and Title III Employment Service Programs* (Issued March 1, 2017). Attachment II of TEGL 19-16 defines participant-level services. All services marked as "yes" in the column titled "Does this service trigger inclusion in participation?" in the Attachment are participant-level services. These include the following training, individualized career, and follow-up services: comprehensive and specialized assessments, development of individual employment plans, group counseling, individual counseling, career planning, short-term prevocational services, internships and work experiences, workforce preparation activities, financial literacy services, out-of-area job search and relocation assistance, English-language acquisition and integrated education and training programs, and certain incumbent worker training.   Participant-level services do not include some basic career services, such as: provision of information on job vacancies, skills requirements, available programs and services, as well as referral to supportive services. ETA began making the distinction between "participant-level services" and other services

      in the regulations implementing WIOA that were promulgated in 2016. Section 677.150 of Title 20 of the C.F.R. defines "participant" based on which services an individual receives. TEGL 19-16 was issued in March 2017 to the state grantees that administer WIOA and Wagner-Peyser formula programs. It is one of the numerous pieces of subregulatory guidance that ETA has provided to ensure all grantees understand which services are participant-level and the reporting that grantees must do when those services are provided. See, e.g., TEGL No. 10-16, *Performance Accountability Guidance for Workforce Innovation and Opportunity Act (WIOA) Title I, Title II, Title III and Title IV Core Programs*, at 29-36 (Dec. 19, 2016); TEGL No, 10-16 Change 1, at 30-38 (Aug. 23, 2017); TEGL No. 14-18, *Aligning Performance Accountability Reporting, Definitions, and Policies Across Workforce Employment and Training Programs Administered by the U.S. Department of Labor*, at 7-9 and App. II-III (March 25, 2019); TEGL No, 10-16 Change 2 (Sept. 15, 2022) at 30-38; TEGL No. 10-16 Change 3, at 26-34 (June 11, 2024).

7.     TEGL 10-23, Change 2 instructs grantees: "Work authorization must be verified by submission of documentation with a unique identifier (also called a 'verifiable enumerator'). Some examples of acceptable documents for Form I-9, Employment Eligibility Verification, purposes include: an unrestricted Social Security card; a Form I-551, Permanent Resident Card, (informally called green card); Form I-765, Employment Authorization Document (EAD); a U.S. birth certificate; and a U.S. passport. Several other documents might be specifically held by refugees, asylees, parolees, and other immigrants with work authorization." It strongly recommends that grantees that are registered for SAVE use SAVE to verify immigration status.

8.     ETA regularly issues Training and Employment Guidance Letters (TEGLs) to clarify grantees' responsibilities in administering WIOA, Wagner-Peyser, and SCSEP grants. ETA will monitor grantees' compliance with TEGL 10-23 Change 2 the same way it does for all grant requirements. ETA regularly monitors that grantees are fulfilling their responsibilities under their grant agreements, including their responsibility to ensure that services are made available to eligible individuals. When ETA monitors the grant, ETA employees view grantee case files containing documents and records and conduct site visits to determine whether grantees are following documentation validation and eligibility verification procedures. During monitoring, ETA closely reviews grantee policies and procedures to determine whether the policies are compliant with program law and regulations, and whether the grantee is following its own policies. ETA monitors its direct grantees to ensure compliance with grant provisions. In programs where ETA's direct grantees provide program services through subrecipient organizations, the grantees are responsible to monitor their subrecipients; the grantees bear the overall responsibility that the grant is compliant.

9.     If through monitoring ETA identifies an instance of grantee noncompliance with grant requirements, ETA staff follow a process with extensive back-and-forth between the grantee and DOL. ETA monitoring staff begin the process with informal resolution. This begins with issuing a Monitoring Report with findings and proposed resolutions often called "corrective actions," and if the issues are not resolved, ETA staff issue an Initial

        Determination that lists findings and questioned costs, again with proposed resolutions to get the grantee to correct its actions. If the compliance issues are not resolved at this point, ETA issues a Final Determination that almost always assesses disallowed costs and may require corrective actions. The Final Determination establishes a debt owed to the U.S. Department of Labor.

10.    For the programs authorized under WIOA (which does not include the programs authorized under the Wagner-Peyser Act or the Older Americans Act), there is a provision that allows the Secretary of Labor to immediately terminate or suspend the grant "in emergency situations, if the Secretary of Labor determines it is necessary to protect the integrity of the funds or ensure the proper operation of the program or activity involved." 29 § U.S.C. 3244(e). This WIOA process is very rarely used, and it requires that the grant recipient be given prompt notice and the opportunity for a subsequent hearing within 30 days after such termination or suspension.

11.    ETA's WIOA programs to which TEGL 10-23 Change 2 is addressed are WIOA Title I Adult, Dislocated Worker, Youth programs; National Dislocated Worker Grants ("DWGs"); Reentry Employment Opportunities ("REO"); YouthBuild; the Farmworker Program ("NFJP"), and other programs authorized under Section 169 of WIOA.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge. EXECUTED at Washington, D.C. on this 11th day of August, 2025.

_____
Kimberly Vitelli
Administrator of the Office of Workforce Investment
Employment and Training Administration
U.S. Department of Labor