**LEGAL STATUS**

This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

**LEGAL STATUS**

# Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit"

A Notice by the Housing and Urban Development Department on 11/26/2025

**PUBLISHED CONTENT - DOCUMENT DETAILS**

**Agency:** Department of Housing and Urban Development
**Agency/Docket Number:** DOCKET No. FR-6573-N-01
**Document Citation:** 90 FR 54363
**Document Number:** 2025-21120
**Document Type:** Notice
**Pages:** 54363-54365 (3 pages)
**Publication Date:** 11/26/2025

**PUBLISHED DOCUMENT: 2025-21120 (90 FR 54363)**

**DOCUMENT HEADINGS**

**Department of Housing and Urban Development**
[DOCKET No. FR-6573-N-01]

HUD-PRWORA_000001

## AGENCY:

Office of the General Counsel, HUD.

## ACTION:

Notice.

## SUMMARY:

This notice sets forth the interpretation that the U.S. Department of Housing and Development (HUD) uses for the term "Federal public benefit" as used in Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), and its exceptions. In doing so, this notice supersedes any prior interpretation in any notice or other document issued by any HUD program or office.

## FOR FURTHER INFORMATION CONTACT:

Mr. David C. Woll, General Counsel, Office of the General Counsel, U.S. Department of Housing and Urban Development, 451 7th St. SW, Room 10110, Washington, DC 20410, telephone number 202-708-2244. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit: *https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs (https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs)*.

## SUPPLEMENTARY INFORMATION:

### I. Background

According to Section 401 of PRWORA, 8 U.S.C. 1611(a) (https://www.govinfo.gov/link/uscode/8/1611), aliens who are not "qualified aliens" are not eligible for any "Federal public benefit" as defined in 8 U.S.C. 1611(c) (https://www.govinfo.gov/link/uscode/8/1611). The prohibition set forth in § 1611(a) is subject to certain exceptions set forth in § 1611(b).

Section 401(c) of PRWORA, defines "Federal public benefit" as "(A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States" and "(B) any retirement, welfare,

HUD-PRWORA_000002

health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. 1611(c)(1) (https://www.govinfo.gov/link/uscode/8/1611). This definition, too, is subject to certain exceptions. *See id.* (c)(2) (setting forth certain exceptions to the definition of "Federal public benefit").

In addition, under Section 432 of PRWORA, as amended, to the extent required by law, providers of a nonexempt "Federal public benefit" must verify that a person applying for the benefit is a qualified alien and is eligible to receive the benefit. 8 U.S.C. 1642 (https://www.govinfo.gov/link/uscode/8/1642). While the verification requirement is necessary for proper enforcement of PRWORA, it is conceptually distinct from the meaning of the term "Federal public benefit" and this notice is not intended to address the application of such requirement. Neither does this notice speak to "Federal public benefits" that may be subject to other statutory authority besides PRWORA regarding citizenship and alien eligibility.

In the list of substantive exceptions under 8 U.S.C. 1611(b)(1) (https://www.govinfo.gov/link/uscode/8/1611) Congress provided that the prohibition against providing non-qualified aliens with any federal public benefit "shall not apply with respect to the following Federal public benefits:

(B) Short-term, non-cash, in-kind emergency disaster relief [. . .] "(D) Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with appropriate Federal agencies and departments, which (i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

## II. Interpretation

Statutory construction "must begin, and often should end as well, with the language of the statute itself." *United States* v. *Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998) (quoting *Merritt* v. *Dillard,* 120 F.3d 1181, 1185 (11th Cir. 1997). "The plain meaning controls." *United States*

HUD-PRWORA_000003

v. *Robinson,* 94 F.3d 1325, 1328 (9th Cir. 1996) (citation omitted). The statutory language
is clear: if a HUD program falls into either § 1611(c)(1)(A) or (c)(1)(B), such benefits are
not available to individuals who are aliens, unless (i) that individual is a qualified alien, or
(ii) some other exception applies to the HUD program, either under § 1611(b) or via the
definitional limits on "Federal public benefit" set forth in (c)(2). Thus, the task is simple:
construe the plain language of (c)(1)(A) (☐ printed page 54364) and (c)(1)(B). Those
provisions state that "Federal public benefit" means:

(A) any grant, contract, loan, professional license, or commercial license provided by an
agency of the United States or by appropriated funds of the United States; and

(B) any retirement, welfare, health, disability, *public or assisted housing* ( *emphasis added*),
postsecondary education, food assistance, unemployment benefit, or any other similar
benefit for which payments or assistance are provided to an individual, household, or
family eligibility unit by an agency of the United States or by appropriated funds of the
United States.

If HUD "provide[s]" the (i) "grant, contract, loan, professional license, or commercial
license," or if the "grant, contract, loan, professional license, or commercial license" is
"provided by" "appropriated funds of the United States," then such item is a "Federal public
benefit." Similarly, if HUD "provide[s]" the "retirement, welfare, health, disability, public or
assisted housing, postsecondary education, food assistance, unemployment benefit, or
any other similar benefit," or such "benefit" is "provided" "by appropriated funds of the
United States," then such benefit is a "Federal public benefit," as long as the benefit is
"provided to" one of three types of recipients: (i) "an individual," (ii) a "household," or (iii) a
"family eligibility unit."

## 1. Grant

Section 1611(c)(1)(A) applies to "any grant, contract, loan, professional license, or
commercial license" provided by HUD. For purposes of PRWORA, a grant means the award
of funding for an individual or entity to carry out specified activities without the direct
involvement of HUD.

HUD administers a multitude of grant programs, including those in which the grants go to
individuals, private entities, and institutions (such as building or services grants) and those
in which the grants go to States, units of local government as well as non-profit

organizations. The grant "recipient" may carry out the activity supported by the grant, but sometimes the recipient may issue a subgrant to an individual or entity. For PRWORA purposes, the term "grant" includes any "subgrant" derivative of a grant. Sometimes the activity supported by the grant is carried out by the recipient and sometimes the recipient acts as a "pass-through entity" "that provides a subaward to a subrecipient to carry out part of a Federal program," 2 CFR 200.1 (https://www.ecfr.gov/current/title-2/section-200.1) (definitions for uniform grants guidance for all Federal financial assistance), under which the obligations and requirements on the recipient flow down to the subrecipient.

Section 1611 (c)(1) of PRWORA defines a "Federal public benefit" to mean *"any grant"* (emphasis added). "Read naturally, the word `any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali* v. *Fed. Bureau of Prisons,* 552 U.S. 214, 219 (2008) (cleaned up). The statutory text does not distinguish between grants "to individuals" and grants "provided to states or localities." *Contra* 63 FR at 41659. And so, HUD must apply the plain meaning of the statutory text. *E.g., Pub. Serv. Elec. & Gas Co.* v. *F.E.R.C.,* 989 F.3d 10, 19 (D.C. Cir. 2021) ("[A] regulation can never trump the plain meaning of a statute.") (quotes omitted).

It is HUD's position that any grants it administers that are not explicitly governed by another statute are federal public benefits related to housing assistance and are subject to the eligibility requirements under PRWORA. HUD intends to revise its guidance as to which grant programs are deemed covered by PRWORA or by another statute.

## 2. "Any Other Similar Benefit"

To determine whether a HUD program provides "any other similar benefit(s)" under 8 U.S.C. 1611(c)(1)(B) (https://www.govinfo.gov/link/uscode/8/1611), it is instructive to look not just to the enumerated benefits within 8 U.S.C. 1611(c)(1) (https://www.govinfo.gov/link/uscode/8/1611), but also to the exempted Federal public benefits under 8 U.S.C. 1611(b)(1) (https://www.govinfo.gov/link/uscode/8/1611). Here, Congress specified under subparagraphs (B) and (D) that there are exemptions from the general alien restrictions of 8 U.S.C. 1611(a) (https://www.govinfo.gov/link/uscode/8/1611) for certain types of Federal public benefits, including non-cash benefits or in-kind services. In-kind is defined as "in the same manner or with something equivalent" Webster's II: New Riverside University Dictionary (1994). In the context of the statute, "in-kind" means some sort of non-cash benefit that provides goods or services directly, rather than providing cash to procure those goods or services.

The exception under subparagraph (D) applies more specifically to in-kind services that are delivered "at the community level, including through public or private nonprofit agencies." It would not make sense for Congress to exclude these limited non-cash or in-kind services explicitly in 8 U.S.C. 1611(b)(1)(B) (https://www.govinfo.gov/link/uscode/8/1611) and (D) (https://www.govinfo.gov/link/uscode/8/1611) if at least some of those benefits were not already captured under the operative definition of "Federal public benefit" under 8 U.S.C. 1611(c) (https://www.govinfo.gov/link/uscode/8/1611). Congress would have no need to carve something out that would not otherwise be covered in the first instance under the "Federal public benefit" definition. As such, the general definition of "Federal public benefit" is best understood to include "assistance" similar to the "deliver[y] [of] in-kind services at the community level, including through public or private nonprofit agencies" where such benefits have not been specifically excluded by 8 U.S.C. 1611(b)(1) (https://www.govinfo.gov/link/uscode/8/1611).

## III. Application to HUD Programs

HUD interprets PRWORA to apply to all HUD programs related to public or assisted housing as they are "public or assisted housing" for which payments or assistance are "provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States" unless a more specific federal statute applies, *e.g.* Section 214 of the Housing and Community Development Act of 1980, as amended.

HUD has applied the provisions of PRWORA to its Community Planning and Development programs and grants which include Homeless Assistance Programs, particularly the Emergency Solutions Grants (ESG) and Continuum of Care (CoC) programs ( *see* 24 CFR parts 576 (https://www.ecfr.gov/current/title-24/part-576) and 578 (https://www.ecfr.gov/current/title-24/part-578)). HUD considers these programs to award "grants" as defined in PRWORA and therefore covered by the definition of "Federal public benefit" under the statute. As a result, these grant programs are subject to the eligibility and verification provisions under PRWORA.

The covered grant programs include, but are limited to, grants to governments (state and local) or to other organizations. Covered grant programs with governmental grantees include HOME, HOME Investment Partnerships American Rescue Plan (HOME-ARP), National Housing Trust Fund, Community Development Block Grant (CDBG), Community

Development Block Grant Disaster Recovery (CDBG-DR), Housing Opportunities for Persons with AIDS (HOPWA) formula, and ESG, but also include Pathways to Removing Obstacles to Housing (PRO Housing) and Preservation and Reinvestment Initiative for Community Enhancement (PRICE) (both competitive). Programs that award grants to non-profit organizations include the CoC program, Congressional earmarks, the HOPWA competitive program, PRO Housing, PRICE and the Self-Help Homeownership Opportunity Program (SHOP). (□ printed page 54365)

## IV. Verification and Economic Impact

HUD will undertake a review and revised guidance in order to determine the means of verification of immigration status as they affect those programs not exempt under Section 1611(b)(1). These will address those program recipients (such as States and government actors) who have access to the Systemic Alien Verification for Entitlements (SAVE) program as well as non-government recipients. Under PRWORA, although nonprofit charitable organizations that administer "Federal public benefits" are not required to conduct eligibility verification under 8 U.S.C. 1642(d) (https://www.govinfo.gov/link/uscode/8/1642), it does not relieve states or other governmental from the requirements to ensure that all relevant programs are in compliance with PWRORA. As a result, HUD will be issuing new guidelines related to the verification for benefits provided through its housing assistance and grant programs, including for benefits distributed by charitable non-profit organizations. HUD will be relying in guidance issued by the Department of Homeland Security once that is published.

Due to the multitude of HUD programs that are available to tens of millions of individuals, HUD will continue to evaluate the manner in which it will verify compliance with PRWORA. HUD will, to the maximum extent possible, minimize the imposition of reporting and information and information collection requirements. Similarly, HUD continues to analyze the economic impact of this interpretation, but at this time, has not found there to be significant economic impact. HUD will issue subsequent guidance on verification actions and a final determination regarding the economic impact of this interpretation.

**David C. Woll,**
*General Counsel, Office of the General Counsel.*
[FR Doc. 2025-21120 (/d/2025-21120) Filed 11-25-25; 8:45 am]

BILLING CODE 4210-67-P

PUBLISHED DOCUMENT: 2025-21120 (90 FR 54363)

HUD-PRWORA_000008

**Washburn, Tenille E**

| | |
|---|---|
| **From:** | Secretary Turner |
| **Sent:** | Friday, April 4, 2025 4:15 PM |
| **To:** | Office of Public Affairs |
| **Subject:** | Message from Secretary Scott Turner |



THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
# OFFICE OF THE SECRETARY

All HUD Staff,

President Trump issued Executive Order 14218, "Ending Taxpayer Subsidization of Open Borders," on February 19, 2025, to promote the rule of law and prevent American taxpayer dollars from being spent on federal assistance for illegal aliens. As Secretary of the Department of Housing and Urban Development (HUD), it is my responsibility to effectively implement the President's executive order at the agency.

HUD's contributions to housing and community development across the country serve some of America's most vulnerable citizens on a path towards self-sufficiency. To that end, the President's Executive Order emphasizes that the federal resources distributed by HUD shall be primarily focused on benefiting American citizens and other qualified recipients, not illegal aliens.

President Trump's Executive Order reinforces the 1996 Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA, P.L. 104-193), which unequivocally prohibits illegal aliens from receiving certain federal public benefits, including many forms of assistance provided under HUD programs. Further, Section 214 of the Housing and Community Development Act of 1980 (P.L. 96-399) prohibits HUD from making financial assistance available to persons other than United States citizens or certain categories of eligible noncitizens in the Section 8 Housing Assistance programs, Public Housing programs, Housing Development Grant programs, Section 202 direct loan program, Section 235 program, Section 236 Program, and Rent Supplement Program. This letter serves as a reminder to all HUD grantees of their legal obligations to comply with these laws and the President's Executive Order.

Recently, I directed HUD senior leadership to review our programs and institute mechanisms that can ensure that HUD programs are compliant with President Trump's Executive Order. For example, going forward, grant agreements will include language that will require compliance with Executive Order 14218, and the Department will take steps to ensure that Federal resources are not used to support "sanctuary" policies of State and local jurisdictions that actively prevent federal authorities from deporting illegal aliens.

I am excited to work with our grantees and other stakeholders to implement this Executive Order and enforce the law so that HUD programs are used for the benefit of the American people. Thank you for your cooperation, and I encourage you to contact our team at HUD with any ideas that may be able to help improve our implementation of President Trump's Executive Order.

HUD-PRWORA_000009

Sincerely,

Scott Turner
Secretary

HUD-PRWORA_000010

**BILLING CODE: 4410-BB**

**DEPARTMENT OF JUSTICE**

**A.G. Order No.**

**Revised Specification Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996**

**AGENCY:** Department of Justice.

**ACTION:** Order.

**SUMMARY:** This document contains an Order of the Attorney General issued pursuant to sections 401 and 411 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA" or the "Act"). This Order withdraws the Attorney General's January 5, 2001, order issued pursuant to PRWORA.

**DATES:** The effective date of this Order is [INSERT DATE THIRTY DAYS AFTER THE DATE OF PUBLICATION IN THE FEDERAL REGISTER].

**FOR FURTHER INFORMATION CONTACT:** Christina Greer, Office of Legal Policy, Department of Justice, Room 4254, 950 Pennsylvania Avenue, NW., Washington, DC 20530, telephone 202-514-5739, for general information. For information regarding particular programs, contact the Federal agency that administers the program.

**SUPPLEMENTARY INFORMATION**

**I. Background on PRWORA**

On August 22, 1996, President Clinton signed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, currently codified in relevant part at 8 U.S.C. 1611 *et seq.*, as amended. With certain exceptions, PRWORA makes aliens who are not "qualified alien[s]" ineligible for any "Federal public benefit," as those terms are defined by PRWORA. 8 U.S.C. 1611(a); *see also id.* 1611(c) (defining "Federal public benefit"), 1641 (defining "qualified alien"). PRWORA also restricts, with certain exceptions, all aliens from receiving "Federal means-tested public benefit[s]" for a five-year period from their entry into the

1

HUD-PRWORA_000011

United States with a status within the meaning of the term "qualified alien." 8 U.S.C. 1613(a).

Additionally, PRWORA imposes limits on the receipt of State and local benefits by aliens but

permits States to authorize the receipt of State and local benefits by otherwise ineligible aliens

through the enactment of a State law postdating PRWORA. *See* 8 U.S.C. 1621(a), (d); *see also*

*id.* 1621(c) (defining "State or local public benefit"). Finally, PRWORA added section 213A to

the Immigration and Nationality Act, which excepts from reimbursement certain benefits

provided to a sponsored alien pursuant to an affidavit of support. *Id.* 1183a note.

   PRWORA requires the creation of uniform verification requirements to ensure that only

"qualified aliens" eligible for benefits under PRWORA receive them. 8 U.S.C. 1642. Section

1642(a) requires the Attorney General, who at the time of PRWORA's enactment oversaw the

Immigration and Naturalization Service within the Department of Justice ("DOJ"), to promulgate

regulations requiring verification that a person applying for a Federal public benefit is a qualified

alien and is eligible to receive the benefit. Section 1642(a)(2) requires establishment of fair and

nondiscriminatory procedures for a person to provide proof of citizenship. Section 1642(b)

requires States to have in effect a verification system that complies with the regulations

promulgated under section 1642(a). The Attorney General issued interim guidance about the

implementation of these verification requirements in 1997. Interim Guidance on Verification of

Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility

and Work Opportunity Reconciliation Act of 1996, 62 FR 61344 (Nov. 17, 1997).

## II. Authority to Specify Exceptions to PRWORA's Verification Requirements

   Sections 401(b)(1)(D) and 411(b)(4) of PRWORA (codified at 8 U.S.C. 1611(b)(1)(D)

and 1621(b)(4)), provide that the Attorney General may, in her "sole and unreviewable discretion

after consultation with appropriate Federal agencies and departments," specify as excepted from

PRWORA's prohibition on receipt of public benefits by unqualified aliens certain types of

programs, services, and assistance that meet all of the following criteria: (1) deliver in-kind

services at the community level, including through public or private non-profit agencies; (2) do

2

HUD-PRWORA_000012

not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (3) are necessary for the protection of life or safety.

Shortly after PRWORA was signed into law, the Attorney General issued an order implementing this authority by making a "provisional specification" of benefits excepted from PRWORA. Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 61 FR 45985 (Aug. 30, 1996) ("Provisional Order"). Approximately one year later, the Attorney General issued a notice to solicit input from "federal, state, and local agencies operating programs or providing services or assistance that may be covered by the final Order." Request for Comments on the Attorney General's Specification of Community Programs Necessary for the Protection of Life or Safety Under the Welfare Reform Act, 62 FR 48308, 48308 (Sept. 15, 1997). The Attorney General subsequently issued a final order specifying these programs in 2001. Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 66 FR 3613 (Jan. 16, 2001) ("Final Order"). In both the Provisional Order and the Final Order—the latter of which was, in substance, unchanged in response to the comments received by DOJ—the Attorney General exercised her authority to except programs, services, or assistance to the fullest extent permitted by law by excepting from PRWORA "any . . . programs, services, or assistance" that satisfied all three statutory criteria. 61 FR at 45985 (Provisional Order); 66 FR at 3616 (Final Order); *see also id.* at 3615 ("[the] Attorney General has fully exercised the power delegated to her under §§ 401(b)(1)(D) and 411(b)(4) of [PRWORA]").

The Attorney General's exercise of discretion to determine whether to except benefits from PRWORA does not require notice-and-comment rulemaking. Because PRWORA commits a decision about exceptions to the Attorney General's "sole and unreviewable discretion" after consultation with Federal officials, PRWORA "renders the formal notice-and-comment rulemaking regime inapplicable" to this action. *See Make The Rd. New York v. Wolf*, 962 F.3d

3

612, 634 (D.C. Cir. 2020).  Moreover, the action is exempt from notice-and-comment procedures
because the designation of certain benefits as excepted is a "matter relating to . . . public
property, loans, grants, benefits, or contracts."  5 U.S.C. 553(a)(2).

### III.  Executive Order 14218

On February 19, 2025, the President signed Executive Order 14218, "Ending Taxpayer
Subsidization of Open Borders," 90 FR 10581.  One purpose of the Executive Order is to
confirm agencies are complying with PRWORA in administering Federal programs by ensuring,
"to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified
aliens."  *Id.* sec. 2(a).  The Executive Order directs agencies to identify "all federally funded
programs administered by the agency that currently permit illegal aliens to obtain any cash or
non-cash public benefit, and, consistent with applicable law, take all appropriate actions to align
such programs with the purpose of the Executive Order and applicable law, including . . .
PRWORA."  *Id.* sec. 2(a)(i).

### IV.  Re-Evaluation of the 2001 Specification

*A.  Review of Reliance on the Final Order*

In the discharge of her responsibilities under Executive Order 14218 and PRWORA, the
Attorney General has reviewed the Final Order issued in 2001.  As required by PRWORA, she
has engaged in consultation with appropriate Federal agencies and departments about the
propriety of specifying exceptions to PRWORA, including the extent to which agencies rely on
the Final Order to except programs, services, or assistance from PRWORA, in order to determine
whether the Final Order should be withdrawn or modified.

Multiple agencies responded that they do not rely on the Final Order at all because they
do not confer benefits subject to PRWORA; because they rely only on PRWORA's statutory
exceptions; or because they do not except the benefits they provide from PRWORA's eligibility
requirements.  The fact that a particular program does not fall within the scope of PRWORA
does not mean that eligibility requirements imposed by other Federal statutes do not apply to the

4

benefit. Some Federal programs, such as Medicaid, unemployment compensation, educational assistance under Title IV of the Higher Education Act of 1965, and assisted housing programs administered by the Department of Housing and Urban Development ("HUD") already require, absent a waiver, verification of the immigration status of an alien to ensure the alien meets the eligibility requirements for the program. 62 FR at 61345. To verify recipient status and eligibility, agencies use the Systematic Alien Verification for Entitlements ("SAVE") system, operated by U.S. Citizenship and Immigration Services. *See id.* Except where specified in the statute, PRWORA does not alter preexisting legal requirements regarding the use of the SAVE system or relieve the administrators of statutorily mandated programs of their obligations to comply with the SAVE program. *Id.* The Attorney General defers to agencies as to the extent to which PRWORA applies to the programs they administer and as to whether authorities other than PRWORA require them to ascertain the immigration status of benefit recipients.

Some agencies purported to rely upon the Final Order to except from PRWORA programs that are likely subject to one of PRWORA's statutory exceptions. For example, the Federal Emergency Management Administration purported to rely on the Final Order as to certain emergency or disaster relief programs. But PRWORA already excepts short-term, in-kind, emergency disaster relief from its eligibility requirements, so the Attorney General's exception authority under PRWORA is not legally necessary to except such programs. *See* 8 U.S.C. 1611(b)(1)(B).

Agencies also purported to rely upon the Final Order to except programs that may fail to meet the requirements of PRWORA because eligibility is conditioned on the income or resources of the recipients. For instance, many of the benefits provided through the Community Development Block Grant ("CDBG") program, managed by HUD, must be conferred to low- or moderate-income persons by statute. *See* 42 U.S.C. 5301 *et seq.* PRWORA, however, grants the Attorney General authority to except only programs for which eligibility is not conditioned on the resources or income of the recipients. *See, e.g.*, 8 U.S.C. 1611(b)(1)(D)(ii).

5

HUD-PRWORA_000015

Agencies also purported to rely upon the Final Order for programs that may go beyond PRWORA's limitation of benefits to programs that are "necessary for the protection of life or safety." 8 USC 1611(b)(1)(D)(iii). Neither PRWORA nor the Final Order attempts to define this phrase more precisely. This lack of guidance has led to the exception being used more broadly than Congress intended. PRWORA provides examples of the kinds of assistance that the Attorney General has authority to except from the statute's limitation on eligibility—i.e., "soup kitchens, crisis counseling and intervention, and short-term shelter." But agencies have excepted from PRWORA forms of assistance that are quite unlike these examples. For instance, the Department of Homeland Security ("DHS") funds "scientific leadership," "citizenship education and training," and law enforcement officer training. Such programs—focused more on career building or personal development than human necessities—are not "necessary for the protection life or safety" in the sense the drafters of PRWORA used that phrase. Nor is it clear why unqualified aliens would need to receive benefits from such programs. Similarly, while grants, contracts, and loans are a public benefit under PRWORA, many projects funded by HUD through CDBG to address infrastructure improvements or combat urban blight are too far removed from the circumstances that would make them "necessary for the protection of life or safety" in the sense that Congress directed when it enacted PRWORA.

*B. Revision of the Final Order*

Based on her consultations with the appropriate Federal agencies and departments, the Attorney General has determined that the Final Order has created confusion about what sorts of programs are subject to PRWORA's requirements and is being applied more broadly than the statute permits. As a result, unqualified aliens have been able to receive public benefits for which they are not lawfully eligible. To correct this, the Attorney General, in the exercise of her discretion, has chosen not to except any benefits from PRWORA beyond those excepted by the statute itself.

HUD-PRWORA_000016

In making this change, the Attorney General is aware that some aliens may have been able to receive certain types of in-kind public benefits that would otherwise be subject to PRWORA's requirements because of the exceptions detailed in the Final Order. Such aliens will not be eligible for those benefits in the future due to this revised specification. To the extent that aliens may have relied on such benefits, the Attorney General concludes, based on her consultation with Federal agencies and departments and other considerations, that the changes described in this specification are nonetheless warranted. This is so for several reasons. First, as noted earlier, some agencies have been excepting from PRWORA certain benefits based on a misunderstanding of the Attorney General's exception authority and hence have been providing benefits to aliens who were not lawfully eligible to receive them. "No amount of reliance could ever justify continuing a program" that an "agency lacked statutory authority to" implement in the first place, *see Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1930 (2020) ("*Regents*") (Thomas, J., concurring in part and dissenting in part), so bringing the Federal Government into compliance with the law is a powerful reason to withdraw the Final Order regardless of any reliance interests. Second, as also noted above, some of the benefits previously provided under the Final Order were not, in fact, necessary for life or safety. The lack of any connection to aliens' immediate welfare necessarily reduces the extent of any reliance interests in these benefits. Third, even as to benefits that the Attorney General has the legal authority (but not the duty) to except from PRWORA, any reliance interests are significantly outweighed by the need to reduce the incentive for aliens to illegally migrate to the United States. *See* 8 U.S.C. 1601(2) ("It continues to be the immigration policy of the United States that . . . the availability of public benefits not constitute an incentive for immigration to the United States."). Finally, Congress has delegated to the Attorney General the authority to determine the appropriate scope of this specification in her "sole and unreviewable discretion." *E.g.*, 8 U.S.C. 1611(b)(1)(D). This delegation indicates Congress's intent that the scope of this specification not be subject to the sort of arbitrary-and-capricious review that would typically require

7

HUD-PRWORA_000017

consideration of reliance interests. *See Regents*, 140 S. Ct. at 1907, 1913 (assessing an agency's consideration of reliance interests only after concluding that the agency's action was subject to judicial review).

Although the Attorney General has the authority to except certain benefits from PRWORA, the decision to do so is expressly committed to her sole and unreviewable discretion. *See, e.g.*, 8 U.S.C. 1611(b)(1)(D). The Attorney General has concluded, in the exercise of that discretion, that the benefits of creating additional exceptions to PRWORA, beyond those set forth in the statute itself, are outweighed by the risks of creating incentives for unlawful migration by allowing access to such programs to individuals who are not "qualified aliens" as defined by PRWORA.

This Order does not purport to define what benefit programs are, and are not, "public benefits" subject to PRWORA. This Order also has no effect on other statutory eligibility requirements, including those found in PRWORA itself. *See, e.g.*, 8 U.S.C. 1611(b), 1615, 1621(b)(4). The Attorney General has the right, in her sole and unreviewable discretion, to revisit and amend the specification in the future.

### ORDER SPECIFYING COMMUNITY PROGRAMS NECESSARY FOR THE PROTECTION OF LIFE OR SAFETY UNDER THE PERSONAL RESPONSIBILITY AND WORK OPPORTUNITY RECONCILIATION ACT OF 1996

By virtue of the authority vested in me as Attorney General by law, including Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "Act"), I hereby specify that:

1. Effective [INSERT DATE THIRTY DAYS AFTER THE DATE OF PUBLICATION IN THE FEDERAL REGISTER], the Final Order of the Attorney General dated January 16, 2001, and published at 66 FR 6313, is withdrawn and no longer in force.

2. After undertaking the necessary consultations with appropriate Federal agencies and departments, the Attorney General has concluded, in her sole and unreviewable discretion, not to except any benefits from PRWORA pursuant to her authority to make such exceptions under

8

HUD-PRWORA_000018

section 401 and section 411 of PRWORA.

3. I do not construe the Act to preclude aliens from receiving police, fire, ambulance, transportation (including paratransit), sanitation, and other similar services. *See* 8 U.S.C. 1611(c), 1621(c). As a result, I need not specify and am not specifying any such services as being excepted from the Act.

4. It is not the purpose of this Order to define more specifically the scope of the public benefits that Congress intended to include within the scope of the Act, and nothing herein should be construed to do so.

_____7/11/25_____
Date

Pamela Bondi
Attorney General

9

HUD-PRWORA_000019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITY OF FRESNO, et al.,

          Plaintiffs,

    v.

SCOTT TURNER, et al.,

          Defendants.

Case No.  25-cv-07070-RS

**ORDER GRANTING PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Following a temporary restraining order (TRO) entered on August 26, 2025, Plaintiffs, local organizations and government entities that receive millions of dollars of federal grant money to serve the public, bring this Motion for a Preliminary Injunction to enjoin Defendants, agencies and their operating administrators, from imposing unauthorized and vague conditions on their grant funding. Defendants have announced grant conditions embracing the Administration's recent Executive Orders requiring grantees to certify they will prohibit the promotion of DEI, gender ideology, and elective abortion and will cooperate with federal immigration enforcement efforts. Plaintiffs contend that these grant conditions violate the Administrative Procedure Act (APA), the Fifth Amendment, Separation of Powers, the Spending Clause, and the Tenth Amendment.

The preliminary injunction requested by Plaintiffs is granted as described below. First, jurisdiction properly rests in district court over Plaintiffs' claims consisting of statutory and constitutional challenges to agency guidance and policy. Second, Plaintiffs meet the requirements for injunctive relief at this stage for their claims against the U.S. Department of Housing and

HUD-PRWORA_000020

1    Urban Development (HUD), the U.S. Department of Transportation (DOT), including the Federal

2    Transit Administration (FTA), Federal Highway Administration (FHWA), and Federal Aviation

3    Administration (FAA), and the U.S. Department of Health and Human Services (HHS) by

4    demonstrating (1) serious questions going to the merits of their APA claims challenging the

5    agency action as arbitrary and capricious, in excess of statutory authority, and contrary to the

6    Constitution, (2) likelihood of irreparable injury, (3) balance of hardships that "tips sharply

7    towards [Plaintiffs]" and injunctive relief that is in the public interest. *See All. for the Wild Rockies*

8    *v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

9                                    **II. BACKGROUND**

10   **a.  Grant Condition Executive Orders**

11           Between January and August 2025 President Trump issued a series of Executive Orders

12   directing executive agencies to impose new conditions on federal grants (collectively, the "Grant

13   Condition Executive Orders"). Executive Order No. 14151 *Ending Radical and Wasteful*

14   *Government DEI Programs and Preferencing* calls for agencies to "terminate, to the maximum

15   extent allowed by law, all DEI, DEIA, and 'environmental justice' offices and positions…; all

16   'equity action plans,' 'equity' actions, initiatives, or programs, 'equity-related' grants or contracts;

17   and all DEI or DEIA performance requirements for employees, contractors, or grantees." 90 Fed.

18   Reg. 8339 (Jan. 29, 2025) ("DEI Executive Order"). Executive Order No. 14173 *Ending Illegal*

19   *Discrimination and Restoring Merit-Based Opportunity* "order[s] all executive departments and

20   agencies… to terminate all discriminatory and illegal preferences, mandates, policies, programs,

21   activities, guidance, regulations, enforcement actions, consent orders, and requirements.  I[t]

22   further order[s] all agencies to enforce our longstanding civil-rights laws and to combat illegal

23   private-sector DEI preferences, mandates, policies, programs, and activities." 90 Fed. Reg. 8633

24   (Jan. 31, 2025) ("Merit-Based Executive Order"). (Collectively, the DEI Executive Order and

25   Merit-Based Executive Order are referred to as the "DEI Executive Orders.")

26           Executive Order No. 14168 *Defending Women from Gender Ideology Extremism* calls on

27   "[a]gencies [to] remove all statements, policies, regulations, forms, communications, or other

28                                                                    ORDER ON PRELIMINARY INJUNCTION
                                                                      CASE NO. 25-cv-07070-RS

*United States District Court*
*Northern District of California*

HUD-PRWORA_000021

United States District Court
Northern District of California

1   internal and external messages that promote or otherwise inculcate gender ideology, and [to] cease

2   issuing such statements, policies, regulations, forms, communications or other messages.  Agency

3   forms that require an individual's sex shall list male or female, and shall not request gender

4   identity.  Agencies shall take all necessary steps, as permitted by law, to end the Federal funding

5   of gender ideology." EO No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025) ("Gender Ideology

6   Executive Order"). It further requires that "[f]ederal funds[] not be used to promote gender

7   ideology.  Each agency shall assess grant conditions and grantee preferences and ensure grant

8   funds do not promote gender ideology." *Id.* § 3(g). Executive Order No. 14182 *Enforcing the*

9   *Hyde Amendment* states that "[i]t is the policy of the United States, consistent with the Hyde

10  Amendment, to end the forced use of Federal taxpayer dollars to fund or promote elective

11  abortion." 90 Fed. Reg. 8751 (Jan. 31, 2025) ("Elective Abortion Executive Order").

12          Executive Order No. 14218 *Ending Taxpayer Subsidization of Open Borders* requires each

13  agency to ensure illegal immigrants do not "obtain any cash or non-cash public benefit" from

14  federally funded programs and to align such programs "with Federal law including the PRWORA

15  [i.e., the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law

16  104-193)]." 90 Fed. Reg. 10581 (Feb. 19, 2025). Executive Order No. 14287 *Protecting American*

17  *Communities From Criminal Aliens* tasks agencies with "restor[ing] the enforcement of United

18  States [immigration] law" and suspending or terminating federal funds used by "sanctuary"

19  jurisdictions in particular. 90 Fed. Reg. 18761 (Apr. 28, 2025).

20          Executive Order No. 14332 *Improving Oversight of Federal Grantmaking* instructs that

21  federal funding awards "must, where applicable, demonstrably advance the President's policy

22  priorities" and must not "fund, promote, encourage, subsidize, or facilitate" "racial preferences or

23  other forms of racial discrimination by the grant recipient, including activities where race or

24  intentional proxies for race will be used as a selection criterion for employment or program

25  participation;" "denial by the grant recipient of the sex binary in humans or the notion that sex is a

26  chosen or mutable characteristic;" "illegal immigration;" or "any other initiatives that compromise

27  public safety or promote anti-American values." Section 4, 90 Fed. Reg. 38929 (Aug. 12, 2025).

28

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

HUD-PRWORA_000022

1    Additionally, "[e]ach agency head shall, to the maximum extent permitted by law and consistent

2    with relevant Executive Orders or other Presidential directives, take steps to revise the terms and

3    conditions of existing discretionary grants to permit immediate termination for convenience, or

4    clarify that such termination is permitted, including if the award no longer advances agency

5    priorities or the national interest." *Id.*

6    **b. Agency Grant Conditions**

7        In light of these Executive Orders, HUD, DOT, including the FTA, FHWA, and FAA,

8    HHS, and the U.S. Environmental Protection Agency (EPA) have announced new grant conditions

9    embracing the Grant Condition Executive Orders. These conditions have been announced through

10   announcements of universal grant requirements, grant application guides, grant policy statements,

11   grant and grant assurances templates, master agreements, notice of funding opportunities, and

12   individual grant agreements.

13       Specifically, HUD has announced conditions that obligate grantees to certify that they

14   comply with all Executive Orders ("HUD EO Conditions"); [1] do not promote DEI activities that

15   violate anti-discrimination laws and are liable for non-compliance under the False Claims Act

16   ("HUD DEI Conditions"); do not "promote" "gender ideology" ("HUD Gender Ideology

17   Conditions"); do not "promote" "elective abortion" ("HUD Elective Abortion Condition");

18   cooperate with federal immigration enforcement ("HUD Immigration Enforcement Conditions")

19   including using verification systems per PRWORA ("HUD PRWORA Condition") (collectively

20   the "HUD Grant Conditions"). DOT has announced conditions that obligate grantees to certify the

21   same excluding the conditions regarding elective abortion and immigrant verification systems.

22   DOT's operating administrators also have announced similar or identical grant conditions

23   applying additionally to their grantees: conditions obligating grantees to certify they comply with

24

25   [1] Since HUD, DOT, and the HHS require compliance with the EOs, the specific DEI, gender
     ideology, elective abortion, and immigration enforcement requirements announced in those EOs
26   are included in the definition of the agency's more specific conditions. For example, the HUD DEI
     Conditions include the DEI requirements set forth in the DEI and *Imposing Oversight of Federal*
27   *Grantmaking* EOs.

28                                                      ORDER ON PRELIMINARY INJUNCTION
                                                        CASE No. 25-cv-07070-RS

United States District Court
Northern District of California

HUD-PRWORA_000023

1    applicable EOs and federal laws, regulations, and policies; do not promote DEI that violates anti-

2    discrimination law; and cooperate with federal immigration enforcement. These are referred to as

3    the "DOT EO Conditions," "DOT DEI Conditions," "DOT Gender Ideology," "DOT Immigration

4    Enforcement Conditions," and collectively the "DOT Grant Conditions."

5        HHS also has announced conditions that make substantially the same obligations of

6    grantees (the "HHS EO Conditions," "HHS DEI Conditions," "HHS Gender Ideology

7    Conditions," "HHS Immigration Enforcement Conditions," and collectively, the "HHS Grant

8    Conditions"). The HHS DEI Conditions were announced in April 2025 revisions to the HHS Grant

9    Policy Statement, and they are also reflected in HHS requirements to comply with applicable

10   EOs.[2] *See e.g.,* Dkt. 36-24, Request for Judicial Notice[3] (RJN), Exs. J, W, X. Since its April 2025

11   revisions to the HHS Grant Policy Statement, HHS has revised the relevant section of the Grant

12   Policy Statement and removed reference to DEI, leaving only a prohibition against promoting

13   violations of applicable Federal anti-discrimination law ("HHS Anti-Discrimination Conditions").

14   *Id.* Exs. U, V.

15       Lastly, on April 3, 2025 the EPA announced revisions to its General Terms and Conditions

16   effective October 1, 2024 that obligate grantees to certify they do not promote DEI or violate

17   federal-anti-discrimination law and are liable for non-compliance ("EPA DEI Conditions").

18   However, on August 25, 2025, the EPA revised the relevant section of its General Terms and

19   Conditions removing reference to DEI, requiring that "recipient[s] certify that [they] do not

20   operate any programs violating applicable Federal antidiscrimination law or promoting any such

21   violation" ("EPA Anti-Discrimination Conditions"). *Id.*, Ex. Z.

22       Taken together, excluding the EPA Anti-Discrimination Condition which was announced

23   following issuance of the TRO, these conditions are referred to as the "Grant Conditions." The

24   conditions and their announcements are described in more detail in the discussion below as

25

26   _____

     [2] *See supra* note 1.

27
     [3] Pursuant to Federal Rule of Evidence 201(b), Plaintiffs' Request for Judicial Notice is granted.
28

ORDER ON PRELIMINARY INJUNCTION
CASE No. 25-cv-07070-RS

5

United States District Court
Northern District of California

1    relevant.

2    **c. Plaintiffs' Federal Funding**

3    Plaintiffs are cities, counties, and a county airport authority who receive millions of dollars

4    in HUD, DOT, HHS, and/or EPA federal grant funding which they use to administer critical

5    public programs and services such as housing assistance, transportation infrastructure and safety,

6    public health, and environmental protection. This funding represents a significant portion of

7    Plaintiffs' funds. For example, federal grant funding made up between 9% and 15% of the City of

8    Alameda's expenditures between Fiscal Years 2022 and 2024. Dkt. 36-2, Ott Decl., ¶ 5. The

9    Defendant agencies have made clear that Plaintiffs are subject to the Grant Conditions through

10   general guidance as well as specific actions directed at Plaintiffs including warnings about liability

11   and grant terminations. Plaintiffs, per their declarations, are left uncertain about if they can accept,

12   drawdown, or seek this crucial federal funding, implicating both grants already awarded but also

13   grants applied for and dispensed on a continuous basis.

14   Plaintiffs City of Fresno, City of Eureka, City of Saint Paul, City of Alameda, City of

15   Redwood City, County of Sacramento, County of Marin, County of San Diego, and County of

16   Monroe, receive, directly or indirectly, millions of dollars of HUD grant funds administered

17   through Community Development Block Grants (CDBG), the HOME Investment Partnerships

18   Program (HOME), and Emergency Solutions Grants (ESA). These funds are threatened by the

19   HUD Grant Conditions ratified through HUD action and guidance directed towards Plaintiffs. Dkt.

20   36-15, Skei Decl., ¶ 7; Dkt. 36-7, Diaz Decl. ¶ 15; Dkt. 36-22, Bacher Decl., ¶ 19–20; Dkt. 36-5,

21   Thomas Decl., ¶ 11. For example, on August 18, 2025, HUD notified Fresno that its FY 2025

22   Consolidated Plan/Action Plan would not be approved unless the City removed references to

23   "equity," "environmental justice," and "transgender," and certified compliance with EO 14168.

24   Dkt. 36-15, Skei Decl., ¶¶ 7, 13–14. HUD formally disapproved the Plan on August 22, 2025,

25   citing unsatisfactory certifications and rejecting Fresno's request for additional time to respond.

26   Plaintiffs City of Fresno, City of Alameda, City of Eureka, City of South Lake Tahoe, City

27   of Saint Paul, County of Marin, County of Sacramento, County of San Diego, County of Monroe,

28   ORDER ON PRELIMINARY INJUNCTION
     CASE No. 25-cv-07070-RS

*United States District Court*
*Northern District of California*

6

1    and Monroe Airport Authority receive grant funds, directly or indirectly, administered by DOT

2    and its operating administrations, the FTA, FAA, and FHWA. For example, the County of Marin

3    received $6 million in FHWA funding last year for highway maintenance, roadwork, and traffic

4    safety and anticipates receiving $43 million over the next five years. Dkt. 36-4, Blunk Decl., ¶ 5.

5    However, Plaintiffs' DOT funding is threatened by the DOT Grant Conditions as with the HUD

6    funding. For example, Redwood City has been awarded over $16 million in grants from the State

7    of California Department of Transportation which receives FHWA funding via various federal

8    projects. Dkt. 36-7, Diaz Decl., ¶ 23-24. However, it is not clear whether Redwood City can count

9    on those funds since it is required to certify compliance with possibly unlawful conditions such as

10   the DOT DEI Conditions which in fact conflict with other DOT policies that require

11   considerations of equity. *Id* ¶ 24. As another example, the FHWA has already awarded $1.24

12   million in Carbon Reduction Program grants to the City of Alameda, but Alameda has not been

13   able to sign the award agreement due to uncertainty about the new grant conditions and

14   certification requirements. Dkt. 36-2, Ott Decl., ¶ 6.

15       The County of Marin, County of Sacramento, and County of San Diego receive, directly or

16   indirectly, grant funds administered by HHS. For example, the County of Marin's Department of

17   Health and Human Services has a budget of over $250 million and relies on approximately $57

18   million in federal funding, including $1.5 million in HHS Aging Cluster grants, $500,000 in Ryan

19   White A and Part B grants, $2.8 million in Center for Disease Control (CDC) grants, $1.8 million

20   in Substance Abuse and Mental Health Services Administration (SAMHSA) Adult Drug Grants,

21   $2.4 million in Title IV-E Administration for Children and Families grants, and $1.4 million in

22   HHS Adoption Assistance funding. Dkt. 36-6, Warhuus Decl., ¶¶ 6-7. As with HUD and DOT

23   funding, Plaintiffs cannot rely on their HHS funding because the funds are subject to the unlawful

24   HHS Grant Conditions.

25       Plaintiffs City of Fresno, City of Redwood City, and the City of Alameda receive, directly

26   or indirectly, grant funds administered by EPA. For example, Fresno has been awarded

27   approximately $2.25 million in grants from the EPA, including a Brownfields Revolving Loan

28

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

HUD-PRWORA_000026

United States District Court
Northern District of California

Case 1:25-cv-00345-MSM-PAS    Document 86-3    Filed 01/30/26    Page 27 of 28 PageID
#: 3187
Case 3:25-cv-07070-RS    Document 45    Filed 09/23/25    Page 8 of 38

United States District Court
Northern District of California

1    Fund grant totaling $1,750,000 and a Brownfields Assessment grant in the amount of $500,000.

2    Dkt. 36-12, Clark Decl., ¶ 9. Redwood City has also been pre-awarded $1.2 million in EPA grants

3    for stormwater infrastructure improvement. Dkt. 36-7, Diaz Decl., ¶ 31. The City of Alameda has

4    a pending application for a $2.5 million Environmental and Climate Justice Community Change

5    Grant. Dkt. 36-2, Ott Decl., ¶ 5. Plaintiffs are concerned that they cannot rely on their EPA

6    funding in light of the EPA DEI Conditions and EPA Discrimination Conditions.

7                                    **III. LEGAL STANDARD**

8          Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

9    showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7,

10   22 (2008). To obtain preliminary injunctive relief, a plaintiff "must establish that he is likely to

11   succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

12   relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

13   *Id.* at 20, 129 S.Ct. 365. A court may "balance the elements" of this test, "so long as a certain

14   threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir.

15   2011) (per curiam). Thus, for example, "serious questions going to the merits and a balance of

16   hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,

17   so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

18   injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

19   Cir. 2011) (quotation marks omitted).

20                                    **IV. DISCUSSION**

21   **A.    Threshold Issues**

22   **i.    49 U.S.C. Section 46110**

23         At the outset, jurisdiction to hear Plaintiffs claims in federal district court must be

24   established. Defendants challenge jurisdiction over the claims regarding FAA conditions in

25   particular. Per 49 U.S.C. § 46110(a) federal courts of appeal have exclusive jurisdiction over "an

26   order issued" by the Secretary of Transportation or FAA Administrator "with respect to aviation

27   duties and powers designated to be carried out by the Administrator of the Federal Aviation

28                                                        ORDER ON PRELIMINARY INJUNCTION
                                                         CASE NO. 25-cv-07070-RS

                                          8

HUD-PRWORA_000027

United States District Court
Northern District of California

1    Administration … in whole or in part under this part, part B, or subsection (l) or (r) of section

2    114." *Id.*

3        In *Tulsa Airports Improvements Trust v. U.S.* the Ninth Circuit explained that

4    Section 46110(a) covers "a broad spectrum of actions by the Secretary of Transportation, the

5    Under Secretary of Transportation for Security, and the Administrator of the FAA" that "ha[ve]

6    indicia of finality" but went on to point out that "many if not most of [the cases in which courts of

7    appeals have undertaken review of the action] would fall into the category of 'informal

8    adjudication,'" which does not describe the at-issue agency actions. 120 Fed. Cl. 254, 261 (2015).

9    *See also City of Los Angeles v. U.S. F.A.A.*, 239 F.3d 1033, 1036 (9th Cir. 2001) ("[E]very court

10    of appeals case that could be found exercising jurisdiction under § 46110(a) involved airline

11    commerce and safety or a specific provision under Part A."). Further, in *City of Los Angeles v.*

12    *U.S. F.A.A* the Ninth Circuit held that since, "[i]n essence, the City seems to be making a 'broad

13    constitutional challenge' to… the FAA's actions (to the extent that the FAA is making policy)…

14    such a claim is not one subject to judicial review in the court of appeals but rather is reviewable by

15    the district court." *Id.* at 1036–37. Since Plaintiffs' claims against DOT are more akin to broad

16    constitutional challenges to DOT policy than informal adjudications, jurisdiction here is

17    warranted.

18        Moreover, Section 46110(a) is also not a bar to jurisdiction because Plaintiffs' claims

19    "involve agencies" and agency action "not covered by § 46110." *Magassa v. Mayorkas*, 52 F.4th

20    1156, 1165 (9th Cir. 2022). *See, e.g., Latif v. Holder*, 686 F.3d 1122, 1128-29 (9th Cir. 2012). The

21    FAA's conditions are "merely a conduit" for the DOT Grant Conditions which DOT has

22    expressed independently from FAA action via an April 2025 letter from the Secretary of

23    Transportation ("Duffy Letter") and non-FAA grants and grant guidance all of which "§ 46110

24    does not cover." *Latif v. Holder*, 686 F.3d 1122, 1128-29 (9th Cir. 2012). Dkt. 36-24, RJN, Ex. P.

25    **ii. Tucker Act**

26        Under the Tucker Act, a dispute where money damages are sought pursuant to a contract or

27    contract-like agreement with the federal government can be heard only in the Federal Court of

28

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

9

HUD-PRWORA_000028