explaining that grant agreement "conformity means that a grantee…shall not use grant funds to promote 'gender ideology,' as defined in [the Gender Ideology EO]"); Dkt. 36-6, Warhuus Decl., Ex. A. (CoC grant recipients must "not use grant funds to promote 'gender ideology' as defined in [the Gender Ideology EO]."); Dkt. 36-24, RJN, Ex. E (FHWA competitive grant recipients must certify that they comply with the Gender Ideology E.O.); Dkt. 36-24, RJN, Ex. V (HHS Grant Policy Statement revisions effective October 1, 2025 require certification of compliance with the Gender Ideology EO.). Even if the meaning of gender ideology is sufficiently clear as at least one court has suggested, what constitutes impermissible "promot[ion]" by Plaintiffs is not. *See San Francisco A.I.D.S. Found. v. Trump*, No. 25-CV-01824-JST, at *22–23 (rejecting due process challenges to gender ideology conditions because "the Gender [Ideology Executive] Order provides a definition of the key phrase 'gender ideology' and plaintiffs there clearly ascertained in their EPC challenge that it "stands in opposition to the principle that persons can identify as other than strictly male or female, or that persons may have a gender identity different from their biological sex as classified at birth"). The Gender Ideology Executive Order states that

> Agencies shall remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages. Agency forms that require an individual's sex shall list male or female, and shall not request gender identity. Agencies shall take all necessary steps, as permitted by law, to end the Federal funding of gender ideology.

Section 3(e). In addition,

> Federal funds shall not be used to promote gender ideology. Each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology.

Section 3(g). As discussed above, since the Executive Orders make directives to agency heads, the Gender Ideology Conditions are impermissibly vague as to what is required of Plaintiffs. For example, it is not clear whether reference in the Gender Ideology Grant Conditions to the Gender Ideology EO means that the directive to agency heads that they stop using forms that allow a person to list something other than male or female now applies to Plaintiffs. As another example, it is not clear whether HHS programming designed for individuals using hormone therapies for

United States District Court
Northern District of California

HUD-PRWORA_000051

gender dysphoria would constitute promotion of gender ideology. *See U.S. v. Skrmetti*, 145 S. Ct. 1816, 1829 (2025) (Prohibitions on administering puberty blockers or hormones to treat gender dysphoria, identity disorder, or incongruence classify based on medical use of hormone and not sex.). In short, the HUD, DOT, and HHS Gender Ideology Conditions do not provide Plaintiffs with sufficient guidance, and Plaintiffs are likely to succeed on the merits of their vagueness challenges as to these conditions.

### 5. Elective Abortion Condition

HUD requires that grant recipients shall "not use any Grant Funds to fund or promote elective abortions, as required by [the Elective Abortion EO]." *See* Dkt. 36-6, Warhuus Decl., Ex. A. However, it is not clear what constitutes elective abortion even with reference to the Hyde Amendment because the Elective Abortion EO suggests the Hyde Amendment prohibits elective abortion in all cases when in fact its prohibition expressly excludes cases of rape, incest, and where the life of the mother is at risk. *See* Executive Order No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025); Pub. L. No. 118-47, § 810, 138 Stat. 591 (2024). Nor is it clear what "promotion" means. For example, the language does not give Plaintiffs notice as to whether housing an individual before or after an elective abortion would violate the condition and allows HUD arbitrarily to enforce the condition against Plaintiffs as it sees fit. Accordingly, Plaintiffs are likely to succeed on the merits of this claim.

### 6. Immigration Enforcement Conditions

HUD, DOT, and HHS require grant recipients to cooperate with federal immigration enforcement while using language such as recipients must "cooperat[e] with and not imped[e] U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law," Dkt. 36-24, RJN, Ex. P; recipients must not "facilitate[] the subsidization or promotion of illegal immigration or abet[] policies that seek to shield illegal aliens from deportation," *id.*, Ex. A; and "[f]unds cannot be used to support or provide services, either directly or indirectly, to removable or illegal aliens," *id.*, Ex. J at 31. *See also* Dkt. 36-22, Bacher Decl., Ex. 8; Dkt. 36-24, RJN, Exs.

United States District Court
Northern District of California

United States District Court
Northern District of California

E, R, S, T. By the same logic already discussed the Immigration Enforcement Conditions are impermissibly vague because they do not give Plaintiffs notice as to what "cooperation with" or "not impeding" immigration enforcement or not "subsidizing," "supporting," or "promoting" immigrants require of Plaintiffs. Plaintiffs are likely to succeed on the merits of these claims.

ii.    **Plaintiffs Will Suffer Irreparable Harm If the Conditions Are Not Enjoined**

A plaintiff seeking a preliminary injunction must establish that it is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. Such harm "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

Plaintiffs here must choose between attempting compliance with unlawful conditions or forgoing millions of dollars of key federal grant funding. This choice causes irreparable harm because the Grant Conditions likely violate Separation of Powers as in excess of statutory authority and Due Process as impermissibly vague, and "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Even if Plaintiffs chose to try to comply with the Grant Conditions, their grants might be withdrawn or blocked or reimbursement denied. This uncertainty as to whether the Defendant agencies will consider conditions satisfied creates irreparable injury not just in the form of constitutional injury. "The []uncertainty [also] interferes with [Plaintiffs'] ability to budget, plan for the future, and properly serve their residents" and requires "placing funds in reserve and making cuts to services" which constitutes irreparable harm. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). This disruption cannot be remedied down the line with money alone as Defendants contend because by then projects on which millions of taxpayer dollars have already been spent, and which require years to complete and coordination across many parties, will have been compromised. Plaintiffs have adequately demonstrated a likelihood of irreparable injury with regard to their claims regarding the HUD, DOT, and HHS Grant Conditions in the form of constitutional injury and budgetary uncertainty.

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

34

HUD-PRWORA_000053

### iii.   Balance of Equities and Public Interest

A party seeking a preliminary injunction must "establish ... that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. When the federal government is a party as here, these factors merge. *See Nken v. Holder*, 556 U.S. 418, 435. Here, the public interest is served by giving Plaintiffs the budgetary clarity needed to deliver key public services to their constituents. Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up).

The Government relies on *Department of Educ. v. California* to argue these merged factors tip in their favor. *See* Dkt. 40 at 37 (citing *Dep't of Educ.*, 604 U.S. 650 (2025)). However, *Department of Education v. California* is fundamentally different from the present case for two reasons. First, plaintiffs there sought injunctive relief based on APA arbitrary and capricious and APA contrary to law claims whereas here there are also serious constitutional concerns. *See California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 78 (D. Mass. 2025), *appeal dismissed sub nom. California v. US Dep't of Educ.*, No. 25-1244, 2025 WL 2604596 (1st Cir. Apr. 23, 2025). Second, the public interest at stake is a matter not just of "financial wherewithal to keep []programs running" but also clarity in governance. *Dep't of Educ*, 604 U.S. at 652. What is the federal government requiring and what choices do Plaintiffs, almost all of whom are local governments, need to make? As for Defendants' concerns about recoupment of government funds, these concerns cut both ways since Plaintiffs may be forced to divert and spend unplanned sources of public money to keep afloat projects that the Grant Conditions jeopardize. In fact, since Plaintiffs have shown a likelihood of success on the merits, this concern cuts in their favor. The balance of harms weighs in Plaintiffs' favor, and preliminary injunction is in the public interest.

### V. SCOPE OF REMEDY AND ORDER

Emergency injunctive relief should not provide "a remedy beyond what [i]s necessary to provide relief" to the injured parties. *Lewis v. Casey*, 518 U.S. 343, 360 (1996). Accordingly, the injunction here covers the Grant Conditions only to the extent they make requirements of

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

HUD-PRWORA_000054

United States District Court
Northern District of California

Plaintiffs beyond what is required by current federal law. It *is* necessary, however, for the injunction to enjoin each Defendant from enforcing the Grant Conditions against any Plaintiff who is a grantee of the Defendant. To require instead, as the Government requests, that each Plaintiff specifically identify every grant which may be implicated is backwards because Plaintiffs are injured specifically by the uncertainty and broadness of the Grant Conditions' meaning and reach.

For the foregoing reasons and for good cause shown, the Court hereby ORDERS that as to the Plaintiffs only:

(1) HUD, DOT and their operating administrators, and HHS and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined Parties"), are enjoined from, as to the Plaintiffs, (1) imposing or enforcing the Grant Conditions, as defined above, or any materially similar terms or conditions with respect to any grants awarded to Plaintiffs; (2) requiring the Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions; or (3) refusing to issue, process, or sign grant agreements based on Plaintiffs' participation in this lawsuit.

(2) The Enjoined Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles.

(3) By the second day after entry of this Order, Enjoined Parties shall serve and file a declaration(s) verifying that (1) Plaintiffs are not subject to the Grant Conditions and (2) they have complied with this Order, including serving a copy of this order on every defendant agency head, and detailing what additional steps, if any, they have taken to comply.

(4) The preliminary injunction shall remain in effect pending further orders from this Court.

(5) By September 29, 2025, Plaintiffs shall post a nominal bond of $100 with the Clerk of the Court.

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

36

HUD-PRWORA_000055

United States District Court
Northern District of California

## VI. REQUEST FOR SECURITY AND A STAY

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court "may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court retains discretion "as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted). Since Defendants have indicated previously that they are willing to wait to enforce the conditions, Defendants have not made a particular showing as to their risk of non-repayment, and Plaintiffs are likely to succeed on the merits of their claims as to HUD, DOT, and HHS, preliminary injunction is not likely to pose any harm to Defendants. Further, a bond would deprive Plaintiffs and the public they serve of the very funds the preliminary injunction seeks to protect. Accordingly, Plaintiffs shall be required to pay only a nominal bond of $100.

As for Defendants' request for a stay, a stay is not appropriate because Plaintiffs are likely to succeed on the merits of their claims, *see Manrique v. Kolc*, 65 F.4th 1037, 1040 (9th Cir. 2023) (citing *Nken*, 556 U.S. at 434), and Defendants have not carried their burden of showing that they are likely to face "irreparable injury… during the period before the appeal is decided," *see Doe #1 v. Trump*, 957 F.3d 1050, 1058–59 (9th Cir. 2020). Accordingly, Defendants' request for a stay is denied.

ORDER ON PRELIMINARY INJUNCTION
CASE NO. 25-cv-07070-RS

HUD-PRWORA_000056

# VII. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction is GRANTED as set forth above.

**IT IS SO ORDERED**.

Dated: September 23, 2025

RICHARD SEEBORG
Chief United States District Judge

HUD-PRWORA_000057

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7224
Facsimile: (415) 436-6748
jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| CITY OF FRESNO, *et al.*, | Case No. 3:25-cv-07070-RS |
|---|---|
| Plaintiffs, | **DEFENDANTS' NOTICE OF APPEAL OF PRELIMINARY INJUNCTION** |
| v. | |
| SCOTT TURNER, *et al.*, | |
| Defendants. | |

DEFENDANTS' NOTICE OF APPEAL OF PRELIMINARY INJUNCTION
No. 3:25-cv-07070-RS                    1

HUD-PRWORA_000058

PLEASE TAKE NOTICE that defendants Scott Turner; U.S. Department of Housing and Urban Development; Sean Duffy; U.S. Department of Transportation; Marcus J. Molinaro; Federal Transit Administration; Gloria M. Shepherd; Federal Highway Administration; Bryan Bedford; Federal Aviation Administration; Robert F. Kennedy, Jr.; and U.S. Department of Health and Human Services hereby appeal to the United States Court of Appeals for the Ninth Circuit from the Court's Order Granting Motion for Preliminary Injunction dated September 23, 2025 (ECF Nos. 45 & 46).

DATED:  November 21, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/ Jevechius D. Bernardoni
JEVECHIUS D. BERNARDONI
Assistant United States Attorney

*Attorneys for Defendants*

DEFENDANTS' NOTICE OF APPEAL OF PRELIMINARY INJUNCTION
No. 3:25-cv-07070-RS                                    2

HUD-PRWORA_000059

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 25-cv-01350-WHO

**ORDER GRANTING SECOND MOTION FOR PRELIMINARY INJUNCTION AND RULING ON PROPRIETY OF HUD CONTINUUM OF CARE AND FORMULA GRANT CONDITIONS**

Re: Dkt. No. 177

On April 24, 2025, I granted a Preliminary Injunction to plaintiffs San Francisco, Santa Clara, and fourteen other cities and counties[1] that maintain policies placing them within the definition of "sanctuary jurisdictions," because I determined that the Cities and Counties are likely to succeed on the merits of their claims that defendants' actions with respect to the enjoined executive orders and related agency directives were unconstitutional violations of the separation of powers and spending clause doctrines and violated the Fifth Amendment, Tenth Amendment and Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Dkt. No. 111 (the "Preliminary Injunction").[2]  This Order extends the Preliminary Injunction to include the new plaintiffs recently added in the Second Amended Complaint ("SAC").[3]  The defendants offered no

---

[1] The original plaintiffs, which I have referred to as "the Cities and Counties" and that are covered by the First Preliminary Injunction, are: City and County of San Francisco ("San Francisco"), County of Santa Clara ("Santa Clara"), City of Portland ("Portland"), Martin Luther King, Jr. County ("King County"), City of New Haven ("New Haven"), City of Oakland ("Oakland"), City of Emeryville ("Emeryville"), City of San Jose ("San Jose"), City of San Diego ("San Diego"), City of Sacramento ("Sacramento"), City of Santa Cruz ("Santa Cruz"), County of Monterey ("Monterey"), City of Seattle ("Seattle"), City of Minneapolis ("Minneapolis"), City of Saint Paul ("Saint Paul"), and City of Santa Fe ("Santa Fe").

[2] I issued a further order explaining my reasoning on May 3, 2025.  Dkt. No. 126 (Further Order).

[3] On August 5, 2025, I granted the Plaintiffs' Motion for Leave to File the SAC, adding new plaintiffs County of Alameda ("Alameda County"), City of Albany ("Albany"), City of

HUD-PRWORA_000060

United States District Court
Northern District of California

opposition to this extension other than that the Order granting the Preliminary Injunction was wrong in the first place. That issue is on appeal.

This Order also addresses the parties' dispute over whether conditions imposed by the Department of Housing and Urban Development ("HUD") on Continuum of Care ("CoC") grants violate the Preliminary Injunction because they implement the enjoined sections of EO 14,218 to impose immigration-related conditions wholesale on grants unrelated to immigration enforcement. Dkt. No. 143 (Joint Letter Brief). I had delayed ruling on that to give defendants time to brief whether the CoC grants shared a nexus with immigration enforcement. Dkt. No. 147 (Order Regarding Disputes Over Propriety of Standard Conditions on Federal Grants). Further briefing did not reveal any nexus. The Preliminary Injunction reaches the HUD CoC grants. Finally, the Preliminary Injunction also reaches the HUD Community Development Block Grant ("CDBG") programs—non-competitive grants that support some plaintiffs' services to address homelessness and boost economic development—because there too, HUD has imposed conditions that implement the enjoined language of Executive Order 14,218 upon grants that lack a nexus with immigration enforcement.

---

Albuquerque ("Albuquerque"), County of Allegheny ("Allegheny County"), City of Baltimore ("Baltimore"), City of Bend ("Bend"), City of Benicia ("Benicia"), City of Berkeley ("Berkeley"), City of Boston ("Boston"), City of Cambridge ("Cambridge"), City of Cathedral City ("Cathedral City"), City of Chicago ("Chicago"), City of Columbus ("Columbus"), City of Culver City ("Culver City"), County of Dane ("Dane County"), City and County of Denver ("Denver"), City of Healdsburg ("Healdsburg"), County of Hennepin ("Hennepin County"), City of Los Angeles ("Los Angeles"), County of Marin ("Marin County"), City of Menlo Park ("Menlo Park"), Multnomah County, City of Pacifica ("Pacifica"), City of Palo Alto ("Palo Alto"), City of Petaluma ("Petaluma"), Pierce County, City of Richmond ("Richmond"), City of Rochester ("Rochester"), City of Rohnert Park ("Rohnert Park"), County of San Mateo ("San Mateo County"), City of Santa Rosa ("Santa Rosa"), County of Sonoma ("Sonoma County"), City of Watsonville ("Watsonville"), and City of Wilsonville ("Wilsonville"). Dkt. No. 186 (Order on Motion to Amend and Motion to Expedite).

The SAC also added two new defendants: the United States Office of Management and Budget; and Russell Vought in his capacity as Director of the Office of Management and Budget. They join original defendants Donald J. Trump, President of the United States; the United States; the United States Department of Justice; Pamela Bondi in her official capacity as Attorney General of the United States; Kristi Noem in her official capacity as Secretary of the Department of Homeland Security; Emil Bove in his capacity as Acting Deputy Attorney General of the United States; and the United States Department of Homeland Security ("DHS").

2

HUD-PRWORA_000061

**ORDER GRANTING SECOND PRELIMINARY INJUNCTION**

The Preliminary Injunction blocks the first sentence of Section 17 of Executive Order 14,159 ("Protecting the American People Against Invasion") (hereafter, "EO 14,159"), Section 2(a)(ii) of Executive Order 14,218 ("Ending Taxpayer Subsidization of Open Borders") (hereafter, "EO 14,218") (together the "2025 Executive Orders") and the Preamble and Section 1 of the February 5, 2025, Memorandum from the Attorney General entitled "Sanctuary Jurisdictions Directives," (the "Bondi Directive"). On May 9, 2025, I made clear that Executive Orders and related executive actions issued and undertaken in the wake of the Preliminary Injunction (e.g. Section 3 of Executive Order 14,287 and the agency directives that flowed from it) could not be used as end runs around it. Dkt. No. 136 (Clarifying Order).

The plaintiffs now move for a second preliminary injunction that precisely mirrors the first to protect the new plaintiffs too. *See* Motion for a Second Preliminary Injunction ("Second PI Motion") [Dkt. No. 177]. The new plaintiffs have each alleged similar reliance on federal funding as the Cities and Counties and filed declarations showing similar harms to community health, welfare and social services and to their budgetary processes that depend on the regularly authorized grants of federal funding for a variety of critical needs. *See* SAC ¶¶ 82-321; *see e.g.* Declaration of Y. Sanchez [Dkt. No. 177-5] ¶ 14; Declaration of H. Medina [Dkt. No. 177-7] ¶ 10; Declaration of F. Leach [Dkt. No. 177-10] ¶¶ 24-26; Declaration of E. King [Dkt. No. 177-12] ¶ 15; Declaration of A. Groffenberger [Dkt. No. 177-15] ¶ 12; Declaration of T. Maulawin [Dkt. No. 177-19] ¶¶ 13-31. Defendants offer no opposition to entry of the expanded Preliminary Injunction except to say that the Order granting the Preliminary Injunction and Further Order were wrongly decided in the first place and *no* plaintiff is entitled to the relief sought. Both in the defendants' response to the Second PI Motion and at the hearing, counsel for the defendants accepted that the Second PI Motion is subject to the same analysis as the plaintiffs' first preliminary injunction request was.

Consequently, I will grant the plaintiffs' request for the expanded Preliminary Injunction for the same reasons that I issued the Preliminary Injunction originally. The challenged sections of Executive Orders 14,159 and 14,218, and the executive actions that have parroted them threaten

3

HUD-PRWORA_000062

to withhold all federal funding from the plaintiffs as sanctuary jurisdictions if they do not adapt their policies and practices to conform with the Trump administration's preferences. That coercive threat (and any actions agencies take to realize that threat, or additional Executive Orders the President issues to the same end) is unconstitutional, so I enjoined its effect. I do so again today for the protection of the new parties in this case.

For the foregoing reasons, the plaintiffs' Second Motion for Preliminary Injunction is **GRANTED**. Defendants and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them, are enjoined from directly or indirectly taking any action to withhold, freeze, or condition federal funds based on (1) the first sentence of Section 17 of Executive Order 14,159 ("EO 14,159"); (2) Section 2(a)(ii) of Executive Order 14,218 ("EO 14,218"); (3) the February 5, 2025 memorandum from the Attorney General entitled "Sanctuary Jurisdictions Directives" (the "Bondi Directive"); or (4) any other Executive Order or Government action that poses the same coercive threat to eliminate or suspend federal funding based on the Government's assertion that a jurisdiction is a "sanctuary jurisdiction," on the basis that the jurisdiction has policies that limit (i) the honoring of civil immigration detainer requests; (ii) cooperation with administrative warrants for purposes of immigration enforcement; (iii) the sharing of information with federal immigration authorities other than immigration or citizenship status; (iv) the use of local law enforcement to arrest or detain individuals solely for civil immigration violations; or (v) the use of local resources to assist with civil immigration enforcement activities.[4]

**ORDER REGARDING PROPRIETY OF HUD CONTINUUM OF CARE GRANTS**

The parties dispute whether the Preliminary Injunction reaches the challenged HUD Continuum of Care grant agreement conditions. It does.

_____

[4] For the avoidance of doubt, this expanded Preliminary Injunction is identical to the Preliminary Injunction issued on April 24, 2025, except that it now covers all of the plaintiffs named in the SAC, and requires compliance by all defendants, new and old. Because the substance is identical, I do not differentiate between the original and expanded Preliminary Injunction in this Order; they are one in the same.

4

HUD-PRWORA_000063

### A.    FY2024 HUD CoC grant agreements

Congress enacted the McKinney-Vento Homeless Assistance Act (the "Assistance Act") to "meet the critically urgent needs of the homeless of the Nation" by providing "funds for programs to assist the homeless, with special emphasis on elderly persons, handicapped persons, families with children, Native Americans, and veterans." 42 U.S.C. § 11301(b)(2)-(3).  Congress, through the Assistance Act, provides federal funding to several programs, including the Continuum of Care ("CoC") program, which is designed to "assist individuals (including unaccompanied youth) and families experiencing homelessness" by providing services "to help such individuals move into transitional and permanent housing, with the goal of long-term stability."[5] HUD is responsible for administering the CoC program.

The FY2024 HUD CoC grant agreement containing the condition that the plaintiffs challenge states that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." Dkt. No. 143, Attachment M.  In the June 23, 2025, Order Regarding Disputes Over Propriety of Standard Conditions on Federal Grants, I acknowledged the distinction between the conditions on HUD CoC grants (which conditioned the use of funds already received upon compliance with federal immigration law) and the DHS and DOT standard conditions (which conditioned the receipt of funds upon the same).  I pointed out that the defendants had "not yet attempted" to show the required nexus between the HUD CoC grant programs upon which the defendants sought to impose the challenged condition and immigration enforcement.  I gave the defendants additional time and briefing space to show, if they could, the required nexus.  None emerged.

### B.    The Preliminary Injunction reaches the challenged provision of the FY2024 HUD CoC grant agreement

The substantive question of whether HUD is properly withholding HUD CoC grants is

---

[5] Continuum of Care (CoC) Program Eligibility Requirements, HUD Exchange, https://www.hudexchange.info/programs/coc/coc-program-eligibility-requirements/, last accessed June 19, 2025.

5

HUD-PRWORA_000064

pending before the Hon. Barbara Rothstein in the District of Washington in *King County v. Turner*, where Judge Rothstein has enjoined HUD and its officers, agents, servants, employees and attorneys, and any other persons who are in active concert or participation with them, from imposing the challenged HUD CoC grant conditions.[6] – F. Supp. 3d. –, 2025 WL 1582368 (W.D. Wash. June 3, 2025) (First Preliminary Injunction in *King County*), *appeal docketed*, No. 25-3664 (9th Cir., June 10, 2025); 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) (Third Preliminary Injunction in *King County*). Twenty nine (29) of the plaintiffs in this case are covered by those injunctions, seventeen (17) are not. Suffice it to say, I agree in full with Judge Rothstein's opinion. That goes a long way to resolve the dispute here. But what I must still address is whether the Preliminary Injunction in this case, which specifically enjoins actions based on "(1) the first sentence of Section 17 of Executive Order 14,159 ("EO 14,159"); (2) Section 2(a)(ii) of Executive Order 14,218 ("EO 14,218"); (3) the February 5, 2025 memorandum from the Attorney General entitled "Sanctuary Jurisdictions Directives" (the "Bondi Directive"); or (4) any other Executive Order or Government action that poses the same coercive threat to eliminate or suspend federal funding based on the Government's assertion that a jurisdiction is a 'sanctuary jurisdiction,'" has been violated.

In plaintiffs' letter brief regarding the propriety of conditions imposed on the subject HUD CoC grants, they challenge a condition in the FY2024 HUD CoC grant agreement that mirrors the enjoined language of EO 14,218. The condition provides: "No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design

---

[6] Specifically, Judge Rothstein enjoined the HUD Defendants from "(1) imposing or enforcing the CoC Grant Conditions … or any materially similar terms or conditions with respect to any CoC funds awarded to the HUD Plaintiffs or members of their Continuums; (2) as to the HUD Plaintiffs, rescinding, withholding, cancelling, or otherwise not processing any CoC Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objection to conditions enjoined by this preliminary injunction; (3) requiring the HUD Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign CoC Agreements based on HUD Plaintiffs' participation in this lawsuit." – F. Supp. 3d. –, 2025 WL 1582368 (W.D. Wash. June 3, 2025). Judge Rothstein then issued a Third Preliminary Injunction in *King County* to protect newly added plaintiffs in that case. 2025 WL 2322763 (W.D. Wash. Aug 12, 2025). The government has appealed.

6

HUD-PRWORA_000065

or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." Dkt. No. 143 (Attachment M) (the "challenged condition"). They assert that the challenged condition violates the Preliminary Injunction because it imposes immigration-related conditions on funding for a program that lacks a nexus with immigration enforcement. *See* Dkt. No. 143 (Joint Letter Brief) 4.

If there were any uncertainty as to the origin of the challenged condition, the letter from HUD Secretary Scott Turner on April 4, 2025, to "HUD Grantees and Stakeholders" confirms that the quoted language in the grant agreement arises from EO 14,218. Dkt. No. 95-1 at 90 (April 4, 2025, the "Turner letter"). In that letter, Turner states that he "directed HUD senior leadership to review our programs and institute mechanisms that can ensure that HUD programs are compliant with … Executive Order [14,218]. For example, going forward, grant agreements will include language that will require compliance with Executive Order 14,218, and the Department will take steps to ensure that Federal resources are not used to support 'sanctuary' policies of State and local jurisdictions that actively prevent federal authorities from deporting illegal aliens." *Id.* The timing of that letter, hard on the heels of the subject Executive Orders, and its direction that grant agreements incorporate the language of the enjoined section of that Executive Order 14,218, leaves little doubt that Secretary Turner intended to implement the Executive Order.

In my Order Regarding Disputes Over Propriety of Standard Conditions on Federal Grants, I directed the parties to provide more briefing on whether the HUD CoC grants shared a nexus with immigration enforcement such that the utilization of the language from EO 14,218 to impose conditions upon those grants might not be obviously unlawful. Defendants offered several responses, none of which address the nexus question I posed. *See* Defendants' Response to Court's Order ("Gov't Response") [Dkt. No. 166]. I take this omission as a concession that there is no nexus. But I will address the defendants' alternative arguments for why the Preliminary Injunction should not apply to the challenged condition, none of which has merit.

First, they (briefly) argue that the challenged condition should not be enjoined because it is a condition on the use of awarded funds, not a condition on the receipt of funds. *See* Gov't Response 2. At oral argument, counsel for defendants expanded on this argument, contending that

7

HUD-PRWORA_000066

the language of the Preliminary Injunction (enjoining the defendants from taking action to withhold, freeze, or condition Federal funds from the plaintiffs) implies that the injunction only reaches conditions placed on receipt of those funds, and does not reach conditions placed on their use. That obtusely narrow interpretation is wrong. *See* Dkt. No. 136 (Clarifying Order) 4 ("[t]he Government cannot avoid liability down the line by 'hewing to the narrow letter of the injunction' while 'simultaneously ignoring its spirit.'") (quoting *Inst. of Cetacean Research v. Sea Shepard Conserv. Soc'y*, 774 F.3d 935, 954 (9th Cir. 2014)). I issued the Preliminary Injunction to prevent the defendants from taking actions with respect to federal funding for so-called sanctuary jurisdictions that fall outside of the bounds of the Constitution, particularly because of their overly coercive effect. It bars the defendants (and their officers, agents, servants, employees, and attorneys, and any other persons in active concert or participation with them) from, in relevant part, taking any action to withhold, freeze, or condition federal funds from the Cities and Counties based on Section 2(a)(ii) of Executive Order 14,218. The challenged HUD CoC grant agreement condition, of course, would require adherence to Section 2(a)(ii) of EO 14,218 to receive federal funds. *Compare* 90 Fed. Reg. 10581 with Dkt. 68, at Ex. 1, p. 3; Dkt. 143, Attachment M, at p. 2; *see also* Further Order at 56-57 (finding Section 2(a)(ii) to be unconstitutionally ambiguous for purposes of the Fifth Amendment). Secretary Turner's letter shows that HUD's express purpose in inserting the challenged condition into the FY2024 HUD CoC and other grant agreements was to implement the enjoined section of EO 14,218. *See* Further Order 8; *see* discussion *supra.* Whether that condition applies to the receipt of the grant funds or to their use is immaterial: the effect is to coerce jurisdictions into changing their local policies to adhere to federal ones. When it comes to applying the Preliminary Injunction, it is a distinction without a difference.

Second, defendants insist that the conditions are lawful because they are consistent with provisions of the Homeless Assistance Act, 42 U.S.C. § 11386(b), which predates the Preliminary Injunction and requires a recipient of HUD funds to enter into an agreement with HUD, accepting specific conditions, before the HUD Secretary may disburse CoC grant funds. *See* Gov't Response 1. The defendants argue that "both this language and the immigration laws upon which the conditions are based preceded the challenged Executive Orders" and "such discretionary

8

HUD-PRWORA_000067

language has routinely been used by HUD to require certification that recipients comply with federal anti-discrimination laws." *Id.* 1-2. This contention bears no weight. Set aside, for now, that HUD has posted to its website its current "Administrative Requirements" for grantees[7], and that list makes no mention of § 11386(b)(8)—it identifies the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") and EO 14,218, only. Even if § 11386(b)(8) *were* the source of the challenged condition, it does not help the defendants' argument.

The defendants say that "[s]ection 11386(b)(8) squarely encompasses the challenged funding condition, as it aims to ensure that grant funds are not used for unlawful purposes—such as providing services to individuals who are not eligible under federal law, including illegal aliens." Gov't Response 3. That subpart of the Assistance Act is one of several conditions in 42 U.S.C. § 11386(b) to which grant recipients must agree. Among them are conditions requiring recipients "to monitor and report to the Secretary the progress of the project"; "to ensure ... that individuals and families experiencing homelessness are involved" in the project; and to "monitor and report" the receipt of any matching funds. The subpart relied upon by defendants requires a HUD grant recipient "to comply with such other terms and conditions as the Secretary may establish to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386(b)(8).

None of the conditions in § 11386(b) are remotely akin to the condition the plaintiffs challenge here. Substantive conditions—like those that prohibit HUD CoC grant recipients from using their funds "in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation"—are not "of the same kind" as conditions requiring grant recipients to monitor and report on their program's progress, or involve individuals and families experiencing homelessness in those programs. The defendants in *King County* made a similar argument, which Judge Rothstein soundly rejected. *See King County*, -- F. Supp. 3d. --, 2025 WL 1582368, at *15.

The defendants contend that were I to find that the Preliminary Injunction reached the

---

[7] Available at https://www.hud.gov/stat/cfo/policy-requirements (last visited August 19, 2025).

HUD-PRWORA_000068

United States District Court
Northern District of California

United States District Court
Northern District of California

challenged provision of the FY2024 HUD CoC grant agreement, I would be encroaching into the agency's discretion to ensure its programs run properly. They invoke the canon *ejusdem generis*, or "of the same kind," to argue that this canon "confirms that the [HUD Secretary] has broad authority to impose a range of conditions on CoC recipients, from the ministerial to the substantive, so long as they are designed to enhance the program's efficiency and effectiveness, which necessarily include Congressional and case law mandate." Gov't Response 3. Instead of encroaching on the Secretary's discretion, I am simply requiring him to abide by his oath to support and defend the constitution and laws of the United States. The Preliminary Injunction intends to restrain the defendants from coercing the plaintiffs to change policies that the Tenth Amendment reserves for the plaintiffs to develop and enforce.

Third, contrary to the defendants' contention, PRWORA does not permit the challenged CoC grant condition. Defendants argue that since "under the [PRWORA] federal public benefits, including the housing and supportive services provided through the CoC program, are only available to U.S. citizens and aliens with a qualifying immigration status," the challenged CoC conditions "enforce PRWORA's purpose" by "[e]ssentially . . . ensur[ing] compliance with already-existing statutory restrictions," meaning that Secretary Turner is "acting within the authority granted to him by Congressional mandate and section 11386(b)(8)" when he enforces them. Gov't Response 4. As the plaintiffs rightfully point out in their Reply, "[w]hile PRWORA states that certain categories of non-citizens are not eligible for some 'Federal public benefits,' 8 U.S.C. § 1611(a), nowhere does the text suggest giving the federal Government the authority to condition the receipt of federal funds on the requirement that states and local jurisdictions actively assist in enforcing federal immigration laws." Reply Re: Gov't Response [Dkt. No. 174] 4, n.3.

The defendants also insist that Preliminary Injunction does not apply to the HUD CoC grant conditions because "HUD will only apply conditions that are based on statutory authority." Joint Letter 7. They compare this dispute to those over "discrete funding conditions" litigated in cases like *Cal. ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1023-24 (N.D. Cal. 2018), where plaintiffs challenged the termination of Byrne JAG funding, as opposed to disputes over Executive Orders, like *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 507 (N.D. Cal. 2017). Joint

10

HUD-PRWORA_000069

United States District Court
Northern District of California

Letter 7, n.6. But that is a false comparison. Cases like *Cal. ex rel. Becerra*, (and its counterparts that proceeded in the Second, Third, and Seventh Circuit, *see* Further Order at 2-3) involved litigation over discrete funding conditions imposed on a particular grant. The challenged condition here exists because of agency-wide directives employing enjoined Executive Orders, not discrete conditions on a particular grant. HUD is incorporating language from the Executive Order that I have enjoined in all of its grant agreement conditions (at least according to Secretary Turner's letter), including the CoC grants I have just discussed, and the formula grants I am about to discuss. The plaintiffs do not ask me to opine on the legality of "discrete funding conditions" like those imposed upon the Byrne JAG grants—they ask me to enjoin the apparently agency-wide, coercive utilization of language from EO 14,218 with respect to all HUD grants, irrespective of their relation to immigration enforcement.

For all the foregoing reasons, I conclude that the Preliminary Injunction does reach the challenged condition in the FY2024 HUD CoC grant agreements and that it is enjoined.[8] HUD may not deny federal funding under the FY2024 HUD CoC grants based on the challenged condition.

### C.    The HUD formula grants

Plaintiffs ask that if I extend the Preliminary Injunction to encompass the challenged CoC grant condition, I also find that it reaches HUD "formula grants"—particularly, the Community Development Block Grant ("CDBG") programs, which control non-competitive grants that

---

[8] The defendants also gesture toward *Trump v. CASA*, arguing that the Supreme Court's decision in that case dictates that "extending this Court's preliminary injunction to HUD as a non-party is improper." Gov't Response 1 (citing 606 U.S. __, 145 S. Ct. 2540, 2567 (U.S. June 27, 2025)). That case addressed jurisprudential concerns about extending relief to plaintiffs who are not party to a lawsuit. *See CASA*, 606 U.S. __, 145 S. Ct. at 2567 (Kavanaugh, J., concurring) ("The District Courts granted universal preliminary injunctions—that is, injunctions prohibiting enforcement of the Executive Order against anyone. Under the Court's holding today, district courts issuing injunctions under the authority afforded by the Judiciary Act of 1789 may award only plaintiff-specific relief."). Here, I limited my relief to the plaintiffs in this case, and to afford them complete relief, I enjoined "named defendants and any other agency or individual acting in concert with or as an agent of the President or other defendants to implement" the enjoined Executive Orders. Further Order 65, n.14. This was consistent with Federal Rule of Civil Procedure 65(d)(2), and with principle that while the President cannot be enjoined in the performance of his official duties, injunctive relief may run against executive officials. *See Franklin v. Massachusetts*, 505 U.S. 788, 802-803 (1992); *see* Further Order 65 n.14.

HUD-PRWORA_000070

support services to address homelessness and boost economic development, and upon which many plaintiffs rely. Plaintiffs argue that HUD is imposing the same kind of impermissible conditions flowing from EO 14,218 upon CDBG grants as it is upon CoC grants. At the hearing on this matter, I said that I was hesitant to rule on this issue having not requested briefing that squarely addresses it. Counsel for the plaintiffs argued that the only evidence I needed was already in front of me, in the form of the plaintiffs' various declarations, the letter from Secretary Turner and a letter from HUD General Deputy Assistant Secretary Claudette Fernandez. Having reviewed them again, focusing on this issue, I agree.

The plaintiffs assert that it is apparent that HUD is implementing EO 14,218 through *all* of its grants, not just the CoC grants, as a result of the Turmer and Fernandez letters. I have already discussed the Turner letter. Fernandez, who is now the director of CPD (the subagency of HUD that administers funding that the plaintiffs receive from HUD for rental support, housing support, and supportive services to low income and homeless individuals, including CDBG grants), sent a letter on June 5, 2025, in her capacity as HUD General Deputy Assistant Secretary, regarding the HUD Office of Community Planning and Development's ("CPD") grantee consolidated plan and annual action plan submissions for Fiscal Year 2025 (the "Fernandez Letter").[9] Fernandez states in the letter that "grantees are … encouraged to review the White House Executive Orders as they develop their consolidated plan and annual action plans. After submission and HUD's review of these plans, the FY2025 grant agreement will also emphasize conformity with applicable Administration priorities and executive orders. Under the FY 2025 grant agreement, conformity means that []: … (7) If applicable, no state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." Fernandez Letter 2 (Condition 7). In short, the Fernandez letter tracks the Turner letter and the enjoined Executive Order 14,218.

As described in the plaintiffs' Motion to Expedite (Dkt. No. 178) and through declarations

---

[9] Ltr. of C. Fernandez to Council of State Community Dev. Agencies and Nat'l Community Dev. Assoc., June 5, 2025, at p. 3 ("Fernandez Letter."), available at https://perma.cc/4A3P-ZKHD.

12

HUD-PRWORA_000071

Case 1:25-cv-00345-MSM-PAS    Document 86-5    Filed 01/30/26    Page 22 of 23 PageID
#: 3232
Case 3:25-cv-01350-WHO    Document 225    Filed 08/22/25    Page 13 of 15

attached to the Second PI Motion, several plaintiffs faced a regulatory deadline of August 16, 2025, to submit consolidated action plans that are a pre-requisite for receiving several types of grants from HUD, including CoC grants and, pertinently, CDBG grants. *See* Dkt. No. 177-6 (Declaration of G. Grande, explaining that plaintiff the City of Albany, New York, "uses nearly $1 million in federal funds to support public transportation improvements and maintenance within the City … to access these HUD funds, Albany must, in part, submit an annual consolidated plan to HUD," and stating that the deadline for this year's plan was August 16, 2025); Dkt. No. 177-9 (Declaration of J. Fournier, explaining that plaintiff Allegheny County had an August 16, 2025, deadline to submit its HUD Consolidated Five Year Plan for four programs, including the CDBG program).

At least one plaintiff, the City of Petaluma, has already received a challenge to its proposed Consolidated Action Plan based on alleged inconsistency with EO 14,218. *See* Declaration of B. Cochran ("Cochran Decl.") [Dkt. No. 177-37] ¶¶ 12-15. After Petaluma transmitted its 2025 Consolidated Action Plan to HUD on May 15, 2025, HUD staff member Nicholas D. Nordahl on July 1, 2025, "sent an email to Petaluma Housing staff questioning the accuracy of Petaluma's certification that CDBG funds described in the City's 2025 Consolidated Action Plan would be administered in conformity with applicable laws, including Executive Orders." *Id.* ¶ 13.

Cochran, the Assistant City Manager of the City of Petaluma, states that the Nordahl email "indicated that Petaluma would have an opportunity to respond (i.e., to provide specified evidence demonstrating compliance with the certification)," but it "also indicated that Petaluma should reply by close of business Wednesday, July 2, 2025 – that is, just 24 hours after the Nordahl email was sent." *Id.* ¶ 13. More concerningly, "[t]he Nordahl email stated that failure to address HUD's concerns could result in HUD determining that the Petaluma certification is inaccurate or unsatisfactory, which would result in disapproval of the Action Plan," and it "specified that HUD identified language in the City's 2025 Action Plan that appears to HUD to violate specified Executive Orders, including Executive Order 14218." *Id.* It then "directed that the City's response should make specified edits to the City's Action Plan to remove references to specified terms the use of which HUD deemed to violate Executive Orders, including the term 'undocumented

13

United States District Court
Northern District of California

individuals,'" and instructed that the revised Action Plan should include the following statement:

> The city of Petaluma shall administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and certification requirement that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S. C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218 or other Executive Orders or immigration laws. The city will not use funding under this grant in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation. Unless excepted by PRWORA, the city must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

*See* Cochran Decl. ¶ 13; *see also id.*, Ex. A (the "Nordahl email"). Cochran declares that "[t]he Nordahl email … caused sudden uncertainty as to Petaluma's receipt of CDBG and other HUD funding that is critical to food and housing security for some of Petaluma's most vulnerable community members." Cochran Decl. ¶ 15.

The Nordahl email implements the Fernandez and Turner letters, which in turn implement the enjoined section of EO 14,218. The Fernandez letter, issued on June 2, 2025, states that "[a]fter submission and HUD's review of [consolidated action plans and annual action plans], the FY2025 grant agreement will also emphasize conformity with applicable Administration priorities and executive orders," and then, in Condition 7, quotes EO 14,218. The Nordahl email, sent on July 1, 2025, instructs Petaluma to fix its consolidated action plan to conform with EO 14,218, on implied pain of disapproval and loss of CDBG funds.

This agency action is enjoined, for the same reasons the challenged conditions upon CoC grants are. Through the Fernandez Letter and related agency actions, HUD is imposing immigration-related conditions upon grants that share no nexus with immigration enforcement, for the purpose of coercing sanctuary jurisdictions into modifying their policies to conform with federal ones. Pursuant to this Order, condition 7 is enjoined and HUD may not deny plaintiffs federal funding for CDBG grants based on the implementation of condition 7 in the Fernandez letter.

Defendants have not responded directly to the evidence linking condition 7 to the enjoined

14

HUD-PRWORA_000073