*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings." *Nat'l Rifle Assoc. of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 926 (C.D. Cal. 2019) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)).

## V.    DISCUSSION

As stated above, this is the fourth request for a preliminary injunction in this matter. Plaintiffs assert that the Additional Plaintiffs, as well as Nashville, Tucson, and Denver, seek the same injunctive relief previously granted to the other Plaintiffs with respect to the challenged HUD, DOT, and HHS funding conditions, based on factual and legal showings that Plaintiffs contend are materially indistinguishable. Plaintiffs further note that the Court has already determined that Plaintiffs are likely to succeed on the merits of their challenge to those conditions and that they face a likelihood of irreparable harm absent preliminary relief. On that basis, Plaintiffs maintain that the existing injunctions should be extended to the Additional Plaintiffs as well as Nashville, Tucson, and Denver.

Defendants acknowledge that the Additional Plaintiffs rely on facts and law that are largely indistinguishable from those advanced by the existing Plaintiffs and further concede that this Court has found such showings sufficient to warrant preliminary injunctive relief. Accordingly, Defendants do not reassert their prior arguments here, but instead incorporate them by reference. *See, e.g.*, Dkt. No. 372 at 3-4 (stating that this "Court should deny Plaintiffs' fourth preliminary injunction motion for the same reasons set out in Defendants' prior briefs" and that Defendants "continue to stand on [the] counterarguments" raised in opposition to the three prior

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 8

motions for injunctive relief and "incorporate them by reference here"). Because the parties elect to rely on arguments previously presented—arguments that the Court has already thoroughly considered and resolved—the Court does not revisit them here. The Court instead addresses only the limited new arguments Defendants raise with respect to the Additional Plaintiffs.

First, Defendants contend—in cursory fashion—that the Additional Plaintiffs' claims of irreparable harm are undermined because they did not seek injunctive relief until November, several months after the other Plaintiffs did. *See* Dkt. No. 372 at 6. The Court is unpersuaded. As explained in detail in the Court's June 3 and August 12 orders, Defendants have implemented their grant-related guidance in a haphazard, piecemeal, and unpredictable manner, frequently seemingly contradicting guidance issued only weeks earlier. This shifting landscape has required grant recipients to repeatedly reassess the impact of Defendants' actions on their programs and operations, often under significant time pressure and with substantial consequences for services fundamental to their communities. In these circumstances, it is neither surprising nor legally significant that additional local entities—operating on differing grant cycles and subject to varying deadlines—have experienced harm and sought relief at later points as Defendants' actions have continued. The timing of the Additional Plaintiffs' requests therefore does not undermine their showing of irreparable harm.

Second, Defendants contend that the August 12, 2025 Injunction "bars DOT and its components from enforcing four new conditions that were never addressed or argued in Plaintiffs' briefing seeking that injunction," and therefore should not apply to the Additional Plaintiffs.[13] *Id.* at 7. The Court disagrees. First, Defendants did not raise this argument in

_____

[13] The four conditions that Defendant challenges are:

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 9

HUD-PRWORA_000101

opposition to Plaintiffs' motion seeking the August 12, 2025 Injunction and, as a general matter, failure to raise an argument at the appropriate stage constitutes forfeiture of the argument in later stages of the litigation. *See, e.g., Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 86 (S.D.N.Y. 2021) (defendant forfeited arguments in opposition to a preliminary injunction by failing to raise them in opposition to an earlier motion for a temporary restraining order) (citation omitted). More importantly, Plaintiffs did address the four challenged conditions in prior submissions, which were incorporated by reference into their motion seeking the August 12, 2025 Injunction. *See* Dkt. No. 186 at 11. The Court found these arguments persuasive in granting both the June 3 and August 12, 2025 Injunctions.

Lastly, Defendants argue that "any new injunction [should] make clear that it does not prohibit Defendants from requiring certification of compliance with basic, longstanding civil rights laws." *Id.* at 8. This contention merely repackages Defendants' previously rejected argument that the challenged funding conditions do no more than require grant recipients to

---

- "The recipient or applicant agrees to comply with executive orders, including but not limited to Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, as they relate to the application, acceptance, and use of Federal funds for this project or grant.
- "The recipient or applicant will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter."
- "The recipient or applicant must comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination."
- "Performance under this agreement or application shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the recipient or applicant and any applicable sub-recipients. The applicable provisions to this agreement or application include, but are not limited to, the following: Bringing in and harboring certain aliens – 8 U.S.C. 1324; Aiding or assisting certain aliens to enter – 8 U.S.C. 1327; Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing; Executive Order 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity."

Dkt. No. 372 at 7.

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 10

comply with existing federal antidiscrimination laws. As this Court has already explained, the flaw in that position is that the record is replete with evidence showing that Defendants interpret federal antidiscrimination laws in a manner inconsistent with well-established legal precedent. *See, e.g., King County, et al. v. Turner*, 2025 WL 2322763, at \*12–13 (W.D. Wash. Aug. 12, 2025) (internal citations omitted). Grant recipients are thus forced to choose between complying with federal antidiscrimination laws as interpreted by the Trump Administration or as established by controlling legal authority. That choice is untenable, particularly when coupled with the requirement that recipients "certify" that such compliance is "material" for purposes of the False Claims Act. The Court has rejected this argument before and does so again here.

## VI.   CONCLUSION

For the foregoing reasons, as well as the reasons stated in the June 3 and August 12, 2025 orders granting Plaintiffs' previous motions for a preliminary injunction, the Court HEREBY RULES as follows:

(1) the Additional Plaintiffs, as well as existing Plaintiffs Nashville, Tucson, and Denver, are likely to succeed on the merits of their claims that the challenged HUD, DOT, and HHS funding violate separation of powers, are not authorized by statute, and are arbitrary and capricious;

(2) the Additional Plaintiffs, as well as existing Plaintiffs Nashville, Tucson, and Denver, present sufficient evidence to support their claims that they face imminent, irreparable harm absent emergency relief;

(3) that the balance of equities and public interest favors an injunction; and

(4) a stay and/or bond is not warranted.

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 11

HUD-PRWORA_000103

Therefore, Plaintiffs' fourth motion for a preliminary injunction is GRANTED and the August 12, 2025 preliminary injunction [Dkt. No. 338] is EXTENDED, as follows:

> A. The definition of "CoC Plaintiffs" is amended to include the Additional HUD CoC Plaintiffs as defined in Appendix I, and Paragraphs 2–3 of the injunction are extended to apply to the Additional HUD CoC Plaintiffs.
>
> B. The definition of "Non-CoC HUD Plaintiffs" is amended to include the Additional HUD Non-CoC Plaintiffs as defined in Appendix I, and Paragraphs 4–5 of the injunction are extended to apply to the Additional HUD Non-CoC Plaintiffs.
>
> C. The definition of "Non-CoC HUD Plaintiffs" is further amended to include Denver, and Paragraphs 4–5 of the injunction are extended to apply to Denver.
>
> D. The definition of "DOT Plaintiffs" is amended to include the Additional DOT Plaintiffs as defined in Appendix I, and Paragraphs 6–7 of the injunction are extended to apply to the Additional DOT Plaintiffs.
>
> E. The definition of "HHS Plaintiffs" is amended to include the Additional HHS Plaintiffs as defined in Appendix I, and Paragraphs 8–9 of the injunction are extended to apply to the Additional HHS Plaintiffs.
>
> F. The definition of "HHS Plaintiffs" is further amended to include Nashville and Tucson, and Paragraphs 8–9 of the injunction are extended to apply to Nashville and Tucson.
>
> G. The notice and compliance provisions in Paragraphs 10–11 of the injunction are extended to apply to the Additional Plaintiffs, to Denver as to the Non-CoC HUD Grant Conditions, and to Nashville and Tucson as to the HHS Grant Conditions.

//

//

//

//

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 12

This order shall remain in effect pending further orders from this Court.

Dated this 21st day of January 2026.

*Barbara J Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge

## APPENDIX I

The "Additional HUD CoC Plaintiffs" are:

- Allegheny County, Pennsylvania

- City of Berkeley, California

- City of Cincinnati, Ohio

- Delaware County, Pennsylvania

- Los Angeles Homeless Services Authority (LAHSA)

- City of Spokane, Washington

- The "Additional HUD Non-CoC Plaintiffs" are:

- City of Albany, New York

- Alleghany County, Pennsylvania

- City of Berkeley, California

- City of Cincinnati, Ohio

- Delaware County, Pennsylvania

- Los Angeles Homeless Services Authority (LAHSA)

- City of New Haven, Connecticut

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 13

- City of Olympia, Washington

- City of Palo Alto, California

- City of Port Angeles, Washington

- City of Santa Fe, New Mexico

- City of Spokane, Washington

- City of Tacoma, Washington

- Thurston County, Washington

The "Additional DOT Plaintiffs" are:

- City of Albany, New York

- Allegheny County, Pennsylvania

- City of Berkeley, California

- City of Bothell, Washington

- City of Cincinnati, Ohio

- Delaware County, Pennsylvania

- City of New Haven, Connecticut

- City of Palo Alto, California

- City of Port Angeles, Washington

- City of Santa Fe, New Mexico

- City of Tacoma, Washington

- Thurston County, Washington

The "Additional HHS Plaintiffs" are:

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 14

HUD-PRWORA_000106

- Allegheny County, Pennsylvania

- City of Berkeley, California

- City of Cincinnati, Ohio

- Delaware County, Pennsylvania

- City of New Haven, Connecticut

- City of Santa Fe, New Mexico

- Thurston County, Washington

The Additional HUD CoC Plaintiffs, Additional HUD Non-CoC Plaintiffs, Additional DOT Plaintiffs, and Additional HHS Plaintiffs, collectively, are referred to herein as the Additional Plaintiffs.

ORDER GRANTING PLAINTIFFS' FOURTH
MOTION FOR PRELIMINARY INJUNCTION

- 15

HUD-PRWORA_000107

**Washburn, Tenille E**

| | |
|---|---|
| **From:** | Office of Public Affairs |
| **Sent:** | Thursday, August 14, 2025 12:41 PM |
| **To:** | Office of Public Affairs |
| **Subject:** | Notice of Court Order - King County v. Turner, 2:25-cv-814-BJR (W.D. Wash.) |
| **Attachments:** | 2025.08 Notice of new PI - HUD.pdf; 2025.08.12 Order Granting Third PI.pdf |
| **Importance:** | High |

THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

# OFFICE OF PUBLIC AFFAIRS

HUD Staff and Contractors,

At the direction of the United States District Court for the Western District of Washington, you are hereby advised that a third preliminary injunction order has been entered in the case of *King County v. Turner*, 2:25-cv-814-BJR (W.D. Wash.), ECF No. 338 (August 12, 2025). The Court has directed that notice of the order be provided to "all Defendants and their employees by the end of business on the second day after issuance of this Order."

A copy of the notice prepared by the U.S. Attorney's Office for the Western District of Washington regarding the Court's order is attached for reference.

1

HUD-PRWORA_000108

To:     Agency Employees and Contractors
        U.S. Department of Housing and Urban Development

From:   Brian C. Kipnis, Rebecca S. Cohen, Sarah L. Bishop
        U.S. Attorney's Office for the Western District of Washington

Date:   August 14, 2025

Re:     Notice of Court Order, *King County v. Turner*, 2:25-cv-814-BJR (W.D. Wash.)

---

## NOTICE OF COURT ORDER

At the direction of the United States District Court for the Western District of Washington, you are hereby advised that a new preliminary injunction order has been entered in the case of *King County v. Turner*, 2:25-cv-814-BJR (W.D. Wash.), ECF No. 338 (Aug. 12, 2025). The Court has directed that notice of the order be provided to "all Defendants and their employees by the end of the second day after [its] issuance." A copy of the Court's order is enclosed for reference. You should review the injunction issued by the Court for its full terms. But to assist in your compliance, we provide a summary in this notice.

As relevant to you, this case challenges certain terms incorporated into U.S. Department of Housing and Urban Development ("HUD") grant agreements for Fiscal Years 2024 and 2025 awarded to the relevant plaintiffs (the "HUD Plaintiffs"). Lists of the relevant grant terms (the "Enjoined Terms") and HUD Plaintiffs can be found at the end of this notice.

Under the Court's order:

1.  HUD is enjoined from:

    a)  imposing or enforcing the Enjoined Terms at any stage of the grantmaking process, with respect to any HUD funds awarded to the HUD Plaintiffs;

    b)  as to the HUD Plaintiffs, rescinding, withholding, cancelling, or otherwise not processing any grant agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning grant funds, based on the Enjoined Terms, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to the Enjoined Terms;

    c)  requiring the HUD Plaintiffs to make any "certification" or other representation related to compliance with the Enjoined Terms;

    d)  retroactively applying the Enjoined Terms to HUD Plaintiffs' grant agreements during the effective period of the Court's injunctions or TROs in this lawsuit— *i.e.*, from May 7, 2025, onwards; or

1

e)  refusing to issue, process, or sign grant agreements based on HUD Plaintiffs' participation in this lawsuit.

2.  Further, HUD shall treat as null, void, and rescinded:

    a)  any actions already taken to implement or enforce the Enjoined Terms as to the HUD Plaintiffs, including any delays or withholding of funds based on the Enjoined Terms;

    b)  any of the Enjoined Terms included in any grant agreement executed by any HUD Plaintiff during the effective period of the Court's injunctions or TROs in this lawsuit, *i.e.*, from May 7, 2025, onwards.

3.  Lastly, HUD shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation.

As the Court's order reflects, the injunction is temporary, as litigation in the case is ongoing. But the Court's order is in effect and must be complied with until further notice.

If you have any questions about the scope or effect of the Court's order, please contact HUD's Office of General Counsel. Thank you for your attention to this matter.

2

## I.    TERMS AND PLAINTIFFS RELATED TO CONTINUUM OF CARE ("CoC") GRANTS

### A. Relevant Plaintiffs:

**Important:** the relevant plaintiffs include both the entities listed below *and* their continuum members or subrecipients.

Arizona:
Pima County
Tucson

California:
Alameda County
Oakland
Pasadena
Petaluma
San Francisco (City and County)
San Jose
San Mateo County
Santa Clara County
Santa Monica Housing Authority
Sonoma County

Maryland:
Baltimore

Massachusetts:
Boston
Cambridge

Minnesota:
Hennepin County
Ramsey County

New Mexico:
Albuquerque

New York:
New York City

Ohio:
Columbus

Oregon:
Multnomah County

Tennessee:
Nashville & Davidson County (Metropolitan Government of)

Washington:
King County & King County Regional Homelessness Authority
Pierce County
Snohomish County

Wisconsin:
Dane County
Milwaukee

3

HUD-PRWORA_000111

## B. Relevant Enjoined Terms:

**Important:** the enjoined terms include both the terms listed below *and* any materially similar terms or conditions.

- The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

- The recipient or applicant agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

- The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

- The recipient or applicant shall not use any Grant Funds to fund or promote elective abortions, as required by Executive Order 14182, Enforcing the Hyde Amendment;

- The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) ("PRWORA") and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services [sic] may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

- No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

- Subject to the exceptions provided by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States;

- The recipient or applicant agrees that use of Grant Funds and its operation of projects assisted with Grant Funds are governed by all Executive Orders.

4

## II.    TERMS AND PLAINTIFFS RELATED TO OTHER HUD GRANTS

### A.  Relevant Plaintiffs:

**Important:** the relevant plaintiffs include both the entities listed below *and* their continuum members or subrecipients.

Arizona:
Pima County
Tucson

California:
Alameda County
Culver City & Housing Authority
Los Angeles
Oakland
Pasadena
Petaluma
San Diego
San Francisco
San Jose
San Mateo County
Santa Clara
Santa Monica & Housing Authority
Santa Rosa
Sonoma County & Community Development
Commission
Watsonville

Illinois:
Chicago

Maryland:
Baltimore

Massachusetts:
Boston
Cambridge

Minnesota:
Hennepin County
Minneapolis
Ramsey County

New Mexico:
Albuquerque

New York:
New York City
Rochester

Ohio:
Columbus

Oregon:
Bend
Eugene
Multnomah County
Portland

Pennsylvania:
Pittsburgh

Tennessee:
Nashville

Washington:
Bellevue
Bellingham
Bremerton
King County & Regional Homelessness
Authority
Kitsap County
Pierce County
Snohomish County

Wisconsin:
Dane County
Milwaukee

5

## B.  Relevant Enjoined Terms:

**Important:** the enjoined terms include both the terms listed below *and* any materially similar terms or conditions.

- The recipient or applicant will not use Federal funding to promote diversity, equity, and inclusion ("DEI") mandates, policies, programs, or activities that violate any applicable Federal antidiscrimination laws;

- – The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

- The recipient or applicant agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

- The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;

- The recipient or applicant shall not use any grant funds to fund or promote elective abortions, as required by Executive Order 14182, Enforcing the Hyde Amendment;

- The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) ("PRWORA") and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

- If applicable, no state or unit of general local government that receives or applies for funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

- Unless excepted by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

- The recipient or applicant must comply with applicable existing and future Executive Orders, as advised by the Department, including but not limited to E.O. 14182, Enforcing the Hyde Amendment; Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; Executive Order 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing.

6

HUD-PRWORA_000114

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESMTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR. COUNTY, *et al.*

Plaintiffs,

vs.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, *et al.*,

Defendants.

NO. 2:25-cv-814

**ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR PRELIMINARY INJUNCTION**

## I.      INTRODUCTION

Congress, as the branch of government constitutionally entrusted with the power of the purse, has long made critical investments in programs to end homelessness, strengthen communities, and improve local infrastructure. These budget decisions are not mere technical exercises, they reflect difficult judgments (and compromises) about how best to allocate our nation's resources. Every dollar allocated is a deliberate decision on how to serve the public good. And under the constitution, it is Congress—not the President—that has the authority to

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 1

HUD-PRWORA_000115

make those judgments. Yet that is precisely what the Plaintiffs in this case allege the current administration has attempted to override. They contend that the Trump Administration unlawfully seeks to impose hotly contested political conditions on funds that Congress has already appropriated—substituting the Executive's preferences for the will of Congress, in clear defiance of constitutional limits.

On June 3, 2025, this Court enjoined Defendants U.S. Department of Housing and Urban Development ("HUD") and U.S. Department of Transportation ("DOT") from imposing unlawful funding conditions on an estimated $4 billion in HUD Continuum of Care Program ("CoC") and DOT grants that had been awarded to the then Plaintiffs—at the time 31 local governments and agencies—to support vital programs across the country, including homelessness prevention and transportation infrastructure. This Court determined that those Plaintiffs are likely to succeed on the merits of their claims that Defendants' actions violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, as contrary to the constitution and in excess of statutory authority, and arbitrary and capricious.

On July 10, 2025, Plaintiffs filed an amended complaint in which they added approximately 30 additional local governments and agencies as plaintiffs and the U.S. Department of Health and Human Services ("HHS") as a defendant. Currently before the Court is Plaintiffs' Third Motion for Preliminary Injunction. Dkt. No. 186. Plaintiffs allege that not only is HUD attempting to impose the same unlawful funding conditions that this Court previously enjoined on CoC grants awarded to some of the newly added Plaintiffs, but it is attempting to impose the funding conditions on all HUD grants, regardless of whether they are CoC grants. Plaintiffs further claim that DOT is also attempting to impose the same previously enjoined

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 2

funding conditions on grants awarded to some of the newly added Plaintiffs. Lastly, Plaintiffs allege that HHS has begun imposing substantially similar unlawful funding conditions on its grants. Plaintiffs assert that Defendants' actions threaten more than $12 billion in funding that is needed to support essential and life-sustaining programs in their communities and seek a preliminary injunction extending the relief that this Court previously granted in June 2025 to the newly added Plaintiffs that have CoC and/or DOT grants, barring HHS from applying the unlawful funding conditions on its grants, and barring HUD from doing the same as to all of its grant programs.

Having reviewed the briefs and exhibits filed in support of and in opposition to the motion, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.    PROCEDURAL HISTORY

This case started on May 2, 2025 when Martin Luther King, Jr. County ("King County"), Pierce County, Snohomish County, City and County of San Francisco ("San Francisco"), Santa Clara County, Boston, Columbus, and New York City (collectively, "the Original Plaintiffs") sued HUD, DOT, and the Federal Transit Administration ("FTA"), as well as the agencies' heads in their official capacities, challenging the imposition of new funding conditions on grants that the Original Plaintiffs had been conditionally awarded for fiscal year 2024.[1] Dkt. 1. Seven of the Original Plaintiffs (excluding Columbus) then moved for a temporary restraining order ("TRO") on May 5, 2025. The Court held a hearing and granted their motion two days later. Dkt. Nos. 5,

---

[1]The original Defendants were HUD, DOT, Scott Turner in his official capacity as Secretary of HUD, Sean Duffy in his official capacity as Secretary of DOT, FTA, and Matthew Welbes as the acting Director of FTA. Dkt. No. 1 at ¶¶ 16-21.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 3

HUD-PRWORA_000117

51–52. At the conclusion of the TRO hearing, the Original Plaintiffs stated their intent to move for a preliminary injunction on the same issues subject to the TRO, which was set to expire fourteen days later. Dkt. No. 53. The Court ordered briefing and on May 21, 2025, held a hearing on the motion for a preliminary injunction. *Id.*; Dkt. No. 73. At the conclusion of that hearing, the Court determined that good cause existed to extend the TRO by another fourteen days, to June 4, 2025, and stated that it would issue a written decision on the motion for preliminary injunction by that date. Dkt. No. 73.

Later that day the Original Plaintiffs filed an amended complaint adding 23 local governments and agencies as Plaintiffs, as well as the Federal Highway Administration ("FHWA"), the Federal Aviation Administration ("FAA"), the Federal Railroad Administration ("FRA"), and the component heads in their official capacities, as Defendants.[2] Dkt. No. 71. The 23 newly added Plaintiffs brought the same claims and challenged the same funding conditions as the Original Plaintiffs. Dkt. 71. They also sought a TRO and preliminary injunction, which the Court granted. Dkt. Nos. 72, 152. Defendants appealed the preliminary injunction order to the U.S. Court of Appeals for the Ninth Circuit, where the appeal remains pending.[3] Dkt. No. 173.

---

[2] The 23 newly added Plaintiffs were the City and County of Denver, Colorado ("Denver"), the Metropolitan government of Nashville and Davidson County, Tennessee ("Nashville"), Pima County, Arizona ("Pima County"), County of Sonoma, California ("Sonoma"), City of Bend, Oregon ("Bend"), City of Cambridge, Massachusetts ("Cambridge"), City of Chicago, Illinois ("Chicago"), City of Culver City, California, ("Culver City"), City of Minneapolis, Minnesota ("Minneapolis"), City of Pittsburgh, Pennsylvania ("Pittsburgh"), City of Portland, Oregon ("Portland"), City of San Jose, California ("San Jose"), City of Santa Monica, California ("Santa Monica"), City of Pasadena, California ("Pasadena"), City of Tucson, Arizona ("Tucson"), City of Wilsonville, Oregon ("Wilsonville"), Central Puget Sound Regional Transit Authority located in King, Pierce, and Snohomish Counties, Washington ("CPSRTA"), Intercity Transit located in Thurston County, Washington ("Intercity Transit"), Port of Seattle, Washington ("Port of Seattle"), King County Regional Homelessness Authority located in King County, Washington ("King County RHA"), Santa Monica Housing Authority, California ("Santa Monica HA"), San Francisco County Transportation Authority, located in the City and County of San Francisco, California ("SFCTA"), and Treasure Island Mobility Management Agency located in Treasure Island and Yerba Buena Island, California ("TIMMA"). Dkt. No. 71 at ¶¶ 8-38. The newly added Defendants were FHWA, Gloria M. Shepard as the acting Director of FHWA, FAA, Chris Rocheleau as acting Administrator of FAA, FRA, and Drew Feeley as acting Administrator of FRA. *Id.* at ¶¶ 39-50.

[3] In moving for leave to file the second amended complaint, Plaintiffs asserted that the "claims in the [second amended complaint] challenging new grant conditions are indistinguishable on the facts and law [from] the existing

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 4

Case 1:25-cv-00345-MSM-PAS    Document 86-7    Filed 01/30/26    Page 20 of 25 PageID
Case 2:25-cv-00814-BJR    Document 338    Filed 08/12/25    Page 5 of 50
#: 3270

On July 10, 2025, Plaintiffs filed a second amended complaint adding another 29 local governments and agencies as plaintiffs.[4] Dkt. No. 184. Plaintiffs continue to challenge the HUD and DOT funding conditions as before, but now have added HUD grants outside the CoC program, and have brought new claims against HHS and its agencies, including the Administration for Children and Families ("ACF"), Health Resources and Services Administration ("HRSA"), National Institutes of Health ("NIH"), Substance Abuse and Mental Health Services Administration ("SAMHSA"), and the Centers for Disease Control and Prevention ("CDC"). As before, Plaintiffs seek a preliminary injunction enjoining the imposition of the new funding conditions on their federal grants.

The new Plaintiffs challenging the imposition of the new funding conditions on HUD CoC grants are Alameda County, Albuquerque, Baltimore, Columbus, Dane County, Hennepin

---

claims." Dkt. No. 181 at 4. Defendants did not oppose the motion. While the Ninth Circuit has not ruled directly on the issue of whether a district court retains jurisdiction to allow amendment of pleadings pending appeal of a preliminary injunction, district courts within this circuit have recognized that pending interlocutory appeal they retain jurisdiction over matters that would not change the issues before the appellate court. *See e.g. Center for Food Safety v. Vilsack*, 2011 WL 672802 at *2 (N.D. Cal. 2011). In light of this, the Court concluded that it retained jurisdiction to allow the requested amendment because a significant portion of the second amended complaint simply adds new Plaintiffs challenging Defendants' imposition of the previously enjoined unlawful funding conditions on CoC HUD and DOT grants. And while the second amended complaint does also challenge Defendants' imposition of funding conditions on non-COC HUD and HHS grants, the challenged conditions are either identical or substantially similar to the previously imposed conditions, and the claims implicate identical legal issues. In addition, several of the newly added Plaintiffs face a fast-approaching deadline of August 16, 2025 to submit consolidated/action plans to HUD or forfeit the formula grant funding. Dkt. No. 186 at 1; Dkt. No. 184 at ¶ 623. Nevertheless, if it is determined that this Court lacked jurisdiction because an appeal is pending, then this Court issues this order as an indicative ruling pursuant to Fed. Rule of Civ. P. 62.1(3).

[4] The 29 newly added Plaintiffs are County of Alameda ("Alameda County"), City of Albuquerque ("Albuquerque"), Mayor and City Council of Baltimore ("Baltimore"), City of Bellevue ("Bellevue"), City of Bellingham ("Bellingham"), City of Bremerton ("Bremerton"), County of Dane ("Dane County"), City of Eugene ("Eugene"), City of Healdsburg ("Healdsburg"), County of Hennepin ("Hennepin County"), Kitsap County, City of Los Angeles ("Los Angeles"), City of Milwaukee ("Milwaukee"), Milwaukee County, Multnomah County, City of Oakland ("Oakland"), City of Pacifica ("Pacifica"), City of Petaluma ("Petaluma"), Ramsey County, City of Rochester ("Rochester"), City of Rohnert Park ("Rohnert Park"), City of San Diego ("San Diego"), County of San Mateo ("San Mateo County"), City of Santa Rosa ("Santa Rosa"), City of Watsonville ("Watsonville"), Culver City Housing Authority ("CCHA"), Puget Sound Regional Council ("PSRC"), Sonoma County Transportation Authority ("SCTA"), and Sonoma County Community Development Commission (SCCDC"). Dkt. No. 184 at ¶¶ 136-253.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 5

County, Milwaukee, Multnomah County, Oakland, Petaluma, Ramsey County, San Mateo County, and Sonoma County (collectively, "the New CoC Plaintiffs").

The new Plaintiffs challenging the imposition of the new funding conditions on DOT grants are Alameda County, Albuquerque, Baltimore, Bellevue, Bellingham, Bremerton, Cambridge, Dane County, Eugene, Healdsburg, Hennepin County, Kitsap County, Los Angeles, Milwaukee, Milwaukee County, Multnomah County, Oakland, Pacifica, Pasadena, Petaluma, PSRC, Ramsey County, Rochester, Rohnert Park, San Diego, San Mateo County, Santa Rosa, SCTA, and Watsonville (collectively, "the New DOT Plaintiffs").

The Plaintiffs challenging the new funding conditions on non-CoC HUD grants are King County, Pierce County, Snohomish County, Boston, Columbus, San Francisco, Santa Clara, NYC, Bend Cambridge, Chicago, Culver City, Minneapolis, Nashville, Pasadena, Pima County, Pittsburgh, Portland, San Jose, Santa Monica, Tucson, King County RHA, Santa Monica HA, Alameda County, Albuquerque, Baltimore, Bellevue, Bellingham, Bremerton, Dane County, Eugene, Hennepin County, Kitsap County, Los Angeles, Milwaukee, Multnomah County, Oakland, Petaluma, Ramsey County, Rochester, San Diego, San Mateo County, Santa Rosa, Sonoma County, Watsonville, CCHA, and SCCDC (collectively, "the Non-CoC HUD Plaintiffs").

Lastly, the Plaintiffs challenging the HHS grants are Alameda County, Baltimore, Boston, Cambridge, Chicago, Columbus, Dane County, Denver, Eugene, Hennepin County, King County, Milwaukee, Minneapolis, Multnomah County, NYC, Oakland, Pacifica, Pierce

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 6

HUD-PRWORA_000120

County, Pima County, Ramsey County, Rochester, San Francisco, Santa Clara, San Mateo County, Snohomish County, and Wilsonville (collectively, "the HHS Plaintiffs").[5]

### III.   FACTUAL BACKGROUND[6]

As stated above, initially this lawsuit concerned the allocation of congressionally appropriated federal funds through HUD and DOT grant programs, and several DOT operating administrations. Originally the lawsuit concerned only HUD grants through its CoC program, but with the second amended complaint, while Plaintiffs still challenge the funding conditions on the CoC grants (as well as DOT grants), they now object to funding conditions that HUD seeks to impose on all of its grants. In addition, the lawsuit has expanded to include grants administered by HHS and several of its operating administrations, including ACF, HRSA, NIH, SAMHSA, and the CDC.

### A.   HUD CoC and DOT Grants

HUD administers the CoC program with funds appropriated by Congress through the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11301(b)(2)–(3). The CoC program is designed to assist individuals and families experiencing homelessness by providing services to help such individuals move into transitional and permanent housing, with the goal of long-term stability. Congress established DOT in 1966 "to assure the coordinated, effective administration of the transportation programs of the Federal Government" and has established by statute a wide variety of grant programs that provide federal funds to state and local governments for public transit services. *See* Department of Transportation Act, Pub. L. No. 89-670, 80 Stat. 931 (1966).

---

[5] Note, several Plaintiffs fall into more than one Plaintiff group.
[6] This Court assumes familiarity with the detailed fact section set forth in its June 3, 2025 order granting Plaintiffs' motions for a preliminary injunction. Dkt. No. 169.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 7

HUD-PRWORA_000121

## 1.    The Funding Conditions on HUD CoC and DOT Grants

In the first two motions for a preliminary injunction, Plaintiffs charged HUD and DOT with imposing funding conditions that are not authorized by statute on HUD CoC and DOT grants and are therefore unlawful. Plaintiffs argued that the new funding conditions sought to coerce grant recipients dependent on federal funding into implementing the Trump Administration's policy agenda. Specifically, Plaintiffs objected to the following six conditions with respect to the CoC grants:

A. The recipient "shall not use grant funds to promote 'gender ideology,' as defined in E.O. 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government";

B. The recipient "agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [the False Claims Act, 31 U.S.C. § 3729(b)(4)]";

C. The recipient "certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964";

D. The recipient "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment";

E. "No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation"; and

F. "Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA")], the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States."

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 8

HUD-PRWORA_000122

Dkt. No. 11 ("McSpadden Decl."), Ex. A at 3. And Plaintiffs objected to the following three conditions with respect to the DOT grants:

A. "Pursuant to section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of [the False Claims Act, 31 U.S.C. § 3729(b)(4)]";

B. "Pursuant to section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, by entering into this Agreement, Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws"; and

C. "[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

Dkt. No. 71 at ¶¶ 164, 172. In addition, the new funding conditions also required recipients to comply with all executive orders. McSpadden Decl., Ex. A at 1, ¶ 5; Dkt. No. 71 at ¶¶ 168, 170.

Plaintiffs challenged Defendants' imposition of the foregoing conditions on the grants, arguing that the conditions are unconstitutional, violate the APA, and exceed statutory authority. They further argued that they would be irreparably harmed if the conditions were imposed on the grants and sought injunctive relief from this Court.

### 2. This Court Grants Injunctive Relief to Plaintiffs

This Court determined that Plaintiffs were entitled to a preliminary injunction because they satisfied the *Winter* factors. Dkt. No. 169 at 30 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Plaintiffs established that they are likely to succeed on the merits of their APA claim because Defendants' actions are contrary to the constitution, in excess of statutory

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 9

authority, and arbitrary and capricious. *Id.* at 30-38. Plaintiffs also demonstrated that they were likely to suffer irreparable harm in the absence of preliminary injunctive relief and that the balance of equities weighed in favor of Plaintiffs. *Id.* at 39-45. Therefore, among other relief, the Court enjoined Defendants from:

> (1) imposing or enforcing the new funding conditions, as defined in Plaintiffs' motions for preliminary injunction, or any materially similar terms or conditions with respect to any HUD CoC or DOT funds awarded to Plaintiffs;

> (2) with respect to Plaintiffs, rescinding, withholding, cancelling, or otherwise not processing any HUD CoC and/or DOT Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning HUD CoC and/or DOT funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objection to conditions enjoined by this preliminary injunction;

> (3) requiring Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions; or

> (4) refusing to issue, process, or sign HUD CoC and/or DOT Agreements based on Plaintiffs' participation in this lawsuit.

*Id.* at 46-48.

### 3.    New HUD CoC and DOT Plaintiffs

Plaintiffs allege that despite this Court enjoining Defendants from imposing the unlawful funding conditions on the Original Plaintiffs' HUD CoC grants, Defendants are attempting to impose the conditions on CoC grants awarded to Alameda County, Albuquerque, Baltimore, Dane County, Hennepin County, Milwaukee, Multnomah County, Oakland, Petaluma, Ramsey County, San Mateo County, and Sonoma County—the New CoC Plaintiffs. Dkt. No. 184 at ¶¶ 292-293. According to Plaintiffs, the CoC grants will allow the New CoC Plaintiffs "to continue homelessness assistance programs, ensuring [their] ability to serve their residents so they [will] not experience a sudden drop off in the availability of housing services, permanent and

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 10