**D.     Irreparable Injury**

A plaintiff seeking a preliminary injunction must establish that it is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. Such harm "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991)).

The Court addressed this issue when previously granting preliminary relief, stating:

> Plaintiffs allege several forms of irreparable harm that are either presently occurring, or are likely to occur, in the absence of injunctive relief. They are facing a choice between two untenable options; as this Court has already determined, 'Defendants have put Plaintiffs in the position of having to choose between accepting conditions that they believe are unconstitutional and risking the loss of hundreds of millions of dollars in federal grant funding, including funding that they have already budgeted and are committed to spending.' On the one hand, being forced to accept conditions that are contrary either to statute or to the Constitution (or both) is a constitutional injury, and constitutional injuries are 'unquestionably' irreparable. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

> On the other hand, avoiding the constitutional offense by refusing to agree to the new funding conditions may very well result in the loss of access to promised grant funds. And indeed, Defendants have not denied that Plaintiffs would be assuming this risk by not signing the agreements. They merely complain that Plaintiffs have not provided details as to when exactly that loss will occur. But this argument misses the point. It is this looming risk itself that is the injury, and one that Plaintiffs are already suffering. Courts evaluating similar circumstances have recognized that this injury of acute budgetary uncertainty is irreparable; '[w]ithout clarification regarding the Order's scope or legality, the Counties will be obligated to take steps to mitigate the risk of losing millions of dollars in federal funding, which will include placing funds in reserve and making cuts to services. These mitigating steps will cause the Counties irreparable harm.' *Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). While a preliminary injunction will not eliminate these risks entirely, Plaintiffs have demonstrated it will at least mitigate them pending

---

Powers doctrine, and in excess of Defendants' statutory authority, and must therefore be set aside under the APA—the Court's inquiry into the likelihood-of-success factor is at an end.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 33

HUD-PRWORA_000147

resolution of this case on its merits.

> Furthermore, Plaintiffs have submitted substantive and detailed evidence illustrating the ways in which a loss of grant funds would be devastating and irreparable if these risks in fact materialize. . . . . The administration's attempt to compel Plaintiffs' compliance with unrelated policy objectives by leveraging the needs of our most vulnerable fellow human beings is breathtaking in its callousness. Defendants' argument that these harms are not irreparable is simply wrong.

Dkt. No. 169 at 39-42 (some internal citations omitted).

Plaintiffs have once again provided comprehensive evidence (in the form of nearly 100 declarations from local government and agency administrators, *see* dkt. nos. 187-282) demonstrating that should the loss of the grant funds come to pass, the resulting harm would be severe and irreparable. In addition, Plaintiffs have provided substantial evidence demonstrating that this harm is not, as Defendants suggest, merely monetary in nature. Adequate financial compensation for the destabilization of immediate and future budgets, reductions in workforce, hundreds of shelter-unstable families losing access to housing, loss of access to health care services to vulnerable populations, and the termination of transportation projects simply does not exist. Therefore, the Court concludes that the harms Plaintiffs have alleged are quintessentially irreparable in nature and can be avoided only by entry of the requested injunction.

**E.    The Balance of Equities and Public Interest Favor Plaintiffs**

In deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Disney Enters*, 869 F.3d at 866 (quoting *Winter*, 555 U.S. at 24). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal quotation marks and citation omitted). Where the government is a party, the balance of equities

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 34

HUD-PRWORA_000148

and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Defendants once again argue that the balance of equities and the public interest favor Defendants because "[en]suring compliance with federal laws is assuredly in the public interest." Dkt. No. 334 at 14. But as discussed *supra*, the contested funding conditions are not congressionally authorized, nor do they merely seek compliance with federal law. Defendants do not have a legitimate interest in ensuring that funds are spent pursuant to conditions that were likely imposed in violation of the APA and/or the Constitution. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (there is no legitimate government interest in violating federal law). Defendants also contend that "Plaintiffs could be compensated for any lost money after a ruling on the merits" in this case. Dkt. No. 334 at 14. The Court has already rejected the notion that Plaintiffs could be adequately compensated for the devastation that would result from the loss of the federal funding. Thus, for the reasons outlined above, the irreparable harms Plaintiffs face in the absence of an injunction tip the balance of equities sharply in their favor.

**F.    The Court Denies Defendants' Request for a Bond and Request to Stay**

Defendants request that if this Court issues an injunction, it be stayed pending any appeal and further requests that this Court require Plaintiffs to post a bond for the value of the specific grants subject to the injunction pursuant to Fed. R. Civ. P. 65(c). The Court denies both requests. Defendants have not met the standard for a stay. *See, e.g.*, *Maryland v. Dep't of Agriculture*, JKB-25-0748, 2025 WL 800216, at *26 (D. Md. Mar. 13, 2025) ("It is generally logically inconsistent for a court to issue a TRO or preliminary injunction and then stay that order, as the findings on which those decisions are premised are almost perfect opposites."). Nor have Defendants argued,

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 35

let alone demonstrated, that they will suffer any material harm from the injunction the Court issues today. "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citations and internal quotation marks omitted). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up).

## V. CONCLUSION

For the foregoing reasons,

1.     Plaintiffs' Third Motion for Preliminary Injunction is GRANTED;

2.     HUD and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD CoC Parties"), are enjoined from (1) imposing or enforcing the CoC Grant Conditions, as defined in the Appendix II to this Order, or any materially similar terms or conditions at any stage of the grantmaking process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, with respect to any CoC funds awarded to the New CoC Plaintiffs or members of their Continuums; (2) as to the New CoC Plaintiffs or members of their Continuums, rescinding, withholding, cancelling, or otherwise not processing any CoC Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the New CoC Plaintiffs or members of their

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 36

Continuums to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign CoC Agreements based on New CoC Plaintiffs' participation in this lawsuit;

3. The Enjoined HUD CoC Parties shall immediately treat any actions taken to implement or enforce the CoC Grant Conditions or any materially similar terms or conditions as to the New CoC Plaintiffs or their Continuums, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this preliminary injunction is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any New CoC Plaintiff or member of a New CoC Plaintiff's Continuum; and may not retroactively apply such conditions to grant agreements during the effective period of this preliminary injunction. The Enjoined HUD CoC Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

4. HUD, all of the HUD program offices, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD Parties"), are enjoined from (1) imposing or enforcing the Non-CoC HUD Grant Conditions, as defined in the Appendix II to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, with respect to any non-CoC HUD funds awarded to the Non-CoC HUD Plaintiffs, their consortia, or their subrecipients; (2) as to the Non-CoC HUD Plaintiffs, their consortia, or their subrecipients, rescinding, withholding, cancelling, or otherwise

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 37

HUD-PRWORA_000151

not processing any non-CoC HUD awards, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning non-CoC HUD funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the Non-CoC HUD Plaintiffs, their consortia, or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on the Non-CoC HUD Plaintiffs' participation in this lawsuit;

5.    The Enjoined HUD Parties shall immediately treat any actions taken to implement or enforce the Non-CoC HUD Grant Conditions or any materially similar terms or conditions as to the Non-CoC HUD Plaintiffs, their consortia, or their subrecipients, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this preliminary injunction is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any Non-CoC HUD Plaintiff, a member of its consortium, or its subrecipient; and may not retroactively apply such conditions to grant agreements during the effective period of this preliminary injunction. The Enjoined HUD Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

6.    DOT, all of the DOT operating agencies, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined DOT Parties"), are enjoined from (1) imposing or enforcing the DOT Grant Conditions, as defined in the Appendix II to this Order, or any materially similar

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 38

HUD-PRWORA_000152

terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, as to any DOT funds awarded, directly or indirectly, to the New DOT Plaintiffs or their subrecipients; (2) as to the New DOT Plaintiffs or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing the DOT grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning DOT funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the New DOT Plaintiffs or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on New DOT Plaintiffs' participation in this lawsuit;

7.      The Enjoined DOT Parties shall immediately treat any actions taken to implement or enforce the DOT Grant Conditions or any materially similar terms or conditions as to DOT funds awarded, directly or indirectly, to the New DOT Plaintiffs or their subrecipients, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this preliminary injunction is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any New DOT Plaintiff or its subrecipient; and may not retroactively apply such conditions to grant agreements during the effective period of this preliminary injunction. The Enjoined DOT Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 39

HUD-PRWORA_000153

8. HHS, all of the HHS operating divisions and agencies, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HHS Parties"), are enjoined from (1) imposing or enforcing the HHS Grant Conditions, as defined in the Appendix II to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, as to any HHS funds awarded, directly or indirectly, to the HHS Plaintiffs or their subrecipients; (2) as to the HHS Plaintiffs or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing HHS grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning HHS funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the HHS Plaintiffs or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on HHS Plaintiffs' participation in this lawsuit;

9. The Enjoined HHS Parties shall immediately treat any actions taken to implement or enforce the HHS Grant Conditions or any materially similar terms or conditions as to HHS funds awarded, directly or indirectly, to the HHS Plaintiffs or their subrecipients, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this preliminary injunction is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any HHS Plaintiff or its subrecipient;

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 40

and may not retroactively apply such conditions to grant agreements during the effective period of this preliminary injunction. The Enjoined HHS Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

10.    Defendants' counsel shall provide written notice of this Order to all Defendants and their employees by the end of business on the second day after issuance of this Order;

11.    By the end of business on the second day after issuance of this Order, the Defendants SHALL FILE on the Court's electronic docket and serve upon Plaintiffs a Status Report documenting the actions that they have taken to comply with this Order, including a copy of the foregoing notice (paragraph 10 above) and an explanation as to whom the notice was sent;

12.    This order shall remain in effect pending further orders from this Court.

Dated this 12th day of August 2025.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 41

HUD-PRWORA_000155

## APPENDIX I

### A.   Complaint filed May 2, 2025

#### 1.   Plaintiffs

##### a.   CoC Plaintiffs[11]

King County, Pierce County, Snohomish County, City and County of San Francisco, Santa Clara County, Boston, Columbus, and New York City.

##### b.   DOT Plaintiff

King County

#### 2.   Defendants

United States Department of Housing and Urban Development ("HUD"), Department of Transportation ("DOT"), and the Federal Transit Administration ("FTA"), as well as the agencies' heads in their official capacities (Scott Turner in his official capacity as Secretary of HUD, Sean Duffy in his official capacity as Secretary of DOT, and Matthew Welbes in his official capacity as acting Director of the FTA).

### B.   First Amended Complaint filed May 21, 2025

#### 1.   Plaintiffs added:

##### a.   Added CoC Plaintiffs

Metropolitan Government of Nashville & Davidson County ("Nashville"), Pima County, Cambridge, San Jose, Pasadena, Tucson, King County Regional Homelessness Authority located in King County, Washington ("King County RHA"), Santa Monica Housing Authority, California ("Santa Monica HA")

##### b.   Added DOT Plaintiffs

Denver, Nashville, Pima County, Sonoma County, Bend, Chicago, Culver City, Minneapolis, Pittsburgh, San Jose, Santa Monica, Tucson, Wilsonville, Central Puget Sound Regional Transit Authority located in King, Pierce, and Snohomish Counties, Washington ("CPSRTA"), Intercity Transit located in Thurston County, Washington ("Intercity Transit"), Port

---

[11] A Plaintiff may be included in more than one Plaintiff Group.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 42

of Seattle, San Francisco County Transportation Authority, located in the City and County of San Francisco, California ("SFCTA"), and Treasure Island Mobility Management Agency located in Treasure Island and Yerba Buena Island, California ("TIMMA")

### 2.    Defendants added

Federal Highway Administration ("FHWA"), the Federal Aviation Administration ("FAA"), the Federal Railroad Administration ("FRA"), and component heads in their official capacities (Tariq Bokhari as the acting Administrator of FTA,[12] Gloria M. Shepard as the acting Director of FHWA, Chris Rocheleau as acting Administrator of FAA, and Drew Feeley as acting Administrator of FRA).

### C.    Second Amended Complaint filed July 10, 2025

#### 1.    Plaintiffs Added [13]

##### a.    CoC Plaintiffs

Alameda County, Albuquerque, Baltimore, Columbus, Dane County, Hennepin County, Milwaukee, Multnomah County, Oakland, Petaluma, Ramsey County, San Mateo County, and Sonoma County.

##### b.    DOT Plaintiffs

Alameda County, Albuquerque, Baltimore, Bellevue, Bellingham, Bremerton, Cambridge, Dane County, Eugene, Healdsburg, Hennepin County, Kitsap County, Los Angeles, Milwaukee, Milwaukee County, Multnomah County, Oakland, Pacifica, Pasadena, Petaluma, PSRC, Ramsey County, Rochester, Rohnert Park, San Diego, San Mateo County, Santa Rosa, SCTA, and Watsonville.

##### c.    Non-CoC HUD Plaintiffs

King County, Pierce County, Snohomish County, Boston, Columbus, San Francisco, Santa Clara, NYC, Bend Cambridge, Chicago, Culver City, Minneapolis, Nashville, Pasadena, Pima County, Pittsburgh, Portland, San Jose, Santa Monica, Tucson, King County RHA, Santa Monica HA, Alameda County, Albuquerque, Baltimore, Bellevue, Bellingham, Bremerton, Dane County, Eugene, Hennepin County, Kitsap County, Los Angeles, Milwaukee, Multnomah County, Oakland,

---

[12] Replacing Matthew Welbes in his official capacity as acting Director of the FTA.

[13] Some of these are new Plaintiffs; some are previous Plaintiffs but with new claims.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 43

HUD-PRWORA_000157

Petaluma, Ramsey County, Rochester, San Diego, San Mateo County, Santa Rosa, Sonoma County, Watsonville, CCHA, and SCCDC

### d.    HHS Plaintiffs

Alameda County, Baltimore, Boston, Cambridge, Chicago, Columbus, Dane County, Denver, Eugene, Hennepin County, King County, Milwaukee, Minneapolis, Multnomah County, NYC, Oakland, Pacifica, Pierce County, Pima County, Ramsey County, Rochester, San Francisco, Santa Clara, San Mateo County, Snohomish County, and Wilsonville.

### 2.    Defendants added

HHS and its agencies, including the Administration for Children and Families ("ACF"), Health Resources and Services Administration ("HRSA"), National Institutes of Health ("NIH"), Substance Abuse and Mental Health Services Administration ("SAMHSA"), and the Centers for Disease Control and Prevention ("CDC"), as well as Robert F. Kennedy in his official capacity as the Secretary of HHS.

### APPENDIX II

The **"CoC Grant Conditions"** enjoined by this Order are the following terms and conditions:

- The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

- The recipient or applicant agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

- The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

- The recipient or applicant shall not use any Grant Funds to fund or promote elective abortions, as required by Executive Order 14182, Enforcing the Hyde Amendment;

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 44

HUD-PRWORA_000158

– The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) ("PRWORA") and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services [sic] may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

– No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

– Subject to the exceptions provided by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States;

– The recipient or applicant agrees that use of Grant Funds and its operation of projects assisted with Grant Funds are governed by all Executive Orders.

The **"Non-CoC HUD Grant Conditions"** enjoined by this Order are the following terms and conditions:

– The recipient or applicant will not use Federal funding to promote diversity, equity, and inclusion ("DEI") mandates, policies, programs, or activities that violate any applicable Federal antidiscrimination laws;

– The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

– The recipient or applicant agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 45

U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

– The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;

– The recipient or applicant shall not use any grant funds to fund or promote elective abortions, as required by Executive Order 14182, Enforcing the Hyde Amendment;

– The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) ("PRWORA") and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

– If applicable, no state or unit of general local government that receives or applies for funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

– Unless excepted by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

– The recipient or applicant must comply with applicable existing and future Executive Orders, as advised by the Department, including but not limited to E.O. 14182, Enforcing the Hyde Amendment; Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; Executive Order 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 46

HUD-PRWORA_000160

The **"DOT Grant Conditions"** enjoined by this Order are the following terms and conditions:

- Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the recipient or applicant agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

- Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the recipient or applicant certifies that it does not operate any programs promoting diversity, equity, and inclusion ("DEI") initiatives that violate any applicable Federal anti-discrimination laws;

- The recipient or applicant agrees to comply with executive orders, including but not limited to Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, as they relate to the application, acceptance, and use of Federal funds for this project or grant;

- The recipient or applicant will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement ("ICE") and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law;

- The recipient or applicant will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

- The recipient or applicant must comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination;

- The recipient or applicant must comply with all applicable executive orders as they relate to the application, acceptance, and use of Federal funds for this Project;

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 47

HUD-PRWORA_000161

– Performance under this agreement or application shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the recipient or applicant and any applicable sub-recipients. The applicable provisions to this agreement or application include, but are not limited to, the following: Bringing in and harboring certain aliens – 8 U.S.C. 1324; Aiding or assisting certain aliens to enter – 8 U.S.C. 1327; Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing; Executive Order 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity.

The **"HHS Grant Conditions"** enjoined by this Order are the following terms and conditions:

– The recipient or applicant must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

(1) Definitions. As used in this clause –

(a) DEI means "diversity, equity, and inclusion."

(b) DEIA means "diversity, equity, inclusion, and accessibility."

(c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

. . . .

(e) Federal anti-discrimination laws means Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

(2) Grant award certification.

(a) By accepting the grant award, recipients are certifying that:

(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws;

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 48

&ndash; By applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams. Recipients are responsible for ensuring subrecipients, contractors, and partners also comply.

&ndash; All activities proposed in your application and budget narrative must be in alignment with the current Executive Orders;

&ndash; Recipients are required to comply with all applicable Executive Orders;

&ndash; Funds cannot be used to support or provide services, either directly or indirectly, to removable or illegal aliens;

&ndash; By accepting this award, including the obligation, expenditure, or drawdown of award funds, recipients or applicants, whose programs, are covered by Title IX certify as follows:

The recipient or applicant is compliant with Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq., including the requirements set forth in Presidential Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and Recipient will remain compliant for the duration of the Agreement.

The above requirements are conditions of payment that go the essence of the Agreement and are therefore material terms of the Agreement.

Payments under the Agreement are predicated on compliance with the above requirements, and therefore the recipient or applicant is not eligible for funding under the Agreement or to retain any funding under the Agreement absent compliance with the above requirements.

The recipient or applicant acknowledges that this certification reflects a change in the government's position regarding the materiality of the foregoing requirements and therefore any prior payment of similar claims does not reflect the materiality of the foregoing requirements to this Agreement.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 49

HUD-PRWORA_000163

Case 1:25-cv-00345-MSM-PAS    Document 86-9    Filed 01/30/26    Page 18 of 22 PageID
Case 2:25-cv-00814-BJR    Document 3384    Filed 08/12/25    Page 50 of 50
#: 3324

The recipient or applicant acknowledges that a knowing false statement relating to recipient's or applicant's compliance with the above requirements and/or eligibility for the Agreement may subject the recipient or applicant to liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001.

ORDER GRANTING PLAINTIFFS' THIRD
MOTION FOR PRELIMINARY INJUNCTION

- 50

HUD-PRWORA_000164

The Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
## WESMTERN DISTRICT OF WASHINGTON
### AT SEATTLE

MARTIN LUTHER KING, JR. COUNTY; PIERCE COUNTY; SNOHOMISH COUNTY; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF BOSTON; CITY OF COLUMBUS; and CITY OF NEW YORK,

Plaintiffs,

vs.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SEAN DUFFY in his official capacity as Secretary of the U.S. Department of Transportation; the U.S. DEPARTMENT OF TRANSPORTATION; MATTHEW WELBES in his official capacity as acting Director of the Federal Transit Administration; and the FEDERAL TRANSIT ADMINISTRATION, Defendants.

NO. 2:25-cv-814

**ORDER GRANTING PLAINTIFFS' FIRST AND SECOND MOTIONS FOR PRELIMINARY INJUNCTION**

ORDER GRANTING PLAINTIFFS'
MOTIONS FOR PRELIMINARY INJUNCTION

- 1

HUD-PRWORA_000165

# I. INTRODUCTION

Plaintiffs King County, New York City, Denver, and 28 other counties, cities, and local housing and transportation agencies bring this action to challenge the Trump administration's imposition of what Plaintiffs claim are unlawful and politically motivated funding conditions on an estimated $4 billion in critical federal grants. Plaintiffs contend that these funding conditions seek to compel compliance with the administration's political agenda, including mandates to prohibit "promotion" of "gender ideology" and "elective abortions," and to verify that "any Federal public benefit" will not be provided to any "ineligible alien." Plaintiffs claim that these funding conditions are unrelated to the underlying grants, which were conditionally awarded earlier this year by Defendants U.S. Department of Housing and Urban Development ("HUD") and the U.S. Department of Transportation ("DOT"), including through DOT agencies, the Federal Transit Administration ("FTA"), Federal Highway Administration ("FHWA"), Federal Aviation Administration ("FAA"), and Federal Railroad Administration ("FRA").[1] These grants

---

[1] Plaintiffs are Martin Luther King, Jr. County, Washington ("King County"), Pierce County, Washington ("Pierce County"), Snohomish County, Washington ("Snohomish County"), City and County of San Francisco, California ("San Francisco"), County of Santa Clara, California ("Santa Clara"), City of Columbus, Ohio ("Columbus"), City of Boston, Massachusetts ("Boston"), City of New York, New York ("NYC"), City and County of Denver, Colorado ("Denver"), the Metropolitan government of Nashville and Davidson County, Tennessee ("Nashville"), Pima County, Arizona ("Pima County"), County of Sonoma, California ("Sonoma"), City of Bend, Oregon ("Bend"), City of Cambridge, Massachusetts ("Cambridge"), City of Chicago, Illinois ("Chicago"), City of Culver City, California, ("Culver City"), City of Minneapolis, Minnesota ("Minneapolis"), City of Pittsburgh, Pennsylvania ("Pittsburgh"), City of Portland, Oregon ("Portland"), City of San Jose, California ("San Jose"), City of Santa Monica, California ("Santa Monica"), City of Pasadena, California ("Pasadena"), City of Tucson, Arizona ("Tucson"), City of Wilsonville, Oregon ("Wilsonville"), Central Puget Sound Regional Transit Authority located in King, Pierce, and Snohomish Counties, Washington ("CPSRTA"), Intercity Transit located in Thurston County, Washington ("Intercity Transit"), Port of Seattle, Washington ("Port of Seattle"), King County Regional Homelessness Authority located in King County, Washington ("King County RHA"), Santa Monica Housing Authority, California ("Santa Monica HA"), San Francisco County Transportation Authority, located in the City and County of San Francisco, California ("SFCTA"), and Treasure Island Mobility Management Agency located in Treasure Island and Yerba Buena Island, California ("TIMMA") (collectively "Plaintiffs"). Dkt. No. 71 ("Amend. Comp.") ¶¶ 8-38.

Defendants are HUD, DOT, Scott Turner in his official capacity as Secretary of HUD, Sean Duffy in his official capacity as Secretary of DOT, FTA, Tariq Bokhari as the acting Director of FTA, FHWA, Gloria M. Shepard as the

ORDER GRANTING PLAINTIFFS'
MOTIONS FOR PRELIMINARY INJUNCTION

- 2

HUD-PRWORA_000166

support vital programs in urban centers across the country, including homelessness prevention, housing assistance, and transportation infrastructure, that Congress has long recognized as essential through its appropriations. Plaintiffs assert that these new funding conditions are unconstitutional, exceed statutory authority, and violate the Administrative Procedure Act.

Currently before the Court are Plaintiffs' First and Second Motions for Preliminary Injunction, both of which Defendants oppose. Having reviewed the briefs and exhibits filed in support of and in opposition to the motions, the record of the case, and the relevant legal authority, and having heard the argument of counsel, the Court will grant the motions. The reasoning for the Court's decision follows.

## II.    PROCEDURAL HISTORY

This lawsuit began on May 2, 2025, when eight cities and counties across the United States sued HUD, DOT, FTA, and their respective administrators, challenging their imposition of new funding conditions on grants the cities and counties had been conditionally awarded for fiscal year 2024. Dkt. No. 1 ("Compl.").[2] Three days later, on May 5, 2025, seven of the cities and counties filed a motion for a temporary restraining order ("TRO") in which they sought to enjoin HUD, DOT, and FTA from imposing the new funding conditions on the grants.[3] Dkt. No. 5 ("TRO Mot."). After briefing and a hearing on May 7, 2025, this Court granted the motion and temporarily enjoined HUD, DOT, and FTA from: (1) imposing or enforcing the new funding conditions on the grants, (2) rescinding or cancelling the grant agreements (or otherwise impeding

---

acting Director of FHWA, FAA, Chris Rocheleau as acting Administrator of FAA, FRA, and Drew Feeley as acting Administrator of FRA (collectively "Defendants").

[2] The original eight plaintiffs were: King County, Pierce County, Snohomish County, San Francisco, Santa Clara, Boston, Columbus, and NYC. Dkt. No. 1.

[3] Columbus did not join the motion.

ORDER GRANTING PLAINTIFFS'
MOTIONS FOR PRELIMINARY INJUNCTION

- 3

HUD-PRWORA_000167

or withholding the funds) based on the new funding conditions, and (3) requiring Plaintiffs to make certifications or other representations related to compliance with the new funding conditions. Dkt. No. 52 ("TRO Order").

At the conclusion of the hearing on the TRO motion, the seven cities and counties stated their intent to move for a preliminary injunction on the same issues subject to the TRO, which was set to expire fourteen days later. Dkt. No. 53. This Court ordered briefing and on May 21, 2025, held a hearing on the motion for a preliminary injunction. *Id.*; Dkt. No. 73. At the conclusion of that hearing, the Court determined that good cause existed to extend the TRO by another fourteen days, to June 4, 2025, and indicated that it would issue a written decision on the motion for preliminary injunction by that date. Dkt. No. 73. Thereafter, also on May 21, 2025, Plaintiffs filed an amended complaint adding twenty-one cities, counties, and local housing and transit agencies as plaintiffs, as well as FHWA, FAA, FRA, and their respective administrators, as defendants. Dkt. No. 71 ("Amend. Compl."). Plaintiffs Cambridge, KCRHA, Nashville, Pasadena, Pima County, San Jose, Santa Monica HA, and Tucson join in the original plaintiffs' challenge to the imposition of the new funding conditions on HUD grants that they were conditionally awarded for fiscal year 2024. Dkt. No. 72, Ex. 2, n. 1. Plaintiffs Bend, Boston, Chicago, Columbus, Culver City, Denver, Intercity, Minneapolis, Nashville, NYC, Pierce County, Pima County, Pittsburgh, Port of Seattle, Portland, San Francisco, San Jose, Santa Clara, Santa Monica, Snohomish County, Sonoma County, CPSRTA, SFCTA, TIMMA, Tucson, and Wilsonville join in the original plaintiffs' challenge to the imposition of the new funding conditions on DOT grants that they were conditionally awarded for fiscal year 2024. *Id.*

The Amended Complaint was accompanied by Plaintiffs' Second Motion for a Temporary

ORDER GRANTING PLAINTIFFS'
MOTIONS FOR PRELIMINARY INJUNCTION

- 4

HUD-PRWORA_000168