# EXHIBIT 81

*Average Hours per Response:* 4.0.    *Total Estimated Burden:* 160.

| Information collection | Number of respondents | Frequency of response | Responses per annum | Burden hour per response | Annual burden hours | Hourly cost per response | Annual cost |
|---|---|---|---|---|---|---|---|
| HUD–4052 ................... | 40 | 1.0 | 40 | 4.0 | 160 | $36.28 | $5,804.80 |

** GS–12, Step 1, Hourly Basic Rate, 2025 OPM General Schedule (Base) Pay Table.

## B. Solicitation of Public Comment

This notice is soliciting comments from members of the public and affected parties concerning the collection of information described in Section A on the following:

(1) Whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) The accuracy of the agency's estimate of the burden of the proposed collection of information;

(3) Ways to enhance the quality, utility, and clarity of the information to be collected; and

(4) Ways to minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses. HUD encourages interested parties to submit comments in response to these questions.

## C. Authority

Section 2 of the Paperwork Reduction Act of 1995, 44 U.S.C. 3507.

**Bryan W. Horn,**

*Acting Principal Deputy Assistant Secretary for Community Planning and Development.*

[FR Doc. 2025–21102 Filed 11–25–25; 8:45 am]

**BILLING CODE 4210–67–P**

---

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

[DOCKET No. FR–6573–N–01]

## Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit"

**AGENCY:** Office of the General Counsel, HUD.

**ACTION:** Notice.

---

**SUMMARY:** This notice sets forth the interpretation that the U.S. Department of Housing and Development (HUD) uses for the term "Federal public benefit" as used in Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), and its exceptions. In doing so, this notice supersedes any prior interpretation in any notice or other document issued by any HUD program or office.

**FOR FURTHER INFORMATION CONTACT:** Mr. David C. Woll, General Counsel, Office of the General Counsel, U.S. Department of Housing and Urban Development, 451 7th St. SW, Room 10110, Washington, DC 20410, telephone number 202–708–2244. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit: *https://www.fcc.gov/consumers/guides/ telecommunications-relay-service-trs.*

**SUPPLEMENTARY INFORMATION:**

### I. Background

According to Section 401 of PRWORA, 8 U.S.C. 1611(a), aliens who are not "qualified aliens" are not eligible for any "Federal public benefit" as defined in 8 U.S.C. 1611(c). The prohibition set forth in § 1611(a) is subject to certain exceptions set forth in § 1611(b).

Section 401(c) of PRWORA, defines "Federal public benefit" as "(A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States" and "(B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. 1611(c)(1). This definition, too, is subject to certain exceptions. *See id.* (c)(2) (setting forth certain exceptions to the definition of "Federal public benefit").

In addition, under Section 432 of PRWORA, as amended, to the extent required by law, providers of a nonexempt "Federal public benefit" must verify that a person applying for the benefit is a qualified alien and is eligible to receive the benefit. 8 U.S.C. 1642. While the verification requirement is necessary for proper enforcement of PRWORA, it is conceptually distinct from the meaning of the term "Federal public benefit" and this notice is not intended to address the application of such requirement. Neither does this notice speak to "Federal public benefits" that may be subject to other statutory authority besides PRWORA regarding citizenship and alien eligibility.

In the list of substantive exceptions under 8 U.S.C. 1611(b)(1) Congress provided that the prohibition against providing non-qualified aliens with any federal public benefit "shall not apply with respect to the following Federal public benefits:

(B) Short-term, non-cash, in-kind emergency disaster relief [. . .] "(D) Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with appropriate Federal agencies and departments, which (i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

### II. Interpretation

Statutory construction "must begin, and often should end as well, with the language of the statute itself." *United States* v. *Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998) (quoting *Merritt* v. *Dillard,* 120 F.3d 1181, 1185 (11th Cir. 1997). "The plain meaning controls." *United States* v. *Robinson,* 94 F.3d 1325, 1328 (9th Cir. 1996) (citation omitted). The statutory language is clear: if a HUD program falls into either § 1611(c)(1)(A) or (c)(1)(B), such benefits are not available to individuals who are aliens, unless (i) that individual is a qualified alien, or (ii) some other exception applies to the HUD program, either under § 1611(b) or via the definitional limits on "Federal public benefit" set forth in (c)(2). Thus, the task is simple: construe the plain language of (c)(1)(A)

and (c)(1)(B). Those provisions state that "Federal public benefit" means:

(A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States; and

(B) any retirement, welfare, health, disability, *public or assisted housing* (*emphasis added*), postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.

If HUD "provide[s]" the (i) "grant, contract, loan, professional license, or commercial license," or if the "grant, contract, loan, professional license, or commercial license" is "provided by" "appropriated funds of the United States," then such item is a "Federal public benefit." Similarly, if HUD "provide[s]" the "retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit," or such "benefit" is "provided" "by appropriated funds of the United States," then such benefit is a "Federal public benefit," as long as the benefit is "provided to" one of three types of recipients: (i) "an individual," (ii) a "household," or (iii) a "family eligibility unit."

*1. Grant*

Section 1611(c)(1)(A) applies to "any grant, contract, loan, professional license, or commercial license" provided by HUD. For purposes of PRWORA, a grant means the award of funding for an individual or entity to carry out specified activities without the direct involvement of HUD.

HUD administers a multitude of grant programs, including those in which the grants go to individuals, private entities, and institutions (such as building or services grants) and those in which the grants go to States, units of local government as well as non-profit organizations. The grant "recipient" may carry out the activity supported by the grant, but sometimes the recipient may issue a subgrant to an individual or entity. For PRWORA purposes, the term "grant" includes any "subgrant" derivative of a grant. Sometimes the activity supported by the grant is carried out by the recipient and sometimes the recipient acts as a "pass-through entity" "that provides a subaward to a subrecipient to carry out part of a Federal program," 2 CFR 200.1 (definitions for uniform grants guidance for all Federal financial assistance), under which the obligations and requirements on the recipient flow down to the subrecipient.

Section 1611(c)(1) of PRWORA defines a "Federal public benefit" to mean "*any grant*" (emphasis added). "Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali* v. *Fed. Bureau of Prisons,* 552 U.S. 214, 219 (2008) (cleaned up). The statutory text does not distinguish between grants "to individuals" and grants "provided to states or localities." *Contra* 63 FR at 41659. And so, HUD must apply the plain meaning of the statutory text. *E.g., Pub. Serv. Elec. & Gas Co.* v. *F.E.R.C.,* 989 F.3d 10, 19 (D.C. Cir. 2021) ("[A] regulation can never trump the plain meaning of a statute.") (quotes omitted).

It is HUD's position that any grants it administers that are not explicitly governed by another statute are federal public benefits related to housing assistance and are subject to the eligibility requirements under PRWORA. HUD intends to revise its guidance as to which grant programs are deemed covered by PRWORA or by another statute.

*2. "Any Other Similar Benefit"*

To determine whether a HUD program provides "any other similar benefit(s)" under 8 U.S.C. 1611(c)(1)(B), it is instructive to look not just to the enumerated benefits within 8 U.S.C. 1611(c)(1), but also to the exempted Federal public benefits under 8 U.S.C. 1611(b)(1). Here, Congress specified under subparagraphs (B) and (D) that there are exemptions from the general alien restrictions of 8 U.S.C. 1611(a) for certain types of Federal public benefits, including non-cash benefits or in-kind services. In-kind is defined as "in the same manner or with something equivalent" Webster's II: New Riverside University Dictionary (1994). In the context of the statute, "in-kind" means some sort of non-cash benefit that provides goods or services directly, rather than providing cash to procure those goods or services. The exception under subparagraph (D) applies more specifically to in-kind services that are delivered "at the community level, including through public or private nonprofit agencies." It would not make sense for Congress to exclude these limited non-cash or in-kind services explicitly in 8 U.S.C. 1611(b)(1)(B) and (D) if at least some of those benefits were not already captured under the operative definition of "Federal public benefit" under 8 U.S.C. 1611(c). Congress would have no need to carve something out that would not otherwise be covered in the first instance under the "Federal public benefit" definition. As such, the general definition of "Federal public benefit" is best understood to include "assistance" similar to the "deliver[y] [of] in-kind services at the community level, including through public or private nonprofit agencies" where such benefits have not been specifically excluded by 8 U.S.C. 1611(b)(1).

**III. Application to HUD Programs**

HUD interprets PRWORA to apply to all HUD programs related to public or assisted housing as they are "public or assisted housing" for which payments or assistance are "provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States" unless a more specific federal statute applies, *e.g.* Section 214 of the Housing and Community Development Act of 1980, as amended.

HUD has applied the provisions of PRWORA to its Community Planning and Development programs and grants which include Homeless Assistance Programs, particularly the Emergency Solutions Grants (ESG) and Continuum of Care (CoC) programs (*see* 24 CFR parts 576 and 578). HUD considers these programs to award "grants" as defined in PRWORA and therefore covered by the definition of "Federal public benefit" under the statute. As a result, these grant programs are subject to the eligibility and verification provisions under PRWORA.

The covered grant programs include, but are limited to, grants to governments (state and local) or to other organizations. Covered grant programs with governmental grantees include HOME, HOME Investment Partnerships American Rescue Plan (HOME–ARP), National Housing Trust Fund, Community Development Block Grant (CDBG), Community Development Block Grant Disaster Recovery (CDBG–DR), Housing Opportunities for Persons with AIDS (HOPWA) formula, and ESG, but also include Pathways to Removing Obstacles to Housing (PRO Housing) and Preservation and Reinvestment Initiative for Community Enhancement (PRICE) (both competitive). Programs that award grants to non-profit organizations include the CoC program, Congressional earmarks, the HOPWA competitive program, PRO Housing, PRICE and the Self-Help Homeownership Opportunity Program (SHOP).

## IV. Verification and Economic Impact

HUD will undertake a review and revised guidance in order to determine the means of verification of immigration status as they affect those programs not exempt under Section 1611(b)(1). These will address those program recipients (such as States and government actors) who have access to the Systemic Alien Verification for Entitlements (SAVE) program as well as non-government recipients. Under PRWORA, although nonprofit charitable organizations that administer "Federal public benefits" are not required to conduct eligibility verification under 8 U.S.C. 1642(d), it does not relieve states or other governmental from the requirements to ensure that all relevant programs are in compliance with PWRORA. As a result, HUD will be issuing new guidelines related to the verification for benefits provided through its housing assistance and grant programs, including for benefits distributed by charitable non-profit organizations. HUD will be relying in guidance issued by the Department of Homeland Security once that is published.

Due to the multitude of HUD programs that are available to tens of millions of individuals, HUD will continue to evaluate the manner in which it will verify compliance with PRWORA. HUD will, to the maximum extent possible, minimize the imposition of reporting and information and information collection requirements. Similarly, HUD continues to analyze the economic impact of this interpretation, but at this time, has not found there to be significant economic impact. HUD will issue subsequent guidance on verification actions and a final determination regarding the economic impact of this interpretation.

**David C. Woll,**
*General Counsel, Office of the General Counsel.*
[FR Doc. 2025–21120 Filed 11–25–25; 8:45 am]
**BILLING CODE 4210–67–P**

---

# DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

[267A2100DD/AAKC001030/A0A501010.000000]

## Indian Gaming; Approval by Operation of Law of the Eighth Amendment to the Tribal-State Compact for Class III Gaming Between the Nooksack Indian Tribe and the State of Washington

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice.

**SUMMARY:** This notice announces the approval by operation of law of the eighth amendment to the Tribal-State compact for class III gaming between the Nooksack Indian Tribe and the State of Washington governing the operation and regulation of class III gaming activities.

**DATES:** The amendment takes effect on November 26, 2025.

**FOR FURTHER INFORMATION CONTACT:** Mr. Troy M. Woodward, Acting Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, *IndianGaming@bia.gov;* (202) 208–6284.

**SUPPLEMENTARY INFORMATION:** The Indian Gaming Regulatory Act of 1988, 25 U.S.C. 2701 *et seq.,* (IGRA) provides the Secretary of the Interior (Secretary) with 45 days to review and approve or disapprove the Tribal-State compact governing the conduct of class III gaming activity on the Tribe's Indian lands. *See* 25 U.S.C. 2710(d)(8). If the Secretary does not approve or disapprove a Tribal-State compact within the 45 days, IGRA provides the Tribal-State compact is considered to have been approved by the Secretary, but only to the extent the compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(D). The IGRA also requires the Secretary to publish in the **Federal Register** notice of the approved Tribal-State compacts for the purpose of engaging in class III gaming activities on Indian lands. *See* 25 U.S.C. (d)(8)(D). As required by 25 CFR 293.4, all compacts and amendments are subject to review and approval by the Secretary. The Amendment makes several changes including revising age restrictions on gambling and permitting electronic table gaming and sports wagering. The Secretary took no action on the Eighth Amendment to the Tribal-State Compact for Class III Gaming between the Nooksack Indian Tribe and the State of Washington within the 45-day statutory review period. Therefore, the amendment is considered to have been approved, but only to the extent it is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

**William Henry Kirkland III,**
*Assistant Secretary—Indian Affairs.*
[FR Doc. 2025–21213 Filed 11–25–25; 8:45 am]
**BILLING CODE 4337–15–P**

---

# INTERNATIONAL TRADE COMMISSION

[Investigation Nos. 701–TA–760–763 and 731–TA–1743–1746 (Final)]

## Silicon Metal From Angola, Australia, Laos, Norway, and Thailand; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations

**AGENCY:** United States International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission hereby gives notice of the scheduling of the final phase of antidumping and countervailing duty investigation Nos. 701–TA–760–763 and 731–TA–1743–1746 (Final) pursuant to the Tariff Act of 1930 to determine whether an industry in the United States is materially injured or threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of imports of silicon metal from Angola, Australia, Laos, Norway, and Thailand, provided for subheadings 2804.69.10 and 2804.69.50 of the Harmonized Tariff Schedule of the United States, preliminarily determined by the Department of Commerce ("Commerce") to be subsidized from Australia, Laos, Norway, and Thailand and sold at less-than-fair value from Angola and Laos. Commerce's preliminary determinations with respect to silicon metal from Australia and Norway, alleged to be sold in the United States at less-than-fair-value, are pending.

**DATES:** September 25, 2025.

**FOR FURTHER INFORMATION CONTACT:** Jesse Sanchez ((202) 205–2402), Office of Investigations, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server (*https://www.usitc.gov*). The public record for these investigations may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Scope.*—For purposes of these investigations, Commerce has defined the subject merchandise as all forms and sizes of silicon metal, including silicon