# EXHIBIT 84

 

UNITED STATES DEPARTMENT OF JUSTICE
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

August 5, 2016

Dear Recipients of Federal Financial Assistance:

The U.S. Department of Housing and Urban Development (HUD), the U.S. Department of Health and Human Services (HHS), and the U.S. Department of Justice (DOJ) issue this joint letter to remind recipients of federal financial assistance that they should not withhold certain services based on immigration status when the services are necessary to protect life or safety. This is not a new policy but one we think is important to restate. Some grant recipients mistakenly believe they are not authorized to provide critical, life-saving services to certain categories of immigrants.[1] This is not the case. As explained in greater detail below, immigration status is not a bar to providing certain services necessary to protect life or safety, such as emergency shelter, short-term housing assistance including transitional housing, crisis counseling, and intervention programs.

In the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA" or "the Act"), Congress restricted immigrant access to certain public benefits, but also established a set of exceptions to these restrictions. In particular, Congress provided that the following services are excepted from restrictions on immigrant access to certain benefits:

> Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with the appropriate Federal agencies and departments, which (i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

8 U.S.C. §§ 1611(b)(1)(D); 1621(b)(4).

---

[1] For the purposes of this document, the term "immigrants" is used to refer to all individuals who are not U.S. citizens or nationals.

In 2001, after consulting with other Federal agencies, including HUD and HHS, the Attorney General issued an Order reiterating the three-prong test established in PRWORA and specifying the types of programs, services, or assistance determined to be necessary for the protection of life or safety:

> (a) Crisis counseling and intervention programs; services and assistance relating to child protection, adult protective services, violence and abuse prevention, victims of domestic violence or other criminal activity; or treatment of mental illness or substance abuse;

> (b) Short-term shelter or housing assistance for the homeless, for victims of domestic violence, or for runaway, abused, or abandoned children;

> (c) Programs, services or assistance to help individuals during periods of heat, cold, or other adverse weather conditions;

> (d) Soup kitchens, community food banks, senior nutrition programs such as meals on wheels, and other such community nutritional services for persons requiring special assistance;

> (e) Medical and public health services (including treatment and prevention of diseases and injuries) and mental health, disability, or substance abuse assistance necessary to protect life or safety;

> (f) Activities designed to protect the life or safety of workers, children and youths, or community residents; and

> (g) Any other programs, services, or assistance necessary for the protection of life or safety.

Attorney General Order No. 2353-2001, 66 Fed. Reg. 3616 (Jan. 16, 2001).

The Attorney General Order No. 2353-2001 ("the Attorney General Order") remains in effect, and it is important that government-funded and community-based programs, services, or assistance, as specified in the Attorney General Order, remain accessible to all eligible individuals, regardless of immigration status. For example, immigrants experiencing domestic violence or other abuse, including sexual assault, stalking, dating violence, or human trafficking, often face significant obstacles to seeking help and safety. In particular, access to emergency shelter and transitional housing are crucial to a battered immigrant's ability to escape abuse and break the cycle of violence.

The Secretary of HUD issued a letter to all HUD funding recipients, in 2001, clarifying that transitional housing for up to two years is a type of housing assistance covered by the Attorney General Order.2  Transitional housing is by its nature short-term and intended to be a step from

---

[2] The letter issued by the Secretary of HUD on January 19, 2001, to all HUD funding recipients clarifies that the **Attorney General Order covered shelter and transitional housing programs for up to two years.**

emergency shelter to permanent housing. HHS also issued guidance following the Attorney General Order that highlights the eligibility of battered immigrant survivors and their children for HHS-funded shelters and programs.[3] Emergency shelters and transitional housing provide survivors of domestic and sexual violence the opportunity to safely make the transition to freedom from their abusers. They also help stabilize homeless families, runaway or homeless youth, and abused and abandoned children by providing basic needs and safety while they seek to rebuild their lives.

Accordingly, this letter is a reminder to recipients of federal funding that administer programs that (i) are necessary for the protection of life or safety; (ii) deliver in-kind services at the community level; and (iii) do not condition the provision of assistance, the amount of assistance, or the cost of assistance on the individual recipient's income or resources, that such programs are not subject to PRWORA's restrictions on immigrant access to public benefits and must be made available to eligible persons without regard to citizenship, nationality, or immigration status.

In addition to the exception elaborated in the Attorney General Order, PRWORA includes a number of other exceptions that require public benefits to be provided without regard to immigration status. For example, as described at 8 U.S.C. § 161 l(b)(1)(A), Medicaid is available, irrespective of an individual's immigration status, for treatment of an emergency medical condition (including labor and delivery for pregnant women), if an individual otherwise meets the Medicaid eligibility requirements. Public health assistance for immunizations and for testing and treatment of symptoms of communicable diseases can also be provided without regard to an individual's immigration status. 8 U.S.C. § 161 l(b)(1)(C). Also, short-term, non-cash, in-kind emergency disaster relief is available regardless of an individual's immigration status. 8 U.S.C. § 161 l(b)(1)(B).

Even if a program does not meet any of the exceptions described above, **PRWORA** does not prohibit "qualified aliens," as defined in the Act, from receiving certain public benefits. Section 431 of **PRWORA** defines "qualified aliens" to include certain battered immigrants, among others.[4] It is also important to note that there are many government-funded programs and services that are not considered "federal public benefits" or "state or local public benefits" and therefore are not limited by the restrictions on immigrant access to public benefits that were put in place by **PRWORA**.[5]

---

Letter from Andrew Cuomo, Secretary of HUD, to HUD Funds recipients (Jan. 19, 2001), *available at* http://www.vawnet.org/Assoc_Files_VAWnet/HUDLetter.pdf.

[3] Domestic Violence Fact Sheet: Access to HHS-Funded Services for Immigrant Survivors of Domestic Violence, originally issued January 19, 2001, and last revised August 22, 2012, *available at* http://www.hhs.gov/ocr/civilrights/resources/specialtopics/origin/domesticviolencefactsheet.html.

[4] 8 U.S.C. § 1641. Section 107(b) of the Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386 (codified at 22 U.S.C. § 7105(b)(1)), also makes victims of "a severe form of trafficking in persons" eligible for Medicaid and other benefits (if otherwise eligible) to the same extent as an alien who is admitted to the United States as a refugee under section 207 of the Immigration and Nationality Act (INA).

[5] For example, HHS published a list of its programs that fall under the definition of federal public benefit. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit," 63 Fed. Reg. 41,658 (Aug. 4, 1998). It also indicated the criteria by which to determine

"Benefit granting agencies" have the obligation to verify eligibility for federal, state, or local public benefits where required to do so pursuant to PRWORA.[6]  However, PRWORA includes an exemption for nonprofit charitable organizations:  Title IV of the Act provides that nonprofit charitable organizations are not required under the Act to verify the immigration status of applicants for federal, state, or local public benefits.  8 U.S.C. § 1642(d).

It is critical to keep in mind that organizations or agencies that receive federal funding must not discriminate against individuals on a basis prohibited by Title VI of the Civil Rights Act of 1964 (Title VI)/ the Fair Housing Act,[8] the Violence Against Women Act,[9] the Family Violence Prevention and Services Act,[10] Section 109 of Title I of the Housing and Community Development Act of 1974,[11] or any other applicable nondiscrimination law.  Denying an individual a public benefit or treating an individual differently because of that individual's race or national origin would violate one or more of these statutes.  For example, a recipient of federal financial assistance may not deny benefits to applicants because they have ethnic surnames or origins outside the United States.  Nor may the recipient single out individuals who look or sound "foreign" for closer scrutiny, or require them to provide additional documentation of

---

which of its over 300 federal programs do not fall under the definition of "federal public benefit."  Additionally, DOJ's Office for Victims of Crime clarified that Victims of Crime Act (VOCA) victim compensation benefits are not federal public benefits and therefore should not be denied to anyone on the basis of immigration status.  *See* Letter from Joye Frost, Acting Director, Office for Victims of Crime, to Cassie T. Jones, Executive Director, Alabama Crime Victims' Compensation Commission (July 2, 2010), *available at* http://library.niwap.org/wp content/uploads/OlP-OVC-Letter-on-Access-to-VOCA-Victim-Compensation-7.2.2010.pdf  And HUD has determined that benefits under the Lead Hazard Control Program are not considered federal public benefits.  *See* U.S. Dcp't of HUD, Office of Healthy Homes and Lead Hazard Control Policy Guidance No. 2001-01 (Jan. 16.2001).  These are some examples, and not an exhaustive list, of programs that are not "federal public benefits" as defined in PRWORA.

[6] For more information about verification and the nonprofit exemption, see Department of Justice, Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 Fed. Reg. 61344, 61345 (Nov. 17. 1997).

[7] 42 U.S.C. § 2000d (prohibiting discrimination based on race, color, or national origin under any program or activity receiving Federal financial assistance).

[8] 42 U.S.C. §§ 3601-3619 (prohibiting discrimination in housing because of race, color, national origin, religion, sex, familial status, and disability).

[9] 42 U.S.C. § 13925(b)(13) (prohibiting discrimination based on actual or perceived race, color, religion, national origin, sex, gender identity, sexual orientation, or disability under any program receiving VAWA funding).

[10] 42 U.S.C. § 10406(c)(2) (stating that programs and activities funded in whole or in part with funds made available under the Family Prevention and Services Act are considered to be programs and activities receiving federal financial assistance for the purposes of applying prohibitions against discrimination on the basis of race, color, or national origin under Title Vl of the Civil Rights Act); *see also* 42 U.S.C. § 10406(c)(2)(B) (prohibiting discrimination on the basis of sex or religion).

[11] 42 U.S.C. § 5309 (prohibiting discrimination on the basis of race, color, national origin, sex or religion in programs and activities receiving financial assistance from HUD's Community Development Block Grant Program).

citizenship or immigration status.[12]  Also, because individuals might come from families with mixed immigration status, there may be some family members who are eligible for all benefits and others who are not eligible or who can receive only a more limited subset of those benefits. Therefore, benefits providers must ensure that they do not engage in practices that deter eligible family members from accessing benefits based on their national origin.[13]  Moreover, under Title VI of the Civil Rights Act of 1964, protection against national origin discrimination includes ensuring that recipients of federal financial assistance take reasonable steps to provide meaningful access to services for persons with limited English proficiency.[14]

HUD, HHS, and DOJ have the authority to enforce these laws and may appropriately sanction recipients who disregard federal laws, regulations, or guidance that protect the rights of individuals to gain access to emergency shelter, transitional housing, or other services as outlined above on a nondiscriminatory basis.

- For any program funded by HUD, please contact HUD's Housing Discrimination Hotline at 1-800-669-9777, TDD at 1-800-927-9275, or visit the website at http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/online-complaint to report any violations of this directive.

- To report national origin discrimination in HHS programs, please contact HHS's Office for Civil Rights at 1-800-368-1019, 1-800-537-7697 (TDD), by email at ocrmail@hhs.gov, or visit the website at www.hhs.gov/ocr.

- For any programs funded under DOJ, you may contact the Office of Civil Rights at the Office of Justice Programs at 202-307-0690, 202-307-2027 (TDD), by email at askOCR@ojp.usdoj.gov, or at the website http://ojp.gov/about/ocr/complaint.htm.

Sincerely,

Loretta E. Lynch
Attorney General
of the United States

Sylvia M. Burwell
Secretary of Health
and Human Services

Julián Castro
Secretary of Housing
and Urban Development

---

[12] For more information about this, *see* Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 Fed. Reg. 61344, 61346, 61360-61361 (Nov. 17, 1997).

[13] *See, e.g.,* U.S. Dep't of Health & Human Services & U.S. Dep't of Agriculture, Policy Guidance Regarding Inquiries into Citizenship, Immigration Status and Social Security Numbers in State Applications for Medicaid, State Children's Health Insurance Program (SCHIP), Temporary Assistance for Needy Families (TANF), and Food Stamp Benefits (Tri-agency guidance), *available at* http://www.hhs.gov/civil-rights/for-individuals/special-topics/national-origin/tri-agency/index.html; 24 C.F.R. § 5.524.

[14] *See, e.g.*, Exec. Order No. 13,166, 65 Fed. Reg. 50,121 (Aug. 11, 2000); Federal Agency Limited English Proficiency (LEP) Guidance for Recipients, *available at* http://www.lep.gov/guidance/guidance_index.html.