# EXHIBIT 107

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF NEW YORK; STATE OF WASHINGTON; STATE OF RHODE ISLAND; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WISCONSIN, <br> Plaintiffs, <br> v. <br> U.S. DEPARTMENT OF JUSTICE; PAMELA BONDI, in her official capacity as ATTORNEY GENERAL OF THE UNITED STATES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF EDUCATION; LINDA McMAHON, in her official capacity as SECRETARY OF THE U.S. DEPARTMENT OF EDUCATION; U.S. DEPARTMENT OF LABOR; LORI CHAVEZ-DeREMER, in her official capacity as SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; ERIC SCOTT TURNER, in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br> Defendants. | Case No. 1:25-cv-00345 <br><br> DECLARATION OF CAROL VENTURA |

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

## DECLARATION OF RIHOUSING

I, Carol Ventura, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the Executive Director at Rhode Island Housing and Mortgage Finance Corporation ("RIHousing"). Established in 1973 by an act of the Rhode Island General Assembly, RIHousing is a quasi-public corporation and instrumentality of the State of Rhode Island that works to ensure that all people who live and work in Rhode Island can afford a home that meets their needs. To date, we have administered over $503 million in housing development resources and have served more than 17,000 rental households.

2.      I have served as Executive Director of RIHousing since 2019 and have 30 years of experience within the field of affordable housing, including housing finance, HUD programming, homeownership, and development of affordable housing.

3.      I am familiar with the information in the statements set forth below either through personal knowledge, consultation with RIHousing staff, or from my review of relevant documents and information.

4.      I understand that on November 26, 2025, the Department of Housing and Urban Development (HUD) issued a notice ("the HUD PRWORA Notice") under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). 90 Fed. Reg. 54,363. This notice announces a new interpretation as to the grant programs PRWORA covers, specifically, now including the Home Investment Partnerships Program ("HOME") and the Housing Trust Fund ("HTF").

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

5.    RIHousing administers HOME, *see* 24 C.F.R. § 92, and HTF, *see* 24 C.F.R. § 93, as the State of Rhode Island's Participating Jurisdiction (PJ) to provide low-interest loans to facilitate the construction and/or rehabilitation of affordable homes.

6.    RIHousing relies on the historically reliable and consistent awards under HOME and HTF in order to support and, in accordance with HUD regulations, contribute to the acquisition, construction, and rehabilitation of affordable housing within the State of Rhode Island.

7.    In its administration of HOME and HTF, RIHousing has relied on the 1997 interpretation of the programs that fall within the PRWORA requirements. The HUD PRWORA Notice is a significant departure from firmly established past practice, which would impose a significant labor-cost burden on RIHousing and recipients of this funding, as well as create administrative uncertainty.

## HOME

8.    HOME provides formula grants to fund building, buying, and/or rehabilitating affordable housing for rent or homeownership or to provide direct rental assistance to low-income people. It is the largest Federal block grant to state and local governments, designed exclusively to create affordable housing for low-income households. www.hudexchange.info/programs/home/home-overview/

9.    HOME-assisted rental housing must remain affordable for a long-term affordability period determined by the amount of per-HOME assistance or the nature of the activity. Recipients of HOME funding must agree to comply with affordability restrictions that can range from five (5) to thirty (30) years. *See* State of Rhode Island 2025-2029 HUD 5-Year Consolidated Plan and

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

2025 Annual Action Plan, Funding Categories - p. 164. 2025-2029-Rhode-Island-CP-Draft-for-Display.pdf

10. Participating Jurisdictions are required to match 25 cents of every dollar in program funds, thereby mobilizing community resources in support of affordable housing. www.hudexchange.info/programs/home/home-overview/

11. Participating Jurisdictions are also required to have a current and approved Consolidated Plan, which includes an action plan that describes how the jurisdiction will use its HOME funds. www.hudexchange.info/programs/home/home-overview/ and 24 C.F.R. §92.504 and 24 C.F.R. § 91

12. For fiscal year 2025, the State of Rhode Island was awarded $3,557,637.50 in HOME funds. *See* State of Rhode Island 2025-2029 HUD 5 Year Consolidated Plan and 2025 Annual Action plan – p. 3.

13. In accordance with the Consolidated Plan, the State of Rhode Island intends to fund the production and preservation of 1,844 units over the course of the next 5 years through HOME, HTF, and other funding sources. Given the age of Rhode Island's housing stock (the 3rd oldest overall, the oldest rental housing stock in the nation), there is a large need throughout the state for rehabilitation. *see* State of Rhode Island Consolidated Plan 2025-2029 HUD 5 Year Consolidated Plan and 2025 Annual Action Plan - SP 30 Influence of Market Conditions - 91.315(b) (table 46).

14. Over the course of the next five (5) years, RIHousing plans to use approximately $17,788,187 in HOME funds to construct and rehabilitate approximately two hundred fifty (250) rental units and approximately fifty (50) homeowner units throughout the State. *Id.* at Table 50. Similarly, the Consolidated Plan indicates that $500,000.00 in HOME-ARP funds will be used to support efforts to end homelessness and develop permanent supportive housing. *Id.* at Table 52.

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

## HTF

15.    HTF funds are targeted to provide housing, with a focus on rental housing, for extremely low-income and very low-income households. HTF funds are often used in combination with HOME program funds to provide the additional funding needed to increase the availability of rental units. www.hudexchange.info/resources/using-home-htf-funds-within-opportunity-zones/the-essentials-of-oz-home-htf-programs/comparison-of-home-and-htf/

16.    Eligible activities funded within the HTF program include new construction of rental and homebuyer units, acquisition/rehabilitation of rental and homebuyer units, and operating costs for rental projects. *Id.*

17.    Homeownership housing is restricted to first-time homebuyers only and no more than ten percent (10%) of an annual grant of HTF can be used for homeownership housing. *Id.*

18.    HTF investments for rental housing carry a 30-year minimum affordability period to create long-term affordable housing opportunities. *Id.*

19.    As a grantee, RIHousing is required to establish an allocation plan for HTF funding within the State of Rhode Island's Consolidated Plan. *Id.*

20.    For fiscal year 2025, the State of Rhode Island was awarded $3,001,259.36 in HTF funds. *See* State of Rhode Island 2025-2029 HUD 5-Year Consolidated Plan and 2025 Annual Action Plan – p. 3.

21.    Over the course of the next five (5) years, RIHousing plans to use approximately $15 million in HTF funds to increase housing opportunities for low to moderate-income households as well as to preserve the affordability of the State's low to moderate-income housing stock. *Id* at Table 50.

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

## ANTICIPATED EFFECTS

22. Delayed Funding. Developers have already submitted proposals requesting fiscal year 2025 HOME and HTF funding, and there are many projects in the pipeline that would benefit from this funding in the coming years. By requiring the state to "administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under [PRWORA] and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA," RIHousing, owners, and developers will now be faced with an added layer of compliance which was not anticipated at the time these projects were first proposed. The implementation of these restrictions, and any applicable requirements which may be established in the future, will, at the very least, result in delays while each of the parties determines their respective obligations and implements any necessary measures. Delays in construction and rehabilitation projects generally lead to additional costs, which may serve to make a project anticipated to receive HOME or HTF funds less desirable or infeasible.

23. Possible Rescissions or Lack of Awards. While HOME and HTF recipients may generally understand that the requirements of PRWORA may be applicable to such funding, the technical implementation and compliance requirements may not be fully realized until after proposals are submitted and awards are made. If a potential recipient decides that the compliance requirements are too uncertain or too onerous, they may not accept an award. Even if they accept an award, if new requirements are established, or applied, under PRWORA in the future, the recipient may choose to forego the award in order to avoid the requirements that accompany it. The prospect of rescinding or not being able to award these HOME and HTF funds would

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

significantly alter the landscape of affordable housing development within the State of Rhode Island, which has relied on the consistency of these funds for many years.

24.     Administrative Uncertainty. If and when required, the additional requirement of verifying immigration status would be a significant burden to RIHousing staff due, primarily, to the vagueness of the requirement as it currently stands. It is unclear to what extent a person's immigration status must be verified. If HOME or HTF funds are used by a developer to construct an apartment building with rental units, it is unclear whether RIHousing, the landlord, or the management company would be required to verify the immigration eligibility of all initial and future tenants for the duration of the affordability restriction. Similarly, if HOME or HTF funds are used to build a house intended for homeownership, it is unclear whether only the initial buyers need to be verified for immigration eligibility or whether future buyers need to be verified as well. If the latter, it is unclear who is obligated to conduct that verification - RIHousing or the seller.  In addition, if RIHousing is working with a non-profit entity as the buyer, seller, landlord, developer, or owner of a property financed with HOME or HTF funds, it remains unclear whether any exemption would apply to a non-profit entity that would exempt it from confirming immigration eligibility. If, in that case, there is no exemption for non-profit entities, immigration eligibility requirements will severely undermine the purpose of anti-poverty programs that are accessible, since many unhoused people lack ID, in addition to undocumented persons, and immigrant communities may be less likely to use any services out of fear.

25.     Administrative Burden. In order to comply with the PRWORA requirements regarding immigration eligibility, RIHousing staff would need to either access the SAVE system in a way they have not previously done or implement potentially costly new operating systems. This would require additional training and, if it is determined that RIHousing must verify third-

Docusign Envelope ID: 1730DD53-EF59-435E-B469-24091F6EE241

party compliance with PRWORA (for landlords, owners, sellers, etc.), may necessitate hiring additional staff. This would not only represent a significant change in practice for RIHousing staff, but it would also require educating and training third parties on how to meet their obligations, which would take time and resources. Additionally, to document any change in program requirements, RIHousing may be required to amend the Consolidated Plan. The current Consolidated Plan covers the period 2025-2029. For an amendment to be effectuated, there must be notice to the public, an opportunity for the public to comment on the amendment(s), coordination with several departments within the State of Rhode Island, and approval from the RIHousing Board of Commissioners at an open meeting. Finally, application materials, loan documents, and program guidelines and handbooks would likely need to be amended, at significant cost, to reflect new requirements for eligibility.

26.     RIHousing has relied, in good faith, on the longstanding interpretation of PRWORA as it relates to HOME and HTF. RIHousing's interpretation has historically been shared with HUD and has fostered a framework in which all parties strive to address critical housing needs. This policy decision, if implemented, will result in funding delays, confusion at every level of program implementation and compliance, and ultimately a decrease in suitable, available housing for Rhode Island residents in need.


Executed this 10th day of February, 2026, in Providence, Rhode Island.

*Carol Ventura*

Carol Ventura
Executive Director
Rhode Island Housing and Mortgage Finance Corporation