**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al*., <br><br> Defendants. | No. 25-cv-00345-MSM |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION TO DISMISS AND FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.      Statutory Background .......................................................................... 2

           A.      PRWORA's Application ......................................................... 3

           B.      The Attorney General's Role Under PRWORA ....................... 4

    II.     Factual Background .............................................................................. 6

           A.      Executive Order 14,218 ...................................................... 6

           B.      The 2025 PRWORA Interpretations ................................... 6

                  1.      The DOJ Order ......................................................... 7

                  2.      The HHS Notice ....................................................... 8

                  3.      The ED Notice ......................................................... 9

                  4.      The HUD Notice ..................................................... 11

            C.      Procedural History ............................................................ 12

LEGAL STANDARD ....................................................................................................... 13

    I.      Dismissal Standard ............................................................................. 13

    II.     Summary Judgment Standard .............................................................. 13

ARGUMENT ................................................................................................................... 14

    I.      The APA Claims Against the Attorney General and DOJ Should be
          Dismissed Because they Improperly Seek Review of Decisions Statutorily
          Committed to the Attorney General's Sole and Unreviewable Discretion. ........... 14

    II.     Defendants are Entitled to Summary Judgment on Plaintiffs' APA
          Claims—Counts I, II, III, and V—Because they Fail on the Merits. ................... 17

           A.      Count I Fails Because ED, HHS, and HUD Were Not Required to
                  Engage in Notice and Comment Rulemaking Prior to Issuance of
                  their PRWORA Notices. ...................................................... 17

B.      The Contrary to Law Claims in Counts III and V are Without Merit.................................................................................................. 20

         i.      The HHS Notice........................................................................... 20

         ii.     The ED Notice .............................................................................. 25

         iii.    The HUD Notice .......................................................................... 28

         iv.    The DOJ Order............................................................................. 30

C.      The Arbitrary and Capricious Claims in Counts II and V are Without Merit................................................................................. 33

III.     Plaintiffs' Spending Clause Challenge Fails............................................ 37

A.      The PRWORA Notices Do Not Challenge Congressional Action. .......... 38

B.      The PRWORA Notices Do Not Impermissibly Impose Retroactive Conditions. ...................................................................... 38

C.      The PRWORA Notices are Not Impermissibly Coercive......................... 41

IV.     Count VI Should be Dismissed Because a Request for Declaratory Relief is Not a Valid Cause of Action and the PRWORA Notices Do Not Outline Specific Verification Methods that States Must Employ...................................... 44

V.      Any Relief Should be Limited to Plaintiff States. ................................................. 47

CONCLUSION........................................................................................................... 50

ii

## TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967), *abrogated on different grounds by Califano v. Sanders*,
   430 U.S. 99 (1977) .......................................................................................................... 14

*Adria Int'l Group, Inc. v. Ferré Dev., Inc.*,
   241 F.3d 103 (1st Cir. 2001) ......................................................................................... 14

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ....................................................................................................... 28

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ........................................................................................................... 7

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*,
   145 F.4th 39 (1st Cir. 2025) ......................................................................................... 48

*Arizona v. Biden*,
   40 F.4th 397 (6th Cir. 2022) ........................................................................................ 48

*Arlington Cent. Sch. Dist. Bd. of Educ.*,
   548 U.S. 291 (2006) ................................................................................................ 39, 40

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 13

*Benning v. Georgia*,
   391 F.3d 1299 (11th Cir. 2004) .................................................................................... 40

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*,
   814 F.3d 481 (1st Cir. 2016) ......................................................................................... 15

*Blackie v. Maine*,
   75 F.3d 716 (1st Cir. 1996) ........................................................................................... 14

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ....................................................................................................... 14

*Bos. Redevelopment Auth. v. Nat'l Park Serv.*,
   838 F.3d 42 (1st Cir. 2016) ..................................................................................... 13, 14

*Bostock v. Clayton Cnty.*,
    590 U.S. 644 (2020) ................................................................................................. 37

*Bourdon v. DHS*,
    940 F.3d 537 (11th Cir. 2019) ................................................................................ 15

*Bourdon v. DHS*,
    983 F.3d 473 (11th Cir. 2020) ................................................................................ 15

*Bremer v. Johnson*,
    834 F.3d 925 (8th Cir. 2016) .................................................................................. 15

*Califano v. Sanders*,
    430 U.S. 99 (1977) ............................................................................................ 14, 16

*California v. Texas*,
    593 U.S. 659 (2021) ................................................................................................. 49

*Christensen v. Harris Cnty.*,
    529 U.S. 576 (2000) ................................................................................................. 19

*Citizen to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ........................................................................................... 16, 33

*Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*,
    59 F.3d 284 (1st Cir. 1995) ............................................................................... 33, 34

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................... 49

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    596 U.S. 212 (2022) ................................................................................................. 39

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ........................................................................................... 33, 37

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ......................................................................................... 34, 35, 36

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ................................................................................................. 48

*EOC v. Steamship Clerks Union, Loc. 1066*,
    48 F.3d 594 (1st Cir. 1995) ..................................................................................... 14

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ............................................................................................ 33, 36, 37

*Gundy v. United States*,
    588 U.S. 128 (2019) ................................................................................................. 31, 32

*Harris Cnty. v. Kennedy*,
    786 F. Supp. 3d 194 (D.D.C. 2025) ............................................................................. 38

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944) ...................................................................................................... 48

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ................................................................................................. 14, 16

*Jama v. Immigr. & Customs Enf't*,
    543 U.S. 335 (2005) ...................................................................................................... 29

*Kingdomware Techs., Inc. v. United States*,
    579 U.S. 162 (2016) ...................................................................................................... 31

*La Casa Del Convaleciente v. Sullivan*,
    965 F.2d 1175 (1st Cir. 1992) ...................................................................................... 20

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) ........................................................................................................ 31

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ...................................................................................................... 14

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ........................................................................................... 32, 33, 34

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ...................................................................................................... 49

*Make The Rd. New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ..................................................................................... 15

*Michigan v. EPA*,
    576 U.S. 743 (2015) ...................................................................................................... 33

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................................... 33, 36

v

*Murphy v. Hunt*,
  455 U.S. 478 (1982)..................................................................................................... 7

*N.H. Hosp. Ass'n v. Azar*,
  887 F.3d 62 (1st Cir. 2018).................................................................................. 18, 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012)..................................................................................... 42, 43, 44

*New York v. U.S. Dep't of Health & Human Servs.*,
  414 F. Supp. 3d 475 (S.D.N.Y. 2019)......................................................................... 44

*New York v. United States*,
  505 U.S. 144 (1992).............................................................................................. 41, 42

*Orengo Caraballo v. Reich*,
  11 F.3d 186 (D.C. Cir. 1993) ...................................................................................... 19

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981).................................................................................................. 39, 40

*Perez v. Mortgage Bankers Ass'n*,
  575 U.S. 92 (2015)................................................................................... 17, 18, 19, 20

*Plyler v. Doe*,
  457 U.S. 202 (1982) .......................................................................................... 9, 23, 25

*Rhode Island Latino Arts v. Nat'l Endowment for the Arts*,
  800 F. Supp. 3d 351 (D.R.I. 2025)............................................................................. 13

*Rhode Island v. Massachusetts*,
  37 U.S. 657 (1838)...................................................................................................... 48

*Rolland v. Romney*,
  318 F.3d 42 (1st Cir. 2003) ........................................................................................ 40

*Rust v. Sullivan*,
  500 U.S. 173 (1991).................................................................................................... 37

*Shalala v. Guernsey Memorial Hosp.*,
  514 U.S. 87 (1995)...................................................................................................... 17

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950).................................................................................................... 45

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ........................................................................................ 39, 42

*Strickland v. Comm'r, Maine Dept. of Hum. Servs.*,
   48 F.3d 12 (1st Cir. 1995) ...................................................................................... 33

*Syncor Int'l Corp. v. Shalala*,
   127 F.3d 90 (D.C. Cir. 1997) ........................................................................... 17, 19

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ............................................................................................... 48

*United States v. Hyde*,
   497 F.3d 103 (1st Cir. 2007) .................................................................................. 24

*United States v. Texas*,
   599 U.S. 670 (2023) ......................................................................................... 48, 49

*Warder v. Shalala*,
   149 F.3d 73 (1st Cir. 1998) .................................................................................... 19

*Webster v. Doe*,
   486 U.S. 592 (1988) ............................................................................................... 15

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ............................................................................................... 48

*Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*,
   615 F.3d 45 (1st Cir. 2010) .................................................................................... 14

*Yates v. United States*,
   574 U.S. 528 (2015) ............................................................................................... 26

**CONSTITUTIONAL LAW**

U.S. Const. art. I, § 8 .................................................................................................. 38

**STATUTES**

5 U.S.C. § 553 ............................................................................................................ 17

5 U.S.C. § 701 ...................................................................................................... 14, 16

5 U.S.C. § 702 ............................................................................................................ 48

5 U.S.C. § 706 ...................................................................................... 16, 17, 33, 48

8 U.S.C. § 1601 ............................................................................................................. *passim*

8 U.S.C. § 1611 ............................................................................................................. *passim*

8 U.S.C. § 1612 ...................................................................................................................... 4

8 U.S.C. § 1615 ...................................................................................................................... 4

8 U.S.C. § 1621 ..................................................................................................... 2, 5, 14, 16

8 U.S.C. § 1641 ......................................................................................................... 2, 3, 40

8 U.S.C. § 1642 ............................................................................................................. *passim*

8 U.S.C. § 1643 ..................................................................................................... 25, 27, 28

8 U.S.C. §§ 1601–1646 ........................................................................................................ 2

42 U.S.C. § 254b ................................................................................................................ 24

42 U.S.C. § 601 .................................................................................................................. 23

42 U.S.C. §§ 601–19 .......................................................................................................... 23

42 U.S.C. § 9831 ........................................................................................................... 22, 23

42 U.S.C. § 9833 ........................................................................................................... 22, 23

42 U.S.C. § 9840 ................................................................................................................ 24

Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
    Pub. L. No. 104-193, 110 Stat. 2105 (1996) ........................................................... 2, 23

Welfare Indicators Act of 1994,
    Pub. L. No. 103–432, 108 Stat 4398 (1994) ................................................................. 22

## RULES

Fed. R. Civ. P. 56(a) .......................................................................................................... 13

Fed. R. Civ. P. 65(d)(1)(C) ................................................................................................ 49

## REGULATIONS

45 C.F.R. § 260.31(a)(1) .................................................................................................... 23

DOJ, Revised Specification Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
90 Fed. Reg. 32,023 (July 16, 2025)................................................................ *passim*

ED, Clarification of Federal Public Benefits under the Personal Responsibility and Work Opportunity Reconciliation Act,
90 Fed. Reg. 30,896 (July 11, 2025)................................................................ *passim*

Exec. Order No. 14,218,
90 Fed. Reg. 10,581 (Feb. 19, 2025) ...................................................................... 6

Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation,
66 Fed. Reg. 3,613 (Jan. 16, 2001)................................................................... 6, 41

HHS, Interpretation of "Federal Public Benefit,"
90 Fed. Reg. 31,232 (July 14, 2025)................................................................ *passim*

HUD, Interpretation of "Federal Public Benefit,"
90 Fed. Reg. 54,363 (Nov. 26, 2025)............................................................... *passim*

Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
62 Fed. Reg. 61,344 (Nov. 17, 1997).................................................................. 5, 47

Interpretation of "Federal Public Benefit,"
63 Fed. Reg. 41,658 (Aug. 4, 1998)......................................................... 8, 9, 28, 47

Request for Comments on the Attorney General's Specification of Community Programs Necessary for the Protection of Life or Safety Under the Welfare Reform Act,
62 Fed. Reg. 48,308 (Sept. 15, 1997) ..................................................................... 6

Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation,
61 Fed. Reg. 45,985 (Aug. 30, 1996)...................................................................... 6

Verification of Eligibility for Public Benefits,
63 Fed. Reg. 41,662 (Aug. 4, 1998)........................................................................ 5

**OTHER AUTHORITIES**

Administration for Children and Families, *Child Welfare*,
https://acf.gov/acf_issues/child_welfare (last accessed Mar. 20, 2026)............................ 22, 23

## **INTRODUCTION**

Since its inception thirty years ago, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) has stated that only United States citizens and qualified aliens are entitled to Federal public benefits. The U.S. Department of Health and Human Services (HHS), U.S. Department of Education (ED), and U.S. Department of Housing and Urban Development (HUD) recently promulgated their current interpretations of PRWORA. These interpretations restore compliance with federal law and ensure that taxpayer-funded programs intended for American citizens and qualified aliens are not improperly diverted. Additionally, in a U.S. Department of Justice (DOJ) order, the Attorney General recently announced her decision not to exercise her discretionary authority to except certain Federal public benefits from PRWORA's immigration status eligibility requirements.

Plaintiffs—twenty States and the District of Columbia—request that Defendants' PRWORA interpretations be declared unlawful, vacated, and otherwise enjoined and, as a result, that Defendants be precluded from implementing and enforcing Congress's clear directives. As an initial matter, the Administrative Procedure Act (APA) expressly bars judicial review of Plaintiffs' claims regarding DOJ because PRWORA commits the relevant decisions to the Attorney General's sole and unreviewable discretion. All APA claims also fail on the merits. Defendants have issued interpretive notices advising the public of their construction of PRWORA's terms and setting forth those benefits that constitute "Federal public benefits" under PRWORA, thereby requiring administering government entities to verify recipients are of a qualifying immigration status. The interpretations do not require any particular immigration verification methods, do not announce any consequences for a State's failure to verify immigration status, and do not impose any penalties for deficient verification. Because Defendants have only promulgated their interpretations of PRWORA's express terms, they were not required to engage in notice and comment rulemaking for that purpose. Moreover, each agency supported its interpretation of PRWORA's text and purpose with extensive justifications. Those justifications were neither contrary to law, nor arbitrary or capricious.

Further, Defendants' statutory interpretations, closely aligned with PRWORA's plain text, do not impose any new or retroactive conditions on the States but, instead, only apply the unchallenged status verification requirement to programs that constitute "Federal public benefits." Defendants' notices merely recognize that the breadth of benefits available to unqualified aliens is narrower than the agencies previously interpreted. Indeed, the PRWORA notices do not speak to which verification methods are required for each program, making the States' predictions of dramatic program restructuring and steep compliance costs entirely premature and speculative. In fact, Plaintiffs at times suggest they should not be required to conduct verification at all, which flouts the text and purpose of PRWORA. And Plaintiffs do not, and cannot, point to a single sentence in the PRWORA notices detailing enforcement procedures or outlining consequences for non-compliance, rendering baseless their concerns about immediate enforcement actions resulting in a complete loss of federal funding.

For all the reasons discussed herein, the Court should deny Plaintiffs' Motion, grant Defendants' Cross-Motion, and enter final judgment in Defendants' favor. If the Court nonetheless grants Plaintiffs' Motion, any relief should be narrowly tailored to only the parties in this case. Defendants rest on the extensive briefing in this case and defer to the Court on whether a hearing is necessary on the parties' cross-motions.

## BACKGROUND

### I.    Statutory Background

Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104-193, 110 Stat. 2105, 2260 (1996), *codified at* 8 U.S.C. §§ 1601– 1646, largely deems aliens who are not "qualified alien[s]" ineligible for "Federal public benefit[s]." 8 U.S.C. § 1611(a); *see also id.* § 1611(c) (defining "Federal public benefit"); *id.* § 1641 (defining "qualified alien"). These restrictions apply to a wide range of federal benefits, including health care, housing, welfare, unemployment, and retirement benefits, among others, that fall within the definition of "Federal public benefit." *Id.* §§ 1611, 1621. Before PRWORA, the authorizing statute for each federal benefit program generally established its immigration-

2

related eligibility criteria or lack thereof. *See generally id.* § 1601. PRWORA seeks to establish a set of uniform and restrictive eligibility criteria for a broad array of federal benefits. *Id.*

Under PRWORA's baseline rule, aliens who are not "qualified alien[s]" are ineligible for "Federal public benefit[s]." *Id.* § 1611(a). Qualified aliens include lawful permanent residents, asylees, refugees, aliens paroled into the United States for a period of at least one year, and some other groups. *Id.* § 1641(b) and (c).

### A.  PRWORA's Application

Whether the PRWORA eligibility restrictions apply to a particular federal program typically depends on two questions: (1) whether the program delivers benefits that fit PRWORA's definition of "Federal public benefits"; and (2) whether divergent language about alien eligibility in other statutes limits or overrides the PRWORA eligibility restrictions. *See* 8 U.S.C. § 1611(a).

PRWORA defines "Federal public benefit" broadly to include:

(A) Any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States; and

(B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.

*Id.* § 1611(c)(1).

The language of the Federal public benefit definition encompasses benefits provided with federal funds even if they are not provided by a federal agency. *See id.* § 1611(c)(1). Therefore, PRWORA's restrictions carry through to state, local, and private benefit providers that deliver federally funded benefits. *See id.*

On top of the definition of "Federal public benefit," PRWORA makes clear that its eligibility framework applies to a set of specified federal programs, including Temporary Assistance for Needy Families (TANF), Supplemental Security Income (SSI), Medicaid, and the

3

Supplemental Nutrition Assistance Program (SNAP). Specifically, PRWORA cites the authorizing statutes for these programs and establishes additional eligibility criteria that go beyond the "qualified alien" requirement. *See* 8 U.S.C. § 1612(a) (framework of rules for the "specified Federal programs" of SSI and SNAP), (b) (framework of rules for the "designated Federal programs" of TANF, Social Services Block Grant  (SSBG), and Medicaid). Conversely, PRWORA also makes clear that its eligibility rules for Federal public benefits do *not* apply to some other federal programs that it cites by authorizing statute. *Id*. § 1615(a). And PRWORA exempts other federal programs from its general eligibility rules and subjects them instead to less stringent eligibility criteria. *Id*. § 1611(b)(2)–(4).

Apart from these major federal programs that receive special treatment under PRWORA, "Federal public benefit[s]" are subject to PRWORA verification requirements. *See id*. § 1611(c)(1). To constitute a "Federal public benefit," an enumerated benefit must also be delivered by a federal agency or with federally "appropriated funds." *Id*. § 1611(c)(1). Further, benefits enumerated under § 1611(c)(1)(B), such as unemployment and housing benefits, qualify as Federal public benefits only if they are provided "to an individual, household, or family eligibility unit." *Id*. § 1611(c)(1)(B).

A third category of federal programs subject to PRWORA's verification requirements deliver benefits of a type that are "similar" to the enumerated benefit types listed in § 1611(c)(1)(B). *Id*.

### B.  The Attorney General's Role Under PRWORA

Section 1642(a) requires that the Attorney General, who at the time of PRWORA's enactment oversaw the Immigration and Naturalization Service within DOJ, "promulgate regulations requiring verification that a person applying for a Federal public benefit . . . is a qualified alien and is eligible to receive such benefit[,]" 8 U.S.C. § 1642(a)(1), and "regulations which set forth the procedures by which a State or local government can verify whether an alien applying for a State or local public benefit is a qualified alien. . ." *id*. § 1642(a)(3). Section

1642(b) provides that "[n]ot later than 24 months after the date the regulations described in subsection (a) are adopted, a State that administers a program that provides a Federal public benefit shall have in effect a verification system that complies with the regulations." *Id*. § 1642(b).

On October 29, 1997, consistent with section 1642(a)(1), the Attorney General issued interim guidance regarding the implementation of PRWORA verification requirements. *See* Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 Fed. Reg. 61,344 (Nov. 17, 1997) (1997 DOJ Interim Verification Guidance). On August 4, 1998, the Attorney General proposed a rule outlining verification requirements for benefit-issuing entities, Verification of Eligibility for Public Benefits, 63 Fed. Reg. 41,662 (Aug. 4, 1998) (Proposed Verification Regulation), but this regulation was not finalized. As a result, a regulation under § 1642(a) has never been promulgated.

Under section 1611(b)(1)(D) the Attorney General may, in her "sole and unreviewable discretion after consultation with appropriate Federal agencies and departments," except from PRWORA's prohibition on receipt of Federal public benefits by unqualified aliens certain types of programs, services, and assistance that meet all of the following criteria: "(i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety." 8 U.S.C. § 1611(b)(1)(D); *see also id*. § 1621(b)(4) (affording the Attorney General the same "sole and unreviewable discretion" with respect to "State or local public benefits").

On August 23, 1996, while the inter-agency consultation process was "still ongoing," the Attorney General issued an order implementing her discretionary authority "to designate the kinds of government-funded community programs, services or assistance that are necessary for protection of life or safety and for which all aliens will continue to be eligible[,]" making a

5

"provisional specification" of benefits excepted from PRWORA's immigration status eligibility requirements. Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 61 Fed. Reg. 45,985 (August 30, 1996). Shortly thereafter, on September 9, 1997, the Attorney General issued a notice to "solicit the input of federal, state, and local agencies operating programs or providing services or assistance that may be covered by the final Order." Request for Comments on the Attorney General's Specification of Community Programs Necessary for the Protection of Life or Safety Under the Welfare Reform Act, 62 Fed. Reg. 48,308, 48,309 (Sept. 15, 1997). Subsequently, on January 16, 2001, the Attorney General issued a final order specifying the "types of community programs, services, or assistance for which all aliens remain eligible." Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 66 Fed. Reg. 3,613 (January 16, 2001) (2001 Life or Safety Final Order).

## II.    Factual Background

### A.  Executive Order 14,218

On February 19, 2025, the President issued Executive Order No. 14,218, 90 Fed. Reg. 10,581 (Feb. 19, 2025), "Ending Taxpayer Subsidization of Open Borders" (PRWORA EO). The PRWORA EO seeks "[t]o prevent taxpayer resources from acting as a magnet and fueling illegal immigration to the United States, and to ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a). To that end, it directs federal agencies to identify "all federally funded programs administered by the agency that currently permit illegal aliens to obtain any cash or non-cash public benefit, and, consistent with applicable law, take all appropriate actions to align such programs with the purpose of [the Executive Order] and applicable . . . law, including . . . PRWORA[.]" *Id*. § 2(a)(i).

### B.  The 2025 PRWORA Interpretations

Pursuant to the PRWORA EO, Defendants issued interpretations of certain PRWORA provisions. *See* DOJ, Revised Specification Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 90 Fed. Reg. 32,023 (July 16, 2025) (DOJ Order);

6

HHS, Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit," 90 Fed. Reg. 31,232 (July 14, 2025) (HHS Notice); ED, Clarification of Federal Public Benefits under the Personal Responsibility and Work Opportunity Reconciliation Act, 90 Fed. Reg. 30,896 (July 11, 2025) (ED Notice); HUD, Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit," 90 Fed. Reg. 54,363 (Nov. 26, 2025) (HUD Notice).[1]

### 1. The DOJ Order

In discharging her responsibilities under PRWORA and the PRWORA EO, the Attorney General reviewed the 2001 Life or Safety Final Order and, based on her consultations with the appropriate Federal agencies and departments, "determined that the Final Order has created confusion about what sorts of programs are subject to PRWORA's requirements and is being applied more broadly than the statute permits." DOJ Order at 32,025. The Attorney General found that, as a result of this confusion, unqualified aliens have "receive[d] public benefits for which they are not lawfully eligible" and, to correct this, she chose "not to except any benefits from PRWORA beyond those excepted by the statute itself." *Id.*

As explained in the DOJ Order, the Attorney General acknowledges that aliens may have relied on the receipt of excepted Federal benefits, but the changes are nonetheless warranted for four reasons. First, "some agencies have been excepting [certain benefits] from PRWORA"

---

[1] On July 10, 2025, the Department of Labor (DOL) issued a notice setting forth the agency's interpretation of "'[F]ederal public benefits' under PRWORA." DOL, Training and Employment Guidance Letter No. 10-23, Change 2, at 2–3 (July 10, 2025) (DOL Notice). On March 18, 2026, DOL rescinded its Notice "[i]n order to facilitate further consideration and implementation of PRWORA requirements," and noted that "to obtain input from interested stakeholders, the Department will engage in notice-and-comment rulemaking via publication in the *Federal Register*." *See* DOL: Training and Employment Guidance Letter No. 10-23, Change 3, at 3 (Mar. 18, 2026). Because DOL has rescinded the Notice that is the subject of this litigation, Plaintiffs' claims with respect to DOL are moot and should be dismissed. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)).

verification requirements "based on a misunderstanding of the Attorney General's exception authority and [] have been providing benefits to aliens who were not lawfully eligible to receive them . . . . [B]ringing the Federal Government into compliance with the law is a powerful reason to withdraw the Final Order regardless of any reliance interests." *Id*. Second, "some of the benefits [] provided under the Final Order were not, in fact, necessary for life or safety. The lack of any connection to aliens' immediate welfare necessarily reduces the extent of any reliance interests in these benefits." *Id*. Third, "reliance interests are significantly outweighed by the need to reduce the incentive for aliens to illegally migrate to the United States. *See* 8 U.S.C. § 1601(2) ('It continues to be the immigration policy of the United States that . . . the availability of public benefits not constitute an incentive for immigration to the United States.')." *Id*. And, finally, "[a]lthough the Attorney General has the authority to except certain benefits from PRWORA, the decision to do so is expressly committed to her sole and unreviewable discretion." *Id*. at 32,026.

### 2. The HHS Notice

In August 1998, HHS issued a notice listing 31 programs the agency deemed as providing Federal public benefits. Interpretation of "Federal Public Benefit," 63 Fed. Reg. 41,658 (Aug. 4, 1998) (1998 HHS Notice). The July 14, 2025 HHS Notice revises the agency's interpretation of the term "Federal public benefit" and identifies additional HHS programs that provide those benefits. HHS Notice at 31,232. The HHS Notice explains that the 1998 HHS Notice "artificially and impermissibly constrains" the statutory definitions found in 8 U.S.C. § 1611 in four ways. *Id*. at 31,233. First, the 1998 Notice "reads a limitation into § 1611(c)(1)(A) that 'grant' refers to financial awards to individuals and thus does not include block grants to States and localities." *Id*. Second, it incorrectly interprets "eligibility unit" to preclude subparagraph (c)(1)(B) from applying to benefits provided to individuals, households, or families unless the individual, household, or family, as a condition of receipt of the benefit, is also required to meet additional specified criteria (e.g., a specified income level or residency). *Id*. at 31,233–34. Third, the 1998 HHS Notice does not give due regard to the catchall phrase "any other similar benefit" language in § 1611(c)(1)(B). *Id*. at 31,233–36. For instance, the 1998 HHS

Notice, while recognizing that Head Start provides non-postsecondary education and therefore does not fall within the enumerated "postsecondary education" phrase in § 1611(c)(1)(B), fails to recognize that the benefit provided under the Head Start program is "similar to" a welfare benefit and, therefore, falls within the scope of subparagraph (c)(1)(B). *Id*. at 31,236. And, finally, the 1998 HHS Notice "incorrectly asserts that the 'exemption[s]' in § 1611(b)(1) 'excludes some HHS programs from the definition of 'Federal public benefits.'" *Id*. at 31,233. The HHS Notice identifies 44 HHS programs that provide Federal public benefits and that are not excepted from § 1611(a). *See id*. at 31,237.

### 3. The ED Notice

In November 1997, ED issued a Dear Colleague Letter interpreting PRWORA. Department of Education, PROWRA DCL, (Nov. 19, 1997) (1997 DCL). The July 11, 2025, ED Notice clarifies that "Federal programs administered by the agency that provide postsecondary education and other similar benefits, including adult education and career and technical education programs, are 'Federal public benefits' subject to the citizenship and immigration verification requirements of PRWORA, so long as such benefits are not protected under *Plyler v. Doe*, 457 U.S. 202 (1982) as part of a basic public education." ED Notice at 30,896. The 2025 ED Notice explains that the 1997 DCL misunderstood Congress' intent and misconstrued PRWORA's meaning by deeming programs dissimilar from "postsecondary education" and, therefore, outside of PRWORA's citizenship verification requirements, simply because they support a different level of education or provide a different form of assistance. *Id*. at 30,897. The Notice explains that "Congress included a broad and disparate group of benefits within the enumerated list of 'Federal public benefits'" in 8 U.S.C. § 1611(c)(1)(B) suggesting its "intent[]" to capture an expansive array of Federal benefits, within the statutory limit that such benefits be provided through Federal funds, and to 'an individual, household, or family eligibility unit.'" *Id*. The Notice further explains that "preschool, elementary, and secondary education [benefits] are similar to postsecondary" benefits because they all provide "financial assistance" and "educational assistance to individuals." *Id*. And Congress clearly contemplated that Federal

9

public benefits includes assistance provided "through an 'in-kind' non-money benefit 'at the community level, including through public or private nonprofit agencies." *Id*. at 30,898. The ED Notice explains that the *Plyler* holding was expressly limited to States' imposition of restrictions on alien eligibility for benefits and did not address the Federal government's ability to deny benefits—including education benefits—based on alienage. *See id*. Further, *Plyler* focused on the unique position of children who have little control over their immigration status, but this does not confer rights to adults, who are differently situated. *See id*. at 30,898–99. In summary, "non-qualified alien adults are not permitted to receive education benefits (postsecondary education benefits or otherwise) and non-qualified alien children are not eligible to receive postsecondary education benefits and certain other education benefits [that] are not basic public education benefits." *Id*. at 30,899.

Accordingly, the ED Notice extends PRWORA's application to benefits provided under "Title II of the Workforce Innovation and Opportunity Act of 2014 (WIOA) and career and technical education (CTE) programs authorized under the Carl D. Perkins Career and Technical Education Act of 2006, as amended (Perkins V), as well as benefits provided through postsecondary education programs." *Id*. at 30,899.

The ED Notice outlines that grantees who administer Federal public benefit programs subject to PRWORA's verification requirements may verify recipient eligibility using: "(1) the Department of Homeland Security's (DHS) Systematic Alien Verification for Entitlements (SAVE) program; (2) review of U.S. birth certificates; (3) review of Real ID compliant identification cards . . . ; (4) DHS issued documentation verifying immigration status; or (5) other methods to verify eligibility." *Id*. at 30,900. The ED Notice makes clear that, while nonprofit charitable organizations that administer Federal public benefits "are not required to conduct eligibility verification[,]" this "narrowly crafted" exception outlined in 8 U.S.C. § 1642(d) does not relieve States or other governmental entities involved in the administration of Federal public benefits from the requirements "even when some or all educational services are ultimately provided by a nonprofit charitable organization[]." *Id*.

10

### 4. The HUD Notice

On November 26, 2025, HUD issued its interpretation of the term "Federal public benefit" under PRWORA. HUD Notice at 54,363. First, HUD interprets § 1611(c)(1)(A) to apply to 'any grant, contract, loan, professional license, or commercial license' provided by HUD." *Id*. at 54,364. A "grant means the award of funding for an individual or entity to carry out specified activities without the direct involvement of HUD." *Id*. And "grant means the award of funding for an individual or entity to carry out specified activities without the direct involvement of HUD" such that "the obligations and requirements on the recipient flow down to the subrecipient." *Id*. As a result, any grants that HUD administers—whether to individuals, States, or localities—"that are not explicitly governed by another statute are federal public benefits related to housing assistance and are subject to the eligibility requirements under PRWORA." *Id*.

Second, in determining "whether a HUD program provides 'any other similar benefit(s)'" under § 1611(c)(1)(B), HUD "look[s] not just to the enumerated benefits within 8 U.S.C. 1611(c)(1), but also to the exempted Federal public benefits under 8 U.S.C. 1611(b)(1)" where Congress specified "that there are exemptions from the general alien restrictions of 8 U.S.C. 1611(a) for certain types of Federal public benefits, including non-cash benefits or in-kind services." *Id*. HUD thus interprets § 1611(c)(1)(B) "to include 'assistance' similar to the 'delivery of in-kind services at the community level, including through public or private nonprofit agencies' where such benefits have not been specifically excluded by 8 U.S.C. 1611(b)(1)." *Id*.

Taking both provisions together, HUD interprets PRWORA to apply "to all HUD programs related to public or assisted housing as they are 'public or assisted housing' for which payments or assistance are 'provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States' unless a more specific federal statute applies[.]" *Id*. This includes HUD's Community Planning and Development programs and grants, including HUD's Homeless Assistance Programs, because these programs "award 'grants' as defined in PRWORA and therefore covered by the definition of 'Federal

11

public benefit' under the statute." *Id*. In addition, PRWORA applies to grants to state and local governments and other organizations. *See id*.

The HUD Notice provides that HUD will issue further guidance on the "means of verification of immigration status as they affect those programs not exempt under Section 1611(b)(1)." *Id*. at 54,365. HUD will also issue "new guidelines related to the verification for benefits provided through its housing assistance and grant programs, including for benefits distributed by charitable non-profit organizations." *Id*.

### C. Procedural History

On July 21, 2025, Plaintiffs filed a Complaint for declaratory and injunctive relief, asserting APA claims against HHS, ED, and DOL and a Spending Clause claim against HHS, ED, DOL, and DOJ. *See* ECF No. 1. On the same day, Plaintiffs filed a Motion for Preliminary Injunction, "request[ing] that Defendants be preliminarily enjoined and stayed from implementing and enforcing the PRWORA Notices in the Plaintiff States." Mot. for Prelim. Inj. at 82, ECF No. 2. On September 10, 2025, the Court entered a Memorandum and Order, granting Plaintiffs' Motion for a Preliminary Injunction (Prelim. Inj. Order) and enjoining Defendants from "enforcing or implementing" the DOJ Order, HHS Notice, ED Notice, and DOL Notice in the Plaintiff States. ECF No. 64 at 59–60.

On September 23, 2025, Plaintiffs filed their Second Amended Complaint. *See* ECF No. 68. The Second Amended Complaint added APA claims against DOJ and the Attorney General, and a declaratory judgment claim against HHS, ED, DOL, and DOJ. *Id*. at 36–49. On December 4, 2025, Plaintiffs filed their Third Amended Complaint, adding HUD as a defendant. *See* ECF No. 76 (Third Am. Compl.). Plaintiffs' Third Amended Complaint asserts six counts: (1) Count I— alleging that the ED, HHS, DOL, and HUD Notices "are substantive rules for which Defendants failed to undergo notice-and-comment procedure" and are therefore "invalid[,]" *id*. ¶ 200; (2) Count II—alleging that the ED, HHS, DOL, and HUD Notices are arbitrary and capricious because the agencies "failed to provide a reasoned basis or explanation" and "to consider the consequences of their actions," and the Notices "fail to take into account important

12

reliance interests." *id*. ¶¶ 211–13; (3) Count III—alleging that ED, HHS, DOL, and HUD adopted interpretations of PRWORA that are contrary to law, *see id*. ¶¶ 219–24; (4) Count IV— alleging that all Defendant Agencies notices violate the Spending Clause and are therefore unconstitutional, *see id*. ¶¶ 231–37; and (5) Count V—alleging that "the DOJ PRWORA Notice is both contrary to law and arbitrary and capricious[,]" *id*. ¶ 244; and (6) Count VI—seeking "a declaration that the Notices violate the APA because the Attorney General has not promulgated the regulations described in 8 U.S.C. § 1642(a)[,]" *id*. ¶ 256.

On February 27, 2026, Plaintiffs filed their Motion for Summary Judgment. *See* ECF No. 91 (Pls' Mot.). Plaintiffs request that the DOJ Order, HHS Notice, ED Notice, DOL Notice, and HUD Notice be vacated, that Defendants be enjoined from enforcing the vacated Order and Notices, and that the Court issue a declaratory judgment. *See id*. at 85.

## LEGAL STANDARD

### I.    Dismissal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id*.

### II.    Summary Judgment Standard

Summary judgment is properly granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When agency action is challenged under the APA, "'a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action' violates the APA." *Rhode Island Latino Arts v. Nat'l Endowment for the Arts*, 800 F. Supp. 3d 351, 361 (D.R.I. 2025) (quoting *Bos. Redevelopment*

13

*Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016)).

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'" *Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 51 (1st Cir. 2010) (quoting *Adria Int'l Group, Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001)). The Court "consider each motion separately, drawing inferences against each movant in turn." *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996) (quoting *EEOC v. Steamship Clerks Union, Loc. 1066*, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

## ARGUMENT

**I.    The APA Claims Against the Attorney General and DOJ Should be Dismissed Because they Improperly Seek Review of Decisions Statutorily Committed to the Attorney General's Sole and Unreviewable Discretion.**

Plaintiffs' APA claims against the Attorney General and DOJ fail because they seek judicial review of decisions that PRWORA commits to the Attorney General's "sole and unreviewable discretion." 8 U.S.C. § 1611(b)(1)(D); *see also id*. § 1621(b) (affording the Attorney General the same "sole and unreviewable discretion" with respect to "State or local public benefits").

The APA expressly bars judicial review of agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Although the APA embodies a "basic presumption of judicial review," *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on different grounds by Califano v. Sanders*, 430 U.S. 99 (1977), "[t]his is 'just' a presumption . . . and under § 701(a)(2) agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law,'" *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993) (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)). Where Section 701(a)(2) applies, the agency decision is "absolutely" committed "to the agency's judgment[.]" *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

"The forceful phrase 'sole and unreviewable discretion,' by its exceptional terms, heralds

14

Congress's judgment to commit the decision exclusively to agency discretion" and thus "inescapably seeks to withdraw the decision from APA review." *Make The Rd. New York v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020) (citing *Bourdon v. DHS*, 940 F.3d 537, 542 (11th Cir. 2019)). That phrase is a recognized hallmark of Congressional intent to preclude judicial review. *See Bremer v. Johnson*, 834 F.3d 925, 931 (8th Cir. 2016) ("A grant of 'sole' discretion is among the strongest known to the law."); *Bourdon*, 983 F.3d at 479 (Martin, J., dissenting) (recognizing that "sole and unreviewable discretion" language is among "the clearest possible" signals of congressional intent to commit a matter to agency discretion and bar APA review); *cf. Webster v. Doe*, 486 U.S. 592, 600 (1988) (statutory language permitting termination whenever the Director "shall deem" it necessary "forecloses the application of any meaningful judicial standard of review" (emphasis omitted)).

The First Circuit's holding in *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481 (1st Cir. 2016), underscores that point. In *Bernardo*, the Court considered whether the following provision in the Immigration and Nationality Act precluded judicial review: "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." 814 F.3d at 484 (citation omitted). The Court concluded that the statute's use of the terms "may," "at any time," and "for what he deems to be good and sufficient cause" effectively "withdraw[]" judicial review from decisions committed to the Secretary of Homeland Security's discretion, and [] clearly indicate[] that the decision to revoke the approval of a visa petition is discretionary." *Id.* at 485. The Court recognized that certain terms—such as a commitment to an agency head's "sole and unreviewable discretion"—expressly disclaim the availability of judicial review. *Id.* 486–87 (citation omitted).

So too here. Under PRWORA, the Attorney General may, in her "sole and unreviewable discretion after consultation with appropriate Federal agencies and departments," except from PRWORA's prohibition on the receipt of Federal public benefits by unqualified aliens certain types of programs, services, and assistance that meet all of the following criteria: "(i) deliver in-

15

kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety." 8 U.S.C. § 1611(b)(1)(D); *see also id*. § 1621(b)(4) (affording the Attorney General the same "sole and unreviewable discretion" with respect to "State or local public benefits"). Pursuant to this "sole and unreviewable discretion," the Attorney General chose "not to except any benefits from PRWORA beyond those excepted by the statute itself." DOJ Order at 32,025. Because PRWORA expressly commits this determination to the Attorney General's discretion, APA review is unavailable.

Setting aside the express "unreviewable" language, no meaningful legal standard exists against which the Court could measure the Attorney General's decision. *See Heckler*, 470 U.S. at 830 ("[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" (quoting 5 U.S.C. § 706)). PRWORA provides no judicially manageable standards for reviewing the Attorney General's exercise of her "sole and unreviewable" discretion under Section 1611(b)(1)(D). Where a statute is drawn so broadly that there is "no law to apply," and the agency's discretion is essentially unfettered, judicial review is precluded under 5 U.S.C. § 701(a)(2). *See Citizen to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Section 1611(b)(1)(D) identifies the kinds of programs the Attorney General *may* except, but it does not prescribe *that* or *how* that authority must be exercised. For example, the statute says nothing about how many programs must be specified, whether all programs satisfying the three criteria must be specified, the weight the Attorney General must give to competing policy considerations, or whether a successor Attorney General must preserve exemptions previously adopted by another administration. The provision supplies program eligibility parameters, not a judicially manageable rule. *See Heckler*, 470 U.S. at 830. That is dispositive under *Heckler*.

Accordingly, Count V, seeking judicial superintendence over the DOJ Order, should be

16

dismissed. The Spending Clause and Declaratory Judgment claims against DOJ (Counts IV and VI) also fail as a matter of law and should likewise be dismissed. *See infra* part III.

## II. Defendants are Entitled to Summary Judgment on Plaintiffs' APA Claims—Counts I, II, III, and V—Because they Fail on the Merits.

Under the APA, the Court may set aside agency action if the Court finds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law" or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(2)(A), (D). Plaintiffs' APA claims fail because (a) Defendants have not violated any procedure required by law, (b) Defendants have not acted contrary to law, and (c) Defendants have not acted arbitrarily and capriciously.

### A. Count I Fails Because ED, HHS, and HUD Were Not Required to Engage in Notice and Comment Rulemaking Prior to Issuance of their PRWORA Notices.

Under the APA, rulemaking generally requires notice and comment procedures. *See* 5 U.S.C. § 553(b). But these requirements do not apply "to interpretative rules[.]" *Id.* § 553(b)(A). An interpretive rule "typically reflects an agency's construction of a statute that has been entrusted to the agency to administer." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). "[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995)). In contrast, a "substantive rule" requiring notice and comment "modifies or adds to a legal norm based on the agency's own authority," which "flows from a congressional delegation to promulgate substantive rules, to engage in supplementary lawmaking." *Syncor*, 127 F.3d at 95.

Plaintiffs assert that "[b]ecause the[] PRWORA Notices are substantive rules for which Defendants failed to undergo the notice-and-comment procedure, they are invalid." Third Am. Compl. ¶ 200; Pls. Mot. at 27 ("The HHS, ED, DOL, and HUD PRWORA Notices are procedurally invalid because Defendants failed to undertake notice-and-comment rulemaking."). But, in doing so, Plaintiffs ignore that the PRWORA Notices do not modify or add to any legal

norms by engaging in supplementary lawmaking. *See* Pls' Mot. at 32–33. Rather, the pre-existing legal norm at issue here is contained in 8 U.S.C. § 1611, which reflects Congress's judgment that aliens who are not "qualified aliens" are ineligible for "Federal public benefits," *see* 8 U.S.C. § 1611(a). *See, e.g.*, HHS Notice at 31,232 ("This notice sets forth the interpretation that [HHS] uses for the term 'Federal public benefit' as used in" PRWORA.); ED Notice at 30,900 ("This interpretive rule finds that Federal programs administered by the Department that provide postsecondary education and other similar benefits, including adult education and CTE (career and technical education) programs, are 'Federal public benefits' subject to the citizenship and immigration verification requirements of PRWORA, so long as such benefits are not protected under *Plyler* as part of a basic public education." (emphasis omitted)); HUD Notice at 54,363 ("This notice sets forth the interpretation that [HUD] uses for the term 'Federal public benefit' as used in" PRWORA.).[2] The PRWORA Notices simply interpret or provide rules of procedure that allow the agencies to implement the statutory regime outlined by Congress, and "advise the public of the agency's construction of the statutes and rules which it administers." *Perez*, 575 U.S. at 97 (citation omitted). Specifically, the Notices do not purport to alter or amend the statutory scheme but instead ensure compliance with its plain requirements. *See id*. at 103 (An agency properly "interpret[s] a regulation without effectively amending the underlying source of law." (citation modified)). Indeed, enforcement of PRWORA, alone, does not "create[] rights, assign[] duties, or impose[] obligations, the basic tenor of which is not already outlined in the law itself." *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (citation modified).

In the past, as is reflected in the previously issued PRWORA Notices, agencies chose to interpret PRWORA in a particular way and they made that choice by issuing interpretations that

---

[2] Moreover, the HUD Notice explicitly recognizes the non-finality of this preliminary interpretation by providing that "HUD will undertake a review and revised guidance in order to determine the means of verification of immigration status" and "will be issuing new guidelines related to the verification" at a later date. HUD Notice at 54,365. Until verification guidance is promulgated, specific verification requirements have not been imposed with respect to any HUD programs.

were effective immediately. Defendants now interpret PRWORA differently—in ways they have determined more closely align with the plain text of the statute. And, just as the past interpretations did not require notice and comment, neither do Defendants' renewed interpretations. *See Perez*, 575 U.S. at 101 ("Because an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule.").

Because the underlying legal norm has not changed, the PRWORA Notices are not "legislative." Rather, they are, at most, statements of how Defendants will "enforce [] the governing legal norm" provided by Congress. *Syncor*, 127 F.3d at 94; *see, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (explaining that interpretations contained "in opinion letters," "policy statements, agency manuals, and enforcement guidelines . . . lack the force of law"); *Warder v. Shalala*, 149 F.3d 73, 80 (1st Cir. 1998) ("If a rule creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself, *then* it is substantive." (citation modified)); *Orengo Caraballo v. Reich*, 11 F.3d 186, 196 (D.C. Cir. 1993) ("We hold that the DOL in this case did no more than give a reasonable meaning to the notion of a 'direct or indirect advance' in the course of exercising its enforcement authority under the regulations. The risk of loss test is an interpretation of those regulations and as such is exempt from the requirements of the APA.").

In concluding that the PRWORA Notices are legislative and not interpretive, the Preliminary Injunction Order and Plaintiffs' Motion do not account for the Supreme Court's mandates in *Perez*. In that case, the Supreme Court underscored that interpretive rules set forth an agency's "construction of the statutes and rules which it administers." *Perez*, 575 U.S. at 97 (quotation omitted). *Perez* confirms that the PRWORA Notices are procedurally valid because they merely set forth each agency's interpretation of PRWORA. Plaintiffs' notice and comment argument relies heavily on their view that the substance of the Notices is wrong, Pls' Mot. at 29–32, but this conflates the APA's procedural and substantive requirements. The APA's procedural notice and comment requirement for legislative rules cannot be imputed to interpretive rules

19

merely because an agency's new interpretation may "upset settled reliance interests." *Perez*, 575 U.S. at 106. Indeed, "regulated entities are not without recourse in such situations" because the "APA contains a variety of [substantive] constraints on agency decisionmaking—the arbitrary and capricious standard being among the most notable." *Id*. at 105–06.

The First Circuit's holding in *New Hampshire Hospital Association v. Azar* does not change that conclusion because, there, the statutory scheme did not "expressly address[] the underlying question that g[ave] rise to th[e] case[.]" *N.H. Hosp.*, 887 F.3d at 68. In that case, the statutory scheme was completely silent on the issue addressed by the agency's "Frequently Asked Questions" document. *Id*. Here, however, the PRWORA Notices do not purport to wade into "textual silence" to "make a decision that Congress chose not to make itself." *Id*. at 71. The Notices only interpret PRWORA's plain text, which precludes the provision of federal public benefits to unqualified aliens, so they do not *independently* create any rights, assign any duties, or impose any obligations, "the basic tenor of which is not already outlined in the law itself." *La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992). In other words, the PRWORA Notices do not have any independent legal effect separate and apart from the PRWORA statute. The PRWORA Notices are thus interpretive rules for which notice and comment was not required.

**B. The Contrary to Law Claims in Counts III and V are Without Merit.**

Under PRWORA, only U.S. citizens and qualified aliens are entitled to receive Federal public benefits. *See* 8 U.S.C § 1611(a). Each of the PRWORA Notices properly interprets the term "Federal public benefit" and thus is not contrary to law.

**i.    The HHS Notice**

The HHS Notice begins with PRWORA's "plain language" definition of the term "Federal public benefit." HHS Notice at 31,233 (citing 8 U.S.C. § 1611(c)(1)(A)–(B)). Under subsection (A), "Federal public benefit" means "any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States[.]" 8 U.S.C. § 1611(c)(1)(A). The HHS Notice properly interprets this to mean all

20

"grants," including financial awards to individuals and block grants to States and localities, constitute Federal public benefits. HHS Notice at 31,233. In response, Plaintiffs assert that the Notice "unlawfully includes all benefits funded by grants to State or local governments" despite that 8 U.S.C. § 1611(a) "only restricts the eligibility of 'an alien' for Federal public benefits," Pls' Mot. at 54, and a State will not necessarily use a grant to provide benefits to unqualified aliens, *id*. at 55. But, here, Plaintiffs conflate two different instructions from the statute. While Section 1611(a) outlines the general proposition that "an alien who is not a qualified alien . . . is not eligible for any Federal public benefit," Section 1611(c)(1)(A) then defines the "Federal public benefits" that those unqualified aliens are not permitted to access, including "any grant . . . provided by an agency of the United States or appropriate by funds of the United States[.]" 8 U.S.C. § 1611(c)(1)(A). The HHS Notice thus properly reads these provisions to mean, together, that an alien who is not a qualified alien is not entitled to receive HHS grants.

Next, Plaintiffs criticize HHS's reading of subsection (B), asserting that the HHS Notice unlawfully expands the scope of PRWORA by reading it to apply to programs that are generally available to members of the public—programs that do not "require applications or impose eligibility restrictions on recipients." Pls' Mot. at 45–46. But the HHS Notice does not dispute that any program that provides a "Federal public benefit" is, logically, a program for which the recipient(s) met some sort of eligibility criteria. It merely clarifies that the 1998 Notice incorrectly read subsection (B) to require a statute to contain a certain kind of eligibility requirement in order to fall within PRWORA's ambit. HHS Notice at 31,235. The Notice states that PRWORA "recognizes that some benefits are allocated on an individual basis, some on a household basis, and some on a family basis, and 'eligibility' is assessed vis-à-vis those 'unit[s].'" *Id*. Indeed, the programs listed in the HHS Notice as constituting "Federal public benefit programs" each require the submission of an application or some other sort of qualification criteria to be met. Separate and apart from its premise that receipt of a "Federal public benefit" by an individual, household, or family naturally requires meeting certain program criteria—like income level, age, gender, *id*. at 31,234—the HHS Notice simply notes that

21

"family eligibility unit" is a discrete phrase used elsewhere in statute, *id*. As a result, if an HHS program provides a benefit that falls within the categories set forth in the first half of subparagraph (c)(1)(B), and it does so on a "per-individual, per-household, or 'per-family eligibility unit' basis[,]" it is a 'Federal public benefit.'" *Id*. at 31,234.

Next, Plaintiffs assert that the "HHS Notice unlawfully extends PRWORA to non-postsecondary education benefits. Pls' Mot. at 50. They argue that, "[b]y expressly including '*postsecondary* education . . . benefit[s]' in the statute, Congress made clear that it did not intend to include *non*-postsecondary education benefits, like Head Start." *Id*. at 51. HHS logically applies the canon of *ejusdem generis* to interpret subsection (B)'s "any other similar benefit" provision to plainly mean "any other benefit that is 'alike in substance or essentials' to or that 'has characteristics in common' with 'retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, or unemployment benefits.'" HHS Notice at 31,236 (quoting 8 U.S.C. § 1611(c)(1)(B)) (alterations adopted). Head Start is an anti-poverty program that provides for school readiness, provides low-income children and their families with "health, educational, nutritional, and social and other services, that are determined based on family needs assessment, to be necessary," and "may serve as child care for parents of young children." *Id*. (citing 42 U.S.C. §§ 9831, 9833). The HHS Notice, therefore, understands Head Start to be a "Federal public benefit" because the benefits it provides are "'similar' to 'welfare' benefits." *Id*.

While the term "welfare" is not defined in PRWORA, the broad sweep of "welfare" described in PRWORA's preamble, 8 U.S.C. § 1601, supports a broad reading of "welfare" and any "similar benefit," as do other laws enacted around the same time such as the Welfare Indicators Act of 1994 (Pub. L. No. 103–432). *Id*. The Administration for Children and Families also defines "welfare" specifically in the context of services that help children: "Child welfare is a continuum of services designed to ensure that children are safe and that families have the necessary support to care for their children successfully." *See* Administration for Children and Families, *Child Welfare*, available at https://acf.gov/acf_issues/child_welfare (last accessed Mar.

22

20, 2026). Head Start is, at minimum, a program that provides means-tested assistance to families and individuals similar to programs under part A of title IV of the Social Security Act, the food stamp program under the Food Stamp Act of 1977, and the Supplemental Security Income program under title XVI of the Social Security Act. *See* HHS Notice at 31,236.

Plaintiffs rely on *Plyler v. Doe* and the language in PRWORA excluding basic public education to support their argument that Head Start cannot be a "Federal public benefit" under PRWORA. *See* Pls' Mot. at 51. But, as previously noted, Head Start is an anti-poverty program that also provides "health, educational, nutritional, and social and other services," 42 U.S.C. §§ 9831(2), 9833—it does not provide basic public education, *Plyler*, 457 U.S. at 226. And *Plyler* did not conclude that aliens have a right to federally-funded pre-school programs such as Head Start, nor do Plaintiffs argue aliens have such a constitutional right under the Fourteenth Amendment. As to Plaintiffs' suggestion that the HHS Notice interprets Section 1611(c) to encompass *all* education benefits, *see* Pls' Mot. at 63, the HHS Notice makes no assertion.

As to Plaintiffs' insistence that, throughout PRWORA, "welfare" refers only to "cash payments to low-income families," Pls' Mot. at 52, this simply is not the case. For example, PRWORA reformed "welfare" by changing the previous Aid to Families with Dependent Children (AFDC) program to the Temporary Assistance for Needy Families (TANF)[3], which aims to, among other thing, "provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives" and "end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage." 42 U.S.C. § 601(a). Thus, "welfare" under the new TANF program was intended to include far more than just cash assistance. *See* 45 C.F.R. § 260.31(a)(1) (assistance "includes cash payments, vouchers, and other forms of benefits designed to meet a family's ongoing basic needs (i.e., for food, clothing, shelter, utilities, household goods, personal care items, and general incidental expenses)"). A

---

[3] Pub. L. No. 104-193, § 103(a) (codified at 42 U.S.C. §§ 601–19).

23

close review of PRWORA's text thus makes clear that the statute does not restrict "welfare" "to cash payments to low-income families," as Plaintiffs suggest. Pls' Mot. at 52.

Moreover, Plaintiffs assert that the HHS Notice "includes several programs that Congress exempted from PRWORA in subsequent statutes." Pls' Mot. at 55.[4] Plaintiffs argue that the statutes governing the Health Center Program and the Head Start Program contain "specific, mandatory" directives that require program benefits to be available to entire groups of people. *Id*. at 68–69. They point to language in the statute governing the Health Center Program that requires health centers receive funding under the program to "provide services for *all* residents within a catchment area . . . ." 42 U.S.C. § 254b(a)(1)–(2); and to provisions in the Head Start statute that say "children from low-income families *shall* be eligible for participation" if they meet the relevant income thresholds, *id*. § 9840(a)(1)(B)(i), and "homeless children *shall* be deemed to be eligible for such participation . . . ." *Id.* § 9840(a)(1)(B)(ii) (emphasis added). But the PRWORA eligibility prohibitions exist "notwithstanding any other provision of law." 8 U.S.C § 1611(a). As a general proposition, statutory "notwithstanding" clauses broadly sweep aside potentially conflicting statutes. *United States v. Hyde*, 497 F.3d 103, 108 (1st Cir. 2007). Although a "notwithstanding any other law" clause can be overridden by other statutory clauses, Congressional intent to override the clause must be clear. *See id*. Here, neither the Head Start Act provisions prescribing eligibility for certain children based on income or homelessness, nor the Health Centers Consolidation Act provision prescribing eligibility for certain residents, manifest an intention to repeal PRWORA's immigration status eligibility requirements. Indeed, neither statute specifically includes language requiring aliens to receive benefits. Because PRWORA

---

[4] Plaintiffs begin by asserting that HHS impermissibly interprets PRWORA to extend to the Coronavirus Aid, Relief, and Economic Security (CARES) Act because Congress directed that "all students" receive CARES benefits. Pls' Mot. at 67. But this assertion is irrelevant because the HHS Notice does not include CARES in its list of programs newly identified as providing Federal Public benefits. *See* HHS Notice at 31,237. And the HHS Notice specifically recognizes that each HHS program is unique and subject to an individualized analysis and "[a]ny additional programs determined to be Federal public benefits will be announced in program specific guidance." *Id*. Until such time as HHS announces that CARES provides a Federal public benefit under PRWORA, any discussion of CARES is premature.

24

specifically governs alien eligibility for Federal public benefits, the best way to reconcile PRWORA and each of these acts is to understand the eligibility criteria in PRWORA as controlling.

### ii.    The ED Notice

In construing PRWORA's context and full statutory text, the ED Notice first recognizes that the definition of "Federal public benefit" includes "a broad and disparate group of benefits," ranging from food assistance to retirement benefits. ED Notice at 30,897. ED notes that a broad range of educational benefits are "similar" to the benefits specifically enumerated in Subsection (B) because, for instance, "[t]he word 'assistance' is . . . broader than 'payment' and includes at least some actions that do not involve the direct exchange of money." *Id*. at 30,898. As a result "Congress clearly contemplated that Federal public benefits could cover assistance provided from entities to 'individuals, household, or family eligibility unit,' even when that assistance is provided through an 'in-kind' non-money benefit 'at the community level, including through public or private nonprofit agencies.'" *Id*. (alteration adopted); *see also id*. ("Congress would have no need to carve something out that would not otherwise be covered in the first instance under the 'Federal public benefit' definition. As such, the general definition of 'Federal public benefit' is best understood to include 'assistance' similar to the 'delivery of in-kind services at the community level, including through public or private nonprofit agencies' where such benefits have not been specifically excluded by 8 U.S.C. § 1611(b)(1)." (alterations adopted)).

Furthermore, the ED Notice recognizes that its interpretation of PRWORA cannot contravene *Plyler*, which "was expressly grounded in the Fourteenth Amendment, as applied to States, and the ability of States to impose unique restrictions on alien eligibility absent 'some articulable federal policy." ED Notice at 30,898. However, the *Plyler* Court did not address preemption by federal law or policy, *see Plyler*, 457 U.S. at 210 n.8, and PRWORA's statutory construction provision expressly states that PRWORA cannot "be construed as addressing alien eligibility for a basic public education," 8 U.S.C. § 1643(a)(2). As a result, the term "Federal public benefit" includes "all educational benefits that are provided to individuals, households, or

25

family eligibility units, regardless of age, and including when benefits are provided as in-kind services at the community level, such as through public or private nonprofit agencies, except those benefits that are basic public education benefits under *Plyler*." ED Notice at 30,899. The term "does not cover basic public education benefits that are received by children," but does include "postsecondary education benefits provided regardless of age, as *Plyler* did not address postsecondary benefits and PRWORA explicitly calls for such benefits to be included." *Id*.; *see id*. ("In other words, non-qualified alien adults are not permitted to receive education benefits (postsecondary education benefits or otherwise) and non-qualified alien children are not eligible to receive postsecondary education benefits and certain other education benefits, so long as such benefits are not basic public education benefits.").

For example, as to adult education programs authorized under Title II of the Workforce Innovation and Opportunity Act of 2014, ED appropriately determined that these programs provide "Federal public benefits" because these educational programs: (1) are "similar benefits," within the meaning of 8 U.S.C. § 1611(c)(1)(B), because the programs provide educational services to adults and children who lack certain skills or abilities; (2) are provided on a non-cash and in-kind basis to individuals, and therefore are a form of "assistance [. . .] to an individual" as defined under 8 U.S.C. § 1611(c)(1)(B); and (3) are not specifically exempted under PRWORA. ED Notice at 30,899–90. This reading of the residual phrase "similar benefits" does not render the term "postsecondary" superfluous, *see* Prel. Inj. Order at 43, because there are ED programs that distinctly provide postsecondary benefits under PRWORA (*e.g.*, the Foreign Language and Area Studies Program, which funds fellowships for foreign language and area studies through grants to institutions of higher education). Separately, other ED programs provide "similar" postsecondary "benefits" such that they are subject to PRWORA (*e.g.*, the Gaining Early Awareness and Readiness for Undergraduate Programs provides wrap around education services to students to help them prepare for postsecondary education). Under ED's interpretation, the catchall phrase relates to but does not overcome the overarching category. *See Yates v. United States*, 574 U.S. 528, 545 (2015) ("Where general words follow specific words in a statutory

26

enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (citation modified)).

Moreover, as to postsecondary career and technical education programs under the Carl D. Perkins Career and Technical Education Act of 2006, ED correctly determined these programs to provide "Federal public benefits" because these educational programs: (1) are "similar benefits," within the meaning of 8 U.S.C. § 1611(c)(1)(B), because the programs support the development and implementation of programs for individuals who are in need of CTE; and (2) are provided on a non-cash and in-kind basis to individuals who enroll in CTE and therefore are a form of "assistance [. . .] to an individual" eligibility unit as defined under 8 U.S.C. § 1611(c)(1)(B). ED Notice at 30,900. Although Perkins V programs for individuals at the postsecondary level are not specifically exempted under PRWORA, ED acknowledged that Perkins V programs that support minors in the secondary school setting are basic public education benefits under *Plyler* and are not "Federal public benefits." *Id*.

Plaintiff's objection to ED's interpretation of Section 1611(c)(1)(B) amounts to a semantic distinction without a difference. Pls' Mot. at 59. ED interprets Section 1611(c)(1)(B) to include "postsecondary education" and "any other similar benefit" while excluding basic public education as directed by § 1643(a)(2). Whether 8 U.S.C. § 1643(a)(2) is deemed a rule of construction or an exception to the statutory scheme and the definition of "federal public benefit," the result is the same: Section 1611(c)(1)(B) should not classify basic public education addressed by *Plyler* as a federal public benefit to which citizenship eligibility requirements apply. ED's approach respects the statutory text and intent behind Congress' acknowledgement of *Plyler* while giving full force and effect to the definitional clauses expressly set forth in Section 1611(c)(1)(B). Far from being "too complicated" an interpretation, Pls' Mot. at 59, ED's approach corresponds to the statutory definition in 1643(a)(2). This section specifies certain types of benefits included within "federal public benefits," alongside a "catchall clause" ("any other similar benefit,") against a backdrop of construing the definition pursuant to 8 U.S.C. § 1643(a)(2). And that section could be viewed as an "exception" to the otherwise broad catchall

27

phrase, or simply as application of the statutory construction dictated by 8 U.S.C. § 1643(a)(2). Either way, Plaintiffs' argument fails to show that ED's interpretation is "wrong" or erroneous.

### iii.    The HUD Notice

The HUD Notice begins and ends with the text of the statute, which first provides that "Federal public benefit'' means "any grant" that is "provided by an agency of the United States or by appropriated funds of the United States." HUD Notice at 54,363 (quoting 8 U.S.C. § 1611 (c)(1)(A)). HUD interprets subsection (A) to mean that PRWORA applies to any "award of funding for an individual or entity to carry out specified activities without the direct involvement of HUD." *Id*. HUD, therefore, concludes that because the PRWORA statute does not cabin the term "grant," it applies to "any grants [HUD] administers that are not explicitly governed by another statute." *Id*. This conclusion is consistent with the express statutory text. *See* HUD Notice at 54,364 ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008)).

In asserting that HUD's interpretation of "any grant" under subsection (A) is incorrect, Plaintiffs argue that "any grants" "necessarily excludes generally applicable benefits" as provided under subsection (B). Pls' Mot. at 47. Here, Plaintiffs are seemingly applying to subsection (A) the "eligibility units" phrase found in subsection (B). But, while subsection (B) considers eligibility units, subsection (A)—by its plain terms—does not. The two subsections are distinct, and subsection (B) does not in any way limit or modify subsection (A). This is consistent with the government's historical interpretation of PRWORA, which Plaintiffs do not contest. *See, e.g.*, 1998 HHS Notice at 41,659 ("If a benefit does not fall within Part A of the definition, it must be determined whether the benefit is a 'Federal public benefit' under Part B"); *see id*. ("With respect to the second condition, the phrase 'individual, household, or family eligibility unit' is particularly ambiguous and requires clarification. At the outset we interpret the phrase to narrow the set of benefits that fall within Part B of the definition."). And, if it had intended to narrow subsection (A)'s "any grant" language, Congress would have included

28

"eligibility unit" language in subsection (A). *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Next, HUD considers subsection (B)'s definition of "Federal public benefit" as "any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit . . . ." HUD Notice at 54,363 (citing 8 U.S.C. § 1611(c)(1)(B)). The HUD Notice interprets "any other similar benefit" by looking to the exemptions of non-cash or in-kind benefits under sections 1611(b)(1)(B) and (D). *Id*. The HUD Notice observes that "Congress would have no need to carve something out that would not otherwise be covered in the first instance under the 'Federal public benefit' definition. As such, the general definition of 'Federal public benefit' is best understood to include 'assistance' similar to the 'delivery of in-kind services at the community level, including through public or private nonprofit agencies' where such benefits have not been specifically excluded by 8 U.S.C. § 1611(b)(1)." *Id*. (alterations adopted).

Plaintiffs also claim the HUD Notice improperly "interprets the statute to apply to benefits provided "at the community level" rather than only to eligible individuals, households, or families." Pls' Mot. at 68. However, HUD's reference to the "community level" is limited to its cross-referencing of Section 1611(b)(1) in discerning the meaning of Section 1611(c)(1)(B). In applying subsection (B)'s definition of "Federal public benefit," the HUD Notice properly considers whether "payments or assistance are provided to an individual, household, or family eligibility unit" without imputing a "community level" standard. *See* HUD Notice at 54,363 ("HUD interprets PRWORA to apply to all HUD programs related to public or assisted housing as they are 'public or assisted housing' for which payments or assistance are 'provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States' unless a more specific federal statute applies.").

29

Moreover, Plaintiffs take issue with HUD's understanding that PRWORA applies to all "programs *related to* public or assisted housing" as opposed to only programs that "*are* 'public or assisted housing[.]'" Pls' Mot. at 68 (quoting HUD Notice at 54,364). HUD's Notice reflects the inclusion of programs that provide public or assisted housing and "any other similar benefit"—an interpretation that is entirely consistent with Section 1611(c)(B). For example, HUD's Continuum of Care Program provides not only housing vouchers and rent assistance, but also childcare, employment, substance abuse, and counseling services related to or "similar" to the housing benefits provided under that program. HUD's Community Planning and Development program provides payment for housing and shelter as well as related or "similar" benefits to aid in the construction or rehabilitation of housing. The HUD Notice thus applies PRWORA to those Federal public benefits that include public or assisted housing and benefits above and beyond, and therefore "similar" to, those public or assistance housing benefits.

Finally, Plaintiffs misinterpret the HUD Notice insofar as they claim that the Notice improperly "interprets the phrase 'eligibility unit' to modify only the term 'family.'" Pls' Mot. at 67. But the HUD Notice makes clear that it applies the "eligibility unit" criteria to each of the terms individual, household, and family. HUD Notice at 54,364.

### iv.    The DOJ Order

Plaintiffs assert that the DOJ Order is contrary to the text of PRWORA, Pls' Mot. at 70, but the Attorney General's decision not to exercise her exemption authority is entirely consistent with the statute's text.

According to Plaintiffs, 8 U.S.C. § 1611(b)(1)(D) imposes a mandatory duty on the Attorney General to exempt *all* programs that (1) deliver in-kind services at the community level, (2) do not condition the provision, amount, or cost of assistance on an individual's income or resource, and (3) are necessary for the protection of life or safety. Pls' Mot. at 81–82. In a half-hearted attempt to give meaning to the word "discretion," Plaintiffs assert that Section 1611(b)(1)(D) "assigns the Attorney General the duty to identify specifically *which* programs deliver in-kind services at the community level, are not conditioned on a person's income or

30

resources, and are necessary for the protection of life or safety," and "does not allow the Attorney General to decide *whether* programs that do meet those criteria should be excepted." *Id*. at 71; *see also* Third Am. Compl. ¶ 241. But, where Congress wished to impose obligations on the Attorney General under PRWORA, it knew how to do so expressly. *See, e.g.*, 8 U.S.C. § 1642(a)(3) ("[T]he Attorney General shall promulgate regulations" governing verification). And, where a statute uses "shall" in one provision and discretionary language in another, it suggests a deliberate choice, indicating that one action is mandatory while the other is discretionary. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (explaining that "shall" "normally creates an obligation impervious to judicial discretion"); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). Section 1611(b)(1)(D) uses no such mandatory language. Instead, it grants the Attorney General the authority to specify programs for exemption "in the Attorney General's sole and unreviewable discretion." 8 U.S.C. § 1611(b)(1)(D). Given this explicit delegation of discretionary authority, no further analysis is necessary.

Plaintiffs' reliance on *Gundy* to interpret the term "specify" in this context is unpersuasive. *See* Pls' Mot. at 71. In *Gundy v. United States*, the Supreme Court construed a provision of the Sex Offender Registration and Notification Act (SORNA) authorizing the Attorney General to "specify the applicability" of the Act's registration requirements to pre-Act offenders. 588 U.S. 128, 140 (2019) (citation omitted). The Court held that this grant was best read as authority to determine *how* to apply SORNA to pre-Act offenders, not *whether* to apply it at all. *Id.* at 144. But, context matters. Indeed, the Court explicitly reached this conclusion by rejecting Gundy's insistence on "constru[ing] words 'in a vacuum'" and emphasized that "the Court interprets statutory provisions—including delegations—by reading the text in 'context' and in light of the statutory 'purpose." *Id*. at 129 (citations omitted). In *Gundy*, the relevant context that led the Court to reach the conclusion that the Attorney General was required to "specify *how*" the Act applied to pre-Act offenders was Congress' announcement that it created

31

SORNA to protect the public by establishing a *comprehensive* national system for the registration of sex all offenders, *id*. at 144 (citation omitted), and a previous Supreme Court case that spoke to the Attorney General's role under the relevant statutory provision and made clear that his role was "to apply SORNA to pre-Act offenders as soon as he thought it feasible to do so[,]" *id*. at 138. Extending the Court's logic to the present circumstances requires looking to PRWORA's statutory purpose to help interpret "specify." Congress made PRWORA's purpose clear: to restructure the nation's Federal public benefit system into one that emphasizes "self-sufficiency" and does not allow unqualified aliens to "burden the public benefits system." *See* 8 U.S.C. § 1601. This context counsels towards reading "specif[y]" in conjunction with its modifying "sole and unreviewable discretion" language—language absent from the provision discussed in *Gundy*—as "specify *whether*," thereby allowing the Attorney General to decide not to extend access to Federal public benefits to unqualified aliens. That "[n]o Attorney General before now has claimed the authority to *decline* to exempt programs that meet the statutory criteria[,]" Pls' Mot. at 73, does not lessen the nature and extent of the Attorney General's discretion under PRWORA. Indeed, Congress expressly delegated broad, unreviewable discretion to the Attorney General and that delegation does not contain the type of guardrails Plaintiffs propose.

Nor does highlighting PRWORA provisions that explicitly allow access to emergency benefits—like emergency medical assistance, emergency disaster relief, treatment for communicable diseases, and emergency food aid—by individuals who are not qualified aliens or U.S. citizens, help Plaintiffs' cause. *See id*. Rather, the PRWORA provisions cited by Plaintiffs serve to underscore that, where Congress sought to permit access by all aliens to emergency benefits rather than leaving it up to the Attorney General to decide whether (or not) to allow access to those benefits, it did so.

To the extent APA review is available—which Defendants' contest, *see supra* part I—Plaintiffs' "contrary to law" claim is also foreclosed by *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Under *Loper Bright*, courts exercise independent judgment to determine

32

the "best reading" of a statute, *id*. at 395, but must "respect the delegation" when the best reading of the statute is that Congress has delegated a particular question to the agency, *id.* at 413. Because Congress has unambiguously done so through an express grant of "sole and unreviewable discretion," 8 U.S.C. § 1611(b)(1)(D), courts must ensure only that "the agency has engaged in 'reasoned decisionmaking' within those boundaries[.]" *Loper Bright*, 603 U.S. at 395 (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)). Under the APA standard, the Attorney General's decision is plainly within the boundaries of the delegation Congress laid out.

Because Congress gave the Attorney General a discretionary exception authority, rather than creating a mandatory duty to exempt every program that satisfies the criteria in Section 1611(b)(D), Plaintiffs' Count V fails as a matter of law.

### C.  The Arbitrary and Capricious Claims in Counts II and V are Without Merit.

The APA permits courts to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Under the arbitrary or capricious standard, an agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park*, 401 U.S. at 416. Review is "deferential," *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019), and simply examines whether the agency's decision "was the product of reasoned decisionmaking[,]" *State Farm*, 463 U.S. at 52. Moreover, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id*. at 43. Because the Defendants' interpretations of PRWORA were both reasonable and reasonably explained, *FCC v. Prometheus Radio Project*, 592 U.S. 414, 417 (2021), they satisfy the deferential "arbitrary and capricious" standard. *See also Strickland v. Comm'r, Maine Dept. of Hum. Servs.*, 48 F.3d 12, 18 (1st Cir. 1995) (noting that "an explained modification, even one that represents a sharp departure from a longstanding prior interpretation, ordinarily retains whatever deference is due"); *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 291 (1st Cir. 1995) ("[A]ny such alteration or reversal must be

33

accompanied by some reasoning—some indication that the shift is rational, and therefore not arbitrary and capricious.").

As an initial matter, Plaintiffs mischaracterize the nature and effect of the PRWORA Notices in arguing that the agencies failed "to consider reliance interests, fail[ed] to consider costs, including the cost to U.S. citizens, and fail[ed] to adequately explain why the specific newly restricted programs have been redesignated as 'Federal public benefits.'" *See* Pls' Mot. at 35. Although the PRWORA Notices indicate how each agency interprets the statute and provide that the agencies will employ that interpretation in administration of applicable programs, the Notices do not require adoption of specific verification methods and do not identify any consequences that would follow failure to verify. As a result, under the arbitrary and capricious standard, the agencies were only required to evaluate how the change in interpretation could generally affect the administration of applicable programs and were not required to explain how potential future guidance regarding specific verification methods and non-verification consequences could potentially affect Plaintiffs. Such analysis—which Plaintiffs insist was necessary, *id*. at 35–44—would require the agencies to speculate about the nature and potential impact of a non-existent framework. Stated differently, the PRWORA Notices are limited: they merely set out each agency's interpretation of the statutory scheme and nothing more. The Notices' reasoned explanations of those interpretations are neither arbitrary nor capricious.

Plaintiffs primarily argue that the PRWORA Notices failed to adequately consider reliance interests. *See id*. But reliance interests are less relevant in matters of statutory interpretation. Under *Loper Bright*, PRWORA means what it means; its best reading cannot have changed simply because the government previously interpreted it wrongly, even if people relied on its error. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 60 (2020) (Thomas, J., concurring in the judgment) (opinion joined by Alito and Gorsuch, JJ.) ("But reliance interests are irrelevant when assessing whether to rescind an action that the agency lacked statutory authority to take. No amount of reliance could ever justify continuing a program that allows DHS to wield power that neither Congress nor the Constitution gave it.").

The Supreme Court's opinion in *Regents* supports the conclusion that the PRWORA Notices are valid. *Regents* only requires that agencies undertake *some* consideration of reliance interest and expressly recognizes that an agency "might conclude that reliance interests in benefits that it views as unlawful are entitled to no or diminished weight. And, even if [the agency] ultimately concludes that the reliance interests rank as serious, they are but one factor to consider." *Id*. at 32. Indeed, an agency "may determine, in the particular context before it, that other interests and policy concerns outweigh any reliance interests." *Id*. In accordance with *Regents*, the PRWORA Notices appropriately afforded little to no weight to reliance interests in light of each agency conclusion that previous PRWORA interpretations were *ultra vires*. *See, e.g.*, HHS Notice at 31,238 ("Some may argue that there are reliance interests that are affected by the Department's change in position. Some may argue that the Department's new position will negatively impact public health. However strong these hypothetical policy arguments may be, the Department has no power to override Congress's will, expressed in the clear statutory text of PROWRA."); DOJ Order at 32,025 ("No amount of reliance could ever justify continuing a program that an agency lacked statutory authority to implement in the first place, so bringing the Federal Government into compliance with the law is a powerful reason to withdraw the Final Order regardless of any reliance interests." (citation omitted)).

For example, the DOJ Order identified reliance interests, assessed their significance, and explained why competing considerations outweighed them. That is exactly what *Regents* requires. 591 U.S. at 33. The DOJ Order expressly acknowledges that non-qualified aliens "may have been able to receive certain types of in-kind public benefits . . . because of the exceptions detailed in the Final Order," and that "[s]uch aliens will not be eligible for those benefits in the future due to this revised specification." DOJ Order at 32,025. The Order explains that those reliance interests were outweighed by countervailing considerations. The programs may not have been lawfully eligible for exemption to begin with; some previously exempted programs were not necessary for life or safety; and even for programs where exemption authority existed, the interest in reducing migration incentives outweighed any reliance interests. *Id*. at 32,025–26.

35

And any remaining reliance interest analysis is further diminished by the structural nature of the exemption authority itself. *See Regents*, 591 U.S. at 60 (Thomas, J., concurring). The life or safety exemptions, like deferred action, were always creatures of Executive discretion, never statutory entitlements. They were exercisable and revocable at the Attorney General's sole and unreviewable discretion from the moment they were issued. *See* 8 U.S.C. § 1611(b)(1)(D). Non-qualified aliens who relied on their continuation were relying on one administration's discretionary policy choice, not on any legal right conferred by Congress. Even if reviewable, which Defendants' contest, the DOJ Order amply satisfies the arbitrary and capricious standard.

Moreover, the Notices all include discussions and explanations of the agencies' revisions of their prior interpretations of PRWORA. *See* HHS Notice at 31,233–36; ED Notice at 30,897-99; HUD Notice at 54,363–65; DOJ Order at 32,024. For example, Plaintiffs fault HHS for failing to specifically explain why every individual program listed in the HHS Notice provides Federal public benefits, Pls' Mot. at 38–39, but the APA merely requires that an agency action be reasonable and reasonably explained. *Prometheus Radio*, 592 U.S. at 417. It does not require an exhaustive explanation that addresses all possible alternatives. *See State Farm*, 463 U.S. at 43 ("We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (citation omitted)). The analysis contained in each PRWORA Notices was reasonable and reasonably explained for purposes of the APA's deferential arbitrary and capricious standard. The PRWORA Notices set forth each agency's interpretation of PRWORA and they amply describe the basis for those interpretations, as well as how those interpretations broadly apply to the programs each agency administers. The APA requires no more.

For instance, the DOJ Order identifies four independent grounds for withdrawing the prior life or safety exemptions: (1) agencies had been applying the exemptions more broadly than the statute permits, providing benefits to non-qualified aliens who were not lawfully eligible to receive them; (2) some previously excepted programs were not, in fact, "necessary for the protection of life or safety" within the meaning of § 1611(b)(1)(D); (3) even as to programs the Attorney General had authority to except, the reliance interests of non-qualified aliens were

36

outweighed by the need to reduce incentives for unlawful migration, consistent with the declared immigration policy of the United States, *see* 8 U.S.C. § 1601(2); and (4) Congress expressly delegated this specification to the Attorney General's "sole and unreviewable discretion," *id.* § 1611(b)(1)(D), reflecting Congress's intent that the scope of the specification not be subject to the kind of arbitrary-and-capricious review that would require exhaustive consideration of reliance interests. DOJ Order at 32,025–26. The DOJ Order thus explains what the prior exemptions had produced, why that outcome conflicted with the statutory purposes of PRWORA, and why the balance of considerations, including immigration policy, counseled against maintaining them. Each of these rationales is grounded in the statute's text and purposes. Together they constitute the kind of reasoned explanation the APA requires. *Prometheus Radio*, 592 U.S. at 423. The APA requires no more.

Ultimately, it is not arbitrary or capricious for an agency to decline to adopt an incorrect reading of a statute merely because the correct reading of the text comes with practical costs; rather, if the agency reasonably concludes that Congress already made that judgment by using the words that it did, it is required to follow Congress's lead. *See Rust v. Sullivan*, 500 U.S. 173, 187 (1991) (holding that agency action was not arbitrary or capricious because the agency "determined that the new regulations are more in keeping with the original intent of the statute, are justified by client experience under the prior policy, and are supported by a shift in attitude"); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 666 (2020) (employers "warn, too, about consequences that might follow a ruling for the employees. But none of these contentions about what the employers think the law was meant to do, or should do, allow us to ignore the law as it is."). At the very least, the choice between fidelity to the best interpretation of statutory text and practical consequences involves the sort of "value-laden decisionmaking and the weighing of incommensurables" entrusted to federal agencies. *New York*, 588 U.S. at 777.

## III.    Plaintiffs' Spending Clause Challenge Fails.

In Count IV, Plaintiffs assert that the PRWORA Notices and the decision by the Attorney General not to exercise her life or safety exemption authority impose new and unforeseeable

conditions the States could not have foreseen when they accepted federal funding. Pls' Mot. at 76; *see also* Third Am. Compl. ¶ 233. But the PRWORA Notices and the DOJ Order do not impose a new condition on State-accepted funds—they outline the applicability of an unambiguous condition in existence since PRWORA's enactment thirty years ago, pursuant to the agencies' corrected interpretations of PRWORA and the Attorney General's decision not to exercise her discretionary authority. Plaintiffs further assert that they are being forced to dramatically "transform their own social services programs" in order to "continue to receive federal funding[,]" Pls' Mot. at 79 (citations omitted). But Plaintiffs' coercion argument misconstrues the nature and legal effect of the Notices, which do not require States to utilize specific verification methods, threaten an immediate loss of funding—or, indeed, *any* consequence—for a States' failure to implement verification methods for programs subject to PRWORA.

### A.  The PRWORA Notices Do Not Challenge Congressional Action.

As an initial matter, Plaintiffs do not challenge Congressional action, which is a predicate to any Spending Clause claim. The Spending Clause is implicated only when Congress imposes a spending or funding condition, and without challenging congressional action, a plaintiff cannot state a claim under the Spending Clause. *See Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 212 (D.D.C. 2025) ("At the outset, it is unclear that [the Spending Clause's] limitation on Congress's spending power applies to the Executive Branch."). Here, Plaintiffs do not state a viable Spending Clause claim where they challenge the *agencies'* application of the status verification condition to Federal public benefit programs pursuant to their corrected interpretations of PRWORA, rather than Congress' initial imposition of the condition. Third Am. Compl. ¶¶ 231–37. Plaintiffs' challenge to Executive Branch action—a repackaging of their contrary to law claims—is not a invalid Spending Clause claim.

### B.  The PRWORA Notices Do Not Impermissibly Impose Retroactive Conditions.

The Spending Clause authorizes Congress to "lay and collect Taxes" to provide for the "general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Pursuant to that authority,

Congress has "broad power" to "set the terms on which it disburses federal funds." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 (2022). "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted). The *Dole* Court outlined that "the exercise of the spending power must be in pursuit of 'the general welfare'" and conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* at 207 (citations omitted). If a State is "unaware of" or "unable to ascertain what is expected of it," there can be no knowing acceptance. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

Here, Plaintiffs assert that the agencies surprised them with post acceptance conditions in the middle of their grant terms, Pls' Mot. at 14, and that the States "could not possibly have foreseen" the agencies' adoption of their "novel interpretations [] riddled with legal errors" and "plainly not unambiguously correct interpretations of the statute[,]" *id.* at 48. But Plaintiffs' unfair notice claim fails where the plain text of PRWORA makes clear that any government entity administering a "Federal public benefit" as defined in 8 U.S.C. §1611 must verify the recipient is of a qualifying immigration status, and the agency notices merely implement that statutory condition.

Plaintiffs attempt to draw support from *Pennhurst* and *Arlington* to bolster their insufficient notice argument, Pls' Mot. at 74, but those cases do not aid Plaintiffs where they do not challenge the existence or clarity of the eligibility verification condition outlined by Congress in PRWORA. In challenging the applicability of the verification obligation to additional programs, Third Am. Compl. ¶ 220, Plaintiffs simply do not allege the sort of predicament that animated *Pennhurst* and its progeny: whether federal statutes imposed a condition on States' receipt of Federal funds. *Pennhurst*, 451 U.S. at 7–8, 17; *Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. 291, 294–95 (2006). In *Pennhurst*, the question was whether a

39

federal statutory provision stated a "mandatory" and enforceable condition *at all*, and the Court determined as a matter of statutory construction that it did not. *Pennhurst*, 451 U.S. at 13, 24; *see id.* at 15–27; *see also Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004) ("The federal law in *Pennhurst* was unclear as to whether the states incurred any obligations at all by accepting federal funds[.]"). The Supreme Court found that "the statute did not intend to unambiguously bind the states" because Congress "legislat[ed] by innuendo." *Rolland v. Romney*, 318 F.3d 42, 55 (1st Cir. 2003) (alterations in original) (quoting *Pennhurst*, 451 U.S. at 19). And in *Arlington*, the Court found that the Individuals with Disabilities Education Act (IDEA) "certainly fail[ed] to provide the clear notice [to states] that is required under the Spending Clause" because the provision at issue did "not even hint that acceptance of IDEA funds makes a State responsible for reimbursing prevailing parents for services rendered by experts." 548 U.S. at 297–98. These cases underscore that the relevant Spending Clause inquiry is whether Congress, in exercising its spending power to attach conditions to grants for States, did so with explicit and unambiguous language.

Here, Congress "provid[ed] clear notice to the States that," "by accepting funds" from Defendants, States would "be obligated to comply with" PRWORA's eligibility verification requirement when administering any Federal public benefit, unless that benefit was excepted from the verification requirements. *Pennhurst*, 451 U.S. at 25. *Pennhurst* and *Arlington* do not require more. Indeed, Congress explicitly outlined in the plain text of PRWORA that "an alien who is not a qualified alien . . . is not eligible for any Federal public benefit," 8 U.S.C. § 1611(a); *id.* § 1611(c) (defining "Federal public benefit"); *id.* § 1641 (defining "qualified alien"). Where each of the programs and categories of programs identified in the PRWORA Notices provides a Federal public benefit as defined in § 1611(c), *see supra* part (II)(B), the text of the statute itself provides Plaintiffs "fair notice" that the listed programs can only be administered to American citizens and qualified aliens, and subject to identity verification requirements.

As to the DOJ Order, Plaintiffs cannot plausibly claim that the text of 8 U.S.C. § 1611(b)(1)(D) fails to put grantees on notice that the Attorney General may choose to exercise

40

her "sole and unreviewable discretion" to exempt eligible programs from the status verification requirement, or, conversely, choose not to exercise that discretionary authority. *See supra* part (II)(B)(v), (II)(C). Given Congress' explicit grant of discretion, that programs were historically exempt, and that previously Attorneys General chose to maintain exemptions, does not create room for Plaintiffs to argue that a decision now by the Attorney General to forgo the exercise of her discretionary authority was unforeseeable. *See* Pls' Mot. at 77. And Plaintiffs' historic reliance on the 2001 Life or Safety Final Order cannot render the Attorney General's current exercise of her "sole and unreviewable discretion" unlawful. *See supra* part (II)(B)(v), (II)(C). Nor does Section 1611(b)(1)(D) leave room for Plaintiffs to challenge the Attorney General's authority to alter the "scope of the statute" because she is a member of the Executive Branch, Pls' Mot. at 74. To be clear, Congress gave the Attorney General the option to *narrow* the reach of the statute, and her decision not to do so in no way expands PRWORA's reach beyond what Congress envisioned—and, indeed, explicitly outlined. Finally, that previously-exempted programs are now subject to verification does not create a *new* condition but applies a long-accepted condition to additional programs consistent with Congress' express will. Were it otherwise, all future Attorneys General would be constrained by what Attorney General Reno did in 2001.

In short, PRWORA has always required immigration verification before a Federal public benefit is administered. Defendants' enforcement of that statutory requirement does not constitute a retroactive condition for Spending Clause purposes. At most, Plaintiffs challenge whether Defendants have properly enforced PRWORA (*i.e.*, the breadth and scope of the verification condition) but that is nothing more than an APA claim that faces insurmountable obstacles for the reasons previously explained. *See supra* part (II).

### C. The PRWORA Notices are Not Impermissibly Coercive.

The Supreme Court has made clear that, although the Federal Government may not be able to *compel* States to do a particular activity, it may *encourage* States and municipalities to implement Federal regulatory programs. *See New York v. United States*, 505 U.S. 144, 149

41

(1992). Thus, the Federal Government can, constitutionally, use conditions on federal funds to "induce the States to adopt policies that the Federal Government itself could not impose." *Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB)*, 567 U.S. 519, 537 (2012). It may, for example, make certain federal funds available only to localities that enact a given regulatory regime. *Dole*, 483 U.S. at 205–08 (upholding Federal statute conditioning State receipt of federal highway funds on state adoption of minimum drinking age of twenty-one). The key is whether the financial inducement is "so coercive as to pass the point at which pressure turns into compulsion." *Id*. at 211 (citation omitted).

As an initial matter, the coercion analysis is not applicable when States challenge an unambiguous condition on the use of funds that existed at the time the states accepted the funding. *NFIB*, 567 U.S. at 580 ("We have upheld Congress's authority to condition the receipt of funds on the States' complying with restrictions on the use of those funds, because that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'"). Congress is always permitted to condition the use of appropriations, and States can then decide whether or not to accept the funds with those conditions attached. *Id*. at 585 ("Nothing in our opinion precludes Congress from offering funds under the Affordable Care Act to expand the availability of health care, and requiring that States accepting such funds comply with the conditions on their use."). The door to the coercion analysis opens only when States challenge a statutory condition requiring them to do something in order to become eligible for funding, *see Dole*, 483 U.S. at 208 (engaging in coercion analysis where South Dakota challenged federal law threatening to withhold five percent of state's federal highway funding if state did not raise its drinking age to 21); or when states challenge a statutory condition threatening to terminate existing funding unless states comply with a condition that did not exist when the states accepted the funding, *see NFIB*, 567 U.S. at 579–80 (engaging in coercion analysis when statutory provision threatened to withhold states' Medicaid funding if states chose not to participate in the expansion of Medicaid). Here, because Plaintiffs challenge the

unambiguous eligibility verification condition that existed when the States accepted agency funds, engaging in a coercion analysis is inappropriate.

Regardless, should the Court choose to engage in a coercion analysis, Plaintiffs' claims about the coercive nature of the Notices misunderstand their content. Plaintiffs assert that the PRWORA Notices are unconstitutionally coercive because they demand that States "dramatically" "transform" federal programs that "comprise the very core of the social safety net in many States" or lose "billions of dollars in funding annually." Pls' Mot. at 78–79; Third Am. Compl. ¶ 235. Plaintiffs assert that they are being forced to "develop[] costly new systems for screening eligibility" and restructure operations in order to continue to receive federal funding. Pls' Mot. at 79; Third Am. Compl. ¶ 236. But the Notices do not outline specific compliance requirements or verification methods that must be utilized for each federal benefit program. And at least one of the suggested verification programs comes at no cost to the States, rendering Plaintiffs' suggestions of extreme costs and the need to "dramatically transform the nature of many of these programs," Pls' Mot. at 79, unfounded.

Plaintiffs attempt to draw support from the Court's finding in *NFIB* that a federal condition becomes impermissibly coercive "when it threatens a substantial portion of a State's federal funding unless the state accepts a program that is [different] in kind" than the one the State previously agreed to join. *Id.* at 89 (quotations omitted) (quoting *NFIB*, 567 U.S. at 580–83) (citations omitted). In *NFIB*, the Supreme Court found that the threatened loss of all Medicaid funds that made up approximately 20 percent of the average State's total budget, to induce the States to further expand their Medicaid program was so coercive as to violate the Spending Clause. 567 U.S. at 581. The present instance is, however, distinct from that of *NFIB*, first, because Plaintiffs are not required to "broadly expand"—or expand in any way—their Federal public benefits programs; nor are they being required to alter the Federal public benefits they provide. Instead, as Plaintiffs recognize, the Notices require States to *narrow* the scope of who may access the programs at issue, consistent with Congress' expressed intent in PRWORA. Narrowing their recipient pools does not, as Plaintiffs claim, transform the programs, Pls' Mot. at

43

79; Third Am. Compl. ¶ 326. Second, again, in *NFIB*, the Supreme Court engaged in a coercion analysis—and ultimately found coercion—where Congress threatened to withhold or terminate existing grants of Medicaid funding if states did not agree to use federal funding to expand Medicaid. *NFIB*, 567 U.S. at 578. Here, Plaintiffs do not—and cannot—point to a single sentence in the PRWORA Notices detailing enforcement procedures or outlining consequences for non-compliance; and Plaintiffs are not required to use funding in a new way.

Additionally, because the monetary value of the "coercion" in *NFIB* was such an outsized percentage of the States' total budgets, *NFIB* should be viewed as the exception rather than the general rule. The federal funding at issue in this case is nowhere near as large a portion of federal grants to state budgets as Medicaid—or, at a minimum, Plaintiff have made no such showing. Thus, the facts of this case fall in the range of the inducements considered acceptable in *Dole*, which constituted less than half of one percent of South Dakota's budget, rather than the threat of a loss of all Medicaid funds considered in *NFIB* or of "all of the States' federal health care funding" considered in *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 570 (S.D.N.Y. 2019).

Plaintiffs' claim fails because they have not shown any Spending Clause violation on the basis of "coercion."

## IV. Count VI Should be Dismissed Because a Request for Declaratory Relief is Not a Valid Cause of Action and the PRWORA Notices Do Not Outline Specific Verification Methods that States Must Employ.

Plaintiffs seek a "judicial declaration that, to the extent that the PRWORA Notices require Plaintiff States to verify immigration status for participants in programs identified as federal public benefits, the Notices are contrary to law in violation of the APA because the Attorney General has not promulgated the regulations described in 8 U.S.C. § 1642(a)." Pls' Mot. at 80; *see also* Third Am. Compl. ¶ 256.[5] Plaintiffs' Count VI should be dismissed, as the

---

[5] Plaintiffs' Third Amended Complaint requests a judicial declaration that the PRWORA Notices are contrary to law to the extent they "require Plaintiff States to verify immigration status for participants in programs *newly* identified as federal public benefits," Third Am. Compl. ¶ 256 (emphasis added). But, in their Motion for Summary Judgment, Plaintiffs drop "newly" and

Declaratory Judgment Act does not constitute a valid, independent cause of action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only." (citation modified)). Even if this Court entertains Plaintiffs' request, their claim fails because whether the Attorney General has promulgated a formal regulation outlining acceptable verification procedures to be employed by States has no bearing on the legitimacy of the PRWORA Notices, which simply outline the agency-funded programs that confer Federal public benefits rather than requiring States to institute any particular verification methods. And, to the extent the States are asserting that they cannot be required to verify applicant eligibility for *any* Federal public benefit program, that position entirely ignores the text of PRWORA and directly conflicts with the State's decades-long acceptance of the verification requirement for programs the agencies previously interpreted as administering Federal public benefits under previous guidance documents.

Section 1642(b) is not relevant here because the challenged Notices do not mandate particular forms of verification and instead merely (1) outline which agency-funded programs constitute Federal public benefits under 8 U.S.C. § 1611(c), and (2) suggest States should continue to verify program applicant eligibility consistent with the long-accepted 1997 Interim Guidance. The 1997 Interim Guidance does not require the use of any particular method to determine a benefit recipient is of a qualifying immigration status. *See* HHS Notice at 31,237 ("While verification requirements are related to a practical effectuation of the prohibition set forth in § 1611(a), they are conceptually distinct from a proper definition of 'Federal public benefit.' Thus, the Department is not formally revising the aspects of the 1998 Notice that touch on PRWORA's verification requirements at this time. However, the Department notes important considerations for stakeholders to keep in mind."); ED Notice at 30,900 ("Grantees . . . may seek

---

request a more expansive judicial declaration that the PRWORA Notices are contrary to law to the extent they "require Plaintiff States to verify immigration status for participants in [any] programs identified as federal public benefits[.]" Pls' Mot. at 80.

to verify eligibility using, among other things: (1) the Department of Homeland Security (DHS) Systematic Alien Verification for Entitlements (SAVE) program; (2) review of U.S. birth certificates; (3) review of REAL ID compliant identification . . . ; (4) DHS issued documentation verifying immigration status; or (5) *other methods to verify eligibility*." (emphasis added)); HUD Notice at 54,365 ("HUD will undertake a review and revised guidance in order to determine the means of verification of immigration status as they affect those programs not exempt under Section 1611(b)(1)."); DOJ Order 32,024 (summarizing the provisions of 8 U.S.C. § 1642). In other words, when it comes to verification, the PRWORA Notices are not deviating from any prior notices issued by the agencies or the long-accepted Attorney General's 1997 DOJ Interim Verification Guidance, nor are they imposing any specific verification methods. Because the PRWORA Notices do not require States to employ specific verification methods, they do not conflict with Section 1642(b)'s call for a two-year time frame for States to develop compliant verification procedures once a regulation is promulgated.

To the extent Plaintiffs now contest the PRWORA Notices' suggestion that verification is necessary in *any* Federal public benefits context prior to the promulgation of regulations under 8 U.S.C. § 1642(a), Pls' Mot. at 80 ("to the extent that the PRWORA Notices require Plaintiff States to verify immigration status for participants in [any] programs identified as federal public benefits"), this position completely disregards PRWORA's plain text. *See* 8 U.S.C. § 1611(a) ("an alien who is not a qualified alien . . . is not eligible for any Federal public benefit); *id*. § 1601 (outlining that Congress implemented PRWORA to effectuate a national immigration policy that encourages all aliens to be self-reliant and discourages illegal immigration motivated by the availability of Federal public benefits, and referencing State determinations of eligibility of aliens for public assistance). Not to mention, the proposition that States are not presently required to verify eligibility for *any* Federal benefits program cannot be squared with Plaintiffs' repeated call for the agencies' prior PRWORA interpretations to stand, *see, e.g.,* Pls' Mot. at 46 ("States have relied on HHS's longstanding view"); *id*. at 10 (asserting reliance interests on HHS' "previously settled construction"); *id*. at 40 ("The newly restricted ED programs have

46

operated for decades in reliance on ED's determination that they are not Federal public benefits")—interpretations that plainly require eligibility verification, *see* 1998 HHS Notice ("Under section [1642], providers of a nonexempt 'Federal public benefit' must verify that a person applying for the benefit is a qualified alien and is eligible to receive the benefit.").

Further unfounded is Plaintiffs' suggestion that until Section 1642(a) regulations are promulgated, "States are in the same position as non-profits," which are explicitly exempt from being required to "determine, verify, or otherwise require proof of eligibility of any applicant for [Federal public] benefits[,]" 8 U.S.C. § 1642(d). Pls' Mot. at 82. That Congress explicitly exempted non-profit charitable organizations under Section 1642(d) only serves to further demonstrate that, absent an explicit statutory exemption, the States are required to verify eligibility. And, the text of the 1997 DOJ Interim Verification Guidance makes clear that since 1997, States have been directed to "(1) Determine if [a] program provides a ''federal public benefit'' subject to the Act's verification requirements; (2) Determine whether the applicant is otherwise eligible for benefits under general program requirements; (3) *Verify the applicant's status as a U.S. citizen, U.S. non-citizen national or qualified alien*; and (4) Verify the applicant's eligibility for benefits under the Act." 1997 DOJ Interim Verification Guidance at 61,345 (emphasis added). Plaintiffs nowhere contest the enduring validity of the Interim Guidance and its direction to verify that an applicant for a Federal public benefit is of an eligible immigration status.

Because Plaintiffs' declaratory judgment claim is both procedurally and substantively unfounded, Claim VI should be dismissed.

**V.    Any Relief Should be Limited to Plaintiff States.**

Plaintiffs seek complete vacatur of the PRWORA Notices, but that remedy is not appropriate. *See* Pls' Mot. at 83. If the court's remedial order affects nonparties, it may only do so incidentally. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to

47

the particular federal plaintiffs."). "This tracks the founding-era understanding that courts 'render a judgment or decree upon the rights of the litigant[s].'" *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring) (quoting *Rhode Island v. Massachusetts*, 37 U.S. 657 (1838)). To be sure, courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). The "set aside" language of Section 706(2) does not meet this standard. It neither refers to vacatur nor specifies as to whom the agency action should be set aside. *See Texas*, 599 U.S. at 696–97 (Gorsuch, J., concurring); *Arizona v. Biden*, 40 F.4th 397 (6th Cir. 2022) (Sutton, C.J., concurring). And elsewhere, the APA makes clear that it does not upset traditional equitable principles, providing that its authorization of judicial review does not affect "the power or duty of the court to . . . deny relief on any . . . equitable ground." 5 U.S.C. § 702(1).

Even if the APA could be read to authorize vacatur of agency action,[6] "a district court should think twice—and perhaps twice again—before granting such sweeping relief." Texas, 599 U.S. at 702 (Gorsuch, J., concurring) (citation modified). As the Supreme Court explained in *Trump v. CASA, Inc.*, there is no basis in equity for a universal injunction that goes beyond remedying the harms incurred by the plaintiffs who have brought the lawsuit. 606 U.S. 831, 856 (2025). The Court has long recognized that "equitable relief must be limited to the inadequacy that produced [the] injury in fact" and "[a]ny remedy a judge authorizes must not be more burdensome to the defendant than necessary to redress the complaining parties." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring) (citation modified). To grant universal relief under the auspices

---

[6] Defendants acknowledge that the First Circuit has recognized vacatur as an available remedy under the APA. *See Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 50 (1st Cir. 2025). Defendants here preserve the argument that 5 U.S.C. § 706(2) does not authorize any particular form of relief; it merely directs a reviewing court to disregard "agency action, findings, and conclusions" that it finds unlawful when resolving an individual APA challenge. *See Texas*, 599 U.S. at 693-703 (Gorsuch, J. concurring).

48

of vacatur "strains our separation of powers. It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide." *Id.* at 703. Accordingly, any equitable remedy applied in the nature of vacatur should apply only to the named Plaintiffs in this case. *See California v. Texas*, 593 U.S. 659, 672 (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract") (citation modified); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (observing that the "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." (citations omitted)).

In addition to their vacatur request, Plaintiffs "request that the Court also permanently enjoin Defendants from implementing or enforcing the PRWORA Notices against them by any other means." Pls' Mot. at 84. For all the reasons previously set forth, Plaintiffs claims fail and they are not entitled to injunctive relief. Even if they were, Plaintiffs' vague request that Defendants be enjoined from enforcing the PRWORA Notices "by any other means" is neither reasonably detailed to provide Defendants sufficient notice of the acts restrained, Fed. R. Civ. P. 65(d)(1)(C), nor is it in any way tethered to any specific claim or specific alleged injury, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) ("Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (citation modified)). If the Court is inclined to grant any injunctive relief, such relief should be limited to an order enjoining Defendants' effectuation of the PRWORA Notices in the Plaintiff States.

Finally, Plaintiffs request that the Court "issue a declaratory judgment that the PRWORA Notices are unlawful because they violate the Administrative Procedure Act and the Constitution, under Counts I-V." Pls' Mot. at 84. But, where the claims underlying this request for relief are without merit, the Court should decline to issue such a declaration.

49

## CONCLUSION

For the reasons explained above, Plaintiffs' Motion should be denied, Defendants' Cross-Motion should be granted, and final judgment should be entered in Defendants' favor. If the Court is inclined to grant any relief, it should be limited to the Plaintiff States in this case. Defendants rest on the extensive briefing in this case and defer to the Court on whether a hearing is necessary on the parties' cross-motions.


Dated: March 20, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

DIANE KELLEHER
Branch Director
Federal Programs Branch

*/s/ Alexandra L. Yeatts*
ALEXANDRA L. YEATTS (CA Bar No. 358762)
HEIDY L. GONZALEZ (FL Bar No. 1025003)
*Trial Attorneys*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov