**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al*.,<br><br>        Defendants. | No. 25-cv-00345-MSM |

<u>**DEFENDANTS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 2

    I.      All Claims Against DOL are Moot. ....................................................... 2

    II.    The APA Dictates Dismissal of the Claims Regarding the DOJ Order. ................. 4

    III.   The PRWORA Notices are Interpretative Rules for Which Notice and Comment Was Not Required. ................................................................. 7

    IV.   The PRWORA Notices are Not Contrary to Law. ..................................... 8

        A.     The HHS Notice ........................................................................ 8

        B.     The ED Notice ........................................................................ 10

        C.     The HUD Notice ...................................................................... 13

        D.     The DOJ Order ........................................................................ 14

    V.    Summary Judgment Should be Entered in Defendants' Favor on the Arbitrary and Capricious Claims in Counts II and V. ........................................ 16

    VI.   Summary Judgment Should be Entered in Defendants' Favor on the Spending Clause Claim. ...................................................................... 18

        A.     The PRWORA Notices Do Not Impose Unforeseeable Post-Acceptance Conditions. ....................................................... 18

        B.     The PRWORA Notices Are Not Impermissibly Coercive. ..................... 20

    VII.   Plaintiffs' Declaratory Judgment Claim is Meritless. ............................. 20

    VIII.  Any Relief Should be Appropriately Tailored. ...................................... 23

CONCLUSION ........................................................................................................... 24

i

# TABLE OF AUTHORITIES

**CASES**

*ACLU of Mass. v. United States Cont. of Cath. Bishops*,
  705 F.3d 44 (1st Cir. 2013) ("*ACLUM*") ................................................................... 2, 3

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ........................................................................................................ 3

*Alvarez v. Smith*,
  558 U.S. 87 (2009) ........................................................................................................ 3

*Anversa v. Partners Healthcare Sys., Inc.*,
  835 F.3d 167 (1st Cir. 2016) ....................................................................................... 24

*Boston Bit Lab, Inc. v. Baker*,
  11 F.4th 3 (1st Cir. 2021) ........................................................................................ 2, 3

*Boston Redevelopment Auth. v. Nat'l Park Serv.*,
  838 F.3d 42 (1st Cir. 2016) ......................................................................................... 23

*Bremer v. Johnson*,
  834 F.3d 925 (8th Cir. 2016) ........................................................................................ 6

*California v. Texas*,
  593 U.S. 659 (2021) ..................................................................................................... 23

*Calvary Chapel of Bangor v. Mills*,
  52 F.4th 40 (1st Cir. 2022) ............................................................................................ 3

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) ..................................................................................................... 24

*City of Providence v. Barr*,
  954 F.3d 23 (1st Cir. 2020) ......................................................................................... 22

*D.H.L. Assocs. v. O'Gorman*,
  199 F.3d 50 (1st Cir. 1999) ........................................................................................... 2

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
  591 U.S. 1 (2020) ......................................................................................................... 17

*Doe v. Brown Univ.*,
  166 F. Supp. 3d 177 (Dist. R.I. 2016) ......................................................................... 23

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)................................................................................................................. 24

*FERC v. Elec. Power Supply Ass'n*,
   577 U.S. 260 (2016)................................................................................................................. 18

*Flast v. Cohen,*
   392 U.S. 83 (1968)..................................................................................................................... 2

*Frazier v. Fairhavn Sch. Comm.*,
   276 F.3d 52 (1st Cir. 2002)..................................................................................................... 24

*Gill v. Whitford*,
   585 U.S. 48 (2018)................................................................................................................... 24

*Heckler v. Chaney*,
   470 U.S. 821 (1985).............................................................................................................. 5, 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)..................................................................................................................... 5

*Horizon Bank & Trust Co. v. Massachusetts*,
   391 F.3d 48 (1st Cir. 2004)....................................................................................................... 2

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024).................................................................................................... 6, 15, 16

*Lowe v. Gagné-Holmes*,
   126 F.4th 747 (1st Cir. 2025)................................................................................................. 2, 3

*Luis v. INS*,
   196 F.3d 36 (1st Cir. 1999)....................................................................................................... 5

*Mangual v. Rotger-Sabat*,
   317 F.3d 45 (1st Cir. 2003)....................................................................................................... 2

*Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mutual Auto. Ins. Co.*,
   463 U.S. 29 (1983)............................................................................................................ 20, 24

*MSP Recovery Claims Series 44, LLC v. Hanover Ins. Co., Inc.*,
   No. CV 22-40087-FDS, 2024 WL 4252686 (D. Mass. Sept. 20, 2024)................................. 23

*Nat'l Ass'n of Home Builders v. EPA*,
   682 F.3d 1032 (D.C. Cir. 2012)............................................................................................... 24

*New England Regional Council of Carpenters v. Kinton,*
  284 F.3d 9 (1st Cir. 2002) ................................................................................. 3

*N.H. Hosp. Ass'n v. Azar,*
  887 F.3d 62 (1st Cir. 2018**)** ............................................................................ 2

*N.H. Hosp. Ass'n v. Azar,*
  887 F.3d 62 (1st Cir. 2018) ............................................................................. 7

*Orr v. Trump,*
  778 F. Supp. 3d 394 (D. Mass. 2025) ........................................................... 24

*Pennhurst State Sch. & Hosp. v. Halderman,*
  451 U.S. 1 (1981) .......................................................................................... 19

*Perez v. Mortgage Bankers Ass'n,*
  575 U.S. 92 (2015) ...................................................................................... 7, 8

*Samma v. Dep't of Def.,*
  136 F.4th 1108 (D.C. Cir. 2025) ..................................................................... 3

*Solorio v. Sessions,*
  712 Fed. Appx. 663 (9th Cir. 2018) .............................................................. 24

*Solorio v. Sessions,*
  712 Fed. Appx. 663 (9th Cir. 2018) ................................................................ 6

*South Dakota v. Dole,*
  483 U.S. 203 (1987) ...................................................................................... 19

*Syncor Intern. Corp. v. Shalala,*
  127 F.3d 90 (D.C. Cir. 1997) .......................................................................... 7

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ............................. 6

*Thompson v. Barr,*
  959 F.3d 476 (1st Cir. 2020) ........................................................................... 5

*Town of Portsmouth v. Lewis,*
  813 F.3d 54 (1st Cir. 2016) ............................................................................. 3

*United States v. Hyde,*
  497 F.3d 103 (1st Cir. 2007) ......................................................................... 10

iv

*United States v. Texas*,
   599 U.S. 670 (2023)......................................................................................................... 23

*Util. Solid Waste Activities Grp. v. EPA*,
   901 F.3d 414 (D.C. Cir. 2018) ....................................................................................... 24

**STATUTES**

5 U.S.C. § 701(a)(2)............................................................................................................. 6

5 U.S.C. § 706(2) ...................................................................................................... 18, 23, 24

8 U.S.C. § 1611 ............................................................................................................... *passim*

20 U.S.C. § 2302(12)-(13) ................................................................................................. 12

42 U.S.C. §§ 601-19 .......................................................................................................... 10

Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
   Pub. L. No. 104–193, 110 Stat 2105, § 423(c) ............................................................. 15

**<u>INTRODUCTION</u>**

Plaintiffs' Reply embodies their misunderstanding of the nature of the PRWORA Notices, which are only HHS, ED, and HUD's corrected interpretations of the statute's definition of "Federal public benefit" and DOJ's order reflecting the Attorney General's exercise of her "sole and unreviewable" discretion. Plaintiffs continue to speculate about the imposition of unworkable verification methods with potentially disastrous financial and administrative costs for benefit programs administered by the States and about threats of potential funding termination. But the PRWORA Notices neither outline mandatory verification methods to be employed by the States nor detail any consequences for the failure to verify. Plaintiffs' conjecture, therefore, is not based on anything contained in any of the PRWORA Notices that are actually at issue.

Time and again, Plaintiffs' arguments are grounded in non-existent statutory language—Plaintiffs continuously read words and conditions into PRWORA's text in an attempt to limit the reach of the statute's verification requirements, and to render the Attorney General's "sole and unreviewable discretion" meaningless, all in the name of preserving Plaintiffs' policy preferences. But Section 1611 has been clear since day one of PRWORA's enactment: aliens who are not qualified aliens are not eligible to receive "Federal public benefits," 8 U.S.C. § 1611(a); Congress chose to broadly define "Federal public benefit" in PRWORA, *id*. § 1611(c)(1); and only "Federal public benefits" exempted by the Attorney General pursuant to her expansive discretionary authority, *id*. § 1611(b)(1)(D), can be administered without verification that benefit recipients are of an eligible immigration status. These statutory tenants are outcome determinative.

For all the reasons explained in Defendants' initial brief and further discussed herein, the Court should deny Plaintiffs' motion, grant Defendants' cross-motion, and enter final judgment in Defendants' favor. The instant Reply re-incorporates the arguments in Defendants' initial brief, Defs.' Opp'n to Pls.' Mot. for Summ. J. & Cross-Mot. to Dismiss & for Summ. J., ECF No. 99 ("Defs' Cross-Motion"), and only addresses the arguments in Plaintiffs' opposition, Pl.

States' Reply in Further Supp. of Their Mot. For Summ. J. & Opp'n to Defs.' Crossmot., ECF No. 100 ("Pls. Reply").

## ARGUMENT

### I.    All Claims Against DOL are Moot.

Courts lack jurisdiction to adjudicate claims that have been "mooted by subsequent developments[.]" *Flast v. Cohen,* 392 U.S. 83, 95 (1968) (footnote omitted). A lawsuit becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("*ACLUM*") (quoting *D.H.L. Assocs. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." *Id*. (quoting *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004)). "[T]he doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *Lowe v. Gagné-Holmes*, 126 F.4th 747, 755 (1st Cir. 2025) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). Essentially, if a "case loses its live-controversy character at any point in the proceedings, the mootness doctrine generally stops [the court] from pumping new life into the dispute." *Boston Bit Lab, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021).

Here, a live dispute no longer exists. DOL has rescinded the PRWORA Notice at issue and has indicated that it will engage in notice and comment "to facilitate further consideration and implementation of PRWORA requirements[.]" *See* DOL: Training and Employment Guidance Letter No. 10-23, Change 3, at 3 (Mar. 18, 2026), https://www.dol.gov/agencies/eta/advisories/tegl-10-23-change-3 (DOL TEGL 10-23, Change 3). That is precisely what Plaintiffs have demanded in this litigation. *See* Pl. States Mot. for Summ. J., at 84, ECF No. 91 ("Pls' Mot.") (seeking vacatur of the PRWORA Notices and an injunction enjoining enforcement of the Notices). In rescinding the DOL PRWORA Notice, DOL has provided Plaintiffs with the relief sought, thereby mooting Plaintiffs' challenges to the

2

Notice. *See Samma v. Dep't of Def.*, 136 F.4th 1108, 1114 (D.C. Cir. 2025). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

Plaintiffs argue that DOL's rescission constitutes voluntary cessation that "does not deprive the Court of jurisdiction." Pls' Reply at 2. But the voluntary cessation doctrine has no application here because DOL rescinded its notice "[i]n order to facilitate further consideration and implementation of PRWORA requirements," DOL TEGL 10-23, Change 3 at 3, and, as such, there is no "reasonable expectation that the challenged conduct will be repeated following dismissal of the case," *Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (quoting *ACLUM*, 705 F.3d at 54, 56) (citation omitted). As in *New England Regional Council of Carpenters v. Kinton*, the voluntary cessation doctrine does not save claims challenging a prior policy because "there is simply no basis for suggesting that the original [] policy will be reinstated following the conclusion of litigation." 284 F.3d 9, 18 (1st Cir. 2002); *see id*. at 18 n.3 ("Given the circumstances of this case, we think it wise to avoid an adjudication addressed to a policy that no longer applies at the site in question").

Plaintiffs' only remaining argument is that DOL's prior PROWRA interpretation remains withdrawn, and that DOL has reserved discretion to reapply the now-rescinded interpretation following notice and comment. *See* Pls' Reply at 3. The fact that a government agency has the power to change policies or implement change does not defeat mootness; if that were the case, "no suit against the government would ever be moot." *Boston Bit Labs, Inc.*, 11 F.4th at 10 (finding that the power to issue executive orders is insufficient to defeat mootness); *see also Lowe*, 126 F.4th at 758 ("Nor does the fact that the defendant state health officials have the authority to promulgate regulations as to future events negate mootness."); *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 49 (1st Cir. 2022) (rejecting the argument that a suit cannot be moot where the governor retained the authority to reinstate restrictions and thus the plaintiff

3

faced a "constant threat" that the governor's power would be used to restore allegedly discriminatory restrictions).

Whatever DOL eventually promulgates will be a different legal instrument, built on a different administrative record, shaped by public comment, and subject to its own APA challenge at the time it is finalized.[1] Because the very relief that Plaintiffs seek has already been achieved by rescission of the DOL notice, there is nothing for the Court to do concerning the rescinded PRWORA Notice, and Plaintiffs' claims are moot.

## II. The APA Dictates Dismissal of the Claims Regarding the DOJ Order.

Defendants' "principal response," Pls' Reply at 17, to the claims with respect to the DOJ Order rightfully concerns the threshold question of whether APA review is available for those claims. Plaintiffs' attempt to sidestep this inquiry misses the mark.

The exercise of the Attorney General's discretion to provide exceptions to PRWORA's otherwise expansive restrictions is broad and explicitly unreviewable:

> Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's *sole and unreviewable discretion* after consultation with appropriate Federal agencies and departments, which (i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

8 U.S.C. § 1611(b)(1)(D) (emphasis added).

Plaintiffs' argument that "the Attorney General was not 'committed' with discretion to refuse to exempt programs from PRWORA," Pls' Reply at 17, is belied by the clear statutory

---

[1]DOL agrees that, regardless of the outcome of this litigation, including on any appeal, DOL will never enforce or in any way apply the DOL PRWORA Notice or the interpretations of PRWORA expressed in that Notice, in Plaintiff States and their localities, until DOL has promulgated a final rule after having undertaken notice-and-comment rulemaking via publication in the Federal Register relating to the scope of the term "Federal public benefit" under PRWORA. DOL will work in good faith with Plaintiffs to file a stipulation to that effect.

text. PRWORA explicitly affords the Attorney General "sole and unreviewable discretion" to except from PRWORA's prohibition on the receipt of Federal public benefits by unqualified aliens certain types of programs, services, and assistance. *See* 8 U.S.C. § 1611(b)(1)(D). Despite Plaintiffs' suggestion to the contrary, PRWORA does not impose upon the Attorney General the affirmative obligation to except any programs. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 64 (2019) (A "[c]ourt may not engraft its own exceptions onto the statutory text."). And the decision not to exercise "sole and unreviewable discretion," 8 U.S.C. § 1611(b)(1)(D), is coextensive with the exercise of that discretion. *See Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) (agency decision not to act is presumptively committed to agency discretion and unreviewable); *Thompson v. Barr*, 959 F.3d 476, 481 (1st Cir. 2020) ("[W]e lacked jurisdiction to review the BIA's decision . . . [b]ecause the decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion.'" (quoting *Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999))). Plaintiffs gloss over the "forceful" and "exceptional" nature of the Attorney General's "sole and unreviewable discretion," Defs' Cross-Motion at 14-15 (citation omitted), and in doing so, selectively ignore the Attorney General's authority "to except" free from the restrictions or qualifications they propose, *see* Pls' Reply at 17-18. To be sure, Plaintiffs provide no statutory support for their insistence that the Attorney General did not have discretion to refrain from excepting programs. *See id.* at 17. The text of the statute says otherwise, explicitly.

Plaintiffs also fail to offer any meaningful legal standard against which the Court could measure the Attorney General's decision to exercise her "sole and unreviewable discretion." *See* Defs' Cross-Motion at 16 (citing *Heckler*, 470 U.S. at 830). As Defendants have explained, PRWORA identifies the kinds of programs the Attorney General *may* except, but it does not prescribe *that*, *whether*, or *how* that authority must be exercised. *See id.*. Although Plaintiffs claim that they are entitled to judicial review of the Attorney General's decision not to except certain programs, Pls' Reply at 17-18, PRWORA says that such claims are unreviewable, *see Heckler*, 470 U.S. 830-31. But even if there were not an explicit review preclusion, the statute

still does not provide any guidance for how the Attorney General's exercise of her discretion should be cabined. For example, PRWORA does not set out how many programs must be specified, whether all programs satisfying the three criteria must be specified, the weight the Attorney General must give to competing policy considerations, or whether a successor Attorney General must preserve exceptions previously adopted by another administration. *See* Defs' Cross-Motion at 16. Because PRWORA does not require the Attorney General to except any programs, there is no legal standard to apply to her exercise of discretion and, as a result, Plaintiffs' reliance on *Loper Bright* and *Weyerhaeuser* is of no moment. *See* Pls' Reply at 17-18 (citing *Loper Bright* and *Weyerhaeuser* for the proposition that APA review is not precluded for the evaluation of whether an agency properly justified its determination *under the standard set forth in the statute*). At bottom, judicial review of the DOJ Order is unavailable because PRWORA does not provide a judicially manageable rule to assess the Attorney General's decision to except or not except programs. *Heckler*, 470 U.S. at 830.

In sum, the challenged actions regarding the DOJ Order are "committed to agency discretion by law[,]" and, as a result, judicial review is barred under the APA. *See* 5 U.S.C. § 701(a)(2). Plaintiffs' attempts to limit the Attorney General's "sole and unreviewable" discretion do not defeat this straightforward command. *See Bremer v. Johnson*, 834 F.3d 925, 931 (8th Cir. 2016) ("A grant of 'sole' discretion is among the strongest known to the law."); *see also Solorio v. Sessions*, 712 Fed. Appx. 663, 664 (9th Cir. 2018) ("Because [plaintiff's] APA claims challenge how the Secretary exercises–or has exercised–his or her sole and unreviewable discretion to adjudicate I-130 petitions, we have no jurisdiction to review them." (citation modified)); *Texas v. United States*, 809 F.3d 134, 164 (5th Cir. 2015), *as revised* (Nov. 25, 2015) (noting that "Congress has expressly limited or precluded judicial review of many immigration decisions, including some that are made in the Secretary's 'sole and unreviewable discretion'").

**III.    The PRWORA Notices are Interpretative Rules for Which Notice and Comment Was Not Required.**

Plaintiffs argue that HHS, ED, and HUD were required to undergo notice and comment prior to issuance of their PRWORA Notices given the "practical effects" of the interpretations. Pls' Reply at 4-5. "Practical effects" is not the standard for legislative rules—rather, the standard is whether the rule "*modifies* or *adds* to a legal norm based on the agency's *own authority*." *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997). Plaintiffs' argument improperly adds an "effect" feature to interpretative rules that fundamentally (and incorrectly) alters the key inquiry for distinguishing between interpretive and legislative rules.

As Defendants' Cross-Motion explains, an interpretive rule "reflects an agency's construction of a statute that has been entrusted to the agency to administer." Defs' Cross-Motion at 17 (quoting *Syncor Int'l Corp.*, 127 F.3d at 94). "The critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Id.* (citation modified) (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)). Whether an agency's rule is interpretive or substantive does not turn on the impact or effect of the agency's rule but instead depends on whether the rule "create[s] rights, assign[s] duties, or impose[s] obligations, the basic tenor of which is not already outlined in the law itself." *Id.* at 18 (quoting *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018)).

Here, Section 1611(c) is the controlling legal framework and the PRWORA Notices only purport to "advise the public of the agency's construction of th[at] statute[]." Defs' Cross-Mot. at 18 (quoting *Perez*, 575 U.S. at 97); *see Perez*, 575 U.S. at 103 (An agency properly "interpret[s] a regulation without effectively amending the underlying source of law." (citation modified)). That the agencies' Notices are a "reversal" or modification of past interpretations, or that the interpretations may impact "a host" of programs, Pls' Reply at 4, does not transform the Notices from interpretive to legislative, *N.H. Hosp. Ass'n*, 887 F.3d at 70. The relevant inquiry is not the effect of the Notices in and of itself; rather, it is whether the Notices create rights, assign duties,

7

or impose obligations separate and apart from the statute. *See id*. Stated differently, if the Notices interpret PRWORA without amending the statute or imposing new independent legal obligations, they are properly categorized as interpretive. *Perez*, 575 U.S. at 103. The Notices do not purport to alter or amend PRWORA but intend instead to ensure compliance with its plain requirements. Notice and comment was not required when the previous interpretations were promulgated, and it is not required now.

## IV.     The PRWORA Notices are Not Contrary to Law.

### A.  The HHS Notice

For the reasons outlined in Defendants' Cross-Motion, the HHS Notice is not contrary to law. *See* Defs' Cross-Motion at 20-25.

*Eligibility Criteria*. Defendants have clarified that—consistent with subsection (B) of the definition of "Federal public benefit," 8 U.S.C. § 1611(c)(1)(B)—the HHS Notice does not dispute that any "Federal public benefit" is a benefit available to recipients who meet some sort of eligibility criteria—be it qualification based on student status, gender, age, or income level, for example. Pls' Reply at 10-11 (citing Defs' Cross-Motion at 21). Plaintiffs mislabel Defendants' explanation of the HHS Notice as giving meaning to "eligibility" as a new argument unsupported by the text of the Notice. *Id*. at 11. In doing so, Plaintiffs ignore the Notice's plain text, which explicitly outlines that "'eligibility' simply means 'the quality or state of being eligible: fitness or suitability to be chosen, selected, or allowed to do something[,]'" HHS Notice, 90 Fed. Reg. 31,232, 31,234 (July 14, 2025), and acknowledges that eligibility is assessed on an individual, household, or family basis, *id*. at 31,235. This follows from PRWORA's statutory language. 8 U.S.C. § 1611(c)(1)(B) ("provided to an individual, household, or family eligibility unit").

*Grants to States or Local Governments*. Plaintiffs' assertion that Defendants have "abandoned any defense of HHS'[] claim that all grants to state and local government are covered by PRWORA[,]" Pls' Reply at 12 (citing Defs' Cross-Motion at 21) reflects Plaintiffs' isolation of a single sentence, stripped of context, from Defendants' Cross-Motion. In reality,

8

Defendants clearly outline that the statutory text plainly asserts that (1) all grants "provided by an agency of the United States or by appropriated funds of the United States" constitute "Federal public benefits" under PRWORA, 8 U.S.C. § 1611(c)(1)(A); and (2) aliens who are not qualified aliens are not eligible to receive "Federal public benefits," *id*. § 1611(a); therefore (3) an alien who is not a qualified alien is not entitled to receive HHS grants—including financial awards that pass through States and localities. *See* Defs' Cross-Motion at 20-21; HHS Notice at 31,233-34. To the extent Plaintiffs assert that pass-through grants are not covered, this is inconsistent with the text of the statute.

*Non-postsecondary educational benefits*. Plaintiffs' assertion that "non-postsecondary educational benefits, including Head Start, do not fall within the scope of PWRORA[,]" Pls' Reply at 12, remains incorrect. Plaintiffs, once again, confuse Congress' designation of all postsecondary educational benefits as "Federal public benefits" with a purported (but nonexistent) declaration by Congress that any *non*-postsecondary benefit cannot be a "Federal public benefit" under PRWORA even if a benefit fits squarely within one of the other descriptors listed in Section 8 U.S.C. § 1611(c)(1)(B)—namely, any retirement, welfare, health, disability, public or assisted housing, food assistance, unemployment benefit, or *other similar benefit*. Congress imposed no such prohibition. Again, Head Start falls within PRWORA's ambit as a benefit "similar to" welfare. *See* Defs' Cross-Motion at 9 (citation omitted); HHS Notice at 31,236. Plaintiffs' argument that Defendants read the term "welfare" to encompass "*any* 'services that help children,'" Pls' Reply at 12 (emphasis added) (citing Defs' Cross-Motion at 22), is unfounded. The term is more narrowly defined, as Defendants illustrate that "child welfare" has been defined as "a continuum of services designed to ensure that children are safe and that families have the necessary support to care for their children successfully[,]" and the health, nutritional, and social services Head Start provides to children and their families aligns with this definition. Defs' Cross-Motion at 22-23 (citation omitted). Finally, as to Plaintiffs' insistence that "welfare" can only take the form of cash benefits in the PRWORA context, Pls' Reply at 13; Pls' Mot. at 52, Plaintiffs' choice to read the first provision of Temporary

9

Assistance for Needy Families (TANF) in isolation, Pls' Reply at 13, does not erase TANF's repeated reference to the provision of non-cash "welfare" services to children and their families, *see* 42 U.S.C. §§ 601-19.

*Programs excluded by subsequent statutes*. Plaintiffs revisit their argument that Congress exempted the Health Center Program and Head Start from PRWORA, asserting that the relevant statutes include "mandatory directives" that cannot be squared with the similarly mandatory directive outlined in PRWORA that "Federal public benefits" not be conferred upon aliens who are not qualified aliens, 8 U.S.C. § 1611(a). *See* Pls' Reply at 13. Plaintiffs ignore that the mandatory directive outlined in Section 1611(a) exists "notwithstanding any other provision of law." *See* Defs' Cross-Motion at 24 (citing 8 U.S.C § 1611(a)). They fail altogether to respond to First Circuit caselaw establishing that a statutory "notwithstanding" clause sweeps aside potentially conflicting statutes that do not contain language evidencing clear Congressional intent to override the "notwithstanding" clause, *id*. (citing *United States v. Hyde*, 497 F.3d 103, 108 (1st Cir. 2007)).

### B.  The ED Notice

For the reasons outlined in Defendants' Cross-Motion, the ED Notice is not contrary to law. *See* Defs' Cross-Motion at 25-28. Plaintiffs' argument minimizes the broad scope of PRWORA's text.

As Defendants have explained, the ED Notice concludes that "PRWORA applies to 'postsecondary education' benefits or 'any other similar benefit' under Department programs 'for which payments or assistance are provided to an individual, household, or family eligibility unit.'" ED Notice, 90 Fed. Reg. 30,896, 30,897 (July 11, 2025). Plaintiffs' reference to "non-postsecondary education benefits," Pls' Reply at 14-15, ignores ED's analysis of the term "any other similar benefit." The ED Notice explains that "Congress included a broad and disparate group of benefits within the enumerated list of 'Federal public benefits,'" suggesting that "that Congress intended to capture an expansive array of Federal benefits, within the statutory limit that such benefits be provided through Federal funds, and to 'an individual, household, or family

10

eligibility unit.'" ED Notice at 30,897. PRWORA thus applies to "all educational benefits that are provided to individuals, households, or family eligibility units, regardless of age, and including when benefits are provided as in-kind services at the community level, such as through public or private nonprofit agencies, except those benefits that are basic public education benefits under *Plyler*." *Id*. at 30,899. "In other words, non-qualified alien adults are not permitted to receive education benefits (postsecondary education benefits or otherwise) and non-qualified alien children are not eligible to receive postsecondary education benefits and certain other education benefits, so long as such benefits are not basic public education benefits." *Id*.

The ED Notice applies its interpretation to WIOA and Perkins V programs. *See id.* The ED Notice explains that all WIOA programs provide "similar [postsecondary] benefits. . . because the programs provide educational services to adults and children who lack certain skills or abilities," "are provided on a noncash and in-kind basis to individuals, and therefore are a form of 'assistance [. . .] to an individual' eligibility unit" and "are not specifically exempted under PRWORA." *Id.* (second alteration in original). Congress's inclusion of "postsecondary education" benefits and "other similar benefit[s]" within the basic definition of "Federal public benefit" implies that any benefit *similar* to postsecondary education is a "Federal public benefit." *See id*. In other words, the reference to "postsecondary education" is an illustrative example, rather than a restriction that Congress only intended "postsecondary education" benefits to fall under the definition of "Federal public benefit."

Moreover, the ED Notice "interprets WIOA benefits to be distinct from the provision of a 'basic public education' by State and local governments under *Plyler* because, among other distinctions, these benefits are provided to individuals in addition to the basic public education already provided by States to minors of compulsory attendance age." *Id*.; *see, e.g., id*. at 30,899-900 (WIOA programs are not understood as basic public education under *Plyler* because "illegal immigrant children aging out of basic public education [do not have] the right to drop out of secondary school in favor of alternative educational programs, such as those designed for adults under WIOA."); *see also id*. at 30,899 ("[T]he Department interprets and finds that 'Federal

11

public benefits' under 8 U.S.C. 1611(c)(1) includes all educational benefits . . . regardless of age, . . . , except those benefits that are basic public education benefits under *Plyler*."). Thus, ED does not contest that some of WIOA's programs are "below the postsecondary level," *see* Exec. Order. No. 13,445, §2(b), 72 Fed. Reg. 56,165 (2007))—but because they are not part of a basic public education, they are an educational benefit that is a Federal public benefit under PRWORA.

The ED Notice also properly navigates the intricacies of Perkins V programs. It concludes that Perkins V programs provide "Federal public benefits" insofar as they "(1) are 'similar benefits,' within the meaning of 8 U.S.C. 1611(c)(1)(B), because the programs provide career and technical educational services to adults and children who lack certain skills or abilities; (2) are provided on a non-cash and in-kind basis to individuals, and therefore are a form of 'assistance' as defined under 8 U.S.C. 1611(c)(1)(B); and (3) are not specifically exempted under PRWORA, *except that Perkins V programs that support minors in the secondary school setting are basic public education benefits and are not 'Federal public benefits*.'" *Id*. at 30,900 (emphasis added). Because Perkins V includes certain programs provided exclusively at the secondary level as part of a basic public education, the ED Notice provides that "Perkins V programs that support minors in the secondary school setting are basic public education benefits and are not 'Federal public benefits.'" *Id*.

Finally, Plaintiffs argue that certain programs—such as Perkins V—are not within PRWORA's ambit because they do not contain eligibility criteria. *See* Pls' Reply at 15. But all Federal programs have, at a minimum, implicit eligibility criteria. As Plaintiffs note, Perkins V is "open to all students who wish to enroll," *see id*. (citation omitted), making student-status an inherent eligibility criteria. Perkins V, in particular, also contains statutory indicators of how its programs provide individualized assistance, as measured through the statutory definition of which individuals can be considered a "CTE participant" or "CTE concentrator." *See* 20 U.S.C. § 2302(12)-(13). Plaintiffs' argument fails because it has no basis in the statutory text or the manner in which Federal programs are administered.

### C. The HUD Notice

Plaintiffs' cursory response to HUD's explanations is telling. *See* Pls' Reply at 15-16. First, the blanket statement that the HUD Notice improperly concludes that "*all* grants are covered by PRWORA, even if they are provided to states or localities rather than individuals," Pls' Reply at 15 (emphasis supplied), does not even attempt to address HUD's rationale, *see* Defs' Cross-Motion at 28. As Defendants have explained, the HUD Notice closely tracks PRWORA's plain statement that "Federal public benefit" means "any grant" that is "provided by an agency of the United States or by appropriated funds of the United States." *Id.* at 28 (quoting HUD Notice at 54,363). Because the PRWORA statute does not in any way cabin the term "grant," it applies to "any grants [HUD] administers that are not explicitly governed by another statute." *Id.*; *see also id.* at 28-29 ("[While subsection (B) considers eligibility units, subsection (A)—by its plain terms—does not. The two subsections are distinct, and subsection (B) does not in any way limit or modify subsection (A) . . . if it had intended to narrow subsection (A)'s 'any grant' language, Congress would have included 'eligibility unit' language in subsection (A).").

Moreover, the HUD Notice properly applies PRWORA to all "programs related to public or assisted housing." *Id.* at 30 (quoting HUD Notice at 54,364). Plaintiffs fault HUD for this interpretation, *see* Pls' Reply at 16, but, in doing so, do not grapple with HUD's explanation that this interpretation reflects the inclusion of programs that provide public or assisted housing and "any other similar benefit," which is entirely consistent with Section 1611(c)(B), *see* Defs' Cross-Motion at 30. Plaintiffs' policy disagreements with its content do not render the HUD Notice unlawful.[2]

---

[2] HUD has agreed to two stipulations during the course of this litigation. In the first stipulation, on December 8, 2025, HUD agreed to stay enforcement and application in Plaintiff States of the HUD PRWORA Notice (and its contents) until the date on which judgment on the merits has been issued as to all claims in this action. Stipulation, ECF No. 80. On April 3, 2026, HUD further agreed that regardless of the outcome of this litigation, including on any appeal, they will never enforce or in any way apply, in Plaintiff States, any grant condition purporting to require verification of immigration status pursuant to PRWORA for any HUD program newly interpreted by HUD in the HUD PRWORA Notice to fall within PRWORA's definition of "Federal public benefit." Stipulation, ECF No. 102.

### D.  The DOJ Order

Even if it is reviewable, the DOJ Order reflects a permissible exercise of the discretionary exception authority bestowed upon the Attorney General by Congress. *See* Defs' Cross-Motion at 30-33.

Plaintiffs recognize that "Congress authorized the Attorney General" to specify which programs to exempt from verification requirements. Pls' Reply at 16. As Defendants have outlined, *see* Defs' Cross-Motion at 30-31, Plaintiffs' assertion that "the Attorney General acted far outside the scope of the discretion Congress conferred," Pls' Reply at 16, requires reading words into the statute that simply do not exist and to ignore those words that do exist. Reading, as Plaintiffs do, 8 U.S.C. § 1611(b)(1)(D) to impose a mandatory duty to exempt from verification *all* programs that "deliver in-kind services at the community level," "do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources[,]" and "are necessary for the protection of life or safety[,]" requires more than understanding that "discretion" modifies "specified," *see* Pls' Reply at 18. Indeed, the Government does not dispute that the Attorney General may "name specifically," *id.*, which of the programs that meet the three statutory criteria to exempt. However, to reach Plaintiffs' conclusion that the Attorney General's discretion is limited to insulating from judicial review her judgement calls about which programs meet the three criteria requires reading mandatory language like "must" or "shall"—or even "should," as is used in Plaintiffs' hypothetical school honors society analogy, *id.*—into the statute.

Plaintiffs' attempt to analogize to other statutory provisions that employ the phrase "specified by the Attorney General" to indicate that Section 1611 delegates to the Attorney General a mandatory responsibility to exempt programs fails where each provision highlighted by Plaintiffs requires the Attorney General to fill in "minor and technical details," *id.* at 19, about when or how an action mandated by Congress shall occur. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104–193, 110 Stat 2105, § 423(c) (Attorney General to specify when amendments to a provision requiring affidavits of support for aliens

14

shall take effect); *id*. § 403(a)(3)(A) (Attorney General to specify what constitutes "3 workings days"); *id*. § 403(b)(4)(A) (Attorney General to specify how a person may elect to participate in a pilot program); *id*. § 647(d) (Attorney General to specify how an entity is to apply for project grants). Notably, the majority of the provisions Plaintiffs reference do not use the term "discretion," let alone the phrase "in her sole and unreviewable discretion." *See id*. § 423(c); *id*. § 403(a)(3)(A); *id*. § 647(d). This is true also of the provision at issue in *Gundy v. United States*. 588 U.S., 128, 140 (2019). Section 1611 is different.

Plaintiffs suggest that the Government's position is that "Congress wanted noncitizens to either be 'self-sufficient' or else risk death or personal injury." Pls' Reply at 21. Not so. Indeed, PRWORA makes clear that Congress sought to ensure aliens who are not qualified aliens can receive life-saving services in the form of treatment of an emergency medical condition, 8 U.S.C. §1611(b)(1)(A); short-term, non-cash, in-kind emergency disaster relief, *id*. §1611(b)(1)(B); and prevention and treatment of communicable diseases, *id*. §1611(b)(1)(C). And, of course, consistent with the unchallenged 2001 Life or Safety Final Order, the DOJ Order explicitly notes that Attorney General Bondi, in deciding whether to exempt eligible benefits from the statute's verification requirements, did "not construe [PRWORA] to preclude aliens from receiving police, fire, ambulance, transportation (including paratransit), sanitation, and other similar services[,]" such that those services needed to be specified as exempt. Revised Specification Pursuant to the Personal Responsibility and Work Reconciliation Act of 1996, 90 Fed Reg. 32023, 32,026 (July 16, 2025) ("DOJ Order").

Finally, *Loper Bright*'s emphasis on a court's duty to "'fix the boundaries of [a] delegated authority'" and "ensure that the agency has acted 'within those boundaries[,]'" Pls' Reply at 21-22 (citing 603 U.S. at 395), does not serve Plaintiffs' cause. Through Section 1611(b)(1)(D), Congress granted the Attorney General the power to exempt certain "Federal public benefits" from verification *at her discretion*. Attorney General Bondi's choice to not exempt qualifying benefits is a decision that falls squarely within the boundaries outlined by Congress—as would her decision to exempt one qualifying program, or her decision to exempt

15

fifteen qualifying programs, for instance. Contrary to Plaintiffs' assertion, *see* Pls' Reply at 21, the Attorney General did not adopt an interpretation of PRWORA distinct from that of past attorneys general, nor did she adopt an interpretation that "expand[s] executive authority." Instead, she exercised the same authority exercised by her predecessors—namely, the authority to decide whether (or not) to exempt qualifying benefits from PRWORA's verification requirements. Indeed, the Government does not contend that the Attorney General's discretion is limitless. The Attorney General may only choose to exempt programs that meet all three statutory requirements as outlined in Section 1611(b)(1)(D)(i)-(iii). And, by opting not to exempt any programs, the Attorney General acted within those bounds. She simply could not have exempted programs *outside* those statutory guardrails. This is a faithful execution of *Loper Bright*, that explicitly recognized the continued existence of broad agency discretion and the more limited role of courts in that context. *See* 603 U.S. at 404.

V.   **Summary Judgment Should be Entered in Defendants' Favor on the Arbitrary and Capricious Claims in Counts II and V.**

Plaintiffs' arbitrary and capricious claims rest on a fundamental misinterpretation of the scope and applicability of the PRWORA Notices. Plaintiffs argue that the agencies' interpretations are arbitrary and capricious because they do not "apply their interpretation to the programs they identified as newly covered by PRWORA." Pls' Reply at 9. But the challenged Notices merely construe the statutory meaning of "Federal public benefit" under 8 U.S.C. § 1611(c). *See* HHS Notice at 31,233; ED Notice at 30,896; HUD Notice at 54,363. Plaintiffs' demand for additional explanations superimposes agency action that has not yet been taken. The sufficiency of the PRWORA Notices cannot be gauged by the propriety of actions the agencies have yet to undertake and applications the agencies have yet to conjure. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

Stated differently, the Notices only promulgate each agencies' interpretation of PRWORA's plain text. Defendants maintain that "reliance interests are irrelevant when assessing whether to rescind an action that the agency lacked statutory authority to take." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 60 (2020) (Thomas, J., concurring in the judgment) (opinion joined by Alito and Gorsuch, JJ.). The agencies properly homed in on the statutory text in determining that the promulgation of new interpretations was necessary, particularly where the agencies concluded that any previous interpretations were *ultra vires*. In other words, because the agencies determined that their new PRWORA interpretations are what the statutory text requires, *see supra* part IV, further consideration of reliance interest was unnecessary.

The majority opinion in *Regents* does not support Plaintiffs on this point either. That opinion—in addition to not squarely deciding whether DACA was illegal—held only that the agency was required to consider reliance interests in addressing "forbearance" and other matters within the agency's discretion as it unwound the program. 591 U.S. at 30-33. The majority opinion does not remotely suggest that, if an agency acts contrary to statute, it can (let alone *must*) continue to do so in perpetuity because people have relied on the previous unlawful action.

Even if Plaintiffs were correct that the agencies were required to "take reliance interests 'into account,' regardless of the statutory text[,]" Pls' Reply at 7, the PRWORA Notice comply with this benchmark. As Defendants explained in their Cross-Motion, an agency "might conclude that reliance interests in benefits that it views as unlawful are entitled to no or diminished weight. And, even if [the agency] ultimately concludes that the reliance interests rank as serious, they are but one factor to consider." *Regents*, 591 U.S. at 32 (An agency "may determine, in the particular context before it, that other interests and policy concerns outweigh any reliance interests."). The PRWORA Notices conclude that their interpretations are compelled by the text of the statute and that no further inquiry is necessary. *See* HHS Notice at 31,238 ("However strong these hypothetical policy arguments [regarding reliance may be], the Department has no power to override Congress's will, expressed in the clear statutory text of PROWRA."); ED Notice 30,897 ("The Department finds that the reasoning in the 1997 DCL is

17

flawed because it failed to fully analyze the context and full statutory text of PRWORA, and therefore ultimately misconstrued its meaning."); HUD Notice 54,363 (construing 8 U.S.C. § 1611(a) in accordance with plain statutory text); DOJ Order at 32,025 ("[B]ringing the Federal Government into compliance with the law is a powerful reason to withdraw the Final Order regardless of any reliance interests."). Plaintiffs may not agree with the Notices' determinations—indeed, they may not agree with the text of PRWORA as enacted by Congress 30 years ago—but Plaintiffs' disapproval and lack of enforcement by previous administrations does not render the agencies' current actions arbitrary or capricious. *See FERC v. Elec. Power Supply Ass'n,* 577 U.S. 260, 292 (2016) ("A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives.").

## VI. Summary Judgment Should be Entered in Defendants' Favor on the Spending Clause Claim.

Plaintiffs assert that the Government's view is that "*executive agencies* are free to violate constitutional limits[.]" Pls' Reply at 22. This, of course, is a gross mischaracterization of Defendants' position as to the Spending Clause which is, instead, as follows. Where plaintiffs seek to challenge a condition on spending outlined by Congress via statute, plaintiffs' issue is with Congress rather than the executive agencies applying the Congressionally-outlined condition. *See* Defs' Cross-Motion at 38. And, where, as here, plaintiffs seek to challenge agency action as in violation of relevant statutory provisions, they must do so through a contrary to law claim, rather than as a challenge brought under the Spending Clause. *Id*. Again, where the Plaintiff States seek to challenge Executive Branch action as outside of "a valid delegation of authority by Congress[,]" Pls' Reply at 23, the proper avenue to do so is an APA challenge brought under 5 U.S.C. § 706(2)(A), as demonstrated by Plaintiffs' Counts III and V. *See* Third Am. Compl. at 44, 50, ECF No. 75.

### A. The PRWORA Notices Do Not Impose Unforeseeable Post-Acceptance Conditions.

Plaintiffs, once again, misconstrue Defendants' words in their discussion of foreseeability and retroactive conditions. *See* Pls' Reply at 24. The Spending Clause empowers Congress to

18

condition the receipt of federal funds so long as conditions are stated unambiguously, *South Dakota v. Dole*, 483 U.S. 203, 206 (1987), ensuring that funding recipients are aware of the conditions when they accept the funds, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Defs' Cross-Motion at 38-39. As Defendants have outlined, where the plain text of PRWORA makes clear that any government entity administering a "Federal public benefit" as defined in 8 U.S.C. §1611 must verify that the benefit recipient is of a qualifying immigration status, Plaintiffs' claims of unfair notice deflate entirely. And, again, any attempt to gain support from *Pennhurst* fails where Plaintiff States have long known of and understood their verification obligations under PRWORA, and the "agenc[ies] responsible for the administration of the Act" have always "understood [PRWORA] to impose [verification requirement] conditions[.]" *Pennhurst*, 451 U.S. at 25; *contra* Pls' Reply at 24.

Plaintiffs assert that Attorney General Bondi imposed unforeseeable post-acceptance conditions on spending by exercising her exception authority in a manner different from Attorney General Reno's exercise of that authority in 2001. *See* Pls' Reply at 23. But Plaintiffs' assertion effectively requires every successive attorney general to adopt—in its entirety— Attorney General Reno's 2001 Life or Safety Final Order, thereby reading any form of discretion out of the statute notwithstanding the statute's explicit grant of unreviewable discretion. Once more, the Government corrects Plaintiffs' notion that Attorney General Bondi used a "never-before-claimed discretionary authority under PRWORA," *id*. at 25. Attorney General Bondi exercised the same "sole and unreviewable" discretion in choosing not to designate programs as previous attorneys general used in opting to designate. A departure from past exercises of discretion does not render Attorney General Bondi's decision "unforeseeable." Rather, it highlights that Plaintiffs' reliance and expectation of continuity was wholly built on a discretionary choice capable of changing with each attorney general. *Cf. Motor Vehicle Mfrs. Ass'n of the U.S., Inc., v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of

19

the costs and benefits of its programs and regulations. As long as the agency remains within the bounds established by Congress, it is entitled to assess administrative records and evaluate priorities in light of the philosophy of the administration.").

### B.  The PRWORA Notices Are Not Impermissibly Coercive.

Plaintiffs' coercion analysis rests on two inferences unsupported by the text of the PRWORA Notices. First, Plaintiffs assert that the Notices impose an "overwhelming" "financial threat," threatening to cut off "funding for dozens of programs, which together amount to billions of dollars in funding." Pls' Reply at 25. Yet, Plaintiffs do not—and cannot—cite to a single agency notice that threatens to terminate funding to Plaintiff States. *See id*. Next, Plaintiffs recycle their argument that compliance with the Notices requires States to "dramatically restructure" their social services programs, including by "compelling States and their subgrantees to stop operating programs that cannot feasibly implement a verification system." *Id*. This assertion is similarly unfounded where Plaintiffs do not—and, again, cannot—point to where the PRWORA Notices require government entities administering "Federal benefit programs" to employ verification methods that would be "infeasible" or administratively burdensome for certain programs. *Id*. Indeed, Plaintiffs inexplicably read the PRWORA Notices—which simply announce the agencies' corrected interpretations of PRWORA and nowhere require specific verification methods to be employed across the entire universe of "Federal public benefit" programs—to require some unidentified, unworkable verification method. Plaintiffs go so far as to assert that requiring verification of eligibility *at all* will "render programs inoperable," *id*. at 26, yet such an assertion fails entirely to take into account verification methods like (the long used) self-attestation.

### VII.    Plaintiffs' Declaratory Judgment Claim is Meritless.

Defendants only "concede" that the PRWORA statute speaks for itself and that on its own terms, the statute does not support Plaintiffs' position. *See id.* at 27. Plaintiffs' unprecedented Reply argument, suggesting that the States never had to comply with PRWORA (even under previous guidance), is both squarely at odds with PRWORA's clear dictate that only

qualified aliens are eligible to receive Federal public benefits, 8 U.S.C. § 1611(a), and with the States' decades-long verification practices in compliance with that dictate.

Plaintiffs state that Section 1611 concerns an "an individual alien's eligibility for benefits." Pls' Reply at 28. Plaintiffs are correct. *See* Third Am. Compl. ¶ 51 ("Title IV of PRWORA, which is codified at 8 U.S.C. §§ 1601–1646, governs the eligibility of noncitizens for Federal, State, and local public benefits. Section 1611 provides that 'an alien who is not a qualified alien . . . is not eligible for any Federal public benefit,' subject to certain exceptions." (citing 8 U.S.C. § 1611(a)–(b))); *see also id*. ¶ 1 ("For nearly three decades, and across five Presidential Administrations, the federal government followed a clear and consistent understanding of what the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) required. States needed to verify a person's lawful status before allowing them to access certain federal programs[.]").

Plaintiffs also state that Section 1642 contains a provision regarding State verification systems. *See* Pls' Reply at 28. Plaintiffs are correct. *See* 8 U.S.C. § 1642(b) ("Not later than 24 months after the date the regulations described in subsection (a) are adopted, a State that administers a program that provides a Federal public benefit shall have in effect a *verification system that complies with the regulations*." (emphasis added)). However, Plaintiffs incorrectly read a non-existent condition into Section 1642(b) in arguing that this subsection "imposes an obligation for States to verify immigration status *only after* verification regulations are adopted and two years have elapsed." Pls' Reply at 28 (emphasis added). Section 1642(b) merely requires that States institute verification systems that comply with any Attorney General verification regulation within 24 months of promulgation of that regulation. Section 1642(b) in no way conditions compliance with the mandates of Section 1611(a) upon the Attorney General's imposition of a mandatory verification system. To be sure, Plaintiffs' proposed interpretation not only requires adding additional conditions to the text of the statute, but it also assumes that Congress would "bury" a striking condition on PRWORA's top-line eligibility requirement in a

provision about the effect of mandatory procedures once they are promulgated. *See City of Providence v. Barr*, 954 F.3d 23, 37 (1st Cir. 2020).

Plaintiffs further state that the Attorney General has never promulgated regulations setting forth verification requirements for State and local governments. *See* Pls' Reply at 81. Plaintiffs are correct. *See* Third Am. Compl. ¶ 61 ("The Attorney General has proposed, but not finalized, regulations on verification." (citing Verification of Eligibility for Public Benefits, 63 Fed. Reg. 41,662 (Aug. 4, 1998)). The result: for decades, States have not been required to use any particular method to determine a benefit recipient is of a qualifying immigration status. Whether a specific verification method is required under Section 1642(b) is conceptually distinct from whether "Federal public benefit" is subject to immigration verification in the first instance under Section 1611(a).

At bottom, Plaintiffs' proposed interpretation of Section 1642 is unsupported by the text of the statute because it conditions compliance with PRWORA, generally, on a non-existent condition regarding the verification methods States may be required to institute. Plaintiffs' interpretation is also squarely contradicted by their decades-long practice of verifying immigration status for "Federal public benefits," as interpreted under previous agency guidance. Indeed, Plaintiffs only now take this untenable position because they "never before had the same stake in contesting" verification, underscoring that Plaintiffs' fundamentally take issue with the Executive's enforcement of PRWORA's plain text. Pls' Reply at 30. Again, Plaintiffs' disagreement with PRWORA is an issue they must take up with Congress. Here, the agencies are merely enforcing a law that has been on the books for three decades.

The defects in Plaintiffs' claim are also procedural. Plaintiffs recognize that their declaratory judgment claim must be tethered to a "a substantive cause of action." *Id.* at 27. To that end, Plaintiffs point to the Amended Complaint's passing reference to the APA. *See id.* But the Amended Complaint merely alleges that "[p]ursuant to 5 U.S.C. § 706"—the APA's general review provision—the Court should declare "that the Notices violate the APA," again, generally. *See* Third Am. Compl. ¶ 256. The Amended Complaint does not lodge any specific APA claims

22

for which declaratory judgment is the remedy. It is unclear from the face of the pleading whether the Court would be analyzing Plaintiffs' challenges under any particular (or potentially all) APA standards and neither Plaintiffs' Amended Complaint, the opening brief, or the reply provide any daylight. Defendants maintain that Plaintiffs' declaratory judgment claim is not a valid, stand-along cause of action. *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 197 (D.R.I. 2016) ("[T]he Declaratory Judgment Act does not create its own substantive cause of action[.]"); *MSP Recovery Claims Series 44, LLC v. Hanover Ins. Co., Inc.*, No. CV 22-40087-FDS, 2024 WL 4252686, at *7 (D. Mass. Sept. 20, 2024) ("[T]he Declaratory Judgment Act does not supply an independent cause of action. It simply enlarges the range of remedies available in the federal courts." (citation modified)); *cf. Boston Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47-48 (1st Cir. 2016) ("Where, as here, a statute administered by an agency provides a cause of action but no standard of review, the APA typically fills the void" and because plaintiff "sought a declaration that [defendant] violated the APA" the district court properly applied "the APA standard to its claim for declaratory relief [.]" (citation modified)).

## VIII.    Any Relief Should be Appropriately Tailored.

Plaintiffs seek vacatur of the policies contained in the PRWORA Notices. *See* Pls' Reply at 32-33. Defendants maintain, however, that 5 U.S.C. § 706(2) is an instruction to disregard as to a specific plaintiff, not to vacate generally. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring); *California v. Texas*, 593 U.S. 659, 672 (2021) (noting that remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract" (citation modified)).

To the extent the Court is inclined to grant relief, remand to the agencies without vacatur is appropriate, particularly as to DOL which has already rescinded its Notice such that vacatur is of no consequence. Indeed, agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *State Farm*, 463 U.S. at 42, including the authority to correct or modify a prior rule by selecting a new policy in

23

the range of those that lie "within the bounds of reasonable interpretation[.]" *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013). Remand would give the agencies the opportunity to fully explore and address all issues highlighted by the Court, as well as the concerns of Plaintiffs and other stakeholders, through the administrative rulemaking process. Remand would also allow the agencies to develop a new administrative record, which would benefit the Court and the parties if the new rule were subsequently challenged. *See Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 177-78 (1st Cir. 2016) (quoting *Frazier v. Fairhavn Sch. Comm.*, 276 F.3d 52, 61 (1st Cir. 2002)) ("'[F]acilitat[ing] the compilation of a fully developed record,' . . . 'is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain.'"). New rulemaking proceedings would also allow agency decisionmaker to address these issues. "[T]his kind of reevaluation is well within an agency's discretion[,]" *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *Fox Television*, 556 U.S. at 514-15), and the Court should allow it. *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

Ultimately, if the Court declines to remand, any vacatur should be limited to the specific PRWORA Notice instruments at issue in this case such that Defendants are not perpetually precluded from revising these interpretations consistent with the Court's order. *See Gill v. Whitford*, 585 U.S. 48, 72 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."); *see also Orr v. Trump*, 778 F. Supp. 3d 394, 431 (D. Mass. 2025) ("It is well established that when a court vacates an agency's rules under 5 U.S.C. § 706(2), the vacatur restores the status quo before the invalid rule took effect and the agency must initiate another rulemaking proceeding if it would seek to confront the problem anew." (citation modified)).

## CONCLUSION

For the reasons explained in Defendants' Cross-Motion and herein, Plaintiffs' Motion should be denied, Defendants' Cross-Motion should be granted, and final judgment should be entered in Defendants' favor.

24

Dated: April 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

DIANE KELLEHER
Branch Director
Federal Programs Branch

*/s/ Alexandra L. Yeatts*
ALEXANDRA L. YEATTS (CA Bar No. 358762)
HEIDY L. GONZALEZ (FL Bar No. 1025003)
*Trial Attorneys*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov

25