UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br>Defendant. | C.A. No. 1:25-cv-00345-MSM-PAS |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

This case centers around Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), which prohibits some categories of noncitizens from receiving certain defined federal, state, or local public benefits. 8 U.S.C. §§ 1611(a), 1621(a). Shortly after PRWORA's enactment, relevant federal agencies issued guidance interpreting this prohibition as excluding various programs, including those that constitute "widely available services." *See, e.g.*, 61 Fed. Reg. 45,985 (Aug. 30, 1996). But beginning in July 2025, these agencies took an about-face by issuing new notices that purport to reinterpret PRWORA as applying to a swath of federal programs that had previously been excluded. The plaintiffs, who are twenty states and the District of Columbia (collectively, "Plaintiffs"), challenge these new interpretations of PRWORA as unlawful.

Before the Court is the Plaintiffs' Motion for Summary Judgment (ECF No. 91). Also before the Court is the Cross-Motion to Dismiss and for Summary Judgment

(ECF No. 99) of the defendants: the U.S. Department of Justice ("DOJ"), the U.S. Department of Health and Human Services ("HHS"), the U.S. Department of Education ("ED"), the U.S. Department of Labor ("DOL"), the U.S. Department of Housing and Urban Development ("HUD"), and their respective heads (collectively, "Defendants"). For the following reasons, the Court GRANTS Plaintiffs' Motion for Summary Judgment and DENIES Defendants' Cross-Motion.

## I. BACKGROUND

The Court reviewed most of the relevant factual and legal background behind this case in its September 10, 2025, Memorandum and Order granting the Plaintiffs' Motion for Preliminary Injunction. (ECF No. 64) (hereinafter, "PI Order"). In short, at issue here are agency interpretations of what constitutes a "federal public benefit" or a "State or local public benefit" under PRWORA. *See* 8 U.S.C. §§ 1611(a), 1621(a). PRWORA defines "federal public benefit" as including the following:

> (A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States; and
>
> (B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.

*Id.* § 1611(c)(1); *see also id.* § 1621(c)(1) (defining "State or local public benefit" similarly). Ineligible noncitizens are prohibited from receiving benefits that fall within this definition. *Id.* §§ 1611(a), 1621(a); *see also id.* § 1641 (defining categories of noncitizens to whom PRWORA does not apply).

The broad definition outlined above is limited by several exceptions. In addition to enumerated exemptions for services like emergency medical care and public health assistance for immunizations, *see id.* § 1611(b)(1)(A)–(C), (E), PRWORA exempts the following:

> Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with appropriate Federal agencies and departments, which (i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

*Id.* § 1611(b)(1)(D); *see id.* § 1621(b)(4) (similarly excluding such services from the definition of "State or local public benefit"). In other words, PRWORA does not prohibit otherwise unqualified or ineligible noncitizens from receiving benefits specified by the Attorney General as falling under this so-called "Life/Safety Exemption." PRWORA also includes the following rule of statutory construction: "Nothing in this chapter may be construed as addressing alien eligibility for a basic public education as determined by the Supreme Court of the United States under *Plyler v. Doe* (457 U.S. 202) (1982)." 8 U.S.C. § 1643(a)(2).

Shortly after PRWORA's enactment, federal agencies issued notices interpreting its exemptions. DOJ issued a regulation construing the statute as not applying to "widely available services" and specifying some programs like victim services, short-term homeless centers, and soup kitchens as exempt from PRWORA under the Life/Safety Exemption. 61 Fed. Reg. at 45,985. ED and HHS issued notices

interpreting PRWORA as not applying to certain categories of education programs. *See* ECF No. 4-6; .63 Fed. Reg. 41,658, 41,659 (Aug. 4, 1998). HUD and DOJ issued various guidance documents explaining that many HUD programs are not "federal public benefits" within the meaning of PRWORA, and that some HUD programs fall within the Life/Safety Exemption. *See* ECF Nos. 92-2 through 92-6. And DOL issued guidance as recently as 2024 explaining that some workforce development services are not federal public benefits covered by PRWORA. (ECF No. 4-4 at 3–4.)

On February 19, 2025, the President issued Executive Order 14218, entitled "Ending Taxpayer Subsidization of Open Borders." 90 Fed. Reg. 10,581. This executive order in part directs federal agencies to "align" their programs with PRWORA's requirements. *Id.* In response, in July 2025, DOJ, HHS, ED, and DOL all issued new notices purporting to alter their interpretation and implementation of PRWORA (the "PRWORA Notices"). Through the PRWORA Notices, these agencies revoked prior Life/Safety Exemptions, narrowed their interpretations of other exemptions, and identified newly covered federal public benefits. *Id.* at 32,023, 32,025 (DOJ); 31,234-35, 31,235-37l (HHS); 30,899, 30,900 (ED); 30,900 (DOL). These agencies did not undertake any period of notice and comment before issuing the July 2025 PRWORA Notices.

After these agencies issued the July 2025 PRWORA Notices, Plaintiffs filed suit, challenging the Notices under both the Administrative Procedure Act ("APA")

and the Spending Clause of the United States Constitution. (ECF No. 1.)[1] Plaintiffs then moved for a preliminary injunction against Defendants' implementation and enforcement of the PRWORA Notices, which the Court granted in the PI Order. In the PI Order, the Court determined that (1) HHS, ED, and DOL's PRWORA Notices are final agency action reviewable under the APA, *see* PI Order at 11–14; (2) HHS, ED, and DOL's PRWORA Notices implemented legislative rules and were thus subject to notice-and-comment rulemaking, *id.* at 25–26; and (3) the PRWORA Notices pose irreparable harm to Plaintiffs, based in part on the impracticality and financial cost of complying with Defendants' expansion of PRWORA, *id.* at 48–56. The Court consequently enjoined Defendants from enforcing or implementing the PRWORA Notices against Plaintiffs. *Id.* at 59–60.

Following the PI Order, the parties agreed to proceed directly to summary judgment. (ECF No. 67.) Apart from the parties' submission of a more complete administrative record and additional declarations from Plaintiffs regarding the negative impact posed by the PRWORA Notices, only two things have substantively changed since the PI Order.

First, on November 26, 2025, HUD published its own PRWORA Notice. *See* 90 Fed. Reg. 54,363 (Nov. 26, 2025). As with the other agencies' notices, HUD did not engage in notice and comment rulemaking before issuing its PRWORA Notice. *See id.* HUD's PRWORA Notice identifies twelve programs related to public or assisted

---

[1] Plaintiffs' original Complaint did not include their present APA claims against DOJ and the Attorney General, which were added through their Second Amended Complaint following the PI Order. (ECF No. 68).

housing that HUD now interprets as included within PROWRA's definition of "federal public benefits." *Id.* Plaintiffs then filed a Third Amended Complaint including claims against HUD based on its PRWORA Notice, and Defendants agreed to stay enforcement of that notice pending the outcome of this case. (ECF Nos. 76; 80; 102.)[2]

Second, on March 18, 2026, DOL rescinded its PRWORA Notice. *See* DOL: Training and Employment Guidance Letter No. 10-23, Change 3 (Mar. 18, 2026). DOL explained that "[i]n order to facilitate further consideration and implementation of PRWORA requirements, and to obtain input from interested stakeholders, [DOL] will engage in notice-and-comment rulemaking via publication in the *Federal Register*." *Id.* at 3. Defendants have not stated whether this notice-and-comment rulemaking period has yet begun.

In a sworn declaration, Plaintiffs assert they sent Defendants' counsel a proposed stipulation under which Defendants would:

> [A]gree that, regardless of the outcome of this litigation, including on any appeal, they will never enforce or in any way apply the DOL PRWORA Notice or the interpretations of PRWORA expressed in that Notice until DOL has promulgated a final rule after having undertaken notice-and-comment rulemaking via publication in the Federal Register relating to the scope of the term 'Federal public benefit' under PRWORA.

---

[2] On April 30, 2026, HUD issued a Notice of Proposed Rulemaking ("NPRM") regarding the HOME Investment Partnerships Program. 91 Fed. Reg. 23,194 (April 30, 2026). Section III of this NPRM "reminds HOME program recipients that grants must be administered in accordance with all applicable immigration restrictions and requirements," including PRWORA. *Id.* at 23,201. The parties have stipulated that Plaintiffs will not challenge Section III of that NPRM in this litigation, and that HUD will not "apply or enforce PRWORA's immigration status verification requirements in the Plaintiff States as to, *inter alia*, the HOME program" before this Court's judgment on this case. (ECF No. 108 at 2.)

(ECF No. 101 ¶ 7.) According to Plaintiffs, on April 2, 2026, Defendants confirmed that they would not sign the proposed stipulation. Yet in a footnote in their Reply in Support of their Cross-Motion for Summary Judgment, Defendants state that:

> DOL agrees that, regardless of the outcome of this litigation, including on any appeal, DOL will never enforce or in any way apply the DOL PRWORA Notice or the interpretations of PRWORA expressed in that Notice, *in Plaintiff States and their localities*, until DOL has promulgated a final rule after having undertaken notice-and-comment rulemaking via publication in the Federal Register relating to the scope of the term "Federal public benefit" under PRWORA.

(ECF No. 104 at 10 n.1) (emphasis added). While Defendants state in that footnote that "DOL will work in good faith with Plaintiffs to file a stipulation to that effect," no such stipulation has been filed since that brief was filed on April 17, 2026.

## II. STANDARD OF REVIEW

A motion for summary judgment requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, "[a]ll reasonable inferences are to be drawn in favor of the party opposing summary judgment," and "all disputed facts are viewed in the light most favorable" to that party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). "Where the parties cross-move for summary judgment, the court must examine each motion separately, drawing inferences against each movant in turn." *Vazquez-Velazquez v. P.R. Highways & Transp. Auth.*, 73 F.4th 44, 51 (1st Cir. 2023) (cleaned up).

"[T]he summary judgment rubric has a 'special twist in the administrative law context.'" *Bos. Redevelopment Auth. v. Natl. Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) (quoting *Assoc'd Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997)). "In that context, a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious." *Id.* In making that determination, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706.

## III. DISCUSSION

Plaintiffs' Third Amended Complaint asserts six causes of action against Defendants. First, under Count I, Plaintiffs allege that all Defendants other than DOJ and the Attorney General violated the APA's procedural requirements by issuing the PRWORA Notices without first undergoing notice and comment rulemaking. (ECF No. 76 ¶¶ 192–203.) Second, under Counts II, III, and V, Plaintiffs claim that Defendants substantively violated the APA because the PRWORA Notices are arbitrary and capricious and contrary to law. *Id.* ¶¶ 204–26, 238–46. Third, under Count IV, Plaintiffs allege that Defendants violated the Spending Clause by failing to provide "fair notice" of changes to federal funding conditions and by acting in an impermissibly coercive manner through the PRWORA Notices. *Id.* ¶¶ 227–37. Fourth, under Count VI, Plaintiffs seek a declaratory judgment that, to the extent that the PRWORA Notices require them to verify immigration status for participants

in programs newly identified as federal public benefits, the Notices violate the APA because the Attorney General has not promulgated the regulations described in 8 U.S.C. § 1642(a). *Id.* ¶¶ 247–26. In addition to this declaratory judgment, Plaintiffs ask the Court to vacate the PRWORA Notices, declare them unlawful, order them stayed with respect to Plaintiffs, and permanently enjoin Defendants from implementing them against Plaintiffs. *Id.* at 54–55. "Prayer for Relief."

Plaintiffs now seek summary judgment on all Counts. (ECF No. 91.) In response, Defendants first raise two threshold challenges to Plaintiffs' claims against DOL and DOJ, arguing that (1) Plaintiffs' claims against DOL are moot because it rescinded its PRWORA Notice; and (2) DOJ's PRWORA Notice is unreviewable under the APA because it involves decisions that are statutorily committed to the Attorney General's discretion. (ECF No. 99 at 17 n.1, 24–27.) Defendants then argue that Plaintiffs' APA, Spending Clause, and declaratory judgment claims are otherwise meritless. *Id.* at 27–54.

The Court proceeds by first addressing Plaintiffs' claims against ED, HHS, DOL, HUD, and their respective administrators, before turning to Plaintiffs' claims against DOJ and the Attorney General.

### A. Plaintiffs' Claims Against DOL Are Not Moot

Article III, Section 2, Clause 1 of the United States Constitution extends the judicial power of federal courts to "Cases" and "Controversies." The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike,*

*Inc.*, 568 U.S. 85, 90–91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)). When "events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it . . . a federal court must dismiss the case as moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240–41 (2024).

However, a defendant may not "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." *Id.* (quoting *Already*, 568 U.S. at 91). Instead, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot be reasonably expected to recur." *Id.* at 241 (quoting *Friends of the Earth, Inc., v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (internal quotation marks omitted). This is a "formidable burden." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 190).

Defendants argue that Plaintiffs' claims against DOL are moot following DOL's rescission of its own PRWORA Notice because "a live dispute no longer exists." (ECF No. 104 at 8.) They claim that DOL has "provided Plaintiffs with the relief sought," and that the voluntary cessation doctrine is inapplicable here because the rescission means that there can be no reasonable expectation that the challenged conduct by DOL will recur. *Id.* at 9. Essentially, they contend that, because they have rescinded the DOL PRWORA Notice and agreed not to enforce its interpretations until after notice-and-comment rulemaking, there is nothing left for this Court to do. *Id.* at 10. Defendants have submitted that, "regardless of the outcome of this litigation," DOL will not enforce or apply its PRWORA Notice or the interpretations contained "until

DOL has promulgated a final rule after having undertaken notice-and-comment rulemaking via publication in the Federal Register relating to the scope of the term 'Federal public benefit' under PRWORA." *Id.* at 10 n.1.

DOL's rescission of its PRWORA Notice and its indication that it will not enforce its PRWORA Notice against Plaintiffs weigh in favor of Plaintiffs' claims against DOL being moot. But four considerations suggest that Defendants have not met the "formidable burden" of overcoming the voluntary cessation doctrine: (1) Defendants have not denied that, despite DOL's rescission of its PRWORA Notice, its prior PRWORA interpretation remains withdrawn, *see* ECF No. 104 at 9; (2) the Executive Order underpinning DOL's PRWORA Notice remains in effect; (3) notwithstanding their briefing footnote stating DOL's agreement not to apply its PRWORA Notice until after notice-and-comment, Defendants apparently previously refused to stipulate to this effect, and have not yet done so; and (4) Defendants have not indicated that DOL has yet begun notice-and-comment rulemaking on their proposed reinterpretation of PRWORA.

Under these circumstances, it cannot be said that Defendants have shown that the conduct challenged by Plaintiffs "cannot be reasonably expected to recur." So the Court concludes that Plaintiffs' claims against DOL are, under the voluntary cessation doctrine, not moot.

**B. HHS, ED, DOL, and HUD's PRWORA Notices Are Procedurally Invalid**

Before a federal agency adopts a rule it usually must first publish the proposed rule the Federal Register and allow interested parties an opportunity to submit

comments and other information about the proposed change. *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018). Rules adopted without following this procedure are invalid. *Id.* Still, "exempted from this requirement are 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Id.* (quoting 5 U.S.C. § 553(b) (emphasis added)).

Plaintiffs' procedural claims against HHS, ED, DOL, and HUD center around whether those agencies' PRWORA Notices are "interpretive" or "legislative" (i.e., substantive) rules. An interpretive rule is issued "merely to advise the public of the agency's construction of the statutes and rules which it administers." *Azar*, 887 F.3d at 70 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)). These rules "do not have the force and effect of law" but "nevertheless may have a substantial impact on regulated entities." *Id.* In contrast, a legislative rule "creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself." *Id.* A rule is legislative if adds to a statute or adopts a new position that is inconsistent with then existing law or policy. *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014).

*Azar* outlines five considerations that are relevant to determining whether a rule is interpretive or legislative. 887 F.3d 62 at 71–74. First, if the statutory text suggests that Congress has left a substantive policy choice to an agency, that weighs in favor of the agency's choice requiring notice and comment. *Id.* at 71. Second, an agency's explanation in adopting its policy may indicate whether it is making a substantive policy judgment—requiring notice and comment—as opposed to merely

an interpretive one. *Id.* at 71–72. Third, if the new policy conflicts with another rule having the force of law, it is likely a legislative rule. *Id.* at 73. Fourth, where a rule fills a "gap" within the statutory and regulatory scheme, it is likely a legislative rule. *Id.* Fifth, pragmatic considerations, such as substantial practical effects of the rule on stakeholders, may weigh in favor of the rule being legislative. *Id.* at 73–74.

In the PI Order, the Court weighed these considerations with respect to the PRWORA Notices by ED, HHS, and DOL, and concluded that those three PRWORA Notices were legislative rules requiring notice and comment under the APA. *See* PI Order at 25–26. Defendants have identified nothing new within the administrative record that would disturb the Court's conclusion in the PI Order. Defendants' Cross-Motion for Summary Judgment reiterates essentially the same objections they raised in opposition to Plaintiffs' requested preliminary injunction, and it does not meaningfully engage with this Court's review of the factors outlined in *Azar*. *See* ECF No. 99 at 27–30. Absent any change in the law or the facts before the Court that would upset its findings in the PI Order, the Court maintains its conclusion that the ED, HHS, and DOL PRWORA Notices are legislative rules.

As the PI Order predated HUD's PRWORA Notice, the Court must separately analyze whether that Notice was also a legislative rule. The Court's reasoning in the PI Order as to the first, fourth, and fifth *Azar* considerations applies in essentially the same way to HUD's Notice: while the text of PRWORA supports Defendants' position that the HUD Notice is merely interpreting the term "federal public benefit," the Notice's fit within the statutory scheme represents a major departure from HUD's

prior application of the statute, and the Notice poses significant practical implications for the administration of HUD programs. *See generally* ECF No. 92 (Plaintiffs' declarations explaining the practical implications posed by HUD's PRWORA Notice). As was the case with ED and HHS, the second *Azar* consideration—HUD's explanation for its PRWORA Notice—weighs in favor of the Notice being interpretive because HUD primarily relied on canons of statutory interpretation to determine the meaning of "federal public benefit." *See* 90 Fed. Reg. 54363, 54,364. But the third *Azar* consideration heavily favors a finding that the Notice is legislative because it deviates from three decades of past practice by (1) reversing HUD's stance on whether grants to States are federal public benefits; and (2) vastly expanding the range of programs subject to verification under PRWORA. *See id.*

As the Court determined in the PI Order, existing precedent "suggests that the last three [*Azar*] factors should be given more weight than the first two." PI Order, at 25 (citing *Azar*, 887 F.3d at 74; *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1024 (D.C. Cir. 2000)). As those three factors all heavily favor a finding that HUD's PRWORA Notice is legislative, the Court concludes that HUD's Notice is also a legislative rule.

Because ED, HHS, DOL, and HUD's PRWORA Notices are all legislative rules, and because those agencies did not engage in notice-and-comment rulemaking prior to issuing those Notices, the Notices violate the procedural requirements of the APA and are, consequently, "procedurally invalid." *See Azar*, 887 F.3d at 70. The remaining question is whether the Court should reach the substantive merits of

Plaintiffs' APA, Spending Clause, and Declaratory Judgment Act claims against those agencies and their respective heads. Although the First Circuit declined in *Azar* to reach the substantive merits of an APA challenge to a rule found to be procedurally invalid, it did not explain its reasoning. *See id.* at 77.

The First Circuit does not appear to have otherwise weighed in on whether, having determined agency action to be procedurally invalid, a court should resolve substantive claims against that action as well. Other courts have. The D.C. Circuit has explained "two competing interests": on the one hand, courts should avoid "prejudging the notice and comment process, the very purpose of which is to give interested parties the opportunity to participate in rulemaking and to ensure that the agency has before it all relevant information"; on the other hand, should a court vacate agency action without resolving substantive claims, it could "exacerbate" injuries caused by delays resulting from that action. *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 321 (D.C. Cir. 2011); *accord Iowa League of Cities v. EPA*, 711 F.3d 844, 877 (8th Cir. 2013). Weighing these considerations in *Natural Resources Defense Council*, the D.C. Circuit ultimately only decided a substantive challenge to an agency action that violated plain statutory language and D.C. Circuit precedent, for which "nothing would be gained by postponing a decision on the merits." 643 F.3d at 322.

The Court already found in the PI Order that HHS, ED, and DOL's PRWORA Notices are arbitrary and capricious. PI Order at 26–32. Should these agencies, along with HUD, properly undertake the notice-and-comment process, they will have

an opportunity to address the defects that led to the Court's conclusion. Given that vacatur of the PRWORA Notices should restore the status quo that existed before the issuance of those Notices, and with regard for "the interest in preserving the integrity of the notice and comment process," the Court concludes that it should not decide Plaintiffs' substantive APA, Spending Clause, and Declaratory Judgment claims against the ED, HHS, DOL, and HUD PRWORA Notices at this time.[3]

### C. DOJ's Notice is Judicially Reviewable and Contrary to Law

DOJ's PRWORA Notice pronounces the Attorney General's decision "not to except *any* benefits from PRWORA" under the Life/Safety Exemption provided in 8 U.S.C. § 1611(b)(1)(D). 90 Fed. Reg. at 32,026 (emphasis added). The Attorney General made this decision based on the conclusion that "the benefits of creating additional exceptions to PRWORA, beyond those set forth in the statute itself, are outweighed by the risks of creating incentives for unlawful migration." *Id.*

In their Motion for Summary Judgment, Plaintiffs argue that this violates the APA because it is contrary to law.[4] *See* ECF No. 91 at 69–70; *see also* 5 U.S.C. § 706(2)(A) (empowering courts reviewing APA challenges to "hold unlawful and set

---

[3] The Court also found in the PI Order that ED's Notice is contrary to law, that HHS and DOL's Notices are both likely contrary to law, and that HHS, ED, and DOL's Notices all likely violate the Spending Clause. PI Order at 32–48. Should Defendants, following notice-and-comment rulemaking, promulgate new notices that share these substantive defects, they will be vulnerable to Plaintiffs' substantive challenges at that time.

[4] Plaintiffs do not advance their claim that DOJ's PRWORA Notice was arbitrary and capricious, as alleged in Count V of their Third Amended Complaint. *See* ECF No. 100 at 14 n.3 ("Plaintiffs have not moved for summary judgment on the basis that the DOJ PRWORA Notice is arbitrary and capricious, however, only that it is contrary to law.")

aside agency action" found to be "not in accordance with law"). According to Plaintiffs, while Section 1611(b)(1)(D) provides the Attorney General discretion to "specif[y]" which programs fall within the Life/Safety Exemption, it "does not allow the Attorney General to decide *whether* programs that do meet those criteria should be excepted." (ECF No. 91 at 82) (emphasis in original). Thus, because DOJ's PRWORA Notice asserts that the Attorney General categorically decided not to exempt *any* programs—and did so for extra-statutory reasons related to immigration enforcement—Plaintiffs claim that the Notice is contrary to law and thus violates the APA.

Defendants' arguments in response are related. First, they contend that Plaintiffs' claims against DOJ challenge decisions that are statutorily committed to the Attorney General's discretion and are thus unreviewable under the APA. (ECF No. 99 at 24–27.) According to Defendants, Plaintiffs' reading of Section 1611(b)(1)(D) is wrong: the Life/Safety Exemption "identifies the kinds of programs the Attorney General *may* except, but it does not prescribe *that* or *how* that authority must be exercised." *Id.* at 26. Therefore, the "sole and unreviewable discretion" afforded to the Attorney General extends to whether to exempt *any* programs under the Life/Safety Exemption. *See id.* Defendants contend that this means that, should the Court nevertheless find that DOJ's PRWORA Notice is reviewable, Plaintiffs' claim that it is contrary to law is meritless. *Id.* at 40–43. Defendants also argue that, under *Loper Bright Enterprises v. Raimondo*, the Court must "respect the delegation" of

authority granted to the Attorney General by Section 1611(b)(1)(D). *Id.* at 43 (quoting 603 U.S. 369, 413 (2024)).

The APA embodies a "basic presumption of judicial review" for challenges to agency action. *Dept. of Homeland Sec. v. Regents of the U. of California*, 591 U.S. 1, 16 (2020) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)). That presumption can be rebutted by a showing that (1) a relevant statute precludes review, or, as argued by Defendants here, (2) the "agency action is committed to agency discretion by law." 5 U.S.C § 701(a); *see Regents*, 591 U.S. at 17. "[T]o honor the presumption of review," the Supreme Court has "read the exception in § 701(a)(2) quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).

Defendants cite *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481 (1st Cir. 2016), as underscoring their position regarding the reviewability of DOJ's PRWORA Notice. (ECF No. 99 at 25.) There, the First Circuit determined that a provision in the Immigration and Nationality Act that expressly precluded judicial review of certain discretionary decisions by the Attorney General or the Secretary of Homeland Security falls within the exception to APA review provided by 5 U.S.C. § 701(a)(1). *Bernardo*, 814 F.3d at 484. But the First Circuit's decision in *Bernardo* was expressly based on § 701(a)(1), and not on § 701(a)(2). *Id.* at 484 n.2. *Bernardo* therefore provides little insight into whether § 701(a)(2) applies here.

Instead, the critical question here appears to be one of statutory interpretation: that is, whether Section 1611(b)(1)(D)'s use of the term "specif[y]" is a directive to the Attorney General to *identify* those programs that meet the criteria of the Life/Safety Exemption, or whether it is a grant of authority to the Attorney General to *choose* whether programs that meet those criteria will be exempted. Under the first interpretation, preferred by the Plaintiffs, the "sole and unreviewable discretion" given to the Attorney General is presumably intended by Congress to prohibit challenges to whether an *individual* program meets the criteria of the exception. If that interpretation is correct, then the Attorney General's decision to refuse to exempt *any* programs under the Life/Safety Exemption is not one that is "committed to agency discretion by law."

On this question, *Gundy v. United States*, 588 U.S. 128 (2019), is instructive. There, the Supreme Court considered the meaning of a provision in the Sex Offender Registration and Notification Act ("SORNA") that gives the Attorney General "the authority to *specify* the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter . . . ." 34 U.S.C. § 20913(d) (emphasis added). The petitioner in *Gundy* was convicted of a sex offense before SORNA's enactment and was subsequently convicted of failing to register as a sex offender, as required by an interim rule issued by the Attorney General under Section 20913(d). 588 U.S. at 134 (plurality opinion). The petitioner argued that Section 20913(d) was an unconstitutional delegation of legislative power to the Attorney General because it empowers the Attorney General "to do whatever he wants as to

pre-Act offenders." *Id.* at 140. A plurality of the Supreme Court disagreed, determining that the challenged provision grants the Attorney General authority to "specify *how* to apply SORNA" to pre-Act offenders, and not the authority to "specify *whether* to Apply SORNA" to those individuals. *Id.* at 144 (emphasis in original). The Court found support for this interpretation from SORNA's structure, its legislative history, and the fact that "no Attorney General has used (or, apparently, thought to use) § 20913(d) in any more expansive way." *Id.* at 141–44.

Here, PRWORA's structure, its legislative history, and DOJ's longstanding prior interpretation of the Life/Safety Exemption all support Plaintiffs interpretation of the discretion afforded the Attorney General by 8 U.S.C. § 1611(b)(1)(D). Structurally, PRWORA contains many enumerated exemptions for services related to emergency needs. *See, e.g.*, 8 U.S.C. §§ 1611(b)(1)(A)–(C) (exemptions for emergency medical aid, disaster relief, and communicable disease treatment); 1615 (exemptions for emergency food aid); 1641(c) (extending access to services to "battered aliens"). These exemptions suggest that Congress was concerned about ensuring that PRWORA would not be interpreted in a way that would deprive noncitizens of access to life-saving services. It is therefore unlikely that Congress could have intended, through Section 1611(b)(1)(D), to endow the Attorney General with discretion to categorically deny access to *all* life-saving programs that would otherwise qualify under the Life/Safety Exemption.

The legislative history of PRWORA provides some support to this view of Congress's intent. In December 1995, the conference committee for the first iteration

of the bill explained that, under the Life/Safety Exemption, "even these 'not qualified' aliens may continue to receive . . . programs specified by the Attorney General as necessary to protect life and safety, such as soup kitchens and crisis counseling." 141 Cong. Rec. H15431 (Dec. 21, 1995) (Conference Report printed in Congressional Record). And in July 1996, the conference report stated without qualification that this provision exempts "community programs necessary for the protection of life or safety." H.R. Rep. No. 104-725, at 379 (July 30, 1996) (Conf. Rep.). Absent from the legislative record is any suggestion that Congress intended to empower the Attorney General to choose to categorically deny access to these kinds of services to noncitizens, let alone any indication that the Attorney General should weigh incentives for unlawful immigration in doing so.

DOJ's longstanding prior interpretations of PRWORA align with Plaintiffs' reading of Section 1611(b)(1)(D). In a notice issued the day after PRWORA's enactment, the Attorney General acknowledged that PRWORA "authorizes the Attorney General to establish limited exceptions" to the statute's prohibitions and proceeded to identify various programs as being "[i]ncluded within the specified programs, services or assistance determined to be necessary for the protection of life and safety." 61 Fed. Reg. at 45,985; *see also* 66 Fed. Reg. 3613, 3616 (Jan. 16, 2001) (same). At no point between PRWORA's enactment in 1996 and DOJ's July 2025 PRWORA Notice did DOJ or the Attorney General claim the discretion to decline to exempt all programs that would otherwise meet the criteria outlined in Section 1611(b)(1)(D). While the Court is not bound by these past interpretations, they

certainly merit "very great respect." *Loper Bright*, 603 U.S. at 386; *see also id.* (noting that such respect has been historically thought "especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time.").

Defendants do not dispute the similarity between the statutory text interpreted in *Gundy* and the PRWORA provision at issue here. *See* ECF No. 99 at 41–42. Instead, they propose that the Supreme Court's holding in *Gundy* was driven largely by the statutory purpose at issue there: the development of a national sex registry, which would be undermined by a grant of discretion to the Attorney General to refuse to apply SORNA's requirements to pre-SORNA sex offenders. *Id.* They argue that the Court should similarly base its reading of the Life/Safety Exemption on Congress's expression of PRWORA's purpose as being to promote "self-sufficiency." *Id.* at 42 (quoting 8 U.S.C. § 1601). But this argument is unavailing: not only is Defendants' representation of the Supreme Court's analysis in *Gundy* inaccurate, *see* 588 U.S. at 141 (explaining the Supreme Court's holistic approach to statutory interpretation), but it also presupposes that PRWORA's stated purpose of promoting "self-sufficiency" somehow supports cutting off access to life-saving services to noncitizens. This is surely not so, as made clear by the many other exemptions for emergency and similar services enumerated throughout PRWORA.

Based on the above analysis, the Court concludes that 8 U.S.C. § 1611(b)(1)(D) bestows the Attorney General with discretion to identify *which* programs qualify under the Life/Safety Exemption, not the discretion to decline *whether* to identify *any*

such programs. Plaintiffs' APA claim against DOJ and the Attorney General is therefore not a challenge to agency action that is "committed to agency discretion by law," *see* 5 U.S.C § 701(a)(2), because PRWORA does not commit to the Attorney General the kind of wholesale discretion asserted in DOJ's PRWORA Notice. And because the Attorney General's decision to categorically refuse to apply the Life/Safety Exemption to any qualifying programs exceeds the discretion granted by PRWORA, that decision is necessarily contrary to law.[5] *See City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020).

**D. Remedy**

Having concluded that ED, HHS, DOL, and HUD's PRWORA Notices are procedurally invalid, and that DOJ's PRWORA Notice is contrary to law, the Court now turns to the question of the appropriate remedy. Plaintiffs request the Court to (1) vacate the PRWORA Notices; (2) permanently enjoin Defendants from implementing or enforcing the PRWORA Notices against Plaintiffs by any other

---

[5] Because the Court concludes that DOJ's PRWORA Notice is contrary to law, it need not reach Plaintiffs' Spending Clause and Declaratory Judgment claims against that Notice at this time, notwithstanding the likely merit of those claims. *See* PI Order at 47–48 (concluding that, as with ED, HHS, and DOL's PRWORA Notices, DOJ's Notice likely violates the Spending Clause); *City of Fresno v. Turner*, No. 25-CV-07070-RS, 2025 WL 2721390, at *11 (N.D. Cal. Sept. 23, 2025) ("PRWORA only requires state immigration status verification systems twenty-four months after the Attorney General promulgates certain final regulations, and so far only interim guidance and proposed rules have been issued."); *Martin Luther King, Jr. Cnty. v. Turner*, 798 F. Supp. 3d 1224, 1250 n.9 (W.D. Wash. Aug. 12, 2025) (explaining that PRWORA "does not require grant recipients to verify eligibility until the U.S. Attorney General has promulgated regulations implementing a verification requirement . . . . The Attorney General is yet to promulgate a final regulation implementing a verification requirement").

means; and (3) issue a declaratory judgment that the PRWORA Notices are unlawful. (ECF No. 91 at 94–95.)

In response, Defendants first propose that vacatur is not appropriate here. But as Defendants themselves acknowledge, "the First Circuit has recognized vacatur as an available remedy under the APA" (ECF No. 99 at 58 n.6) (citing *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 50 (1st Cir. 2025)); *see also Illinois v. Noem*, 813 F. Supp. 3d 282, 309–10 (D.R.I. 2025) (rejecting similar claims against vacatur as a remedy). As the Court has found that Defendants' actions violated the APA, it follows that the appropriate remedy is to vacate those actions.[6]

Apart from reiterating their previous objections to injunctive relief in this case, Defendants also argue that Plaintiffs' proposed injunction is impermissibly vague and untethered from "any specific claim or specific alleged injury." (ECF No. 99 at 59) (citing Fed. R. Civ. P. 65(d)(1)(C); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). The Court disagrees. Enjoining Defendants from attempting to enforce the PRWORA Notices against Plaintiffs "by any other means" is necessary to prevent Defendants from taking an end-run around vacatur through alternative agency

[6] In Defendants' Reply in Support of their Cross-Motion for Summary Judgment, they suggest remand without vacatur as an appropriate alternative remedy. (ECF No. 104 at 29–30.) Plaintiffs propose a Sur-Reply that contends that this argument was waived because it was not expressly included in Defendants' Cross-Motion for Summary Judgment, and that it is otherwise meritless under the relevant test. (ECF No. 105-1.) The Court agrees that Defendants failed to include any argument for remand in their Cross-Motion for Summary Judgment, which instead proposes that "any equitable remedy applied *in the nature of vacatur* should apply only to the named Plaintiffs in this case." *See* ECF No. 99 at 59 (emphasis added). Defendants' argument in favor of remand is therefore waived. *See Brox v. Woods Hole*, 164 F.4th 37, 43 (1st Cir. 2026).

actions. Further, as Plaintiffs explain, their proposed injunction "would not prohibit Defendants from promulgating new, different rules to cure the many defects of the vacated PRWORA Notices." (ECF No. 91 at 95.) As the Court has already found the PRWORA Notices pose irreparable harm to Plaintiffs, and because the other factors reviewed in the PI Order continue to favor equitable relief, the Court concludes the permanent injunction requested by Plaintiffs is justified. *See* PI Order at 48–58.

## IV. CONCLUSION

For the reasons provided above, the Court GRANTS Plaintiffs' Motion for Summary Judgment (ECF No. 91) and DENIES Defendants' Cross-Motion for Summary Judgment (ECF No. 99). The PRWORA Notices are declared unlawful under the APA and are ordered set aside and vacated. Defendants are enjoined from implementing or enforcing the PRWORA Notices or the interpretations contained therein against Plaintiffs by any other means. Consistent with the Court's reasoning above, this injunction does not prohibit HHS, ED, DOL, HUD, and their respective heads from promulgating new rules related to PRWORA after a period of notice-and-comment rulemaking as required under the APA.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

September 21, 2026